# EXHIBIT

# # 1

# BUSINESS INFORMATION

Business Name:
**HIGHMARK HOMES LLC**

UBI Number:
**602 837 532**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ADMINISTRATIVELY DISSOLVED**

Principal Office Street Address:

Principal Office Mailing Address:

Expiration Date:
**06/30/2016**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**06/03/2008**

Period of Duration:
**PERPETUAL**

Inactive Date:
**06/20/2016**

Nature of Business:

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**TOM TOLLEN**

Street Address:
**16400 SOUTHCENTER PKWY #210, TUKWILA, WA, 98188-0000, UNITED STATES**

Mailing Address:

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | THOMAS | TOLLEN |

# EXHIBIT

# # 2

## CONTRACTORS GENERAL
## SUPPLEMENTAL QUESTIONNAIRE

### GENERAL INFORMATION:

1. Applicant (please list all owners):   Kevin and Dawson
   Company Name                          Dawson Lane Residential Commercial Investment
Group

2. Years under this name: 3 (if less than three years, complete New Venture Supplement)

2. Describe business/operations: General Contractor

|                  | Commercial | Residential |
|------------------|------------|-------------|
| New Construction | _____%     | 100%        |
| Remodeling       | _____%     | _____%      |
| Additions        | _____%     | _____%      |
| Repair           | _____%     | _____%      |
| Other            | _____%     | _____%      |

4. Contractors license number: _____

5. Have you ever had insurance cancelled, declined or renewal refused? ☐ Yes  ☒ No
If yes, explain: _____

6. Estimated number of start ups / jobs over the next 12 months: 15

7. Direct Payroll: (Excluding Principals): $0

| Insured Subcontract Costs: | Uninsured Subcontract Cost: | Gross Receipts |
|---------------------------|------------------------------|----------------|
| $1,000,000                | $0                           | $3,500,000     |

Prior Years:

|               | Direct Payroll: Paid by you to your employees Who work at the jobsite | Total Subcontract Costs: | Gross Receipts: |
|---------------|-----------------------------------------------------------------------|--------------------------|-----------------|
| Expiring:     | $_____                                                               | $_____                  | $ _____        |
| First Prior:  | $_____                                                               | $_____                  | $ _____        |
| Second Prior: | $_____                                                               | $_____                  | $ _____        |

8. List the operations you regularly subcontract to uninsured subcontractors. None

9. Do you have a written safety program? If so, attach a copy.   ☒ Yes ☐ No

10. Do you carry Worker's Compensation? ☒ Yes ☐ No

11. Are you doing any construction management, or offering construction management services on a consultant basis? ☐ Yes ☒ No If yes, what percentage? _____ If yes, do you carry professional liability Errors and Omission Coverage? ☐ Yes ☐ No

12. On average, how many days per week do you spend at a job site? 7_

13. Do you work on condominiums, townhouses, apartments or tracts over 5 units at any one time; except for repair or remodeling of not more than 5 units within a development at any given time? ☐ Yes ☒ No
Maximum number of units at any one location if more than 5        9

14. Do you work on student housing, senior housing, assisted living facilities or retirement homes except for repair or remodeling of not more than one unit within a development? ☐ Yes ☒ No

15. Are you engaged in any structural work including grading and excavation on slopes of greater than 30 degrees? Retaining wall may not exceed 6 feet in height. ☐ Yes ☒ No

1

16. Have you had more than 2 claims in 3 years? ☐ Yes ☒ No

17. Have you had more than one construction defect claim? (open or closed) ☐ Yes ☒ No

18. Do your employees install, service or repair alarm systems, automatic fire extinguishing systems, boilers, elevators, escalators, surveillance systems or TV monitoring systems, either commercial or residential?
☐ Yes ☒ No

19. Do your employees install, service or repair wood, coal or waste oil-burning stoves? ☐ Yes ☒ No

20. Do you remove asbestos insulation or asbestos containing material, fungus, mold or install insulation materials other than fiberglass or rock wool? ☐ Yes ☒ No

21. Are you involved in the sale of chemicals, or the application of chemicals, such as herbicides or pesticides, to property? ☐ Yes ☒ No

22. Do you perform work for petroleum, industrial, or chemical facilities? ☐ Yes ☒ No

23. Do you have operations/work on or for airports, environmental remediation, traffic light, underground tanks, or railroad? ☐ Yes ☒ No

24. Do your employees or uninsured subs do roofing, swimming pool elevator, or skylights construction in excess of $500 per job? ☐ Yes ☒ No

25. Do you use EIFS in your construction ☐ Yes ☒ No If yes please explain.

26. Are you involved in fiber optic cable work or installation ☐ Yes ☒ No

27. Are you involved in tunneling? ☐ Yes ☒ No

28. Are you involved in any exterior work over five (3) stories in height? ☐ Yes ☒ No

29. Have you been personally bankrupt or the principal in a company that has been bankrupt the past five years? ☐ Yes ☒ No

30. Are you involved in recreational or playground construction? ☐ Yes ☒ No

31. Does any officer, owner, or partner have a prior felony conviction? ☐ Yes ☒ No

32. Are you involved in any smoke, fire or water restoration ☐ Yes ☒ No

33. Are you involved in any demolition or abatement work? ☐ Yes ☒ No

Notes ___ ...

_____ Position: _____ Date: 3/11/07
Applicant's Signature (Producer may not sign for applicant)

Producer: __Jeremy Borchert_____ Agency: __Lockton Affinity_____

# EXHIBIT

# # 3

# Appalachian Underwriters
# American Safety Indemnity

## Toll-free Claims Reporting Quick Reference Sheet
## for
## Auto and General Liability Claims

# Fax: 770-485-1703
## Email: Claims@amsafety.com

To report your auto and general liability claims quickly and efficiently, please have the following information listed on your faxed documents. This is a general listing for your quick reference. Additional information may be requested. Thank you for your prompt claims reporting!

CLIENT INFORMATION
~      Insured Name and DBA *(doing business as* name)

CLAIMANT INFORMATION
~      Claimant Information
~      Claimant Name
~      Claimant addresses and phone number

LOSS INFORMATION
~      Exact date and time of injury or damage
~      Exact location where injury or damage occurred
~      Specific description of injury or damage
~      Witnesses or Passengers - name, address and phone numbers

# ACORD™ GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM

DATE

| PRODUCER | PHONE (A/C, No, Ext): |
|---|---|

| NOTICE OF OCCURRENCE | DATE OF OCCURRENCE AND TIME | AM PM | DATE OF CLAIM | PREVIOUSLY REPORTED YES NO |
|---|---|---|---|---|
| NOTICE OF CLAIM | | | | |

| EFFECTIVE DATE | EXPIRATION DATE | POLICY TYPE | RETROACTIVE DATE |
|---|---|---|---|
| | | OCCURRENCE CLAIMS MADE | |

| COMPANY | NAIC CODE: | MISCELLANEOUS INFO (Site & location code) |
|---|---|---|

| CODE: | SUB CODE: |
|---|---|

AGENCY CUSTOMER ID:

| POLICY NUMBER | REFERENCE NUMBER |
|---|---|

## INSURED

| NAME AND ADDRESS | SOC SEC #: |
|---|---|

## CONTACT          CONTACT INSURED

| NAME AND ADDRESS | WHERE TO CONTACT |
|---|---|
| | WHEN TO CONTACT |

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|---|---|

## OCCURRENCE

| LOCATION OF OCCURRENCE (Include city & state) | AUTHORITY CONTACTED |
|---|---|

DESCRIPTION OF OCCURRENCE (Use separate sheet, if necessary)

## POLICY INFORMATION

COVERAGE PART OR FORMS (Insert form #s and edition dates)

| GENERAL AGGREGATE | PROD/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | PD BI |
|---|---|---|---|---|---|---|---|

| UMBRELLA/ EXCESS | UMBRELLA | EXCESS | CARRIER: | LIMITS: | AGGR | PER CLAIM/OCC | SIR/ DED |
|---|---|---|---|---|---|---|---|

## TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER | TENANT | OTHER: | TYPE OF PREMISES |
|---|---|---|---|---|

| OWNER'S NAME & ADDRESS (If not insured) | OWNERS PHONE (A/C, No. Ext): |
|---|---|

| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | OTHER: | TYPE OF PRODUCT |
|---|---|---|---|---|

| MANUFACTURER'S NAME & ADDRESS (If not insured) | MANUFACT PHONE (A/C, No, Ext): |
|---|---|

WHERE CAN PRODUCT BE SEEN?

OTHER LIABILITY IN- CLUDING COMPLETED OPERATIONS (Explain)

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | PHONE (A/C, No, Ext) |
|---|---|

| AGE | SEX | OCCUPATION | EMPLOYER'S NAME & ADDRESS | PHONE (A/C, No, Ext) |
|---|---|---|---|---|

| DESCRIBE INJURY | | WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|---|---|
| FATALITY | | | |

| DESCRIBE PROPERTY (Type, model, etc) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? | WHEN CAN PROPERTY BE SEEN? |
|---|---|---|---|

## WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|
| | | |
| | | |

REMARKS

| REPORTED BY | REPORTED TO | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|---|

| Countersigned: 3/17/2009 | By: |
|---|---|
| **(Date)** | **(Authorized Representative)** |

In Witness whereof, this Company has caused this policy to be signed by its President and Secretary, but if required by state law, this policy shall not be valid unless countersigned by an authorized representative of the Company.

**Secretary**                              **President**



**American Safety Indemnity Company**
**100 Galleria Parkway SE, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

**POLICY NUMBER:** 156AUI 81426-00

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| | |
|---|---|
| **Broker -** Appalachian Underwriters, Inc. | **Producer -** LOCKTON RISK SERVICES |

**Named Insured:** DAWSON LANE RESIDENTIAL COMMERCIAL INVESTMENT GROUP

**Mailing Address:** 215 105TH ST SE, Everett WA 98208

**Policy Period:** **From:** 03/12/2009 **To:** 03/12/2010
**At 12:01 A.M. Time at your Mailing Address Shown Above**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THE POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| **Each Occurrence Limit** | $ 1,000,000 |
| **Fire Damage Limit - Any one fire** | $ 100,000 |
| **Medical Expense Limit - Any one person** | $ 5,000 |
| **Personal & Advertising Injury Limit - Any one person or organization** | $ 1,000,000 |
| **General Aggregate Limit** | $ 2,000,000 |
| **Products/Completed Operations Aggregate Limit** | $ 2,000,000 |

## DESCRIPTION OF BUSINESS

**FORM OF BUSINESS**

☐ Individual ☐ Partnership ☐ Joint Venture

☐ Limited Liability Company ☑ Organization, Including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)

**Business Description:** GENERAL CONTRACTOR

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.



**American Safety Indemnity Company**
**100 Galleria Parkway SE, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER: | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 215 105TH ST SE |
| | EVERETT WA , 98208 |

| As on file with application dated: |
|---|

### CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO | PREMIUM BASE | RATE | | PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | | | Prem Ops | Prod/Com Ops | Prem Ops | Prod/Com Ops |
| 1 | Contractors - Executive supervisors or executive superintendents | 91580 | $35,600 | 57.41 | Included | $2,044.00 | Included |
| 1 | Contractors - subcontracted work - in connection with building construction, recontruction, repair or erection - one or two family dwellings | 91583 | $1,000,000 | 1.09 | 3.27 | $1,089.00 | $3,269.00 |
| 1 | * Blanket Additional Insured | 49950 | 1 | | | | $150.00 |

| PREMIUM SHOWN IS PAYABLE: | STATE TAX OR OTHER (if applicable) | |
|---|---|---|
| | POLICY FEE (if applicable) | $125.00 |
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $6,552.00 |
| | AT INCEPTION | 100% |
| | AT EACH ANNIVERSARY | |
| | IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS | |
| AUDIT PERIOD (if applicable) | ☑ANNUALLY ☐SEMI-ANNUALLY ☐QUARTERLY ☐MONTHLY | |

### ENDORSEMENTS
**ENDORSEMENTS ATTACHED TO THIS POLICY:**

ASI CLAIMS, ASI SIGNATURE PAGE, ASI OCCURRENCE DECLARATIONS PAGE 1, ASI 0001 09 06, ASI 3000 09 06, ASI 3001 09 06, ASI 3002 09 06, ASI 3003 09 06, ASI 3004 09 06, ASI 3005 09 06, ASI 3006 09 06, ASI 3016 08 07, ASI 3022, ASI 3026 09 06, ASI 3027 09 06, ASI 3028 09 06, ASI 3029 09 06, ASI 3030 09 06, ASI 3031 09 06, ASI 3032 09 06, ASI 3033 09 06, ASI 3034 09 06, ASI 3035 09 06, ASI 3036 09 06, ASI 3037 09 06, ASI 3040 05 08, CG 03 00 01 96, CG 21 67 12 04, CG 21 46 07 98, CG 21 47 07 98, CG 21 55 09 99, CG 21 96 03 05, CG 22 24 07 98, CG 21 86 12 04, CG 22 31 07 98, CG 22 34 07 98, CG 22 43 07 98, CG 22 79 07 98, CG 21 90 01 06, IL 00 17 11 98, IL 00 21 05 04, CG 00 67 03 05

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.



**American Safety Indemnity Company**
**100 Galleria Parkway SE, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S). COMPLETE THE ABOVE NUMBERED POLICY.**

| | |
|---|---|
| **Endorsement Effective:** 03/12/2009 | **Countersigned By:** |
| **Named Insured:**<br>DAWSON LANE RESIDENTIAL COMMERCIAL INVESTMENT GROUP | **(Authorized Representative)** |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003
ASI 0001 09 06 **o**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003      ASI 0001 09 06    o

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

© ISO Properties, Inc., 2003

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to ''personal and advertising injury'' caused by an offense arising out of your business but only if the offense was committed in the ''coverage territory'' during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

''Personal and advertising injury'' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict ''personal and advertising injury''.

**b. Material Published With Knowledge Of Falsity**

''Personal and advertising injury'' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

''Personal and advertising injury'' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

''Personal and advertising injury'' arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

''Personal and advertising injury'' for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

''Personal and advertising injury'' arising out of a breach of contract, except an implied contract to use another's advertising idea in your ''advertisement''.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

''Personal and advertising injury'' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your ''advertisement''.

**h. Wrong Description Of Prices**

''Personal and advertising injury'' arising out of the wrong description of the price of goods, products or services stated in your ''advertisement''.

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

''Personal and advertising injury'' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your ''advertisement'', of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

''Personal and advertising injury'' committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of ''personal and advertising injury'' under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

''Personal and advertising injury'' arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

''Personal and advertising injury'' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003 ASI 0001 09 06 **o**

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture) or to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C;**

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    © ISO Properties, Inc., 2003    ASI 0001 09 06  **o**

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003

ASI 0001 09 06    o

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - SUBSIDENCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Subsidence**

"bodily injury", "property damage" or "personal and advertising injury" arising out of the "subsidence" of land and arising out of or attributable to any ongoing operation of the insured or performed on the insured's behalf or the "products/completed operations hazard".

This exclusion applies whether such "bodily injury", "property damage" or "personal and advertising injury" arises solely from "subsidence" or from "subsidence" in combination with other causes, whether natural or man made.

"Subsidence" means earth movement including but not limited to:

(1) Landslide;

(2) Mudflow;

(3) Earth sinking;

(4) Earth rising;

(5) Collapse or movement of fill;

(6) Improper compaction;

(7) Earth settling, slipping, falling away, caving in, eroding or tilting;

(8) Earthquake; or

(9) Any other movement of land or earth.

ASI 3000 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD PAINT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Lead**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or any product containing lead.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3001 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Asbestos**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to "asbestos"; or

**(2)** Any loss, cost or expense that may be awarded or incurred:

    **(a)** by reason of a claim or "suit" for any such injury or damage; or

    **(b)** in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of "asbestos".

"Asbestos" means the mineral in any form whether or not the "asbestos" was at any time:

**(1)** airborne as a fiber, particle or dust;

**(2)** contained in or formed a part of a product, structure or other real or personal property;

**(3)** carried on clothing;

**(4)** inhaled or ingested; or

**(5)** transmitted by any other means.

This exclusion shall apply without regard to the allegations or basis of the insured's liability,

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3002 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CHROMATED COPPER ARSENATE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Chromated Copper Arsenate**

(1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to chromated copper arsenate (CCA), whether such CCA is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to CCA is or is alleged to have caused damage in any sequence or combination with, or contributed to or was contributed to by any other cause or causes of injury or damage; or

(2) Any loss, cost or expense that may be awarded or incurred by reason of a claim or "suit" for any such injury or damage.  This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of CCA or property containing CCA and includes any liability, cost or expense to remediate or prevent "bodily injury", "property damage" or "personal and advertising injury" from CCA.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury", "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit."  When we do not elect to defend you in such "suit", we shall reimburse you for the reasonable attorneys' fees and litigation expenses incurred by you, in accordance with the conditions of this policy.

ASI 3003 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CROSS SUITS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Cross Suits**

"Bodily injury", "property damage" or "personal and advertising injury", as defined, initiated, alleged, or caused to be brought about by this policy against any other Named Insured or Additional Named Insured covered by this policy.

# EXCLUSION - ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to:

**Assault and Battery**

"Bodily injury" or "property damage" arising from:

**(1)** Assault and battery committed by any insured, any "employee" of any insured, or any other person;

**(2)** The failure to suppress or prevent assault and battery by any person in **A.** above; or

**(3)** Any assault and battery resulting from or allegedly related to the negligent hiring, supervision or training of any "employee" of any insured.

ASI 3005 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CANINE LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Dogs**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, rental, maintenance or use of dogs.

ASI 3006 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# CONTRACTORS SPECIAL CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Contractors As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"

**(1)** received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;

**(2)** obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits of $ 1,000,000 per occurrence;

**(3)** obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and

**(4)** obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs **(1)** through **(4)** for a minimum of five years from the expiration date of this policy.  If coverage indicated under **(2)** and **(3)** above are not maintained, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in **(2)** and **(3)** above.

The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph **(2)**.

## PRODUCTS OR WORK EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**

| **SCHEDULE**<br>3/12/2009 |
| --- |
| **Products:** |
| **Work:** |

**This insurance does not apply to "your products" or "your work" completed prior to the policy period.  Specifically, this insurance does not apply to:**

"Bodily injury", "property damage", "personal injury", "advertising injury", or "medical payments" included in the "products-completed operations hazard" and arising out of, or alleged to arise out of, any of "your products" manufactured, assembled, sold, handled or distributed by or on behalf of you prior to the date shown in the Schedule or "your work" performed by or on behalf of you prior to the date shown in the Schedule.

We will not defend any claim or suit, or pay any damages, loss, expense, cost, or obligation caused directly or indirectly by, arising out of, or alleged to arise out of, resulting from, contributed to, contributed by, or related in any way to "your products" manufactured, assembled, sold, handled or distributed by or on behalf of you prior to the date shown in the Schedule or "your work" performed by or on behalf of you prior to the date shown in the Schedule.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – FORMALDEHYDE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added **to SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **paragraph 2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

Formaldehyde

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to formaldehyde, whether the formaldehyde is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to formaldehyde has caused, or contributed to cause, damage in any sequence or combination.

**(2)** Any damages, loss, cost or expense that may be awarded or incurred by reason of a claim or "suit" for any such injury or damage. This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of formaldehyde or property containing formaldehyde and includes any liability, cost or expense to remediate or prevent "bodily injury," "property damage" or "personal and advertising injury" from formaldehyde.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury," "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit." If we exercise the right to defend said suit we shall have to obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3026 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – OPEN FLAME

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Open Flame**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, directly or indirectly resulting from or in consequence of, or in any way involving an open flame in the removal of paint or any other coating.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - TORCH DOWN AND TORCH ON ROOFING

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Torch Down and Torch On**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, a wand, open flame, torch and/or heat applications commonly referred to in the roofing industry as "torch down" and/or "torch on."

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIRD-PARTY-OVER ACTION EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion e. under Paragraph 2., Exclusions of Section 1-Coverage A-Bodily Injury and Property Damage Liability is replaced by the following:

2. Exclusions

   This insurance does not apply to:

   e. Employer's Liability

   Bodily injury, personal injury, or advertising injury to:

   (1) An employee of any insured arising out of and in the course of employment, whether any other insured may be liable for such bodily injury, personal injury or advertising injury;

   (2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

   This exclusion applies:

   (1) Whether an insured may be liable as an employer or in any other capacity;

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

   (3) To any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that Insured or any other insured.

   For the purpose of this exclusion the term "employee" includes loaned, rented, leased, or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employee, respondeneat superior or any similar doctrine, or for whom any insured may be held liable as an employer.

ASI 3029 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PENDING AND PRIOR LITIGATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Pending and Prior Litigation**

"Bodily injury," "property damage" or "personal and advertising injury" arising from all pending or prior litigation as well as all future claims arising out of said pending or prior litigation.

For the purposes of this exclusion:

**(1)** Injury or damage is known to any insured when any insured is aware or reasonably should be aware that the injury or damage has occurred; and

**(2)** Knowledge of "bodily injury" or "property damage" arising from an "occurrence" or "personal and advertising injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "occurrence" or offense.

ASI 3030 09 06

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – DEMOLITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to:

**Demolition**

**(1)** "Bodily injury" or "property damage" arising out of any blasting operations;
**(2)** "Bodily injury" or "property damage" arising from the use of a "ball and chain" or similar apparatus;
**(3)** "Bodily injury" or "property damage" arising out of the demolition of any building or structure which has an original height in excess of three stories or original height in excess of fifty (50) feet; or
**(4)** "Property damage" to any abutting, adjoining, common or party wall.

ASI 3031 09 06

# EXCLUSION - INTENTIONAL INJURY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion a. Expected or Intended Injury under SECTION 1-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, is deleted and replaced with the following:

2. Exclusions

This insurance does not apply to:

a. Intentional Injury

i. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured; or

ii. Assault and Battery

"Bodily injury" or "property damage" arising out of:

(a) Assault

(b) Battery

(c) Harmful or offensive contact between or among two or more persons,

(d) Apprehension of harmful or offensive contact between or among two or more persons,

(e) Threat by word or deed.

These exclusions apply regardless of:

I. Whether or not the acts are alleged to be by or at the direction of any insured,

II. Whether or not the acts arose out of the alleged failure of any insured in the hiring or supervision of any person, or

III. Whether or not the acts arose out of the alleged failure of any insured to prevent or suppress such acts.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Punitive or Exemplary Damage**

Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.

ASI 3033 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ROOFING LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Roofing Limitation**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(a)** The handling, storage or transportation of hot tar or any other heated substance; or

**(b)** Any job site where you are working, or have worked, on a roof of a building or structure, whether work is completed or not, in excess of three (3) stories or thirty-six (36) feet in height.

**(2)** "Property damage" to any building or structure caused by fire if caused by the application of open flame or torch to roofing materials or to roofs whether removing roofs or roofing materials or installing roofs or roofing materials.

**(3)** "Property damage" to any building or structure or its contents or any related items thereto, caused by or resulting from the intrusion of rain, snow, sleet or hail for any reason, including the negligence of the insured during the course of the insured's "roofing operations"; unless the insured applies a "secured protective cover" of waterproof material over all portions of the "open roof," thereby preventing entry by any of the perils mentioned above.

As used in this endorsement:
"Open roof" is defined as a roof or section thereof from which the protective covering (shingles, tar, tiles, felt paper, etc.) has been removed leaving exposed the decking, supporting structure, or interior of the building or its contents to the intrusion of rain, snow, sleet or hail.
"Roofing operations" is defined to mean removal of any old roofing material and the application of new roofing material.
"Secured protective cover" is defined as weatherproof covering applied and securely fastened as if permanent in nature except for its temporary employment until completion of the "roofing operations".

ASI 3034 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is agreed that twenty-five percent (25%) of the annual premium is fully earned as of the inception date of the policy.

ASI 3035 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNDERGROUND UTILITY LOCATION CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Underground Utility Location**

It is a condition precedent to coverage that before the insured commences any digging, excavation, boring or similar underground work, a local locator service must come to the job site and mark all underground lines, pipes, cables and underground utilities. The insured must obtain a written response from the locator service.

If this is not done, coverage under this policy is voided for any "suit," claim, loss, costs or expenses arising out of such digging operations.

ASI 3036 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT
# (BLANKET)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following paragraph is added to SECTION II- WHO IS AN INSURED:

4. Any additional insured interest where required by written contract, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by,

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured,

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply: This insurance does not apply to "bodily injury" or "property damage" occuring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. This endorsement in no way alters coverage or provides insurance not already afforded by this policy, Unless expressly modified herein, coverage is governed by the terms and conditions of this policy, including the insuring agreements. All the provisions and exclusions of this policy that apply to Liability Coverages also apply to this endorsement.

ASI 3037 09 06

# SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that in the event of the failure by us to pay any amount claimed to be due hereunder, we will, at your request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the person or organization shown in the Policy Declarations or upon us at the address shown in the policy jacket.

And that in any suit instituted against any one of them upon this contract, we will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of us in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner, or Directors of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ASI 3040 05 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM   or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ 1,000 | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limi-tation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay dam-ages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount in-dicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person be-cause of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person be-cause of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of serv-ices or death resulting at any time from "bodily injury", a separate deductible amount will be ap-plied to each person making a claim for such damages.

With respect to "property damage", person in-cludes an organization.

Copyright, Insurance Services Office, Inc.,  1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages because of "property dam-age"; or

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        **(1)** "Bodily injury";

        **(2)** "Property damage"; or

        **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regard-less of the number of persons or organizations who sustain damages because of that "occur-rence".

**C.** The terms of this insurance, including those with re-spect to:

    **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deducti-ble amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deducti-ble amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994   **o**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.** The negligent:

  **a.** Employment;

  **b.** Investigation;

  **c.** Supervision;

  **d.** Reporting to the proper authorities, or failure to so report; or

  **e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

Copyright, Insurance Services Office, Inc., 1997
o

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INSPECTION, APPRAISAL AND SURVEY COMPANIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to ''bodily injury'', ''property damage'' or ''personal and advertising injury'' for which the insured may be held liable because of the rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

Copyright, Insurance Services Office, Inc., 1997
o

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – RIOT, CIVIL COMMOTION OR MOB ACTION – GOVERNMENTAL SUBDIVISIONS

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Riot, civil commotion or mob action; or

2. Any act or omission in connection with the prevention or suppression of a riot, civil commotion or mob action.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

 **1.** "Terrorism" means activities against persons, organizations or property of any nature:

  **a.** That involve the following or preparation for the following:

   **(1)** Use or threat of force or violence; or

   **(2)** Commission or threat of a dangerous act; or

   **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

  **b.** When one or both of the following applies:

   **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 **2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

 **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

 **2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

 **3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

 **4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

© ISO Properties, Inc., 2004

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** or **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2004

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

EXHIBIT

# 4

 Washington State Department of
Labor & Industries (https://lni.wa.gov)

# HIGHMARK HOMES LLC

**Owner or tradesperson**
Principals
TOLLEN III, THOMAS LEE, PARTNER/MEMBER

CLARK, TIFFINIE M, PARTNER/MEMBER
 (End: 08/05/2014)

Doing business as
**HIGHMARK HOMES LLC**

WA UBI No.
**602 837 532**

**16000 CHRISTENSEN RD STE 150**
**TUKWILA, WA 98188**
**253-981-4388**
**KING County**

Business type
**Limited Liability Company**

# License

Verify the contractor's active registration / license / certification (depending on trade) and any past violations.

**Construction Contractor**

**Out of Business.**
**License holder has notified L&I it is no longer in business. NOTE: Owner may have other active license(s) under different business name(s).**

License specialties
**GENERAL**
License no.
**HIGHMHL904R7**
Effective — expiration
**12/27/2010— 12/27/2016**

Suspend date
**07/17/2016**

**Bond**
**No current bond account. See the bond history.**

Bond history

**Insurance**
**No current insurance account. See the insurance history.**

Insurance history

**Savings**

Savings history

**Lawsuits against the bond or savings**
**No lawsuits against the bond or savings accounts during the previous 6 year period.**

**L&I Tax debts**
**No L&I tax debts are recorded for this contractor license during the previous 6 year period, but some debts may be recorded by other agencies.**

**License Violations**
**No license violations during the previous 6 year period.**

# Certifications & Endorsements

**OMWBE Certifications**
No active certifications exist for this business.

**Apprentice Training Agent**
No active Washington registered apprentices exist for this business. Washington allows the use of apprentices registered with Oregon or Montana. Contact the Oregon Bureau of Labor & Industries or Montana Department of Labor & Industry to verify if this business has apprentices.

# Workers' Comp

Do you know if the business has employees? If so, verify the business is up-to-date on workers' comp premiums.

L&I Account ID
**067,146-01**

**Account is closed.**

Doing business as
**HIGHMARK HOMES LLC**
Estimated workers reported
**N/A**
L&I account contact
**T0 / JULIE SUR (360)902-4715 - Email: SURJ235@lni.wa.gov**

## Public Works Requirements

Verify the contractor is eligible to perform work on public works projects.

**Required Training– Effective July 1, 2019**
Needs to complete training.

**Contractor Strikes**
**No strikes have been issued against this contractor.**

**Contractors not allowed to bid**
**No debarments have been issued against this contractor.**

## Workplace Safety & Health

Check for any past safety and health violations found on jobsites this business was responsible for.

No inspections during the previous 6 year period.

# EXHIBIT
# # 5


**XS SPECIALTY**

## GENERAL CONTRACTORS GENERAL LIABILITY SUPPLEMENTAL

**INSURED INFORMATION**                                                    7-17-11

| | |
|---|---|
| Applicant | HIGHMARK HOMES LLC |
| | (List all Owners)    DBA HIGHMARK AT CRYSTAL HAVEN/LLC |
| | 7M HOMES, LLC |
| Business Address   16400 Southcenter Pkwy   Mailing Address   TUKWILA, WA 98188 |
| #204 | ☑ (Same as Business Address) |
| Contact   Tom   | Contact Phone Number   2063711999 |
| ☑ (Same as Insured) | |

**AGENCY INFORMATION**

| | |
|---|---|
| Agency Name   Humble+ Davenport   Agent's Name   BOB DAVENPORT |
| Agency Address   3500 MAPLE VALLEY HWY, RENTON, WA 98058 |
| Phone 425-226-8221   Fax   425-917-1315   Email BOB@Humble Davenport.com |
| X214 | |

**NEW VENTURE SUPPLEMENTAL**

Years under current name: [9]   If less than 3 years the rest of this section is required else you may skip it.
(2 FR HIGHMARK HOMES LLC)

Date business established: 6/18/2002   Years of related experience: [9]

List all business names that applicant/owner has owned in past:

TOLLEN DEVELOPMENT - (HIGHMARK WAS PART OF THAT
ENTITY) WINDERMERE REAL ESTATE, AUBURN WA.

Brief summary of experience:

HAS BEEN BUILDING RESIDENTIAL HOMES + TOWN
HOMES FOR LAST 3 YEARS.

## LOSS HISTORY

This business has had ___0___ general liability claims, totaling ___0___ (paid and reserve) within the past three (3) years.

There are ___0___ open claims.

Have you had more than one construction defect claim?  ○ Yes  ☒ No

## PROGRAM SPECIFIC INFORMATION

1)

| | Commercial | Residential | Business Description |
|---|---|---|---|
| New Construction | % | 90 % | Construction, RESIDENTIAL |
| Remodeling | % | % | |
| Additions | % | % | |
| Repair | % | 10 % | |
| Other | % | % | |

2)  Contractors License Number  HI6HMHL904RQ

3)  Have you ever had Insurance cancelled, declined, or renewal refused?  ○ Yes  ☒ No

4)  Estimates for the next 12 months:

Direct payroll excluding principals  50,000    New Home Startups  30

Insured Subcontract Costs  4,000,000    Uninsured Subcontract Costs  [blank]

Gross Receipts  5,000,000

Prior Years:

| | Direct Payroll (Exclude Owners) | Total Subcontractor Cost | Gross Receipts |
|---|---|---|---|
| Expiring | 0 | 2,000,000 | 3,000,000 |
| First Prior | 50,000 | 3,000,000 | 4,000,000 |
| Second Prior | 50,000 | 1,500,000 | 2,000,000 |

5)  List the operations you regularly subcontract to **uninsured** subcontractors  ___0___

6)  Do you have a written safety program?  ☒ Yes  ○ No

7)  Do you carry Worker's Compensation?  ☒ Yes  ○ No
   WASH. L+I

8)  Are you doing any construction management, or offering
    construction management services on a consultant basis?                  ○ Yes    ● No

                                                    If yes, what percentage    [      ]

    If yes, do you carry professional liability Errors and Omission Coverage?  ● es    ○ No

9)  On average, how many days per week do you spend at a job site?            [ 5 ]

10) Do you work on condominiums, townhouses, apartments or tracts
    over 5 units at any one time; except for repair or remodeling of          ○ Yes    ● No
    not more than 5 units within a development at any given time?

                        If yes, maximum number of units at any one location   [      ]

11) Do you work on student housing, senior housing, assisted living
    facilities or retirement homes except for repair or remodeling of not     ○ Yes    ● No
    more than one unit within a development?

12) Are you engaged in any structural work including grading and
    excavation on slopes of greater than 30 degrees? Retaining wall may       ○ Yes    ● No
    not exceed 6 feet in height.

15) Do your employees install, service or repair alarm systems,
    automatic fire extinguishing systems, boilers, elevators, escalators,     ○ Yes    ● No
    surveillance systems or TV monitoring systems, either commercial or
    residential?

16) Do your employees install, service or repair wood, coal or waste oil-     ○ Yes    ● No
    burning stoves?

17) Do you remove asbestos insulation or asbestos containing material,
    fungus, mold or install insulation materials other than fiberglass or     ○ Yes    ● No
    rock wool?

18) Are you involved in the sale of chemicals, or the application of          ○ Yes    ● No
    chemicals, such as herbicides or pesticides, to property?

19) Do you perform work for petroleum, industrial, or chemical facilities?    ○ Yes    ● No

20) Do your employees or uninsured subs do roofing, swimming pool            ○ Yes    ● No
    elevator, or skylights construction in excess of $500 per job?

21) Do you use EIFS in your construction?                                     ○ Yes    ● No

22) Are you involved in fiber optic cable work or installation?              ○ Yes    ● No

23) Are you involved in tunneling?                                            ○ Yes    ● No

# EXHIBIT

# # 6



**XS SPECIALTY** LLC

July 14, 2011

**To:**     Bob Davenport
**Agency:**  **Humble & Davenport Insurance**

We are pleased to offer the following primary General Liability QUOTATION:

**Insured:**     HIGHMARK HOMES, LLC; HIGHMARK AT CRYSTAL HAVEN LLC; TM Homes, LLC

**Coverage:**    Commercial General Liability and Products/Completed Operations Liability

**Term:**        TBD – Annual Term

**Policy #:**    TBD

**Company:**     **American Safety Indemnity Company Rated A VIII AM Best**

**Policy Form:** Occurrence

**Limit & Ded:**

$ 1,000,000 Per occurrence
$ 2,000,000 General aggregate
$ 2,000,000 Products/completed operations aggregate
$ 1,000,000 Personal and advertising injury
$   100,000 Fire damage legal liability
$     5,000 Medical payments
$     1,000 Deductible per PD Claim including Loss Adjustment Expense

**Premium:**      $11,432    Annual Premium (excluding Terrorism)
                 $500       Blanket Additional Insured w/ Waiver and Primary (as on file with carrier)
                 $250       Stop Gap – WA ($1,000,000 limits)
                 $250       Carrier Inspection Fee (Flat – Fully Earned)

            **Greater of 25% or $500 Minimum Earned Premium Applies**
            **Fees are flat, fully-earned at binding**
            **No Flat Cancellations**

This contract is registered and delivered as a surplus lines
coverage under the insurance code of the state of Washington,
enacted in 1947. It is not issued by a company regulated by the
Washington state insurance commissioner and is not protected
by any Washington state guaranty fund law.


## XS SPECIALTY

**Exposure base:**     91340-Carpentry - construction of residential property not exceeding three stories in height (payroll 50,000)
91580+-Contractors - Executive supervisors or executive superintendents (payroll 17,800)
91583-Contractors - subcontracted work - in connection with building construction, recontruction, repair or erection - one or two family dwellings (cost 1,700,000)

(**NOTE:** Sub-out costs are rated at 30 to 35% of gross receipts. Cost of materials is not subject to rating in this program)

**Subjectivities:**     This proposal is subject to the receipt of and successful review of the following PRIOR to binding:

Completed and Signed Supplemental
3 yr. Loss Runs or Signed no Loss Statement
Completed and Signed State Tax Form
Signed Special Conditions Form
Signed Terrorism Forms
Completed and Signed Applications (Acord *125/126* and Artisan App)
Signed Quote Form
Contractors License Number
ALL QUESTIONS ON THE ATTACHED SUPPLEMENTAL APPLICATION MUST HAVE
COMPLETE ANSWERS TO BIND COVERAGE - CANNOT BIND WITH BLANKS.

PRICING AND ACCEPTABILITY IS SUBJECT TO REVIEW OF LOSS HISTORY AND ANY OTHER
UNDERWRITING INFORMATION REQUESTED IN THIS QUOTE

**A BLANKET ADDITIONAL INSURED FORM IS INCLUDED FOR ONGOING OPS.**

THE CG 20 37 ADDITIONAL INSURED W/ COMPLETED OPERATIONS IS ALSO
AVAILABLE FOR COMMERCIAL PROJECTS ONLY AT ADDITIONAL PREMIUM

PER PROJECT AGGREGATE FORMS ARE AVAILABLE FOR ACCEPTABLE
PROJECTS AT ADDITIONAL PREMIUM

ALL ADDITIONAL PREMIUMS ARE ALSO SUBJECT TO TAX

XS SPECIALTY, LLC. DOES NOT REVIEW CERTIFICATES. POLICY WORDING
CANNOT BE AMENDED BY CERTIFICATES.

**Policy**     **Receipt of all items except the inspection is required in order to bind coverage and receive a number.** The policy will not be bound unless these items are received.

**Premium Payment:**     Full annual premium is due and payable within 15 days of the effective date of coverage or the coverage will be cancelled.

**Premium Audit:**     This policy may be subject to a physical audit at expiration unless the non-auditable policy endorsement is included under the forms section below. **American Safety Indemnity Company** charges for and reserves the right to conduct a phone survey inspection mid-


**XS SPECIALTY**

term for verification of estimated exposures or if there is a material change in the characteristics of the risk.

**Quote Expiration:**     This quotation is valid for 30 days.

**\*\*All coverages, terms and conditions and limits are specifically stated in this document. If something is not annotated, it is not being offered.** It is the retail agent's responsibility to note any deviations from the specifications. Neither American Safety Indemnity Company nor XS Specialty, LLC shall be responsible for any unintentional errors or omissions which may have occurred during the preparation of this proposal.

## POLICY FORMS
INSURED MAILER PAGE INSURED MAILER PAGE
ASI SIGNATURE PAGE ASI SIGNATURE PAGE
CG 00 01 1207 OCCURRENCE COVERAGE FORM
ASI 3000 09 06 EXCLUSION - SUBSIDENCE
ASI 3001 0906 EXCLUSION - LEAD PAINT
ASI 3002 09 06 EXCLUSION - ASBESTOS
ASI3003 09 06 EXCLUSION - CHROMATED COPPER ARSENATE
ASI 3004 09 06 EXCLUSION - CROSS SUITS
ASI3006 09 06 EXCLUSION - CANINE LIABILITY
ASI3016 06 10 SPECIAL CONDITIONS FORM
ASI3022 PRIOR PRODUCTS OR WORK EXCLUSION – TO BE REMOVED WITH EVIDENCE OF PRIOR COVERAGE FOR 3 YEARS
ASI 3026 09 06 EXCLUSION - FORMALDEHYDE
ASI 3027 09 06 EXCLUSION - OPEN FLAME
ASI 3028 09 06 EXCLUSION - TORCH DOWN AND TORCH ON ROOFING
ASI 3029 09 06 EXCLUSION - THIRD-PARTY-OVER ACTION EXCLUSION
ASI3030 09 06 EXCLUSION - PENDING OR PRIOR LITIGATION
ASI 3031 0906 EXCLUSION - DEMOLITION
ASI3032 09 06 EXCLUSION - INTENTIONAL INJURY
ASI 3033 09 06 EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE
ASI3034 09 06 EXCLUSION - ROOFING LIMITATION
ASI3035 09 06 MINIMUM EARNED PREMIUM
ASI 3036 09 06 UNDERGROUND UTILITY LOCATION CONDITION
ASI3038 04 08 NON-AUDITABLE POLICY ENDORSEMENT
ASI 3040 05 08 SERVICE OF SUIT CLAUSE
CG 03 00 01 96 DEDUCTIBLE LIABILITY INSURANCE
CG 21 671204 FUNGI OR BACTERIA EXCLUSION
CG 21 460798 ABUSE OR MOLESTATION EXCLUSION
CG 21 470798 EMPLOYMENT RELATED PRACTICES EXCLUSION
CG 21 550999 TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION
CG 21 960305 SILICA OR SILICA-RELATED DUST EXCLUSION
CG 22 24 07 98 EXCLUSION -INSPECTION, APPRAISAL AND SURVEY COMPANIES
CG 21861204 EXCLUSION - EXTERIOR INSULATION & FINISH SYSTEMS
CG 22 31 0798 EXCLUSION - RIOT, CIVIL COMMOTION OR MOB ACTION
CG 22 34 07 98 EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS
CG 22 43 07 98 EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY
CG 22 79 07 98 EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY
CG 21 9001 06 EXCLUSION OF TERRORISM
IL 00 1711 98 COMMON POLICY CONDITIONS
IL 00 21 0504 NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENTS (Broad Form)
CG 20 100704 (blanket edition) BLANKET ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS w/ Waiver & Primary
CG 01 81 0798 WASHINGTON CHANGES
IL 01 460907 WASHINGTON COMMON POLICY CONDITIONS
ASI3064 06 10 CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT
ASI3084 07 10 AMENDED DEFINITIONS - USE OF EXTRINSIC EVIDENCE
ASI3081 0710 EXCLUSION - ASSAULT AND BATTERY
ASI3082 07 10 EXCLUSION - COMMERCIAL-INDUSTRIAL BOILERS OR PRESSURE VESSELS
ASI3083 07 10 EXCLUSION - EMOTIONAL DISTRESS
ASI3087 07 10 EXCLUSION - SNOW AND ICE REMOVAL
ASI3080 07 10 EXCLUSION - TOXIC DRYWALL AND SIMILAR PRODUCTS
ASI3086 07 10 EXCLUSION - WIND DRIFT-OVERSPRAY
ASI3085 07 10 LIMITATION - LAWN CARE SERVICES



## XS SPECIALTY LLC

ASI3063 0510 EXCLUSION - STATE OF NEW YORK
CG 21861204 EXCLUSION-EXTERIOR INSULATION AND FINISH SYSTEMS
WA Stop Gap - $1M Limits

EXHIBIT

# 7



**XS SPECIALTY** LLC

July 15, 2011

**To:**          Bob Davenport
**Agency:**   **Humble & Davenport Insurance**

We are pleased to offer the following primary General Liability BINDER:

**Insured:**      Highmark Homes, LLC. Highmark at Crystal Haven, LLC. TM Homes, LLC.
                  16400 Southcenter PKWY #204; Tukwila, WA 98188

**Coverage:**    Commercial General Liability and Products/Completed Operations Liability

**Term:**         7/17/11 to 7/17/12

**Policy #:**     156AUI 61311-00

**Company:**     American Safety Indemnity Company Rated A VIII AM Best

**Policy Form:** Occurrence

**Limit & Ded:**

$ 1,000,000 Per occurrence
$ 2,000,000 General aggregate
$ 2,000,000 Products/completed operations aggregate
$ 1,000,000 Personal and advertising injury
$    100,000 Fire damage legal liability
$       5,000 Medical payments
$       1,000 Deductible per PD Claim including Loss Adjustment Expense

**Premium:**      $11,432      Annual Premium (excluding Terrorism)
                  $500          Blanket Additional Insured w/ Waiver and Primary (as on file with carrier)
                  $250          Stop Gap – WA ($1,000,000 limits)
                  $250          Carrier Inspection Fee (Flat – Fully Earned)
                  $1,000        Broker Policy Fee (Flat – Fully Earned)
                  $282.07       SL TAX - WA
                  $13,714       Total

                  **Greater of 25% or $500 Minimum Earned Premium Applies**
                  **Fees are flat, fully-earned at binding**
                  **No Flat Cancellations**

**Exposure base:**  91340-Carpentry - construction of residential property not exceeding three stories in
                    height (payroll 50,000)
                    91580+-Contractors - Executive supervisors or executive superintendents (payroll 17,800)
                    91583-Contractors - subcontracted work - in connection with building construction,
                    recontruction, repair or erection - one or two family dwellings (cost 1,700,000)

1


**XS SPECIALTY**

(**NOTE:** Sub-out costs are rated at 30 to 35% of gross receipts. Cost of materials is not subject to rating in this program)

**Commission:**    15%

**Subjectivities:**    This policy is subject to the receipt of and successful review of the following PRIOR to binding:

1. Favorable inspection – POST binding

XS SPECIALTY, LLC. DOES NOT REVIEW CERTIFICATES. POLICY WORDING CANNOT BE AMENDED BY CERTIFICATES.

**Policy**    **Receipt of all items except the inspection is required in order to bind coverage and receive a number.** The policy will not be bound unless these items are received.

**Premium Payment:**    Full annual premium is due and payable within 15 days of the effective date of coverage or the coverage will be cancelled.

**Premium Audit:**    This policy may be subject to a physical audit at expiration unless the non-auditable policy endorsement is included under the forms section below. American Safety Indemnity Company charges for and reserves the right to conduct a phone survey inspection mid-term for verification of estimated exposures or if there is a material change in the characteristics of the risk.

**\*\*All coverages, terms and conditions and limits are specifically stated in this document. If something is not annotated, it is not being offered.** It is the retail agent's responsibility to note any deviations from the specifications. Neither American Safety Indemnity Company nor XS Specialty, LLC shall be responsible for any unintentional errors or omissions which may have occurred during the preparation of this binder.



## POLICY FORMS

INSURED MAILER PAGE INSURED MAILER PAGE
ASI SIGNATURE PAGE ASI SIGNATURE PAGE
ASI OCCURRENCE DECLARATIONS PAGE 1 OCCURRENCE DECLARATIONS PAGE
CG 00 01 12 07 OCCURRENCE COVERAGE FORM
ASI 3000 09 06 EXCLUSION - SUBSIDENCE
ASI 3001 09 06 EXCLUSION - LEAD PAINT
ASI 3002 09 06 EXCLUSION - ASBESTOS
ASI 3003 09 06 EXCLUSION - CHROMATED COPPER ARSENATE
ASI 3004 09 06 EXCLUSION - CROSS SUITS
ASI 3006 09 06 EXCLUSION - CANINE LIABILITY
ASI 3016 06 10 SPECIAL CONDITIONS FORM
ASI 3026 09 06 EXCLUSION - FORMALDEHYDE
ASI 3027 09 06 EXCLUSION - OPEN FLAME
ASI 3028 09 06 EXCLUSION - TORCH DOWN AND TORCH ON ROOFING
ASI 3029 09 06 EXCLUSION - THIRD-PARTY-OVER ACTION EXCLUSION
ASI 3030 09 06 EXCLUSION - PENDING OR PRIOR LITIGATION
ASI 3031 09 06 EXCLUSION - DEMOLITION
ASI 3032 09 06 EXCLUSION - INTENTIONAL INJURY
ASI 3033 09 06 EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE
ASI 3034 09 06 EXCLUSION - ROOFING LIMITATION
ASI 3035 09 06 MINIMUM EARNED PREMIUM
ASI 3036 09 06 UNDERGROUND UTILITY LOCATION CONDITION
ASI 3038 04 08 NON-AUDITABLE POLICY ENDORSEMENT
ASI 3040 05 08 SERVICE OF SUIT CLAUSE
CG 03 00 01 96 DEDUCTIBLE LIABILITY INSURANCE
CG 21 67 12 04 FUNGI OR BACTERIA EXCLUSION
CG 21 46 07 98 ABUSE OR MOLESTATION EXCLUSION
CG 21 47 07 98 EMPLOYMENT RELATED PRACTICES EXCLUSION
CG 21 55 09 99 TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION
CG 21 96 03 05 SILICA OR SILICA-RELATED DUST EXCLUSION
CG 22 24 07 98 EXCLUSION - INSPECTION, APPRAISAL AND SURVEY COMPANIES
CG 21 86 12 04 EXCLUSION - EXTERIOR INSULATION & FINISH SYSTEMS
CG 22 31 07 98 EXCLUSION - RIOT, CIVIL COMMOTION OR MOB ACTION
CG 22 34 07 98 EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS
CG 22 43 07 98 EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY
CG 22 79 07 98 EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY
CG 21 90 01 06 EXCLUSION OF TERRORISM
CG 04 42 11 03 STOP GAP - EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON
IL 00 17 11 98 COMMON POLICY CONDITIONS
IL 00 21 05 04 NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENTS (Broad Form)
CG 20 10 07 04BWNC BLANKET ADDITIONAL INSURED -PRIMARY AND NON-CONTRIBUTORY- OWNERS, LESSEES OR CONTRACTORS
CG 24 04 05 09 WAIVER OF TRANSFER OF RIGHTS (blanket wording)
CG 01 81 07 98 WASHINGTON CHANGES
IL 01 46 09 07 WASHINGTON COMMON POLICY CONDITIONS
ASI 3064 06 10 CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT
ASI 3084 07 10 AMENDED DEFINITIONS - USE OF EXTRINSIC EVIDENCE
ASI 3081 07 10 EXCLUSION - ASSAULT AND BATTERY
ASI 3082 07 10 EXCLUSION - COMMERCIAL-INDUSTRIAL BOILERS OR PRESSURE VESSELS
ASI 3083 07 10 EXCLUSION - EMOTIONAL DISTRESS
ASI 3087 07 10 EXCLUSION - SNOW AND ICE REMOVAL
ASI 3080 07 10 EXCLUSION - TOXIC DRYWALL AND SIMILAR PRODUCTS
ASI 3086 07 10 EXCLUSION - WIND DRIFT-OVERSPRAY
ASI 3085 07 10 LIMITATION - LAWN CARE SERVICES
ASI 3063 05 10 EXCLUSION - STATE OF NEW YORK
CG 21 86 12 04 EXCLUSION-EXTERIOR INSULATION AND FINISH SYSTEMS

| Countersigned: 7/15/2011 | By: |
|---|---|
| (Date) | (Authorized Representative) |

In Witness whereof, this Company has caused this policy to be signed by its President and Secretary, but if required by state law, this policy shall not be valid unless countersigned by an authorized representative of the Company.

_____

Secretary

_____

President

EXHIBIT

# 8



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

**POLICY**
**NUMBER:** 156AUI 61311-00

> This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, enacted in 1947. It is not issued by a company regulated by the Washington state insurance commissioner and is not protected by any Washington state guaranty fund law.
> John Pierce

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| **Broker -** Cornerstone Underwriting Partners LLC | **Producer -** XS SPECIALTY LLC |
|---|---|

**Named Insured:** HIGHMARK HOMES, LLC; HIGHMARK AT CRYSTAL HAVEN LLC, TM HOMES, LLC

**Mailing Address:** 16400 SOUTHCENTER PKWY #204, Tukwila WA 98188

| **Policy Period:** | **From:** 07/17/2011 | **To:** 07/17/2012 |
|---|---|---|
| | **At 12:01 A.M. Time at your Mailing Address Shown Above** | |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF
THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THE
POLICY.

NO FLAT
CANCELLATIONS

| **LIMITS OF INSURANCE** | |
|---|---|
| **Each Occurrence Limit** | $ 1,000,000 |
| **Fire Damage Limit - Any one fire** | $ 100,000 |
| **Medical Expense Limit - Any one person** | $ 5,000 |
| **Personal & Advertising Injury Limit - Any one person or organization** | $ 1,000,000 |
| **General Aggregate Limit** | $ 2,000,000 |
| **Products/Completed Operations Aggregate Limit** | $ 2,000,000 |

| **DESCRIPTION OF BUSINESS** |
|---|

**FORM OF BUSINESS**

☐ Individual      ☐ Partnership      ☐ Joint Venture

☑ Limited Liability Company      ☐ Organization, Including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)

**Business Description:** Residential General Contractor

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND
EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.
THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS
ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

| Countersigned: 7/15/2011 | By: |
|---|---|
| (Date) | (Authorized Representative) |

In Witness whereof, this Company has caused this policy to be signed by its President and Secretary, but if required by state law, this policy shall not be valid unless countersigned by an authorized representative of the Company.

Secretary

President



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

| LOCATION NUMBER: | ALL PREMISES YOU OWN, RENT OR OCCUPY<br>ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY | | |
|---|---|---|---|
| 1 | 16400 SOUTHCENTER PKWY #204<br>Tukwila | | WA, 98188 |
| | As on file with application dated: | | |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO | PREMIUM BASE | RATE | | PREMIUM | |
| | | | | Prem Ops | Prod/Com Ops | Prem Ops | Prod/Com Ops |
| 1 | Contractors - Executive supervisors or executive superintendents | 91580+ | $17,800 | 46.41 | Included | $826.00 | Included |
| 1 | Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | $1,700,000 | 1.16 | 3.42 | $1,972.00 | $5,817.00 |
| 1 | Carpentry - construction of residential property not exceeding three stories in height | 91340 | $50,000 | 18.16 | 38.18 | $908.00 | $1,909.00 |
| 1 | * Blanket Additional Insured w/ Waiver & Primary Non Contributory | 49950 | 1 | | | | $500.00 |
| 1 | * Stop Gap | 49950 | 1 | | | | $250.00 |

| **PREMIUM SHOWN IS PAYABLE:** | |
|---|---|
| Broker Fee: $1,000.00 | |
| WA State Tax: $268.64 | |
| Stamping Fee: $13.43 | |
| Total: $13,714.07 | |

| STATE TAX OR OTHER (if applicable) | |
|---|---|
| POLICY FEE (if applicable) | $250.00 |
| TOTAL PREMIUM (SUBJECT TO AUDIT) | $12,182.00 |
| AT INCEPTION | 100% |
| AT EACH ANNIVERSARY | |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

| | IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS | | | |
|---|---|---|---|---|
| **AUDIT PERIOD (if applicable)** | ☑ANNUALLY | ☐SEMI-ANNUALLY | ☐QUARTERLY | ☐MONTHLY |

## ENDORSEMENTS
### ENDORSEMENTS ATTACHED TO THIS POLICY:

INSURED MAILER PAGE, ASI SIGNATURE PAGE, ASI OCCURRENCE DECLARATIONS PAGE 1, CG 00 01 12 07, ASI 3000 09 06, ASI 3001 09 06, ASI 3002 09 06, ASI 3003 09 06, ASI 3004 09 06, ASI 3006 09 06, ASI 3016 06 10, ASI 3026 09 06, ASI 3027 09 06, ASI 3028 09 06, ASI 3029 09 06, ASI 3030 09 06, ASI 3031 09 06, ASI 3032 09 06, ASI 3033 09 06, ASI 3034 09 06, ASI 3035 09 06, ASI 3036 09 06, ASI 3038 04 08, ASI 3040 05 08, CG 03 00 01 96, CG 21 67 12 04, CG 21 46 07 98, CG 21 47 07 98, CG 21 55 09 99, CG 21 96 03 05, CG 22 24 07 98, CG 21 86 12 04, CG 22 31 07 98, CG 22 34 07 98, CG 22 43 07 98, CG 22 79 07 98, CG 21 90 01 06, CG 04 42 11 03, IL 00 17 11 98, IL 00 21 05 04, CG 20 10 07 04BWNC, CG 24 04 05 09, CG 01 81 07 98, IL 01 46 09 07, ASI 3064 06 10, ASI 3084 07 10, ASI 3081 07 10, ASI 3082 07 10, ASI 3083 07 10, ASI 3087 07 10, ASI 3080 07 10, ASI 3086 07 10, ASI 3085 07 10, ASI 3063 05 10, CG 21 86 12 04

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S). COMPLETE THE ABOVE NUMBERED POLICY.**

| **Endorsement Effective:** 07/17/2011 | **Countersigned By:** |
|---|---|
| **Named Insured:** HIGHMARK HOMES, LLC; HIGHMARK AT CRYSTAL HAVEN LLC, TM HOMES, LLC | *[signature]*<br>**(Authorized Representative)** |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

□

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006 ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

**CG 00 01 12 07**

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

☐

**(b)** Conduct and control the defense of the indemnitee in "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006 **CG 00 01 12 07** ☐

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006 CG 00 01 12 07 ☐

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2006 ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006 **CG 00 01 12 07** ☐

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - SUBSIDENCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

### Subsidence

 "bodily injury", "property damage" or "personal and advertising injury" arising out of the "subsidence" of land and arising out of or attributable to any ongoing operation of the insured or performed on the insured's behalf or the "products/completed operations hazard".

This exclusion applies whether such "bodily injury", "property damage" or "personal and advertising injury" arises solely from "subsidence" or from "subsidence" in combination with other causes, whether natural or man made.

"Subsidence" means earth movement including but not limited to:

(1) Landslide;

(2) Mudflow;

(3) Earth sinking;

(4) Earth rising;

(5) Collapse or movement of fill;

(6) Improper compaction;

(7) Earth settling, slipping, falling away, caving in, eroding or tilting;

(8) Earthquake; or

(9) Any other movement of land or earth.

ASI 3000 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD PAINT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I -- COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Lead**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or any product containing lead.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in

whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which

coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said

"suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if

we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3001 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Asbestos**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to "asbestos"; or

**(2)** Any loss, cost or expense that may be awarded or incurred:

    **(a)** by reason of a claim or "suit" for any such injury or damage; or

    **(b)** in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of "asbestos".

"Asbestos" means the mineral in any form whether or not the "asbestos" was at any time:

**(1)** airborne as a fiber, particle or dust;

**(2)** contained in or formed a part of a product, structure or other real or personal property;

**(3)** carried on clothing;

**(4)** inhaled or ingested; or

**(5)** transmitted by any other means.

This exclusion shall apply without regard to the allegations or basis of the insured's liability,

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3002 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CHROMATED COPPER ARSENATE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Chromated Copper Arsenate**

   **(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to chromated copper arsenate (CCA), whether such CCA is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to CCA is or is alleged to have caused damage in any sequence or combination with, or contributed to or was contributed to by any other cause or causes of injury or damage; or

   **(2)** Any loss, cost or expense that may be awarded or incurred by reason of a claim or "suit" for any such injury or damage. This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of CCA or property containing CCA and includes any liability, cost or expense to remediate or prevent "bodily injury", "property damage" or "personal and advertising injury" from CCA.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury", "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement, we shall have the right, but not the obligation, to defend said "suit." When we do not elect to defend you in such "suit", we shall reimburse you for the reasonable attorneys' fees and litigation expenses incurred by you, in accordance with the conditions of this policy.

ASI 3003 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CROSS SUITS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

**Cross Suits**

"Bodily injury", "property damage" or "personal and advertising injury", as defined, initiated, alleged, or caused to be brought about by this policy against any other Named Insured or Additional Named Insured covered by this policy.

ASI 3004 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CANINE LIABILITY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Dogs**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, rental, maintenance or use of dogs.

ASI 3006 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# CONTRACTORS SPECIAL CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Contractors As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"

**(1)** received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;

**(2)** obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits
of $ per occurrence;

**(3)** obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and

**(4)** obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If these records are not maintained we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf.

The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph **(2)**.

___

# EXCLUSION – FORMALDEHYDE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added **to SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **paragraph 2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

Formaldehyde

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to formaldehyde, whether the formaldehyde is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to formaldehyde has caused, or contributed to cause, damage in any sequence or combination.

**(2)** Any damages, loss, cost or expense that may be awarded or incurred by reason of a claim or "suit" for any such injury or damage. This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of formaldehyde or property containing formaldehyde and includes any liability, cost or expense to remediate or prevent "bodily injury," "property damage" or "personal and advertising injury" from formaldehyde.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury," "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit." If we exercise the right to defend said suit we shall have to obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3026 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – OPEN FLAME

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Open Flame**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, directly or indirectly resulting from or in consequence of, or in any way involving an open flame in the removal of paint or any other coating.

ASI 3027 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - TORCH DOWN AND TORCH ON ROOFING

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Torch Down and Torch On**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, a wand, open flame, torch and/or heat applications commonly referred to in the roofing industry as "torch down" and/or "torch on."

ASI 3028 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIRD-PARTY-OVER ACTION EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion e. under Paragraph 2., Exclusions of Section 1-Coverage A-Bodily Injury and Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

e. Employer's Liability

Bodily injury, personal injury, or advertising injury to:

(1) An employee of any insured arising out of and in the course of employment, whether any other insured may be liable for such bodily injury, personal injury or advertising injury;

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(3) To any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that Insured or any other insured.

For the purpose of this exclusion the term "employee" includes loaned, rented, leased, or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employee, respondeneat superior or any similar doctrine, or for whom any insured may be held liable as an employer.

ASI 3029 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PENDING AND PRIOR LITIGATION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Pending and Prior Litigation**

"Bodily injury," "property damage" or "personal and advertising injury" arising from all pending or prior litigation as well as all future claims arising out of said pending or prior litigation.

For the purposes of this exclusion:

**(1)** Injury or damage is known to any insured when any insured is aware or reasonably should be aware that the injury or damage has occurred; and

**(2)** Knowledge of "bodily injury" or "property damage" arising from an "occurrence" or "personal and advertising injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "occurrence" or offense.

ASI 3030 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DEMOLITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to:

**Demolition**

**(1)** "Bodily injury" or "property damage" arising out of any blasting operations;
**(2)** "Bodily injury" or "property damage" arising from the use of a "ball and chain" or similar apparatus;
**(3)** "Bodily injury" or "property damage" arising out of the demolition of any building or structure which has an original height in excess of three stories or original height in excess of fifty (50) feet; or
**(4)** "Property damage" to any abutting, adjoining, common or party wall.

ASI 3031 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - INTENTIONAL INJURY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion a. Expected or Intended Injury under SECTION 1-COVERAGES, COVERAGE A BODILY INJURY
AND PROPERTY DAMAGE LIABILITY, is deleted and replaced with the following:

2. Exclusions

This insurance does not apply to:

a. Intentional Injury

i. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured; or

ii. Assault and Battery

"Bodily injury" or "property damage" arising out of:


(a) Assault

(b) Battery

(c) Harmful or offensive contact between or among two or more persons,

(d) Apprehension of harmful or offensive contact between or among two or more persons,

(e) Threat by word or deed.

These exclusions apply regardless of:


I. Whether or not the acts are alleged to be by or at the direction of any insured,

II. Whether or not the acts arose out of the alleged failure of any insured in the hiring or supervision
of any person, or

III. Whether or not the acts arose out of the alleged failure of any insured to prevent or suppress such
acts.

ASI 3032 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Punitive or Exemplary Damage**

Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.

.

.

ASI 3033 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ROOFING LIMITATION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Roofing Limitation**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(a)** The handling, storage or transportation of hot tar or any other heated substance; or

**(b)** Any job site where you are working, or have worked, on a roof of a building or structure, whether work is completed or not, in excess of three (3) stories or thirty-six (36) feet in height.

**(2)** "Property damage" to any building or structure caused by fire if caused by the application of open flame or torch to roofing materials or to roofs whether removing roofs or roofing materials or installing roofs or roofing materials.

**(3)** "Property damage" to any building or structure or its contents or any related items thereto, caused by or resulting from the intrusion of rain, snow, sleet or hail for any reason, including the negligence of the insured during the course of the insured's "roofing operations"; unless the insured applies a "secured protective cover" of waterproof material over all portions of the "open roof," thereby preventing entry by any of the perils mentioned above.

As used in this endorsement:
"Open roof" is defined as a roof or section thereof from which the protective covering (shingles, tar, tiles, felt paper, etc.) has been removed leaving exposed the decking, supporting structure, or interior of the building or its contents to the intrusion of rain, snow, sleet or hail.
"Roofing operations" is defined to mean removal of any old roofing material and the application of new roofing material.
"Secured protective cover" is defined as weatherproof covering applied and securely fastened as if permanent in nature except for its temporary employment until completion of the "roofing operations".

ASI 3034 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that twenty-five percent (25%) of the annual premium is fully earned as of the inception date of the policy.

ASI 3035 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNDERGROUND UTILITY LOCATION CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Underground Utility Location**

It is a condition precedent to coverage that before the insured commences any digging, excavation, boring or similar underground work, a local locator service must come to the job site and mark all underground lines, pipes, cables and underground utilities. The insured must obtain a written response from the locator service.

If this is not done, coverage under this policy is voided for any "suit," claim, loss, costs or expenses arising out of such digging operations.

ASI 3036 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY

## NON-AUDITABLE POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy is not subject to audit

# SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that in the event of the failure by us to pay any amount claimed to be due hereunder, we will, at your request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the person or organization shown in the Policy Declarations or upon us at the address shown in the policy jacket.

And that in any suit instituted against any one of them upon this contract, we will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of us in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner, or Directors of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ASI 3040 05 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ 1,000 | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limi-tation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay dam-ages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount in-dicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person be-cause of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person be-cause of:

   **(1)** "Bodily injury";

   **(2)** "Property damage"; or

   **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of serv-ices or death resulting at any time from "bodily injury", a separate deductible amount will be ap-plied to each person making a claim for such damages.

With respect to "property damage", person in-cludes an organization.

Copyright, Insurance Services Office, Inc., 1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property dam-age"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regard-less of the number of persons or organizations who sustain damages because of that "occur-rence".

**C.** The terms of this insurance, including those with re-spect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deducti-ble amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deducti-ble amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994    **CG 03 00 01 96**    □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **"fungi"** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of Section I **– Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998 ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – INSPECTION, APPRAISAL AND SURVEY COMPANIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable because of the rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – RIOT, CIVIL COMMOTION OR MOB ACTION – GOVERNMENTAL SUBDIVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Riot, civil commotion or mob action; or

2. Any act or omission in connection with the prevention or suppression of a riot, civil commotion or mob action.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

B. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

© ISO Properties, Inc., 2004

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs B.5. or B.6. are exceeded.

With respect to this Exclusion, Paragraphs B.5. and B.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2004 CG 21 90 01 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STOP GAP - EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | | Each Accident |
| Bodily Injury By Disease | $ | | Aggregate Limit |
| Bodily Injury By Disease | $ | | Each Employee |
| | | | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I - Coverages:**

**COVERAGE - STOP GAP - EMPLOYERS LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance;** and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    **b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

        **(1)** The:

            **(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

            **(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

            **(c)** "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

        **(2)** The:

            **(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

**(b)** "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(1)** For:

    **(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

    **(b)** Care and loss of services; and

    **(c)** Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

**(2)** Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

**a. Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

**b. Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171- 8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Supplementary Payments** provisions apply to Coverage - Stop Gap Employers Liability as well as to Coverages **A** and **B**.

**C.** For the purposes of this endorsement, **Section II - Who Is An Insured,** is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, **Section III - Limits Of Insurance,** is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" - Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" - Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" - Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.** For the purposes of this endorsement, Condition **2. - Duties In The Event Of Occurrence, Claim Or Suit** of the Conditions Section **IV** is deleted and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

    **a.** You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

        (5) Do nothing after an injury occurs that would interfere with our right to recover from others.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.** For the purposes of this endorsement, Paragraph **4.** of the **Definitions** Section is replaced by the following:

    **4.** "Coverage territory" means:

        **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

        **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

        **c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

    provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**G.** The following are added to the **Definitions** Section:

    1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

    2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

    3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**H.** For the purposes of this endorsement, the definition of "bodily injury" does not apply.

© ISO Properties, Inc., 2003

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

 © ISO Properties, Inc., 2001 ☐

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 **IL 00 21 05 04** □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY- OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide Insurance such as is afforded by this policy and is approved by the Company in writing within 30 days of the inception of the contract or agreement, or the inception of this policy, whichever is later.** | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

A. Section II- Who is an Insured is amended to include as an additional insured the person(s) or Organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property Damage" or "personal and advertising injury" caused, in whole or in part , by:

  1. Your acts or omissions; or

  2. The acts or omissions of those acting on your behalf;

    In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With Respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

  1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be perfomed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  2. That portion of "your work" out of which the injury or damage arises has been put to its Intended use by any person or organization other than another contractor or subcontractor Engaged in performing operations for a principal as a part of the same project.

C. It is agreed that the insurance provided for the benefit of the above additional insured(s) shall be Primary and Non-contributory, but only with respect to liability for "bodily injury", "property damage" Or "personal and advertising injury" caused, in whole or in part, ny"

  1. Your acts or omissions; or

  2. The acts or omissions of those acting on your behalf;

    In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person Or Organization: |
|---|
| Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide such as is afforded by this policy and is submitted to the Company in writing within 30 days of the inception of the contract or agreement, or the inception of the policy, whichever is later. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e.** of Coverage **A** – Bodily Injury And Property Damage Liability (Section I – Coverages) applies only to "bodily injury" to any "employee" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Exclusion **e.** is replaced with the following:

This insurance does not apply to:

**1.** "Bodily injury" to an "employee" of the insured arising out of and in the course of:

**a.** Employment by the insured; or

**b.** Performing duties related to the conduct of the insured's business; or

**2.** Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**B.** Paragraphs **2.a.(1)(a), (b)** and **(c)** of Section **II** – Who Is An Insured apply only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **2.a.(1)** of **Section II – Who Is An Insured** is replaced with the following:

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** above; or

**(c)** Arising out of his or her providing or failing to provide professional health care services.

 Copyright, Insurance Services Office, Inc., 1997  ☐

# WASHINGTON COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

The conditions in this endorsement replace any similar conditions in the policy that are less favorable to the insured.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 45 days before the effective date of cancellation if we cancel for any other reason;

    except as provided in Paragraphs 3. and 4. below.

3. We may cancel the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, if made a part of this policy, by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least 5 days before the effective date of cancellation for any structure where 2 or more of the following conditions exist:

    a. Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the structure is maintained for seasonal occupancy or is under construction or repair;

    b. Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

    c. Because of its physical condition, the structure is in danger of collapse;

    d. Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

    e. Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

    f. Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the structure for 60 consecutive days; or

    g. The structure is not maintained in substantial compliance with fire, safety and building codes.

4. If:

    a. You are an individual;

    b. A covered auto you own is of the "private passenger type"; and

    c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

    we may cancel the Commercial Automobile Coverage Part by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for cancellation, to the last mailing address known to us:

    a. At least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. At least 10 days before the effective date of cancellation for any other reason if the policy is in effect less than 30 days; or

    c. At least 20 days before the effective date of cancellation for other than nonpayment if the policy is in effect 30 days or more; or

    d. At least 20 days before the effective date of cancellation if the policy is in effect for 60 days or more or is a renewal or continuation policy, and the reason for cancellation is that your driver's license or that of any driver who customarily uses a covered "auto" has been suspended or revoked during policy period.

 © ISO Properties, Inc., 2006 ☐

**5.** We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph **A.3.** above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

**6.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**7.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund unless the following applies:

**a.** For Division Two – Equipment Breakdown, if the first Named Insured cancels, the refund will be at least 75% of the pro rata refund.

**b.** If:

**(1)** You are an individual;

**(2)** A covered auto you own is of the "private passenger type";

**(3)** The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards; and

**(4)** The first Named Insured cancels;

the refund will be not less than 90% of any unearned portion not exceeding $100, plus 95% of any unearned portion over $100 but not exceeding $500, and not less than 97% of any unearned portion in excess of $500.

The cancellation will be effective even if we have not made or offered a refund.

**8.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspection And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

© ISO Properties, Inc., 2006

□

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. Nonrenewal

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

   a. Expiration of the policy; or
   b. Anniversary date of this policy if this policy has been written for a term of more than one year.

   Otherwise, we will renew this policy unless:

   a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

   b. Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or
   c. The policy clearly states that it is not renewable, and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

2. If:

   a. You are an individual;
   b. A covered auto you own is of the "private passenger type"; and
   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

   the following applies to nonrenewal of the Commercial Automobile Coverage Part in place of **G.1.**:

   a. We may elect not to renew or continue this policy by mailing or delivering to you and your agent or broker written notice at least 20 days before the end of the policy period including the actual reason for nonrenewal. If the policy period is more than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   b. We will not refuse to renew Liability Coverage or Collision Coverage solely because an "insured" has submitted claims under Comprehensive Coverage or Towing and Labor Coverage.

   c. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.

# CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2**. Exclusions of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph 2. Exclusions of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

### Condominium, Apartment and Townhouse

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work",or "your product", that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 25 units. This exclusion does not apply if "your work" or "your product" occurs after the condominium, apartment or townhouse project has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

### Tract Housing

"Bodily injury", "property damage" or "person or advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development".

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in the endorsement, the following is added to **SECTION V – DEFINITIONS:**

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDED DEFINITIONS - USE OF EXTRINSIC EVIDENCE

---

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Section V – DEFINITIONS; 3. is amended by adding this paragraph to the Commercial General Liability Coverage Part, CG0001:

> We may look at extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "bodily injury".

Section V – DEFINITIONS; 14. h. is added to the Commercial General Liability Coverage Part, CG0001:

h. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "personal and advertising injury."

Section V – DEFINITIONS, 17. c. and d. are added to the Commercial General Liability Coverage Part, CG0001:

c. "Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you (or any insured) are otherwise obligated to repair, replace or compete pursuant to the terms of any contract with any person.

b. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "property damage."

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASSAULT AND BATTERY

1. This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury" arising in whole or in part out of:

   a) the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;

   b) the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault and/or battery;

   c) the negligent.

      (i) employment;
      (ii) investigation;
      (iii) supervision;
      (iv) training;
      (v) retention;

      of any person for whom any insured is or ever was legally responsible and whose conduct would be excluded by
      (a) or (b) above.

   d) any actual or alleged injury arising out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;

   e) any actual or alleged injury arising out of a chain of events which includes assault and/or battery, regardless of whether the assault and/or battery is the initial precipitating event or a substantial cause of injury;

   f) any actual or alleged injury arising out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury; or

   g) claims arising out of, caused by, resulting from, or alleged, in whole or in part, by any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault and/or battery, theft, or crime.

1    For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.

2    For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COMMERCIAL/INDUSTRIAL BOILERS OR PRESSURE VESSELS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" arising out of "Your work" or "Your product" on commercial or industrial boilers or pressure vessels. This includes, but is not limited to, any of the following:

- Installation
- cleaning
- repair
- servicing
- inspection

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EMOTIONAL DISTRESS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "bodily injury," "property damage," or "personal and advertising injury" arising out of:

- emotional distress
- mental anguish
- humiliation
- mental distress
- mental injury
- mental suffering
- worry
- concern
- disappointment
- annoyance
- anxiety
- inconvenience
- depression
- dissatisfaction
- shock to the nervous system, or
- any physical manifestation of any of the forgoing, or
- any similar injury

Unless it arises out of actual physical injury to that person.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – SNOW AND ICE REMOVAL

---

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim loss, costs or expense for "bodily injury" or "property damage" arising from "your" operations or completed operations for the removal or relocation of snow and/or ice from any surface including, but not limited to any street, road, highway, sidewalk, walkway, patio, platform or roof. This exclusion does not apply if "you" remove snow or ice from any premises whose address is shown on the policy that you own or rent.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – TOXIC DRYWALL AND SIMILAR PRODUCTS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1) "bodily injury, "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration or escape of any solid, liquid, gaseous radioactive or thermal irritant or contaminant from any "toxic drywall or similar product".

2) Any loss, cost or expense arising out of any:

   a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any "toxic drywall or similar product"; or

   b) Claim or "suit" by or on behalf of governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any "toxic drywall or similar product".

This endorsement applies whether or not the actual, alleged or threatened discharge, dispersal, seepage, migration or escape of any such irritant or contaminant is or may be contained entirely within the structure of which any "toxic drywall or similar product" is a part.

"Toxic drywall or similar product" means drywall, gypsum board, wallboard, plasterboard or any similar product, including any additive to or other treatment of such product, from which any solid, liquid, gaseous, radioactive or thermal irritant or contaminant, has, is alleged to have, or threatens to discharge, disperse, seep, migrate or escape.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – WIND DRIFT/OVERSPRAY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "property damage" due to wind drift or overspray arising from any operation performed by any "insured" or any contractors or subcontractors working for or acting on behalf of any "insured".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY

# LIMITATION – LAWN CARE SERVICES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Paragraph **(1)(d)** of exclusion **f.** under Section **1 – Coverage A – Bodily Injury And Property Damage Liability** does not apply to "Bodily Injury" arising from the proper use of "over-the-counter" herbicides or pesticides applied according to the manufacturers instructions, by an insured on lawns under your regular care.

For the purposes of this endorsement "over-the-counter" (also referred to as "general use") means: Products that are intended to be applied by consumers only on their own lawns, gardens or shrubs according to the manufacturers instructions. Furthermore, these are products that can be found at most hardware, lawn and garden or home improvement retail stores.

It is understood and agreed that "Property Damage" arising from any application of pesticides or herbicides to lawns, shrubs, gardens or trees is excluded.

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.

## EXCLUSION- STATE OF NEW YORK

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART  SCHEDULE

### Description of designated activities - ALL

### Specified location (If Applicable) – ANY LOCATION(S) IN THE STATE OF NEW YORK

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion shall apply to **COVERAGE A, COVERAGE B** and **COVERAGE C** and the Company shall have no duty to defend any insured;

This insurance does not apply to any loss, claim or suit arising out of ongoing operations, completed operations, products or contractual obligations regardless of whether such activities are or were conducted by you or on your behalf or whether the activities are or were conducted for yourself or for others. Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, a construction site, or premises whose connection is interrupted only by the street, roadway, waterway or right-of-way of a railroad.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

EXHIBIT

# 9

# ACORD™

## COMMERCIAL INSURANCE APPLICATION
### APPLICANT INFORMATION SECTION

DATE (MM/DD/YYYY): 07/05/2012

| AGENCY | CARRIER | NAIC CODE: | UNDERWRITER | UNDERWRITER OFF. |
|---|---|---|---|---|
| Humble & Davenport Ins Brokers Inc | American Safety Indemnity Co | | Blake Lemberg -specia | |

3500 Maple Valley Hwy
Renton, WA 98058

**POLICIES OR PROGRAM REQUESTED**

POLICY NUMBER: 1S6AUI61311-01

PHONE (A/C, No, Ext): 425.226.8221
FAX (A/C, No): 425.255.9342
E-MAIL ADDRESS: info@humbledavenport.com
CODE:       SUB CODE:
AGENCY CUSTOMER ID: 00014376

| INDICATE SECTIONS ATTACHED | | | |
|---|---|---|---|
| | ACCOUNTS RECEIVABLE/ VALUABLE PAPERS | ELECTRONIC DATA PROC | TRUCKERS/MOTOR CARRIER |
| | BOILER & MACHINERY | EQUIPMENT FLOATER | UMBRELLA |
| | BUSINESS AUTO | GARAGE AND DEALERS | VEHICLE SCHEDULE |
| X | COMMERCIAL GENERAL LIABILITY | GLASS AND SIGN | WORKERS COMPENSATION |
| | CRIME/MISCELLANEOUS CRIME | INSTALLATION/BUILDERS RISK | YACHT |
| | DEALERS | OPEN CARGO | |
| | DRIVER INFO SCHEDULE | PROPERTY | |
| | | TRANSPORTATION/ MOTOR TRUCK CARGO | |

### STATUS OF TRANSACTION

| | | | |
|---|---|---|---|
| QUOTE | ISSUE POLICY | RENEW | |
| BOUND (Give Date and/or Attach Copy) | | | |
| CHANGE | DATE | TIME | AM |
| CANCEL | | | PM |

### PACKAGE POLICY INFORMATION

ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 07/17/2012 | 07/17/2013 | DIRECT BILL | | |
| | | X AGENCY BILL | PACKAGE POLICY PREMIUM: $ | |

### APPLICANT INFORMATION

NAME (First Named Insured & Other Named Insureds)
Highmark Homes, LLC
Newport Homes, LLC
TM Homes, LLC

MAILING ADDRESS INCL ZIP+4 (of First Named Insured)
16400 Southcenter Pkwy #210
Tukwila, WA 98188

FEIN OR SOC SEC # (of First Named Insured):
PHONE (A/C, No, Ext): 206.371.1999
E-MAIL ADDRESS(ES): thomast@windermere.com
WEBSITE ADDRESS(ES):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| INDIVIDUAL | CORPORATION | SUBCHAPTER "S" CORPORATION | X | LLC | NO. OF MEMBERS AND MANAGERS | CR BUREAU NAME: | DATE BUS STARTED |
| PARTNERSHIP | JOINT VENTURE | NOT FOR PROFIT ORG | | | | ID NUMBER: | 2010 |

INSPECTION CONTACT: Tom Tollen
PHONE (A/C, No, Ext): 206.371.1999   E-MAIL ADDRESS:

ACCOUNTING RECORDS CONTACT: Tom Tollen
PHONE (A/C, No, Ext): 206.371.1999   E-MAIL ADDRESS:

### PREMISES INFORMATION

ACORD 823 attached for additional premises

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | % OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| 00001 | 00001 | 16400 Southcenter Pkwy #210 King Tukwila WA 98188 | X INSIDE / OUTSIDE X | OWNER / TENANT | | | | 100% |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | | | |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | | | |
| | | | INSIDE / OUTSIDE | OWNER / TENANT | | | | |

### NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

will build single family homes (small tracts) and townhomes (zero lot line).

## GENERAL INFORMATION

| EXPLAIN ALL "YES" RESPONSES | Y/N |
|---|---|
| 1a. IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY ? | N |
| 1b. DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | N |
| 2. IS A FORMAL SAFETY PROGRAM IN OPERATION? | N |
| 3. ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | N |
| 4. ANY CATASTROPHE EXPOSURE? | N |
| 5. ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | N |
| 6. ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS? (Not applicable in MO) | N |
| 7. ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | N |
| 8. DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY? (In RI, this question must be answered by any applicant for property insurance. Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | N |
| 9. ANY UNCORRECTED FIRE CODE VIOLATIONS? | N |
| 10. ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS? | N |
| 11. HAS BUSINESS BEEN PLACED IN A TRUST? IF "YES", NAME OF TRUST: | N |
| 12. ANY FOREIGN OPERATIONS, FOREIGN PRODUCTS DISTRIBUTED IN USA, OR US PRODUCTS SOLD/DISTRIBUTED IN FOREIGN COUNTRIES? (If "YES", attach ACORD 815 for Liability Exposure and/or ACORD 816 for Property Exposure) | N |

REMARKS/PROCESSING INSTRUCTIONS (Attach additional sheets if more space is required)

X COPY OF THE NOTICE OF INFORMATION PRACTICES (PRIVACY) HAS BEEN GIVEN TO THE APPLICANT. (Not applicable in all states, consult your agent or broker for your state's requirements.)

NOTICE OF INSURANCE INFORMATION PRACTICES - PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLE FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS. SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST CONTACT YOUR AGENT OR BROKER FOR INSTRUCTIONS ON HOW TO SUBMIT A REQUEST TO US.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING AN FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CI PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied) IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICA CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

| PRODUCER'S SIGNATURE | PRODUCER'S NAME (Please Print) Robert Davenport | NATIONAL PRODUCER NUMBER 5756426 |
|---|---|---|
| APPLICANT'S SIGNATURE | | DATE 7-13-12 |

# PRIOR CARRIER INFORMATION

| LINE | CATEGORY | 2009-2010 | | 2010-11 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | CARRIER | United Spec | | American Safety | | | | | | | |
| | POLICY NUMBER | | | | | | | | | | |
| | POLICY TYPE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE |
| **GENERAL COMMERCIAL LIABILITY** | RETRO DATE | | | | | | | | | | |
| | EFF-EXP DATE | | | | | | | | | | |
| | GENERAL AGGREGATE | | | | | | | | | | |
| | PRODUCTS COMP OP AGGREGATE | | | | | | | | | | |
| | PERSONAL & ADV INJ | | | | | | | | | | |
| | EACH OCCURRENCE | | | | | | | | | | |
| | FIRE DAMAGE | | | | | | | | | | |
| | MEDICAL EXPENSE | | | | | | | | | | |
| | BODILY INJURY OCCURRENCE | | | | | | | | | | |
| | BODILY INJURY AGGREGATE | | | | | | | | | | |
| | PROPERTY DAMAGE OCCURRENCE | | | | | | | | | | |
| | PROPERTY DAMAGE AGGREGATE | | | | | | | | | | |
| | COMBINED SINGLE LIMIT | | | | | | | | | | |
| | MODIFICATION FACTOR | | | | | | | | | | |
| | TOTAL PREMIUM | | | | | | | | | | |
| **AUTOMOBILE LIABILITY** | CARRIER | | | | | | | | | | |
| | POLICY NUMBER | | | | | | | | | | |
| | POLICY TYPE | | | | | | | | | | |
| | EFF-EXP DATE | | | | | | | | | | |
| | COMBINED SINGLE LIMIT | | | | | | | | | | |
| | BODILY INJURY EA PERSON | | | | | | | | | | |
| | BODILY INJURY EA ACCIDENT | | | | | | | | | | |
| | PROPERTY DAMAGE | | | | | | | | | | |
| | MODIFICATION FACTOR | | | | | | | | | | |
| | TOTAL PREMIUM | | | | | | | | | | |
| **PROPERTY** | CARRIER | | | | | | | | | | |
| | POLICY NUMBER | | | | | | | | | | |
| | POLICY TYPE | | | | | | | | | | |
| | EFF-EXP DATE | | | | | | | | | | |
| | BUILDING AMT | | | | | | | | | | |
| | PERS PROP AMT | | | | | | | | | | |
| | MODIFICATION FACTOR | | | | | | | | | | |
| | TOTAL PREMIUM | | | | | | | | | | |
| | CARRIER | | | | | | | | | | |
| | POLICY NUMBER | | | | | | | | | | |
| | POLICY TYPE | | | | | | | | | | |
| | EFF-EXP DATE | | | | | | | | | | |
| | LIMIT | | | | | | | | | | |
| | MODIFICATION FACTOR | | | | | | | | | | |
| | TOTAL PREMIUM | | | | | | | | | | |

# LOSS HISTORY

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)

CHK HERE IF NONE [X]  SEE ATTACHED LOSS SUMMARY

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS OPEN | CLSD |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

REMARKS    NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

ATTACHMENTS

STATE SUPPLEMENT(S) (if applicable)

# EXHIBIT

# # 10

This exhibit was left blank intentionally.

EXHIBIT

# 11

# Cornerstone Underwriting Partners, LLC
## Contractor General Liability Application

Quote Identifier: _____

Requested Policy Period: **7-17-12**   to   **7-17-13**

### INSURED INFORMATION

Applicant: **HIGHMARK HOMES, LLC**   DBA: **HIGHMARK HOMES AT CRYSTAL**
(List all owners)   **HAVEN, LLC, + TPM HOMES, LLC**
**LLC**

☐ Individual   ☐ Partnership   ☐ Corporation   ☒ Other

Contact: **TOM Tollen**   Contact Phone Number: **206-371-1999**

Business Address: **16400 Southcenter Pkwy #216 Tukwila 98108**   Mailing Address: **Same**

FEIN or SSN: **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**   ☒ (Same as Business Address)

### AGENCY INFORMATION

Agency Name: **Humble + Davenport**   Producer's Name: **Bob Davenport**

Agency Address: **3500 Maple Valley Hwy Renton WA 98058**

Phone: **425-226-8224** Fax: **425-917-1315** Email: **Bob@humbledavenport.Com**
**X216**

Producer Code: _____

### NEW VENTURE SECTION

Years under current name: **2**   If more than 3 years under current name please proceed to loss history section.

Date business established: **2010**   Years of related experience: **9**

List all business names that applicant/owner has owned in the past:

**Tollen Development** ( **Highmark was part of that**
**Windermere Real Estate**   **entity**)

Brief summary of prior experience (experience must be in the same field):

**Has been building residential homes and town**
**homes for over 4 years)**

Applicant: _____ DBA: Highmark Homes, LLC

## LOSS HISTORY

This business has had ◯ general liability claims, totaling ◯ (paid and reserve) within the past three (3) years.

There are ◯ open claims.

Have you had more than one construction defect claim? ☐ Yes ☑ No

*If losses apply please attach currently valued loss runs including a complete description of all losses.

## PRIOR CARRIER INFORMATION

| Carrier: | Amer Industry | Carrier: | Amer Industry | Carrier: | |
|---|---|---|---|---|---|
| Policy Number: | 18RV160571 | Policy Number: | Same | Policy Number: | |
| Eff-Exp Date: | 7-17-10/11 | Eff-Exp Date: | 7-17-11/12 | Eff-Exp Date: | |
| Total Premium: | 13000 | Total Premium: | 13,000 | Total Premium: | |

## PROGRAM SPECIFIC INFORMATION

Limits Requested: 1,000,000 occ, 2,000,000 AGG

Damage to Rented Premises/Medical Expense: 100,000/5,000

1) Detailed Description of Operations (must include all operations):

Construction, residential

2) 

|  | Commercial | Residential |
|---|---|---|
| New Construction | 8 % | 90 % |
| Remodeling | 0 % | 10 % |

3) Number of owners: 1   Number of employees: 2

4) Direct payroll excluding owner, principals, sales, & clerical: 50,000

4a.) Insured Subcontractor Costs: 4,000,000   4c.) Uninsured Subcontractor Costs: 0

4b.) Gross Receipts Last Year: 500,000   4d.) Estimated Gr. Receipts This Year: 5,000,000

*Subcontractors must carry limits equal to or greater than applicant to be considered insured.

5) List all operations performed by **uninsured or underinsured** subcontractors: NONE

Page 2 of 4

**Applicant:** _____  **DBA:** Highmen Homes, LLC

**6.)** **Prior Years:**

| | Direct Payroll (Exclude Owners) | Total Subcontractor Cost | Gross Receipts |
|---|---|---|---|
| Expiring: | 0 | 2,000,000 | 3,000,000 |
| First Prior: | 50,000 | 3,000,000 | 4,000,000 |
| Second Prior: | 50000 | 1,500,000 | 2,000,000 |

**7.)** Does the insured comply with all state and local government licensing requirements? ☒ Yes ☐ No

**8.)** Has any officer, owner, or partner of the company been convicted of a felony? ☐ Yes ☒ No

**9.)** Is any officer, owner or partner currently involved is bankruptcy proceedings? ☐ Yes ☒ No

**10.)** Do you work as a Construction Manager? *(Contractor working for the owner, and observing the day-to-day work on site. Subs are employed by and paid by the owner. The construction manager will work for the owner, assuring compliance with codes and quality work, but will not direct the daily operation of the sub contractors.)* ☐ Yes ☒ No

**11.)** Do you work as a Real Estate Developer? *(Contractor who purchases large, undeveloped tracts of land, and makes them ready for building by adding streets, roads, utilities, etc...)* ☐ Yes ☒ No

**12.)** Have you ever had insurance cancelled, declined, or a renewal refused? ☐ Yes ☒ No

**13.)** Do you have a written safety program? ☒ Yes ☐ No

**14.)** Are you involved in any tunneling work, work on public streets & roads, sewer or watermain work, dams or other infrastructure? ☐ Yes ☒ No

**15.)** Are you involved in exterior work over three (3) stories? ☐ Yes ☒ No

**16.)** Are you involved in work with recreational or playground construction? ☐ Yes ☒ No

**17.)** Do you perform any smoke, fire, water, or earthquake restoration (other than replacement of damaged construction materials? ☐ Yes ☒ No

17a.) Are you a certified, licensed restoration contractor? ☐ Yes ☐ No

**18.)** Are you involved in any exterior spray painting operations? ☐ Yes ☒ No

**19.)** Do you perform or subcontract any blasting operations? ☐ Yes ☒ No

**20.)** Do you perform work for petroleum, industrial, or chemical facilities? ☐ Yes ☒ No

**21.)** Do you have operations or work on elevator, environmental remediation, swimming pool construction, traffic lights, underground tanks, skylights, or EIFS? ☐ Yes ☒ No

**22.)** Are you engaged in any work related to structural retaining walls above six feet in height? ☐ Yes ☒ No

Applicant:          DBA: Highmark Homes, LLC

| | | | |
|---|---|---|---|
| 23.) | Are you involved in work related to fiber optic cable work or installation? | ☐ Yes | ☒ No |
| 24.) | Do you have operations or work on or for airports or railroads? | ☐ Yes | ☒ No |
| 25.) | Are you involved in the sale of chemicals, or the application of chemicals, such as herbicides or pesticides, to property? | ☐ Yes | ☒ No |
| 26.) | Do you remove asbestos insulation or asbestos containing material, fungus, mold or install insulation materials other than fiberglass or rock wool? | ☐ Yes | ☒ No |
| 27.) | Do you sell, install, service or repair wood, coal or waste oil-burning stoves? | ☐ Yes | ☒ No |
| 28.) | Are you engaged in any structural work including grading and excavation on slopes greater than 30 degrees or work on retaining walls over 6 feet in height? | ☐ Yes | ☒ No |
| 29.) | Do you work on student housing, senior housing, assisted living facilities or retirement homes EXCEPT for repair or remodeling of not more than one unit within a development? | ☐ Yes | ☒ No |
| 30.) | Do you work on condominiums, townhouses, apartments or tract homes over 25 units at any one time, except for repair or remodeling of not more than 25 units within a development at any given time? | ☐ Yes | ☒ No |
| 31.) | Do you sell, install, service or repair alarm systems, automatic fire extinguishing systems, boilers, elevators, escalators, surveillance systems or TV monitoring systems, either commercial or residential? | ☐ Yes | ☒ No |
| 32.) | Do you perform any work on or for hotels/motels? | ☐ Yes | ☒ No |
| 33.) | Do you perform any work on or for medical facilities/hospitals or schools? | ☐ Yes | ☒ No |
| 34.) | Do you perform any roofing operations? If so provide a completed roofing supplemental | ☐ Yes | ☒ No |

Please explain any YES answers
or enter any comments you may
have about this risk:

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND (NY: SUBSTANTIAL) CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

Applicants Signature: _____    Date: 6-1-12

Position: manager

Producer Signature: _____    Date: 6-1-12

EXHIBIT

# 12



**XS SPECIALTY** LLC

**COMPANY:** American Safety Indemnity Company    **Rated: A IX AM Best**

                                             COMMISSION: 15%

                               *Quote Expires at effective date shown*

                DESCRIPTION OF OPERATIONS:  GENERAL CONTRACTOR

APPLICANT: HIGHMARK HOMES, LLC; HIGHMARK AT CRYSTAL HAVEN LLC; TM HOMES, LLC

~~Newport Homes LLC~~

ADDRESS: 16400 SOUTHCENTER PKWY #204

Tukwila, WA 98188

                               **Effective Date:** 7/17/2012

COVERAGE TYPE: Occ w/Special Conditions    **Retroactive Date:**

GENERAL LIABILITY:    Subject to Audit

DEDUCTIBLE:    1,000        PD        Per claim includes loss adjustment expense

| | |
|---|---|
| GENERAL AGGREGATE: | 2,000,000 |
| PROD/COMP OPS AGGREGATE: | 2,000,000 |
| PERSONAL & ADV INJURY: | 1,000,000 |
| EACH OCCURRENCE: | 1,000,000 |
| DAMAGE TO RENTED PREMISE: | 100,000 |
| MEDICAL EXPENSE: | 5,000 |

THE FOLLOWING CLASS CODES APPLY:

91340-Carpentry - construction of residential property not exceeding three stories in height (payroll 50,000)

91580+-Contractors - Executive supervisors or executive superintendents (payroll 17,800)

91583-Contractors - subcontracted work - in connection with building construction, recontruction, repair or erection - one or two family dwellings (cost 2,500,000)

PREMIUM:    $14,759.00

Broker fee:    $1000

TAXES:  WA Stamp 17.01 WA State Tax 340.18         **25.00% OR MEP APPLIES**

FEES:        500.00

OTHER:       500.00 * Blanket Additional Insured w/ Waiver & Primary     Fees fully earned

                  Non Contributory  fully earned

                  250.00 * Stop Gap fully earned

TOTAL:       17366.19             \*\*\*Caution – No Flat Cancellations – Once bound minimum earned premiums will apply.

**This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, Title 48 RCW. It is not protected by any Washington state guaranty association law.**

Information needed to Bind Renewal Coverage:
Completed and Signed Supplemental
Signed Special Conditions Form
Signed Terrorism Forms
Completed and Signed Applications (Acord 125/126)
Signed Quote Form
Signed Diligent Search Letter


All coverages, terms and conditions and limits are specifically stated in this document. If something is not annotated, it is not being offered. It is the retailer's responsibility to note any deviations from the specifications. XS Specialty LLC shall not be responsible for any unintentional errors or omissions which may have occurred during the preparation of this proposal.


# POLICY FORMS

INSURED MAILER PAGE  INSURED MAILER PAGE
ASI SIGNATURE PAGE  ASI SIGNATURE PAGE
ASI OCCURRENCE DECLARATIONS PAGE 1  OCCURRENCE DECLARATIONS PAGE
CG 00 01 12 07  OCCURRENCE COVERAGE FORM
ASI 3000 09 06  EXCLUSION - SUBSIDENCE
ASI 3001 09 06  EXCLUSION - LEAD PAINT
ASI 3002 09 06  EXCLUSION - ASBESTOS
ASI 3003 09 06  EXCLUSION - CHROMATED COPPER ARSENATE
ASI 3004 09 06  EXCLUSION - CROSS SUITS
ASI 3006 09 06  EXCLUSION - CANINE LIABILITY
ASI 3016 06 10  SPECIAL CONDITIONS FORM
ASI 3026 09 06  EXCLUSION - FORMALDEHYDE
ASI 3027 09 06  EXCLUSION - OPEN FLAME
ASI 3028 09 06  EXCLUSION - TORCH DOWN AND TORCH ON ROOFING
ASI 3029 09 06  EXCLUSION - THIRD-PARTY-OVER ACTION EXCLUSION
ASI 3030 09 06  EXCLUSION - PENDING OR PRIOR LITIGATION
ASI 3031 09 06  EXCLUSION - DEMOLITION
ASI 3032 09 06  EXCLUSION - INTENTIONAL INJURY
ASI 3033 09 06  EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE
ASI 3034 09 06  EXCLUSION - ROOFING LIMITATION
ASI 3035 09 06  MINIMUM EARNED PREMIUM
ASI 3036 09 06  UNDERGROUND UTILITY LOCATION CONDITION
ASI 3038 04 08  NON-AUDITABLE POLICY ENDORSEMENT
ASI 3040 05 08  SERVICE OF SUIT CLAUSE
CG 03 00 01 96  DEDUCTIBLE LIABILITY INSURANCE
CG 21 67 12 04  FUNGI OR BACTERIA EXCLUSION
CG 21 46 07 98  ABUSE OR MOLESTATION EXCLUSION
CG 21 47 07 98  EMPLOYMENT RELATED PRACTICES EXCLUSION
CG 21 55 09 99  TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION
CG 21 96 03 05  SILICA OR SILICA-RELATED DUST EXCLUSION
CG 22 24 07 98  EXCLUSION - INSPECTION, APPRAISAL AND SURVEY COMPANIES
CG 21 86 12 04  EXCLUSION - EXTERIOR INSULATION & FINISH SYSTEMS
CG 22 31 07 98  EXCLUSION - RIOT, CIVIL COMMOTION OR MOB ACTION
CG 22 34 07 98  EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS
CG 22 43 07 98  EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY
CG 22 79 07 98  EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY
CG 21 90 01 08  EXCLUSION OF TERRORISM
CG 04 42 11 03  STOP GAP - EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON
IL 00 17 11 98  COMMON POLICY CONDITIONS
IL 00 21 05 04  NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENTS (Broad Form)
CG 20 10 07 04BWNC  BLANKET ADDITIONAL INSURED -PRIMARY AND NON-CONTRIBUTORY- OWNERS, LESSEES OR CONTRACTORS
CG 24 04 05 09  WAIVER OF TRANSFER OF RIGHTS (blanket wording)
CG 01 81 07 98  WASHINGTON CHANGES
IL 01 46 09 07  WASHINGTON COMMON POLICY CONDITIONS
ASI 3064 05 10  CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT
ASI 3084 07 10  AMENDED DEFINITIONS - USE OF EXTRINSIC EVIDENCE
ASI 3081 07 10  EXCLUSION - ASSAULT AND BATTERY
ASI 3082 07 10  EXCLUSION - COMMERCIAL-INDUSTRIAL BOILERS OR PRESSURE VESSELS
ASI 3083 07 10  EXCLUSION - EMOTIONAL DISTRESS
ASI 3087 07 10  EXCLUSION - SNOW AND ICE REMOVAL
ASI 3080 07 10  EXCLUSION - TOXIC DRYWALL AND SIMILAR PRODUCTS
ASI 3086 07 10  EXCLUSION - WIND DRIFT-OVERSPRAY
ASI 3085 07 10  LIMITATION - LAWN CARE SERVICES
ASI 3063 05 10  EXCLUSION - STATE OF NEW YORK
CG 21 86 12 04  EXCLUSION-EXTERIOR INSULATION AND FINISH SYSTEMS

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
### INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Acceptance or Rejection of Terrorism Insurance Coverage

| | |
|---|---|
| | I hereby elect to purchase coverage for a prospective premium of $ 500 or 10% of the premium (whichever is greater). |
| ✓ | I hereby decline to purchase terrorism coverage for acts of terrorism, I understand that I will have no coverage for losses arising from acts of terrorism. |

Policyholder/Applicant's Signature                    Insurance Company

Thomas Tollen
Print Name                                            Policy Number

7/12/12
Date

# EXHIBIT

# # 13



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

**POLICY NUMBER:** 156AUI 62063-00

This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, Title 48 RCW. It is not protected by any Washington state guaranty association law. John Pierce

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| **Broker -** Cornerstone Underwriting Partners LLC | **Producer -** XS SPECIALTY LLC |
|---|---|

**Named Insured:** HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC

**Mailing Address:** 16400 SOUTHCENTER PKWY #210, Tukwila WA 98188

**Policy Period:** **From:** 07/17/2012 **To:** 07/17/2013
At 12:01 A.M. Time at your Mailing Address Shown Above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THE POLICY.

| **LIMITS OF INSURANCE** | NO FLAT CANCELLATIONS |
|---|---|
| **Each Occurrence Limit** | $ 1,000,000 |
| **Fire Damage Limit - Any one fire** | $ 100,000 |
| **Medical Expense Limit - Any one person** | $ 5,000 |
| **Personal & Advertising Injury Limit - Any one person or organization** | $ 1,000,000 |
| **General Aggregate Limit** | $ 2,000,000 |
| **Products/Completed Operations Aggregate Limit** | $ 2,000,000 |

## DESCRIPTION OF BUSINESS

**FORM OF BUSINESS**

☐ Individual          ☐ Partnership          ☐ Joint Venture

☑ Limited Liability Company   ☐ Organization, Including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)

**Business Description:** GENERAL CONTRACTOR

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

| | **ALL PREMISES YOU OWN, RENT OR OCCUPY** |
|---|---|
| **LOCATION NUMBER:** | **ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY** |
| 1 | 16400 SOUTHCENTER PKWY #210<br>Tukwila                               WA, 98188 |
| | **As on file with application dated:** |

## CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO | PREMIUM BASE | RATE Prem Ops | RATE Prod/Com Ops | PREMIUM Prem Ops | PREMIUM Prod/Com Ops |
|---|---|---|---|---|---|---|---|
| 1 | Contractors - Executive supervisors or executive superintendents | 91580+ | $17,800 | 43.70 | Included | $778.00 | Included |
| 1 | Contractors - subcontracted work - in connection with building construction, recontruction, repair or erection - one or two family dwellings | 91583 | $2,500,000 | 1.13 | 3.34 | $2,828.00 | $8,340.00 |
| 1 | Carpentry - construction of residential property not exceeding three stories in height | 91340 | $50,000 | 18.12 | 38.13 | $906.00 | $1,907.00 |
| 1 | * Blanket Additional Insured w/ Waiver & Primary Non Contributory | 49950 | 1 | | | | $500.00 |
| 1 | * Stop Gap | 49950 | 1 | | | | $250.00 |

| **PREMIUM SHOWN IS PAYABLE:** | **STATE TAX OR OTHER (if applicable)** | |
|---|---|---|
| Broker Fee:  $1,000.00 | **POLICY FEE (if applicable)** | $500.00 |
| WA State Tax: $340.18 | **TOTAL PREMIUM (SUBJECT TO AUDIT)** | $15,509.00 |
| Stamping Fee:  $17.01 | **AT INCEPTION** | 100% |
| Total:        $17,366.19 | **AT EACH ANNIVERSARY** | |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

**Page 2 of 3**



**American Safety Indemnity Company**
**1845 The Exchange, Atlanta GA 30339**
**800-388-3647 FAX 770-955-8339**
**E&S Fax Number (770) 955 -6163**

| | **IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS** | | | |
|---|---|---|---|---|
| **AUDIT PERIOD (if applicable)** | ☑ANNUALLY | ☐SEMI-ANNUALLY | ☐QUARTERLY | ☐MONTHLY |

## ENDORSEMENTS
### ENDORSEMENTS ATTACHED TO THIS POLICY:

INSURED MAILER PAGE, ASI SIGNATURE PAGE, ASI OCCURRENCE DECLARATIONS PAGE 1, CG 00 01 12 07, ASI 3000 09 06, ASI 3001 09 06, ASI 3002 09 06, ASI 3003 09 06, ASI 3004 09 06, ASI 3006 09 06, ASI 3016 06 10, ASI 3026 09 06, ASI 3027 09 06, ASI 3028 09 06, ASI 3029 09 06, ASI 3030 09 06, ASI 3031 09 06, ASI 3032 09 06, ASI 3033 09 06, ASI 3034 09 06, ASI 3035 09 06, ASI 3036 09 06, ASI 3038 04 08, ASI 3040 05 08, CG 03 00 01 96, CG 21 67 12 04, CG 21 46 07 98, CG 21 47 07 98, CG 21 55 09 99, CG 21 96 03 05, CG 22 24 07 98, CG 21 86 12 04, CG 22 31 07 98, CG 22 34 07 98, CG 22 43 07 98, CG 22 79 07 98, CG 21 90 01 06, CG 04 42 11 03, IL 00 17 11 98, IL 00 21 05 04, CG 20 10 07 04BWNC, CG 24 04 05 09, CG 01 81 07 98, IL 01 46 09 07, ASI 3064 06 10, ASI 3084 07 10, ASI 3081 07 10, ASI 3082 07 10, ASI 3083 07 10, ASI 3087 07 10, ASI 3080 07 10, ASI 3086 07 10, ASI 3085 07 10, ASI 3063 05 10, CG 21 86 12 04

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S). COMPLETE THE ABOVE NUMBERED POLICY.**

| **Endorsement Effective:** 07/17/2012 | **Countersigned By:** |
|---|---|
| **Named Insured:**<br>HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC | *Steven Mabry Chdd*<br>**(Authorized Representative)** |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY. THESE DECLARATIONS TOGETHOR WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006 CG 00 01 12 07 ☐

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

CG 00 01 12 07    ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

CG 00 01 12 07      ☐

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006 ☐

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by, or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   © ISO Properties, Inc., 2006   CG 00 01 12 07   ☐

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

  **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

  **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

☐

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2006 CG 00 01 12 07  ☐

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - SUBSIDENCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Subsidence**

"bodily injury", "property damage" or "personal and advertising injury" arising out of the "subsidence" of land and arising out of or attributable to any ongoing operation of the insured or performed on the insured's behalf or the "products/completed operations hazard".

This exclusion applies whether such "bodily injury", "property damage" or "personal and advertising injury" arises solely from "subsidence" or from "subsidence" in combination with other causes, whether natural or man made.

"Subsidence" means earth movement including but not limited to:

(1) Landslide;

(2) Mudflow;

(3) Earth sinking;

(4) Earth rising;

(5) Collapse or movement of fill;

(6) Improper compaction;

(7) Earth settling, slipping, falling away, caving in, eroding or tilting;

(8) Earthquake; or

(9) Any other movement of land or earth.

ASI 3000 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD PAINT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Lead**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or any product containing lead.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in

whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which

coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said

"suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if

we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3001 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Asbestos**

(1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to "asbestos"; or

(2) Any loss, cost or expense that may be awarded or incurred:

   (a) by reason of a claim or "suit" for any such injury or damage; or

   (b) in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of "asbestos".

"Asbestos" means the mineral in any form whether or not the "asbestos" was at any time:

(1) airborne as a fiber, particle or dust;

(2) contained in or formed a part of a product, structure or other real or personal property;

(3) carried on clothing;

(4) inhaled or ingested; or

(5) transmitted by any other means.

This exclusion shall apply without regard to the allegations or basis of the insured's liability,

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury" , "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit". If we exercise the right to defend said "suit" we shall have the obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3002 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CHROMATED COPPER ARSENATE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Chromated Copper Arsenate**

(1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to chromated copper arsenate (CCA), whether such CCA is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to CCA is or is alleged to have caused damage in any sequence or combination with, or contributed to or was contributed to by any other cause or causes of injury or damage; or

(2) Any loss, cost or expense that may be awarded or incurred by reason of a claim or "suit" for any such injury or damage. This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of CCA or property containing CCA and includes any liability, cost or expense to remediate or prevent "bodily injury", "property damage" or "personal and advertising injury" from CCA.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury", "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit." When we do not elect to defend you in such "suit", we shall reimburse you for the reasonable attorneys' fees and litigation expenses incurred by you, in accordance with the conditions of this policy.

ASI 3003 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - CROSS SUITS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

### Cross Suits

"Bodily injury", "property damage" or "personal and advertising injury", as defined, initiated, alleged, or caused to be brought about by this policy against any other Named Insured or Additional Named Insured covered by this policy.

ASI 3004 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CANINE LIABILITY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES,** paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Dogs**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, rental, maintenance or use of dogs.

ASI 3006 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## CONTRACTORS SPECIAL CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Contractors As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the "occurrence" giving rise to the claim or "suit:"

    **(1)**    received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor;

**(2)**    obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained with minimum limits
    of $        per occurrence;

    **(3)**    obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and

    **(4)**    obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs (1) through (4) for a minimum of five years from the expiration date of this policy. If these records are not maintained we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf.

The insurance provided by this policy shall be excess over and above any other valid and collectible insurance available to the insured under paragraph **(2)**.

---

ASI 3016 (06/10)                                                                 Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – FORMALDEHYDE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added **to SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **paragraph 2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

Formaldehyde

**(1)** "Bodily injury," "property damage" or "personal and advertising injury'' arising out of the actual, alleged or threatened exposure at any time to formaldehyde, whether the formaldehyde is in pure form or is or was combined with any other chemical product or material, and whether the existence of or exposure to formaldehyde has caused, or contributed to cause, damage in any sequence or combination.

**(2)** Any damages, loss, cost or expense that may be awarded or incurred by reason of a claim or "suit'' for any such injury or damage. This includes any injury or damage caused or alleged to have been caused by the removal, eradication, detoxification, remediation or decontamination of formaldehyde or property containing formaldehyde and includes any liability, cost or expense to remediate or prevent "bodily injury," "property damage" or "personal and advertising injury" from formaldehyde.

This exclusion shall apply without regard to the allegations or basis of the insured's liability.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a "suit" is based in whole or in part upon "bodily injury," "property damage" or "personal and advertising injury", liability for which coverage is excluded by this endorsement; we shall have the right, but not the obligation, to defend said "suit." If we exercise the right to defend said suit we shall have to obligation to pay for the defense, but if we do not exercise the right to defend, we shall have no obligation to pay for the defense.

ASI 3026 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – OPEN FLAME

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Open Flame**

"Bodily injury," "property damage" or "personal and advertising injury' arising out of, directly or indirectly resulting from or in consequence of, or in any way involving an open flame in the removal of paint or any other coating.

ASI 3027 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - TORCH DOWN AND TORCH ON ROOFING

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Torch Down and Torch On**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, a wand, open flame, torch and/or heat applications commonly referred to in the roofing industry as "torch down" and/or "torch on."

ASI 3028 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIRD-PARTY-OVER ACTION EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion e. under Paragraph 2., Exclusions of Section 1-Coverage A-Bodily Injury and Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

e. Employer's Liability

Bodily injury, personal injury, or advertising injury to:

(1) An employee of any insured arising out of and in the course of employment, whether any other insured may be liable for such bodily injury, personal injury or advertising injury;

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

(3) To any insured against whom a claim is made or suit is brought for such bodily injury, personal injury or advertising injury, whether by or on behalf of an employee of that Insured or any other insured.

For the purpose of this exclusion the term "employee" includes loaned, rented, leased, or temporary employees, as well as persons who qualify as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employee, respondeneat superior or any similar doctrine, or for whom any insured may be held liable as an employer.

ASI 3029 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - PENDING AND PRIOR LITIGATION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Pending and Prior Litigation**

"Bodily injury," "property damage" or "personal and advertising injury" arising from all pending or prior litigation as well as all future claims arising out of said pending or prior litigation.

For the purposes of this exclusion:

**(1)** Injury or damage is known to any insured when any insured is aware or reasonably should be aware that the injury or damage has occurred; and

**(2)** Knowledge of "bodily injury" or "property damage" arising from an "occurrence" or "personal and advertising injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "occurrence" or offense.

ASI 3030 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DEMOLITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to:

**Demolition**

**(1)** "Bodily injury" or "property damage" arising out of any blasting operations;
**(2)** "Bodily injury" or "property damage" arising from the use of a "ball and chain" or similar apparatus;
**(3)** "Bodily injury" or "property damage" arising out of the demolition of any building or structure which has an original height in excess of three stories or original height in excess of fifty (50) feet; or
**(4)** "Property damage" to any abutting, adjoining, common or party wall.

ASI 3031 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - INTENTIONAL INJURY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion a. Expected or Intended Injury under SECTION 1-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, is deleted and replaced with the following:

2. Exclusions

This insurance does not apply to:

a. Intentional Injury

i. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of any insured; or

ii. Assault and Battery

"Bodily injury" or "property damage" arising out of:


(a) Assault

(b) Battery

(c) Harmful or offensive contact between or among two or more persons,

(d) Apprehension of harmful or offensive contact between or among two or more persons,

(e) Threat by word or deed.

These exclusions apply regardless of:


I. Whether or not the acts are alleged to be by or at the direction of any insured,

II. Whether or not the acts arose out of the alleged failure of any insured in the hiring or supervision of any person, or

III. Whether or not the acts arose out of the alleged failure of any insured to prevent or suppress such acts.

ASI 3032 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to **SECTION I – COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Punitive or Exemplary Damage**

Any sums that the insured becomes legally obligated to pay for punitive, exemplary or multiple damages.

ASI 3033 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ROOFING LIMITATION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, paragraph **2. Exclusions** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY**:

This insurance does not apply to:

**Roofing Limitation**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(a)** The handling, storage or transportation of hot tar or any other heated substance; or

**(b)** Any job site where you are working, or have worked, on a roof of a building or structure, whether work is completed or not, in excess of three (3) stories or thirty-six (36) feet in height.

**(2)** "Property damage" to any building or structure caused by fire if caused by the application of open flame or torch to roofing materials or to roofs whether removing roofs or roofing materials or installing roofs or roofing materials.

**(3)** "Property damage" to any building or structure or its contents or any related items thereto, caused by or resulting from the intrusion of rain, snow, sleet or hail for any reason, including the negligence of the insured during the course of the insured's "roofing operations"; unless the insured applies a "secured protective cover" of waterproof material over all portions of the "open roof," thereby preventing entry by any of the perils mentioned above.

As used in this endorsement:
"Open roof" is defined as a roof or section thereof from which the protective covering (shingles, tar, tiles, felt paper, etc.) has been removed leaving exposed the decking, supporting structure, or interior of the building or its contents to the intrusion of rain, snow, sleet or hail.
"Roofing operations" is defined to mean removal of any old roofing material and the application of new roofing material.
"Secured protective cover" is defined as weatherproof covering applied and securely fastened as if permanent in nature except for its temporary employment until completion of the "roofing operations".

ASI 3034 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that twenty-five percent (25%) of the annual premium is fully earned as of the inception date of the policy.

ASI 3035 09 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNDERGROUND UTILITY LOCATION CONDITION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Underground Utility Location**

It is a condition precedent to coverage that before the insured commences any digging, excavation, boring or similar underground work, a local locator service must come to the job site and mark all underground lines, pipes, cables and underground utilities. The insured must obtain a written response from the locator service.

If this is not done, coverage under this policy is voided for any "suit," claim, loss, costs or expenses arising out of such digging operations.

ASI 3036 09 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY

## NON-AUDITABLE POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This policy is not subject to audit

# SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that in the event of the failure by us to pay any amount claimed to be due hereunder, we will, at your request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the person or organization shown in the Policy Declarations or upon us at the address shown in the policy jacket.

And that in any suit instituted against any one of them upon this contract, we will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of us in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner, or Directors of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ASI 3040 05 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

<div align="center">SCHEDULE</div>

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ 1,000 | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limi-tation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay dam-ages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

　**1. PER CLAIM BASIS.** If the deductible amount in-dicated in the Schedule above is on a per claim basis, that deductible applies as follows:

　　**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person be-cause of "bodily injury";

　　**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

　　**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person be-cause of:

　　　**(1)** "Bodily injury";

　　　**(2)** "Property damage"; or

　　　**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of serv-ices or death resulting at any time from "bodily injury", a separate deductible amount will be ap-plied to each person making a claim for such damages.

With respect to "property damage", person in-cludes an organization.

Copyright, Insurance Services Office, Inc., 1994

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages because of "property dam-age"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

    **(1)** "Bodily injury";

    **(2)** "Property damage"; or

    **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regard-less of the number of persons or organizations who sustain damages because of that "occur-rence".

**C.** The terms of this insurance, including those with re-spect to:

  **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

  **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deducti-ble amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deducti-ble amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96          o

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

      This insurance does not apply to:

      **Fungi Or Bacteria**

      **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

      **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

      This insurance does not apply to:

      **Fungi Or Bacteria**

      **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

      **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INSPECTION, APPRAISAL AND SURVEY COMPANIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable because of the rendering of or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal, survey or audit services.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

  "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – RIOT, CIVIL COMMOTION OR MOB ACTION – GOVERNMENTAL SUBDIVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. Riot, civil commotion or mob action; or

2. Any act or omission in connection with the prevention or suppression of a riot, civil commotion or mob action.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.  Supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc.,  1997

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

**2.** Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** or **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2004 **CG 21 90 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# STOP GAP - EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SCHEDULE

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | | Each Accident |
| Bodily Injury By Disease | $ | | Aggregate Limit |
| Bodily Injury By Disease | $ | | Each Employee |
| | | | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I - Coverages:**

**COVERAGE - STOP GAP - EMPLOYERS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance;** and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

**(1)** The:

**(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

**(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

**(c)** "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

**(2)** The:

**(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

**(b)** "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(1)** For:

**(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

**(b)** Care and loss of services; and

**(c)** Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

**(2)** Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**2. Exclusions**

This insurance does not apply to:

**a. Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

**b. Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(2)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171- 8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Supplementary Payments** provisions apply to Coverage - Stop Gap Employers Liability as well as to Coverages **A** and **B.**

**C.** For the purposes of this endorsement, **Section II - Who Is An Insured,** is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.

Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, **Section III - Limits Of Insurance,** is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" - Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" - Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" - Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. For the purposes of this endorsement, Condition **2. - Duties In The Event Of Occurrence, Claim Or Suit** of the Conditions Section **IV** is deleted and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

a. You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

(5) Do nothing after an injury occurs that would interfere with our right to recover from others.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph **4.** of the **Definitions** Section is replaced by the following:

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c. All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the **Definitions** Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

© ISO Properties, Inc., 2003   CG 04 42 11 03

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2001 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY- OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide such as is afforded by this policy and is submitted to the Company in writing within 30 days of the inception of the contract or agreement, or the inception of the policy, whichever is later. | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

A. Section II- Who is an Insured is amended to include as an additional insured the person(s) or Organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property Damage" or "personal and advertising injury" caused, in whole or in part , by:

   1.  **Your acts or omissions; or**

   2.  **The acts or omissions of those acting on your behalf;**

   In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With Respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   1.  **All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or**

   2.  **That portion of "your work" out of which the injury or damage arises has been put to its Intended use by any person or organization other than another contractor or subcontractor Engaged in performing operations for a principal as a part of the same project.**

C. It is agreed that the insurance provided for the benefit of the above additional insured(s) shall be Primary and Non-contributory, but only with respect to liability for "bodily injury", "property damage" Or "personal and advertising injury" caused, in whole or in part, ny"

   1.  **Your acts or omissions; or**

   2.  **The acts or omissions of those acting on your behalf;**

   In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

CG 2010 07 04
B/WNC

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Name Of Person Or Organization:** |
| **Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide such as is afforded by this policy and is submitted to the Company in writing within 30 days of the inception of the contract or agreement, or the inception of the policy, whichever is later.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e.** of Coverage **A** – Bodily Injury And Property Damage Liability (Section I – Coverages) applies only to "bodily injury" to any "employee" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Exclusion **e.** is replaced with the following:

This insurance does not apply to:

1. "Bodily injury" to an "employee" of the insured arising out of and in the course of:

   **a.** Employment by the insured; or

   **b.** Performing duties related to the conduct of the insured's business; or

2. Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**B.** Paragraphs **2.a.(1)(a)**, **(b)** and **(c)** of Section II – Who Is An Insured apply only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **2.a.(1)** of **Section II – Who Is An Insured** is replaced with the following:

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         **(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** above; or

         **(c)** Arising out of his or her providing or failing to provide professional health care services.

 Copyright, Insurance Services Office, Inc., 1997  ☐

# WASHINGTON COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

The conditions in this endorsement replace any similar conditions in the policy that are less favorable to the insured.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason;

   except as provided in Paragraphs 3. and 4. below.

3. We may cancel the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, if made a part of this policy, by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least 5 days before the effective date of cancellation for any structure where 2 or more of the following conditions exist:

   a. Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the structure is maintained for seasonal occupancy or is under construction or repair;

   b. Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

   c. Because of its physical condition, the structure is in danger of collapse;

   d. Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

   e. Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

   f. Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the structure for 60 consecutive days; or

   g. The structure is not maintained in substantial compliance with fire, safety and building codes.

4. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

   we may cancel the Commercial Automobile Coverage Part by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for cancellation, to the last mailing address known to us:

   a. At least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. At least 10 days before the effective date of cancellation for any other reason if the policy is in effect less than 30 days; or

   c. At least 20 days before the effective date of cancellation for other than nonpayment if the policy is in effect 30 days or more; or

   d. At least 20 days before the effective date of cancellation if the policy is in effect for 60 days or more or is a renewal or continuation policy, and the reason for cancellation is that your driver's license or that of any driver who customarily uses a covered "auto" has been suspended or revoked during policy period.

© ISO Properties, Inc., 2006

5. We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph **A.3.** above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund unless the following applies:

   **a.** For Division Two – Equipment Breakdown, if the first Named Insured cancels, the refund will be at least 75% of the pro rata refund.

   **b.** If:

      **(1)** You are an individual;

      **(2)** A covered auto you own is of the "private passenger type";

      **(3)** The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards; and

      **(4)** The first Named Insured cancels;

      the refund will be not less than 90% of any unearned portion not exceeding $100, plus 95% of any unearned portion over $100 but not exceeding $500, and not less than 97% of any unearned portion in excess of $500.

      The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspection And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

© ISO Properties, Inc., 2006               **IL 01 46 09 07**    ☐

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. Nonrenewal

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

   a. Expiration of the policy; or

   b. Anniversary date of this policy if this policy has been written for a term of more than one year.

   Otherwise, we will renew this policy unless:

   a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

   b. Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

   c. The policy clearly states that it is not renewable, and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

2. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

   the following applies to nonrenewal of the Commercial Automobile Coverage Part in place of **G.1.**:

   a. We may elect not to renew or continue this policy by mailing or delivering to you and your agent or broker written notice at least 20 days before the end of the policy period including the actual reason for nonrenewal. If the policy period is more than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   b. We will not refuse to renew Liability Coverage or Collision Coverage solely because an "insured" has submitted claims under Comprehensive Coverage or Towing and Labor Coverage.

   c. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.

# CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2.** Exclusions of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph 2. Exclusions of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

### Condominium, Apartment and Townhouse

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work",or "your product", that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 25 units. This exclusion does not apply if "your work" or "your product" occurs after the condominium, apartment or townhouse project has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

### Tract Housing

"Bodily injury", "property damage" or "person or advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development".

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in the endorsement, the following is added to **SECTION V – DEFINITIONS:**

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

---

## AMENDED DEFINITIONS - USE OF EXTRINSIC EVIDENCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Section V – DEFINITIONS; 3. is amended by adding this paragraph to the Commercial General Liability Coverage Part, CG0001:

> We may look at extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "bodily injury".

Section V – DEFINITIONS; 14. h. is added to the Commercial General Liability Coverage Part, CG0001:

h. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "personal and advertizing injury."

Section V – DEFINITIONS, 17. c. and d. are added to the Commercial General Liability Coverage Part, CG0001:

c. "Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you (or any insured) are otherwise obligated to repair, replace or compete pursuant to the terms of any contract with any person.

b. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "property damage."

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASSAULT AND BATTERY

---

1.  This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury" arising in whole or in part out of:

    a)   the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;

    b)   the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault and/or battery;

    c)   the negligent.

        (i) employment;
        (ii) investigation;
        (iii) supervision;
        (iv) training;
        (v) retention;

    of any person for whom any insured is or ever was legally responsible and whose conduct would be excluded by
    (a) or (b) above.

    d)   any actual or alleged injury arising out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;

    e)   any actual or alleged injury arising out of a chain of events which includes assault and/or battery, regardless of whether the assault and/or battery is the initial precipitating event or a substantial cause of injury;

    f)   any actual or alleged injury arising out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury; or

    g)   claims arising out of, caused by, resulting from, or alleged, in whole or in part, by any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault and/or battery, theft, or crime.

1       For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.
2       For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COMMERCIAL/INDUSTRIAL BOILERS OR PRESSURE VESSELS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" arising out of "Your work" or "Your product" on commercial or industrial boilers or pressure vessels. This includes, but is not limited to, any of the following:

- Installation
- cleaning
- repair
- servicing
- inspection

# EXCLUSION – EMOTIONAL DISTRESS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "bodily injury," "property damage," or "personal and advertising injury" arising out of:

- emotional distress
- mental anguish
- humiliation
- mental distress
- mental injury
- mental suffering
- worry
- concern
- disappointment
- annoyance
- anxiety
- inconvenience
- depression
- dissatisfaction
- shock to the nervous system, or
- any physical manifestation of any of the forgoing, or
- any similar injury

Unless it arises out of actual physical injury to that person.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – SNOW AND ICE REMOVAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim loss, costs or expense for "bodily injury" or "property damage" arising from "your" operations or completed operations for the removal or relocation of snow and/or ice from any surface including, but not limited to any street, road, highway, sidewalk, walkway, patio, platform or roof. This exclusion does not apply if "you" remove snow or ice from any premises whose address is shown on the policy that you own or rent.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – TOXIC DRYWALL AND SIMILAR PRODUCTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to:

1) "bodily injury, "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration or escape of any solid, liquid, gaseous radioactive or thermal irritant or contaminant from any "toxic drywall or similar product".

2) Any loss, cost or expense arising out of any:

   a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any "toxic drywall or similar product"; or

   b) Claim or "suit" by or on behalf of governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any "toxic drywall or similar product".

This endorsement applies whether or not the actual, alleged or threatened discharge, dispersal, seepage, migration or escape of any such irritant or contaminant is or may be contained entirely within the structure of which any "toxic drywall or similar product" is a part.

"Toxic drywall or similar product" means drywall, gypsum board, wallboard, plasterboard or any similar product, including any additive to or other treatment of such product, from which any solid, liquid, gaseous, radioactive or thermal irritant or contaminant, has, is alleged to have, or threatens to discharge, disperse, seep, migrate or escape.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – WIND DRIFT/OVERSPRAY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

We do not cover any claim, loss, costs or expense for "property damage" due to wind drift or overspray arising from any operation performed by any "insured" or any contractors or subcontractors working for or acting on behalf of any "insured".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY

# LIMITATION – LAWN CARE SERVICES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Paragraph **(1)(d)** of exclusion **f.** under Section **1 – Coverage A – Bodily Injury And Property Damage Liability** does not apply to "Bodily Injury" arising from the proper use of "over-the-counter" herbicides or pesticides applied according to the manufacturers instructions, by an insured on lawns under your regular care.

For the purposes of this endorsement "over-the-counter" (also referred to as "general use") means: Products that are intended to be applied by consumers only on their own lawns, gardens or shrubs according to the manufacturers instructions. Furthermore, these are products that can be found at most hardware, lawn and garden or home improvement retail stores.

It is understood and agreed that "Property Damage" arising from any application of pesticides or herbicides to lawns, shrubs, gardens or trees is excluded.

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.

## EXCLUSION- STATE OF NEW YORK

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART  SCHEDULE

## Description of designated activities - ALL

## Specified location (If Applicable) – ANY LOCATION(S) IN THE STATE OF NEW YORK

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion shall apply to **COVERAGE A, COVERAGE B** and **COVERAGE C** and the Company shall have no duty to defend any insured;

This insurance does not apply to any loss, claim or suit arising out of ongoing operations, completed operations, products or contractual obligations regardless of whether such activities are or were conducted by you or on your behalf or whether the activities are or were conducted for yourself or for others. Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, a construction site, or premises whose connection is interrupted only by the street, roadway, waterway or right-of-way of a railroad.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

   **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

   **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

   "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

   **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

   **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

   **3.** A reinforced or unreinforced base coat;

   **4.** A finish coat providing surface texture to which color may be added; and

   **5.** Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003

| Countersigned: 7/18/2012 | By: |
|---|---|
| (Date) | (Authorized Representative) |

In Witness whereof, this Company has caused this policy to be signed by its President and Secretary, but if required by state law, this policy shall not be valid unless countersigned by an authorized representative of the Company.

**Secretary**                                    **President**

XS SPECIALTY LLC
6312 SW CAPITOL HWY
#437
Portland, OR 97239 -

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 2

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 156AUI 61311-00 | 7/5/2012 | American Safety Indemnity Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC | Cornerstone Underwriting Partners |

**COVERAGE PARTS AFFECTED**

ALL

**CHANGES**

It is hereby understood and agreed that the following changes apply to this policy:

THIS POLICY AMENDMENT SHALL HEREBY READ INSURED NAME AS SHOWN BELOW:

HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC

NO CHANGE IN PREMIUM RESULTED

This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, Title 48 RCW. It is not protected by any Washington state guaranty association law. John Pierce

Authorized Representative Signature

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 2

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 156 AUI 62063-00 | 5/10/2013 | American Safety Indemnity Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC;HIGHMARK HOLDINGS, LLC DBA VILLAGE TOWNHOUSES | Cornerstone Underwriting Partners |

COVERAGE PARTS AFFECTED

ALL

CHANGES

It is hereby understood and agreed that the following changes apply to this policy:

THE NAMED INSURED IS HEREBY AMENDED TO READ:

HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC;HIGHMARK HOLDINGS, LLC DBA VILLAGE TOWNHOUSES

NO CHARGE FOR THIS ENDORSEMENT

**This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, Title 48 RCW. It is not protected by any Washington state guaranty association law. John Pierce**

Authorized Representative Signature

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 3

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| 156AUI 62063-00 | 6/12/2013 | American Safety Indemnity Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC;HIGHMARK HOLDINGS, LLC DBA VILLAGE TOWNHOUSES DBA SYLVAN WAY MEADOWS HOA | Cornerstone Underwriting Partners |

COVERAGE PARTS AFFECTED

ALL

CHANGES

It is hereby understood and agreed that the following changes apply to this policy:

THE NAMED INSURED IS HEREBY AMENDED TO READ:

HIGHMARK HOMES, LLC; NEWPORT HOMES, LLC; TM HOMES, LLC;HIGHMARK HOLDINGS, LLC DBA VILLAGE TOWNHOUSES DBA SYLVAN WAY MEADOWS HOA

NO CHARGE FOR THIS ENDORSEMENT

Authorized Representative Signature

# EXHIBIT

# # 14



# HIGHMARK HOMES, LLC
16400 Southcenter Pkwy #204
Tukwila, WA 98188

## MASTER SUBCONTRACTOR AGREEMENT

THIS AGREEMENT, made this __3__ day of __Dec_____, 2012 by HIGHMARK HOMES, LLC., hereinafter called the "Contractor" and
__Best siders corp__ hereinafter called the "Subcontractor". This Agreement and attached Addendums 1, 2, 3 and 4 shall be referred to as the
"Agreement", dated and noted above.

Subcontractor Name: _Best Siders Corporation_

Contact Name: _Sun  Jean_

Address: _2125 146th ST  CT  E_

City, State, Zip: _Tacoma, WA 98445_

Telephone: _(253)588-8823_ Fax: _(253)531-3553_ Cell: _(253)370-1080_

Email Address: _Sun@bestsiders.com_

Contractor's License # _BEST-SC*995DR_              Exp. Date: _11-01-2013_

L & I Acct # _009.386-00_              U.B.I. # _602105656_

(X) Corporation        ( ) Partnership        ( ) LLC        ( ) Individual

Federal Tax ID #: _91-2097940_          or Social Security #: _____

**ITEM 1. MASTER AGREEMENT:** The parties' hereto agree that from time to time from the date hereof until this Agreement is terminated that Contractor will contract with Subcontractor for the furnishings of materials and/or the performance of various work on projects being constructed by Contractor. The parties further agree that this Agreement shall be the master agreement between them and as such shall control the rights, privileges, duties and responsibilities between them, which arise out of Subcontractor furnishing any materials for and/or performing any work on Contractor's construction projects.

**ITEM 2. PROJECT MANAGEMENT:** Subcontractor shall designate a competent project manager, satisfactory to the Contractor, who shall be readily available to the project site and shall be empowered to act for the Subcontractor in all respects, if required. A competent foreman shall either be physically present at the project site or accessible to the Contractor by telephone between 7:00 a.m. and 6:30 p.m. Monday through Friday.

**ITEM 3. SCOPE OF WORK AND PRICE:** Subcontractor agrees to perform, supply and finish in a thorough and workmanlike manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of Contractor, the specific materials to be furnished and/or work to be performed per the agreed upon price. Subcontractor shall supply all equipment, tools, utilities, machinery, scaffolding and safety devices, etc. as required, at its own expense.

It shall be the Subcontractor's responsibility to perform field measurements, verify dimensions on drawings, be informed of all applicable building codes, and to obtain the appropriate inspections and certifications.

Materials delivered by a Subcontractor to the job site must be delivered pursuant to the job superintendent's instructions. It is the Subcontractor's responsibility to protect its unfinished work against loss or damage.

All extra or additional work requires advance written authorization. Extra or additional work performed without advance written authorization shall not be paid.

The Subcontractor is responsible for proper use and handling of materials and is further responsible for damage of any kind caused by the Subcontractor or his agents to the structure or premises. The Subcontractor is responsible for any delays caused to the Contractor or the owner due to interference with the work of other trades or Contractor at the job site. The Subcontractor is an independent Contractor rather than an employee of Contractor.

The Subcontractor is responsible for any loss or damage to materials or equipment furnished to the Subcontractor by Contractor.

Subcontractor shall submit in writing all proposed substitutions or variation from the plans, specification, and/or scope of work. Before proceeding, the Contractor must authorize any and all substitutions or variations in writing.

Subcontractor will comply with parking regulations and park in designated areas only. Absolutely, NO PARKING on any garage slab or driveway for any reason.

Subcontractor agrees to permit other Subcontractors reasonable opportunity for storage of materials and execution of their work, and shall properly coordinate its work with theirs. If any part of the work to be performed by Subcontractor depends, for proper execution, on the work of other Subcontractors or Contractor, Subcontractor shall immediately report defects or omissions that render such other work unsuitable for execution of its work. Proceeding with its work without such report of defects is an acceptance by Subcontractor of the work of others that precedes, or is performed simultaneously with its work.

Initial: _S_j_   Initial: _(signature)_

ITEM 4. TERMINATION: Work performed by a Subcontractor, and paid for by Contractor but later found to be defective, will be back charged to the Subcontractor unless corrected by the Subcontractor in a timely manner. In the event of a back charge, Contractor will withhold such funds against any balance due or to become due to the Subcontractor by Contractor.

ITEM 5. CLEAN UP: Subcontractor warrants that upon completion of each day and final completion of project or job, that he shall not leave any scraps, leftover materials and/or waste on the job site. All scraps, leftover materials and waste will be removed by Subcontractor and disposed of pursuant to the then existing governmental ordinances and regulations.

If Subcontractor enters on to a job site that has not been cleaned by the prior workman or subcontractor, he shall contact the Contractor immediately and the clean up due to the prior work shall be the responsibility of the Contractor. If Subcontractor is unable to contact Contractor, Subcontractor shall have the right to make a written list of the necessary clean up, said list to be submitted to the Contractor or his agent within 24 hours. If Contractor is not contacted as provided above, Subcontractor agrees that he shall be responsible for clearing work. By commencing work under subcontract, Subcontractor accepts the work previously performed by others.

Subcontractor shall regularly remove all refuse, waste and debris produced by his operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site or creates a safety concern. Avoidance of safety hazards through good housekeeping is a material part of Subcontractor's obligations. In the event of Subcontractor's failure or refusal to meet these requirements, refuse may be removed by Contractor and the cost of administration, removal and disposal shall be charged against the amount due Subcontractor.

In the event Subcontractor fails to leave a clean job site upon his completion of work, the Contractor shall call the office of the Subcontractor and advise him of the necessary clean up. Should Subcontractor fail to immediately comply with the clean up, Subcontractor agrees that Contractor may charge Subcontractor a clean-up fee, which will include, but not be limited to, all labor, equipment removal and all disposal fees, plus an administration fee of $250.00.

ITEM 6. EVIDENCE OF PAYMENT: Before issuance of any payment, Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, taxes and all known indebtedness connected with the Subcontractor's work and incurred prior to the date thereof has been satisfied. Contractor, at its sole option, shall have the right to require Subcontractor to provide lien releases by all persons supplying labor, materials, or services to Subcontractor for the job performed by Subcontractor and to withhold final payment until such releases are supplied.

ITEM 7. CONTRACT TIME EXTENSIONS: Upon notification by the Contractor, specifying therein the date on which Subcontractor's work shall commence; Subcontractor shall timely begin and diligently prosecute the work to completion. The Subcontractor agrees to promptly begin said work within three (3) working days after notification and continue with sufficient qualified workers so as not to delay the agreed upon schedule which may be revised from time to time. Attention is hereby directed to the fact that time is of the essence in this contract. Any Penalties against the Contractor due to the impromptue of the completion of work by the Subcontractor will be deducted from final payment of Subcontractor's account.

Subcontractor shall:

    Promptly respond to any Contractor's request for scheduling input data.

    Keep advised on its own initiative of the overall schedule of the project.

    Comply with both the overall schedule and any revisions thereof.

Subcontractor shall cooperate with Contractor in the scheduling and performing his or her work to avoid conflict or interference with the work of others and shall promptly submit shop drawings and samples required in order to perform work efficiently and in a manner that will not cause delay in the progress of the work of the Contractor or other Subcontractors.

It is not the responsibility of Contractor to make any Subcontractor aware of the Contractor's policies. It is the Subcontractor's responsibility to become accustomed and knowledgeable of the Contractor's policies.

ITEM 8. LOSS AND DAMAGE: Subcontractor shall be liable for any losses or damage caused by Subcontractor, his agents, employees and /or guests, to any work in place, any equipment and/or materials on the job site.

ITEM 9. COMPLIANCE WITH LAWS AND REGULATIONS: Subcontractor warrants to Contractor that Subcontractor has complied and will comply with, at its own expense at all times, all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder, including, but not by way of limitation, the OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 and the WASHINGTON INDUSTRIAL SAFETY HEALTH ACT: The Subcontractor covenants and agrees that in the event any liability is assessed against the Contractor because of failure of Subcontractor to comply with all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder then, Subcontractor shall pay and indemnify Contractor for such amounts and the Contractor may set off one hundred and fifty percent (150%) of any such fines, assessments, penalties, or liability of any nature resulting from such violation against amounts owing to the Subcontractor hereunder. Subcontractor further acknowledges that he has reviewed the Contractor's safety plan and agrees to abide by all of Contractor's rules and regulations.

ITEM 10. COMPLIANCE WITH DISCRIMINATION LAWS: Subcontractor agrees in connection with the performance of work under this Agreement not to discriminate against any employee, applicant or client because of race, religion, creed, color or national origin. The aforesaid provision shall include, but not be limited to the following: employment, upgrading, promotion, transfer, recruitment, advertising, layoff, termination, rates of pay or other form of compensation, selection for training, including apprenticeships. Subcontractor agrees to post hereafter in conspicuous places available for employees and applicants for employment, notices to be provided by Subcontractor's contracting office to the extent one is required, setting for the provisions of this nondiscrimination clause and Subcontractor's equal opportunity plan to the extent it is required by law.

ITEM 11. WORKER'S COMPENSATION: Subcontractor warrants to Contractor that Subcontractor has obtained (and will maintain continuous) worker's compensation (State Industrial Insurance) coverage for all employees of Subcontractor. If Subcontractor is a sole proprietor, that Subcontractor has obtained worker's compensation (State Industrial Insurance) coverage for the sole proprietor of Subcontractor in accordance with the worker's compensation laws of the

Initial: _____ Initial: _____

state of which the work is being performed. It is understood and agreed between the parties hereto that Subcontractor is an independent contractor and is not an employee of the Contractor.

ITEM 12.  PRODUCT AND LABOR WARRANTY:  Subcontractor contracts to perform all obligations in a workman like and timely manner, warrants that labor performed and materials supplied hereunder shall be new, free from defects and fit for the particular purpose the material was intended for a period of two (2) years from the date of completion of the whole of the work to be performed by Subcontractor, as provided herein.  Subcontractor agrees to bear all expenses for any repair, modifications or other actions necessary so that the labor performed and materials supplied hereunder comply with the warranty herein contained. The warranty work will be substantially completed within fourteen (14) calendar days from the date of Notice by the Contractor to the Subcontractor and completed within fifteen (15) days after the date of Notice to the Subcontractor.

Subcontractor shall provide Contractor with copies of written warranties on all products installed by Subcontractor.

It is understood that if said deficiency is not a warranty item, Subcontractor will immediately make this known to the homeowner and/or Contractor, giving a written estimate to repair the deficiency with an explanation as to the cause for non-warranty repairs.  It is understood that any non-warranty work or charges requested by homeowner after move-in are to be billed directly to homeowner by Subcontractor, and that Contractor accepts no liability for these services.

ITEM 13.  LIABILITY INSURANCE:  Subcontractor warrants to Contractor and will provide to the Contractor prior to the commencement of work or entry on the jobsite, a Certificate of Insurance for Public Liability, Premises/Operations, Bodily Injury/Property Damage, Broad Form Property Damage including On Going Completed Operations and Defense Costs, Products/Completed Operations for any work performed by on their behalf (by subcontractors or temporary labor), Contractual Liability insuring the obligations assumed by Subcontractor in this Agreement, Explosions, Collapse and Underground Hazards, Personal Injury Liability, Employer's Liability aka Washington State Stop Gap, Auto Liability for all Owned, Non-Owned & Hired Autos and Worker's Compensation Insurance for Subcontractor and Subcontractor's employees in the following minimum amounts, naming Contractor and Owner as "Additional Named Insured" on an ongoing basis and including defense costs in favor of the contractor with the appropriate forms CG2010 (Additional Insured) along with ACORD Form 25-S (Certificate of Liability Insurance).  The insurance carrier for the Subcontractor (and their subcontractors) must have an A.M. Best Rating of A- or better and be listed as such on the certificate of insurance.  The Subcontractors insurance cannot contain any exclusion with respect to the work that will be performed.  In the event Subcontractor allows its insurance to lapse, is underinsured, or provides insurance that contains exclusion contrary to the terms of this Subcontract, Contractor shall have the right, without notice, to obtain insurance on Subcontractor's behalf and charge Subcontractor for such insurance purchased on Subcontractor's behalf in accordance with the rates charged under Contractor's policy.  The insurance will not have any benefit to the Subcontractor and is limited to the work performed and ongoing exposures of the Contractor.

Subcontractor shall provide a Certificate of Insurance prior to starting work.  HIGHMARK HOMES, LLC shall be added as an Additional Insured on each subcontractors General and Automobile Liability policies, verified by a Certificate of Insurance and receipt of the Additional Insured form.  Limits on the Subcontractor's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of One Million dollars ($1,000,000) Per Occurrence, Two Million dollars ($2,000,000) General Aggregate and Two Million dollars ($2,000,000) Products/Completed Operations Aggregate.  If Excess Liability is required, the minimum acceptable Limits are One million ($1,000,000) Per Occurrence and One Million ($1,000,000) Aggregate.  No such insurance shall be cancelled without thirty (30) days prior written notice to the Contractor.  Subcontractor will be in breach of contract for failure to timely supply and maintain proper insurance at all times as warranted under this contract and evidenced by the certificate provided.

The subcontractor's general liability policy shall have a deductible amount of no greater than $10,000 per occurrence, provide a list of exclusions contained within their policies and disclose any claims paid, open reserves and past, pending or potential litigation.  It is the subcontractor's obligation under this contract to notify contractor if they are named in a lawsuit that reduces their limits of insurance available.

If you hire Subcontractors and/or Temporary Labor all of the requirements of this contract apply to them and you will be responsible to maintain certificates naming Contractor and Owner as additional insured owner of the project.  We reserve the right to ask for copies of your Subcontractor's certificates at any time.

The Subcontractor understands that it is their responsibility to have a current certificate on file, active Washington state contractor's license and failure to do so may result in being removed from job-site and/ or contractor withholding payment until proper and acceptable certificate is provided.

The subcontractor's acknowledges that CONTRACTOR MAY hire an outside vendor to obtain and monitor the Certificates of Insurance listed above and agrees to cooperate with their requests, which include, but not limited to the following;

1. Additional Insured Wording in the "Other Section"  regarding the specific project and list the Additional Insured form that must be attached.

2. Provide and attach to the certificate a list of your policy exclusions or include statement on certificate that there are no exclusions with respect to; multi-family, tract homes, air-space condos, construction defects, vertical construction, water damage, limitation on type of work/classification, land subsidence or any other adverse exclusion relating to the project..

3. If requested, provide Loss History or Statement from your Agent that the limits shown are available, not reserved or paid already.

4. Provide 30 days cancellation notification with written notification of 10 days of non-payment of premium

5. If requested, Per Project Aggregate Limit indicated on the Insurance under the General Liability Section.

6. If requested, Primary Additional Insured Status and/or Non-Contributory Additional Insured Status

In the event that Subcontractor's corporate form is dissolved or terminated by any means recognized under Washington law, Subcontractor expressly waives the benefit and defense of the two-year limitation on actions set forth in RCW 23B.14.340, but only to the extent of insurance coverage required by this subcontract.

Initial: ___   Initial: ___

ITEM 14. WAIVER OF SUBROGATION: Contractor's failure at any time to require performance of any provisions of the Agreement shall in no way affect Contractor's rights hereunder to enforce the same, nor shall such failure be considered in any respect a waiver by Contractor of any breach of this Agreement. Likewise, payment of any nature from contractor to Subcontractor shall not be construed as a waiver of any rights of Contractor under this Agreement.

ITEM 15. INDEMNIFICATION: Subcontractor shall indemnify Contractor in accordance with the indemnification addendum attached hereto as Reference #1.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

ITEM 16. DEFAULT: If Subcontractor refuses or fails to supply enough properly skilled workers or materials to maintain the schedule of work, refuses or fails to make prompt payment to Subcontractors or suppliers of labor, materials, services, fails to correct, replace or re-execute faulty or defective work done or materials furnished, disregards the law, ordinances, rules, regulations or orders of any public authority having jurisdiction, files for bankruptcy or is guilty of material breach of this Subcontract and fails to correct the default and maintain the corrected condition within two (2) working days of receipt of written notice of the default, the Contractor, with prejudice to any rights or remedies otherwise available to it, shall have the right to any or all of the following remedies:

Supply such numbers of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work or any part thereof, in which Subcontractor has failed to complete or perform after the above notice and to charge the cost thereof to Subcontractor who shall be liable for the payment of the same including reasonable overhead and profit.

Contract with one or more additional Subcontractors to perform such part of Subcontractor's work, as Contractor shall determine to provide completion of the project and charge the cost thereof to Subcontractor.

Withhold payment of any monies due or to become due to Subcontractor pending corrective action to the extent required and to the satisfaction of Contractor.

Terminate this Subcontract, use any materials, implements, equipment, appliances or tools furnished or belonging to Subcontractor to complete Subcontractor's work and furnish those materials, equipment and/or employ such workers as Contractor deems necessary to maintain the orderly progress of the work. Subcontractor's equipment shall only be utilized when Subcontractor and when procurement of substitute equipment will not delay completion of the project. All of the costs, including reasonable overhead, profit and attorney's fees incurred by Contractor in arranging to and performing Subcontractor's work shall be charged to Subcontractor. Contractor shall have the right to deduct such expenses from monies due or to become due to Subcontractor. Subcontractor shall be liable for the payment of any expenses incurred in excess of the unpaid balance of the Subcontract price.

In the event of any emergency, Contractor may proceed as above without notice.

ITEM 17. CHANGE ORDER: Written Change Order supplied and signed by the Contractor or its authorized agent shall only do changes, deletions or additions to items or work under this Agreement. Extra or additional work performed without advance written authorization shall not be paid.

ITEM 18. NOTICES: Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or by fax or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the address set-forth hereinafter or to such other address as either party may designate in writing and deliver as herein provided:

CONTRACTOR:    **HIGHMARK HOMES, LLC**

               **16400 Southcenter Pkwy #204**

               **Tukwila, WA 98188**

               **Phone:  253-277-0137        Fax:  253-277-0885**

SUBCONTRACTOR: Per Information provided on page one of this Agreement.

ITEM 19. SUPPLIERS: Subcontractor hereby certifies to Contractor that the names listed on Number 5 attached hereto are the names of all of the persons or firms which will supply materials directly to the job site for the work required by Subcontractor. Subcontractor further agrees to obtain approval prior to any changes and that Contractor may reject any names it deems necessary at its sole discretion.

ITEM 20. CONTINUANCE: In the event of death, dissolution, liquidation or any other incapacity (other than bankruptcy) of Subcontractor, Contractor may in their sole discretion affirm or terminate the obligations contained in this Agreement. In the event of affirmation, the estate, trustee or other entity terminating the affairs of the departed or dissolved party shall abide by all the terms, covenants and conditions of this Agreement. Each party shall give the other the name of a person authorized to do business in the event of death or incapacity.

ITEM 21. ARBITRATION AND ATTORNEY FEES: In the event that a dispute or disagreement shall arise by and between the parties' herein with respect to any of the terms, conditions or covenants hereof, then the same shall be subject to arbitration under the rules of the American Arbitration Association and such arbitration shall take place in KING County, in the State of Washington. In any such arbitration preceding the prevailing party shall be entitled to its reasonable costs and attorney's fees incurred and at such time shall be included in any award. The award rendered by the arbitration shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

ITEM 22. APPLICABLE LAW: This Agreement shall be governed and constructed in accordance with the law of the State of Washington and the venue of any dispute shall be in KING County, in the State of Washington and in accordance with the preceding section.

Initial: _____  Initial _____

ITEM 23. FURTHER ASSURANCES: The parties hereto agree to promptly execute and deliver any additional agreements or documents and to perform any other acts necessary to effectuate the purposes and intent of the Agreement. The parties hereto warrant they have all right, authority and power to enter into and bind themselves or their respective corporations by the terms of this Agreement.

ITEM 24. INTEGRATION: This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained and supersedes all prior negotiations, whether in writing, verbal or implied. This Agreement shall not be modified except in writing and executed by all parties hereto. In the event any provision is deemed to be unenforceable, the remaining provisions shall remain in full force and effect.

ITEM 25. HEADINGS: The headings of the several articles and sections herein are inserted for the convenience and are of reference and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

ITEM 26. COUNTERPARTS: For the convenience of the parties hereto, this Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

ITEM 27. CONSTRUCTION: Words of any gender used in this Agreement shall be held to include the other gender, any words in the singular, shall be held to include the plural when the sense requires. The parties hereto have both participated in the drafting of this document and have had the full opportunity to consult independent legal counsel and tax advisors. Therefore, the rule of construction that a document drawn by one party shall be construed against that party in a case of ambiguity should have no application herein.

ITEM 28. ASSIGNMENT: This Agreement shall not be assigned any third party without the expressed written consent of the other party.

IN WITNESS WHEREOF, the parties have hereto affixed their respective signatures the day and year written first above.

CONTRACTOR:                                SUBCONTRACTOR:

HIGHMARK HOMES, LLC                        _Best Siders Corp_

_Thomark Toller_                          _Sten Toon_

PLEASE PRINT NAME                          PLEASE PRINT NAME

_12-3-6_                                   _12-3-12_

DATED                                      DATED

Initial: _SJ_   Initial:

**HIGHMARK HOMES, LLC**
16400 Southcenter Pkwy #204
Tukwila, WA 98188

## MASTER SUBCONTRACTOR AGREEMENT
### REFERENCE #1

### HOLD HARMLESS AGREEMENT

# INDEMNIFICATION ADDENDUM

_Best Siders Corp_ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless HIGHMARK HOMES, LLC from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel- related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

## THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

CONTRACTOR:                                          SUBCONTRACTOR:

HIGHMARK HOMES, LLC                                  _Best Siders Corp_

_Thomas Tollin_                                      _Suoa Jean_

PLEASE PRINT NAME                                    PLEASE PRINT NAME

_12-03-_                                             _12-03-12_

DATED                                                DATED

Initial: _____  Initial: _____

**REFERENCE #2**

## SUBCONTRACTOR'S SUPPLIERS

Subcontractor: *Best Siders Corp*

Job's: _____

| Supplier: | Address: | Contact: | Phone #: | |
|-----------|----------|----------|----------|--|
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |
|           |          |          |          |  |

Initial: _____ Initial: _____

## SAFETY AND ACCIDENT PREVENTION PROGRAM

It is agreed on this ___03___ day of ___DEC___, 2012, by and between Highmark Homes, LLC, hereinafter called "Contractor" and ___BEST SIDERS CORP___ hereinafter called "Subcontractor".

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1. Have at least one valid CPR cardholder present.

2. Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3. Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4. Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5. Eye protection when danger of eye injury is present.

6. Hard hat when danger of falling and/or flying objects is present.

7. Hearing protection when required.

8. Respirators when required to protect workers from dust and fumes.

9. Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 296-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.

Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at the job site.

Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

Subcontractor agrees with the terms and conditions of the Disciplinary Schedule attached hereto. Breach of Contract Addendum may at the Contractor's option result in termination of the original contract between Contractor and Subcontractor.

CONTRACTOR:

HIGHMARK HOMES, LLC

_Thomas Tull_

PLEASE PRINT NAME

_12-03_

DATED

SUBCONTRACTOR:

_Best Siders Corp_

_Sun Jeon_

PLEASE PRINT NAME

_12-03-12_

DATED

Initial: ___  Initial: ___

# DISCIPLINARY SCHEDULE

While we are committed to using positive communication, training, and incentives and/or primary tools in implementing and enforcing our Accident Prevention Plan we realize that, in some cases, it will be necessary to enforce by means of disciplinary actions.

When workers are exposed to hazards in violation of WISHA and/or the Accident Prevention Plan for this job site, the following actions will be taken:

First offense:

Verbal reprimand.

Work in the area will be stopped until the hazard is abated.

Additional worker training will be requested.

Second offense:

Written reprimand.

Worker will be asked to leave the job site until additional training is accomplished and documented.

Third offense:

Written reprimand.

Worker will be permanently suspended from work at the job site.

We agree with the terms and conditions of this Disciplinary Schedule. We agree to provide additional worker training to assist in the enforcement of the safety program for this job site.

CONTRACTOR:

HIGHMARK HOMES, LLC

_Thom² Tolle_

PLEASE PRINT NAME

_12-03-1_

DATED

SUBCONTRACTOR:

_Best Siders Corp_

_Dan Jean_

PLEASE PRINT NAME

_12-03-12_

DATED

Initial: ___  Initial: ___



# *Best Siders Corporation*



2624 112th St. S. Unit B-2   Lakewood WA 98499
Phone: 253.588.8893   Fax: 253.531.3553

## FAX COVER SHEET

| To: *Highmark Homes, LLC* | From: *Sun* |
|---|---|
| ATTN: *Susan Ordonio* | Date: *12-03-2012* |
| Re: *Sub Pac* | |

| | URGENT | | REPLY ASAP | | PLEASE COMMENT | | PLEASE REVIEW | X | FOR YOUR INFO |
|---|---|---|---|---|---|---|---|---|---|

## *TOTAL  (13  )  PAGES  INCLUDING  COVER*

## COMMENT

B

**HIGHMARK HOMES, LLC**
18400 Southcenter Pkwy #204
Tukwila, WA 98188

## MASTER SUBCONTRACTOR AGREEMENT

THIS AGREEMENT, made this 30TH day of NOVEMBER, 2012 by HIGHMARK HOMES, LLC., hereinafter called the "Contractor" and ABST BUILDERS, hereinafter called the "Subcontractor". This Agreement and attached Addendums 1, 2, 3 and 4 shall be referred to as the "Agreement", dated and noted above.

Subcontractor Name: __ABST BUILDERS__

Contact Name: __BEN PEARSON__

Address: __X09 138TH ST E__

City, State, Zip: __TACOMA, WA 98446__

Telephone: (253) 557-5620 Fax: (253)539-0579 Cell: (253) 592-5620

Email Address: __ABST.BUILDERS@GMAIL.COM__

Contractor's License # __ABSTBGB950Q1__ Exp. Date: 1/6/2014

L & I Acct # __149,751-00__ U.B.I. # __602-555-476__

(X) Corporation ( ) Partnership ( ) LLC ( ) Individual

Federal Tax ID # __75-3203857__ or Social Security #: _____

ITEM 1. MASTER AGREEMENT: The parties' hereto agree that from time to time from the date hereof until this Agreement is terminated that Contractor will contract with Subcontractor for the furnishings of materials and/or the performance of various work on projects being constructed by Contractor. The parties further agree that this Agreement shall be the master agreement between them and as such shall control the rights, privileges, duties and responsibilities between them, which arise out of Subcontractor furnishing any materials for and/or performing any work on Contractor's construction projects.

ITEM 2. PROJECT MANAGEMENT: Subcontractor shall designate a competent project manager, satisfactory to the Contractor, who shall be readily available to the project site and shall be empowered to act for the Subcontractor in all respects, if required. A competent foreman shall either be physically present at the project site or accessible to the Contractor by telephone between 7:00 a.m. and 5:30 p.m. Monday through Friday.

ITEM 3. SCOPE OF WORK AND PRICE: Subcontractor agrees to perform, supply and finish in a thorough and workmanlike manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of Contractor, the specific materials to be furnished and/or work to be performed per the agreed upon price. Subcontractor shall supply all equipment, tools, utilities, machinery, scaffolding and safety devices, etc. as required, at its own expense.

It shall be the Subcontractor's responsibility to perform field measurements, verify dimensions on drawings, be informed of all applicable building codes, and to obtain the appropriate inspections and certifications.

Materials delivered by a Subcontractor to the job site must be delivered pursuant to the job superintendent's instructions. It is the Subcontractor's responsibility to protect its unfinished work against loss or damage.

All extra or additional work requires advance written authorization. Extra or additional work performed without advance written authorization shall not be paid.

The Subcontractor is responsible for proper use and handling of materials and is further responsible for damage of any kind caused by the Subcontractor or his agents to the structure or premises. The Subcontractor is responsible for any delays caused to the Contractor or the owner due to interference with the work of other trades or Contractor at the job site. The Subcontractor is an Independent Contractor rather than an employee of Contractor.

The Subcontractor is responsible for any loss or damage to materials or equipment furnished to the Subcontractor by Contractor.

Subcontractor shall submit in writing all proposed substitutions or variation from the plans, specification, and/or scope of work. Before proceeding, the Contractor must authorize any and all substitutions or variations in writing.

Subcontractor will comply with parking regulations and park in designated areas only. Absolutely, NO PARKING on any garage slab or driveway for any reason.

Subcontractor agrees to permit other Subcontractors reasonable opportunity for storage of materials and execution of their work, and shall properly coordinate its work with theirs. If any part of the work to be performed by Subcontractor depends, for proper execution, on the work of other Subcontractors or Contractor, Subcontractor shall immediately report defects or omissions that render such other work unsuitable for execution of its work. Proceeding with its work without such report of defects is an acceptance by Subcontractor of the work of others that precedes, or is performed simultaneously with its work.

Page 1 of 9

Initial: ___ Initial: ___

ITEM 4. TERMINATION: Work performed by a Subcontractor, and paid for by Contractor but later found to be defective, will be back charged to the Subcontractor unless corrected by the Subcontractor in a timely manner. In the event of a back charge, Contractor will withhold such funds against any balance due or to become due to the Subcontractor by Contractor.

ITEM 5. CLEAN UP: Subcontractor warrants that upon completion of each day and final completion of project or job, that he shall not leave any scraps, leftover materials and/or waste on the job site. All scraps, leftover materials and waste will be removed by Subcontractor and disposed of pursuant to the then existing governmental ordinances and regulations.

If Subcontractor enters on to a job site that has not been cleaned by the prior workman or subcontractor, he shall contact the Contractor immediately and the clean up due to the prior work shall be the responsibility of the Contractor. If Subcontractor is unable to contact Contractor, Subcontractor shall have the right to make a written list of the necessary clean up, said list to be submitted to the Contractor or his agent within 24 hours. If Contractor is not contacted as provided above, Subcontractor agrees that he shall be responsible for cleaning work. By commencing work under subcontract, Subcontractor accepts the work previously performed by others.

Subcontractor shall regularly remove all refuse, waste and debris produced by its operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site or creates a safety concern. Avoidance of safety hazards through good housekeeping is a material part of Subcontractor's obligations. In the event of Subcontractor's failure or refusal to meet these requirements, refuse may be removed by Contractor and the cost of administration, removal and disposal shall be charged against the amount due Subcontractor.

In the event Subcontractor fails to leave a clean job site upon his completion of work, the Contractor shall call the office of the Subcontractor and advise him of the necessary clean up. Should Subcontractor fail to immediately comply with the clean up, Subcontractor agrees that Contractor may charge Subcontractor a clean-up fee, which will include, but not be limited to, all labor, equipment removal and all disposal fees, plus an administration fee of $250.00.

ITEM 6. EVIDENCE OF PAYMENT: Before issuance of any payment, Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, taxes and all known indebtedness connected with the Subcontractor's work and incurred prior to the date thereof has been satisfied. Contractor, at its sole option, shall have the right to require Subcontractor to provide lien releases by all persons supplying labor, materials, or services to Subcontractor for the job performed by Subcontractor and to withhold final payment until such releases are supplied.

ITEM 7. CONTRACT TIME EXTENSIONS: Upon notification by the Contractor, specifying therein the date on which Subcontractor's work shall commence; Subcontractor shall timely begin and diligently prosecute the work to completion. The Subcontractor agrees to promptly begin said work within three (3) working days after notification and continue with sufficient qualified workers so as not to delay the agreed upon schedule which may be revised from time to time. Attention is hereby directed to the fact that time is of the essence in this contract. Any Penalties against the Contractor due to the impromptus of the completion of work by the Subcontractor will be deducted from final payment of Subcontractor's account.

Subcontractor shall:

Promptly respond to any Contractor's request for scheduling input data;

Keep advised on its own initiative of the overall schedule of the project.

Comply with both the overall schedule and any revisions thereof.

Subcontractor shall cooperate with Contractor in the scheduling and performing his or her work to avoid conflict or interference with the work of others and shall promptly submit shop drawings and samples required in order to perform work efficiently and in a manner that will not cause delay in the progress of the work of the Contractor or other Subcontractors.

It is not the responsibility of Contractor to make any Subcontractor aware of the Contractor's policies. It is the Subcontractor's responsibility to become accustomed and knowledgeable of the Contractor's policies.

ITEM 8. LOSS AND DAMAGE: Subcontractor shall be liable for any losses or damage caused by Subcontractor, his agents, employees and /or guests, to any work in place, any equipment and/or materials on the job site.

ITEM 9. COMPLIANCE WITH LAWS AND REGULATIONS: Subcontractor warrants to Contractor that Subcontractor has complied and will comply with, at its own expense at all times, all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder, including, but not by way of limitation, the OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 and the WASHINGTON INDUSTRIAL SAFETY HEALTH ACT. The Subcontractor covenants and agrees that in the event any liability is assessed against the Contractor because of failure of Subcontractor to comply with all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder then, Subcontractor shall pay and indemnify Contractor for such amounts and the Contractor may set off one hundred and fifty percent (150%) of any such fines, assessments, penalties, or liability of any nature resulting from such violation against amounts owing to the Subcontractor hereunder. Subcontractor further acknowledges that he has reviewed the Contractor's safety plan and agrees to abide by all of Contractor's rules and regulations.

ITEM 10. COMPLIANCE WITH DISCRIMINATION LAWS: Subcontractor agrees in connection with the performance of work under this Agreement not to discriminate against any employee, applicant or client because of race, religion, creed, color or national origin. The aforesaid provision shall include, but not be limited to the following: employment, upgrading, promotion, transfer, recruitment, advertising, layoff, termination, raise of pay or other form of compensation, selection for training, including apprenticeships. Subcontractor agrees to post hereinafter in conspicuous places available for employees and applicants for employment, notices to be provided by Subcontractor's contracting office to the extent one is required, setting for the provisions of this nondiscrimination clause and Subcontractor's equal opportunity plan to the extent it is required by law.

ITEM 11. WORKER'S COMPENSATION: Subcontractor warrants to Contractor that Subcontractor has obtained (and will maintain continuous) worker's compensation (State Industrial Insurance) coverage for all employees of Subcontractor. If Subcontractor is a sole proprietor, that Subcontractor has obtained worker's compensation (State Industrial Insurance) coverage for the sole proprietor of Subcontractor in accordance with the worker's compensation laws of the

Initial: _____  Initial: _____

state of which the work is being performed. It is understood and agreed between the parties hereto that Subcontractor is an independent contractor and is not an employee of the Contractor.

ITEM 12. PRODUCT AND LABOR WARRANTY: Subcontractor contracts to perform all obligations in a workman like and timely manner, warrants that labor performed and materials supplied hereunder shall be new, free from defects and fit for the particular purpose the material was intended for a period of two (2) years from the date of completion of the whole of the work to be performed by Subcontractor, as provided herein. Subcontractor agrees to bear all expenses for any repair, modifications or other actions necessary so that the labor performed and materials supplied hereunder comply with the warranty herein contained. The warranty work will be substantially completed within fourteen (14) calendar days from the date of Notice by the Contractor to the Subcontractor and completed within fifteen (15) days after the date of Notice to the Subcontractor.

Subcontractor shall provide Contractor with copies of written warranties on all products installed by Subcontractor.

It is understood that if said deficiency is not a warranty item, Subcontractor will immediately make this known to the homeowner and/or Contractor, giving a written estimate to repair the deficiency with an explanation as to the cause for non-warranty repairs. It is understood that any non-warranty work or changes requested by homeowner after move-in are to be billed directly to homeowner by Subcontractor, and that Contractor accepts no liability for these services.

ITEM 13. LIABILITY INSURANCE: Subcontractor warrants to Contractor and will provide to the Contractor prior to the commencement of work or entry on the jobsite, a Certificate of Insurance for Public Liability, Premises/Operations, Bodily Injury/Property Damage, Broad Form Property Damage including On Going Completed Operations and Defense Costs, Products/Completed Operations for any work performed by on their behalf (by subcontractors or temporary labor), Contractual Liability insuring the obligations assumed by Subcontractor's in this Agreement, Explosions, Collapse and Underground Hazards, Personal Injury Liability, Employer's Liability aka Washington State Stop Gap, Auto Liability for all Owned, Non-Owned & Hired Autos and Worker's Compensation Insurance for Subcontractor and Subcontractor's employees in the following minimum amounts, naming Contractor and Owner as 'Additional Named Insured" on an ongoing basis and including defense costs in favor of the contractor with the appropriate forms CG2010 (Additional Insured) along with ACORD Form 25-S (Certificate of Liability Insurance). The insurance carrier for the Subcontractor (and their subcontractors) must have an A.M. Best Rating of A- or better and be listed as such on the certificate of insurance. The Subcontractors insurance cannot contain any exclusion with respect to the work that will be performed. In the event Subcontractor allows its insurance to lapse, is underinsured, or provides insurance that contains exclusion contrary to the terms of this Subcontract, Contractor shall have the right, without notice, to obtain insurance on Subcontractor's behalf and charge Subcontractor for such insurance purchased on Subcontractor's behalf in accordance with the rates charged under Contractor's policy. The insurance will not have any benefit to the Subcontractor and is limited to the work performed and ongoing exposures of the Contractor.

Subcontractor shall provide a Certificate of Insurance prior to starting work. HIGHMARK HOMES, LLC shall be added as an Additional Insured on each subcontractor General and Automobile Liability policies, verified by a Certificate of Insurance and receipt of the Additional Insured form. Limits on the Subcontractor's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of One Million dollars ($1,000,000) Per Occurrence, Two Million dollars ($2,000,000) General Aggregate and Two Million dollars ($2,000,000) Products/Completed Operations Aggregate. If Excess Liability is required, the minimum acceptable Limits are One million ($1,000,000) Per Occurrence and One Million ($1,000,000) Aggregate. No such insurance shall be cancelled without thirty (30) days prior written notice to the Contractor. Subcontractor will be in breach of contract for failure to timely supply and maintain proper insurance at all times as warranted under this contract and evidenced by the certificate provided.

The subcontractor's general liability policy shall have a deductible amount of no greater than $10,000 per occurrence, provide a list of exclusions contained within their policies and disclose any claims paid, open reserves and paid, pending or potential litigation. It is the subcontractor's obligation under this contract to notify contractor if they are named in a lawsuit that reduces their limits of insurance available.

If you hire Subcontractors and/or Temporary Labor all of the requirements of this contract apply to them and you will be responsible to maintain certificates naming Contractor and Owner as additional insured owner of the project. We reserve the right to ask for copies of your Subcontractor's certificates at any time.

The Subcontractor understands that it is their responsibility to have a current certificate on file, active Washington state contractor's license and failure to do so may result in being removed from job-site and/ or contractor withholding payment until proper and acceptable certificate is provided.

The subcontractor's acknowledges that CONTRACTOR MAY hire an outside vendor to obtain and monitor the Certificates of Insurance listed above and agrees to cooperate with their requests, which include, but not limited to the following:

1. Additional Insured Wording in the "Other Section" regarding the specific project and list the Additional Insured form that must be attached.

2. Provide and attach to the certificate a list of your policy exclusions or include statement on certificate that there are no exclusions with respect to; multi-family, tract homes, air-space condos, construction defects, vertical construction, water damage, limitation on type of work/classification, land subsidence or any other adverse exclusion relating to the project.

3. If requested, provide Loss History or Statement from your Agent that the limits shown are available, not reserved or paid already.

4. Provide 30 days cancellation notification with written notification of 10 days of non-payment of premium

5. If requested, Per Project Aggregate Limit indicated on the Insurance under the General Liability Section.

6. If requested, Primary Additional Insured Status and/or Non-Contributory Additional Insured Status

In the event that Subcontractor's corporate form is dissolved or terminated by any means recognized under Washington law, Subcontractor expressly waives the benefit and defense of the two-year limitation on actions set forth in RCW 23B.14.340, but only to the extent of insurance coverage required by this subcontract.

Page 3 of 9

Initial: _____   Initial: _____

ITEM 14. WAIVER OF SUBROGATION: Contractor's failure at any time to require performance of any provisions of the Agreement shall in no way affect Contractor's rights hereunder to enforce the same, nor shall such failure be considered in any respect a waiver by Contractor of any breach of this Agreement. Likewise, payment of any nature from contractor to Subcontractor shall not be construed as a waiver of any rights of Contractor under this Agreement.

ITEM 15. INDEMNIFICATION: Subcontractor shall indemnify Contractor in accordance with the indemnification addendum attached hereto as Reference #1.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

ITEM 16. DEFAULT: If Subcontractor refuses or fails to supply enough properly skilled workers or materials to maintain the schedule of work, refuses or fails to make prompt payment to Subcontractors or suppliers of labor, materials, services, fails to correct, replace or re-execute faulty or defective work done or materials furnished, disregards the law, ordinances, rules, regulations or orders of any public authority having jurisdiction, files for bankruptcy or is guilty of material breach of this Subcontract and fails to correct the default and maintain the corrected condition within two (2) working days of receipt of written notice of the default, the Contractor, with prejudice to any rights or remedies otherwise available to it, shall have the right to any or all of the following remedies:

Supply such numbers of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work or any part thereof, in which Subcontractor has failed to complete or perform after the above notice and to charge the cost thereof to Subcontractor who shall be liable for the payment of the same including reasonable overhead and profit.

Contract with one or more additional Subcontractors to perform such part of Subcontractor's work, as Contractor shall determine to provide completion of the project and charge the cost thereof to Subcontractor.

Withhold payment of any monies due or to become due to Subcontractor pending corrective action to the extent required and to the satisfaction of Contractor.

Terminate this Subcontract, use any materials, implements, equipment, appliances or tools furnished or belonging to Subcontractor to complete Subcontractor's work and furnish those materials, equipment and/or employ such workers as Contractor deems necessary to maintain the orderly progress of the work. Subcontractor's equipment shall only be utilized when Subcontractor and when procurement of substitute equipment will not delay completion of the project. All of the costs, including reasonable overhead, profit and attorney's fees incurred by Contractor in arranging to and performing Subcontractor's work shall be charged to Subcontractor, Contractor shall have the right to deduct such expenses from monies due or to become due to Subcontractor. Subcontractor shall be liable for the payment of any expenses incurred in excess of the unpaid balance of the Subcontract price.

In the event of any emergency, Contractor may proceed as above without notice.

ITEM 17. CHANGE ORDER: Written Change Order supplied and signed by the Contractor or its authorized agent shall only do changes, deletions or additions to items or work under this Agreement. Extra or additional work performed without advance written authorization shall not be paid.

ITEM 18. NOTICES: Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or by fax or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the address set-forth hereinafter or to such other address as either party may designate in writing and deliver as herein provided:

CONTRACTOR:    HIGHMARK HOMES, LLC

                   16400 Southcenter Pkwy #204

                   Tukwila, WA 98188

                   Phone: 253-277-0137     Fax: 253-277-0985

SUBCONTRACTOR: Per information provided on page one of this Agreement.

ITEM 19. SUPPLIERS: Subcontractor hereby certifies to Contractor that the names listed on Number 5 attached hereto are the names of all of the persons or firms which will supply materials directly to the job site for the work required by Subcontractor. Subcontractor further agrees to obtain approval prior to any changes and that Contractor may reject any names it deems necessary at its sole discretion.

ITEM 20. CONTINUANCE: In the event of death, dissolution, liquidation or any other incapacity (other than bankruptcy) of Subcontractor, Contractor may in their sole discretion affirm or terminate the obligations contained in this Agreement. In the event of affirmation, the estate, trustee or other entity terminating the affairs of the departed or dissolved party shall abide by all the terms, covenants and conditions of this Agreement. Each party shall give the other the name of a person authorized to do business in the event of death or incapacity.

ITEM 21. ARBITRATION AND ATTORNEY FEES: In the event that a dispute or disagreement shall arise by and between the parties' herein with respect to any of the terms, conditions or covenants hereof, then the same shall be subject to arbitration under the rules of the American Arbitration Association and such arbitration shall take place in KING County, in the State of Washington. In any such arbitration preceding the prevailing party shall be entitled to its reasonable costs and attorney's fees incurred and at such time shall be included in any award. The award rendered by the arbitration shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

ITEM 22. APPLICABLE LAW: This Agreement shall be governed and constructed in accordance with the law of the State of Washington and the venue of any dispute shall be in KING County, in the State of Washington and in accordance with the preceding section.

Initial: _____    Initial: _____

ITEM 23. FURTHER ASSURANCES: The parties hereto agree to promptly execute and deliver any additional agreements or documents and to perform any other acts necessary to effectuate the purposes and intent of the Agreement. The parties hereto warrant they have all right, authority and power to enter into and bind themselves or their respective corporations by the terms of this Agreement.

ITEM 24. INTEGRATION: This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained and supersedes all prior negotiations, whether in writing, verbal or implied. This Agreement shall not be modified except in writing and executed by all parties hereto. In the event any provision is deemed to be unenforceable, the remaining provisions shall remain in full force and effect.

ITEM 25. HEADINGS: The headings of the several articles and sections herein are inserted for the convenience and are of reference and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

ITEM 26. COUNTERPARTS: For the convenience of the parties hereto, this Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

ITEM 27. CONSTRUCTION: Words of any gender used in this Agreement shall be held to include the other gender, any words in the singular, shall be held to include the plural when the sense requires. The parties hereto have both participated in the drafting of this document and have had the full opportunity to consult independent legal counsel and tax advisors. Therefore, the rule of construction that a document drawn by one party shall be construed against that party in a case of ambiguity should have no application herein.

ITEM 28. ASSIGNMENT: This Agreement shall not be assigned any third party without the expressed written consent of the other party.

IN WITNESS WHEREOF, the parties have hereto affixed their respective signatures the day and year written first above.

CONTRACTOR:

HIGHMARK HOMES, LLC

_____

_T h o m a s   T o l l e_____

PLEASE PRINT NAME

_11 29_____

DATED

SUBCONTRACTOR:

_ASST BUILDERS_

_____

_Ben Morrison_____

PLEASE PRINT NAME

_11/30/12_____

DATED

Initial: ___  Initial: ___

## MASTER SUBCONTRACTOR AGREEMENT
### REFERENCE #1

### HOLD HARMLESS AGREEMENT

## INDEMNIFICATION ADDENDUM

ABST BUILDERS _____ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless **HIGHMARK HOMES, LLC** from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel-related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

## THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

CONTRACTOR:

HIGHMARK HOMES, LLC

_signature_

Thomas Tull

PLEASE PRINT NAME
11/29

DATED

SUBCONTRACTOR:

ABST BUILDERS

_signature_

CON PEARSON

PLEASE PRINT NAME
11/30/17

DATED

Initial: _____ Initial: TL

# SUBCONTRACTOR'S SUPPLIERS

Subcontractor: _____

Job # _____

| Supplier: | Address: | Contact: | Phone #: |
|-----------|----------|----------|----------|
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |
|           |          |          |          |

Initial: _____ Initial: 

# SAFETY AND ACCIDENT PREVENTION PROGRAM

It is agreed on this **30TH** day of **NOVEMBER**, 2012, by and between Highmark Homes, LLC, hereinafter called "Contractor" and **ASST NAILLORS**, hereinafter called "Subcontractor".

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1. Have at least one valid CPR cardholder present.

2. Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3. Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4. Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5. Eye protection when danger of eye injury is present.

6. Hard hat when danger of falling and/or flying objects is present.

7. Hearing protection when required.

8. Respirators when required to protect workers from dust and fumes.

9. Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 296-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC 296-155 and the safety program and that violations are immediately corrected.

Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

Subcontractor agrees with the terms and conditions of the Disciplinary Schedule attached herein. Breach of Contract Addendum may at the Contractor's option result in termination of the original contract between Contractor and Subcontractor.

CONTRACTOR:

HIGHMARK HOMES, LLC

PLEASE PRINT NAME
**11/29**

DATED

SUBCONTRACTOR:

**ABST NAILORS**

PLEASE PRINT NAME
**11/30/12**

DATED

Initial: ___   Initial: ___

# DISCIPLINARY SCHEDULE

While we are committed to using positive communication, training, and incentives and/or primary tools in implementing and enforcing our Accident Prevention Plan we realize that, in some cases, it will be necessary to enforce by means of disciplinary actions.

When workers are exposed to hazards in violation of WISHA and/or the Accident Prevention Plan for this job site, the following actions will be taken:

First offense:

Verbal reprimand.

Work in the area will be stopped until the hazard is abated.

Additional worker training will be requested.

Second offense:

Written reprimand.

Worker will be asked to leave the job site until additional training is accomplished and documented.

Third offense:

Written reprimand.

Worker will be permanently suspended from work at the job site.

We agree with the terms and conditions of this Disciplinary Schedule. We agree to provide additional worker training to assist in the enforcement of the safety program for this job site.

CONTRACTOR:
HIGHMARK HOMES, LLC

Thumas Toller

PLEASE PRINT NAME

DATED

SUBCONTRACTOR:
ABST BUILDERS

BEN PEARSON

PLEASE PRINT NAME
11/30/12

DATED

Initial:            Initial:

C

**HIGHMARK HOMES, LLC**
16400 Southcenter Pkwy #204
Tukwila, WA 98188

<u>**MASTER SUBCONTRACTOR AGREEMENT**</u>
**REFERENCE #1**

### HOLD HARMLESS AGREEMENT
# INDEMNIFICATION ADDENDUM

_ABST BUILDERS_ _____ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless **HIGHMARK HOMES, LLC** from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel- related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

## THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

CONTRACTOR:

HIGHMARK HOMES, LLC

_____

PI FASE PRINT NAME
11-3b-r
_____
DATED

SUBCONTRACTOR:

_ABST BUILDERS_

_BON PEARSON_

PLEASE PRINT NAME
11/30/12
_____
DATED

SCANNED

Initial: ___  Initial: _____

# SAFETY AND ACCIDENT PREVENTION PROGRAM

It is agreed on this 30TH day of NOVEMBER _____, 2012, by and between Highmark Homes, LLC, hereinafter called "Contractor" and ASST BUILDERS _____ hereinafter called "Subcontractor".

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1. Have at least one valid CPR cardholder present.

2. Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3. Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4. Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5. Eye protection when danger of eye injury is present.

6. Hard hat when danger of falling and/or flying objects is present.

7. Hearing protection when required.

8. Respirators when required to protect workers from dust and fumes.

9. Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 266-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.

Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

Subcontractor agrees with the terms and conditions of the Disciplinary Schedule attached hereto. Breach of Contract Addendum may at the Contractor's option result in termination of the original contract between Contractor and Subcontractor.

CONTRACTOR:

HIGHMARK HOMES, LLC

_____

_____
PLEASE PRINT NAME

11-30 _____
DATED

SUBCONTRACTOR:

ASST BUILDERS

_____

BEN PEARSON
PLEASE PRINT NAME

11/30/12
DATED

Initial: _____ Initial: _____

# DISCIPLINARY SCHEDULE

While we are committed to using positive communication, training, and incentives and/or primary tools in implementing and enforcing our Accident Prevention Plan we realize that, in some cases, it will be necessary to enforce by means of disciplinary actions.

When workers are exposed to hazards in violation of WISHA and/or the Accident Prevention Plan for this job site, the following actions will be taken:

First offense:

Verbal reprimand.

Work in the area will be stopped until the hazard is abated.

Additional worker training will be requested.

Second offense:

Written reprimand.

Worker will be asked to leave the job site until additional training is accomplished and documented.

Third offense:

Written reprimand.

Worker will be permanently suspended from work at the job site.

We agree with the terms and conditions of this Disciplinary Schedule. We agree to provide additional worker training to assist in the enforcement of the safety program for this job site.

CONTRACTOR:

HIGHMARK HOMES, LLC

_____

_____
PLEASE PRINT NAME

11-3 ℓ
DATED

SUBCONTRACTOR:

ABST BUILDERS

BEN PEARSON
_____
PLEASE PRINT NAME

11/30/12
DATED

Page 9 of 9



Initial: _____   Initial: _____

# MASTER SERVICE AGREEMENT
## Highmark Homes, LLC

This Master Service Agreement is entered into this ___8___ day of __April__ , 20 _13_ by and between Highmark Homes, LLC ("Contractor") and __RK Fencing & Construction__ ("Service Provider") on the following terms and conditions.

## 1. GENERAL PROVISIONS

1.1 Contractor wishes to utilize the services of Service Provider to provide services to Contractor and/or property owners ("Owner") introduced by Contractor. Based upon the nature of the services provided by Service Provider, it is anticipated that it will be impractical to enter into a separate agreement for services each time Contractor desires to use Service Provider.

1.2 Contractor requires that Service Provider meet certain terms and conditions before Contractor uses Service Provider's services. These terms and conditions are set forth in this agreement.

1.3 In order to expedite the use of Service Provider's services each time they are needed, the parties agree to enter into and comply with this Master Service Agreement prior to any actual services being performed. It is the intent of the parties that these terms and conditions apply to any provision of services by Service Provider regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.

1.4 This Master Service Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty days notice. The cancellation of this agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

1.5 Entering into this Master Service Agreement shall not obligate either Contractor or Service Provider to agree to any subsequent request for services or to any volume of business during the term of the policy. The intent is that if any services are procured and agreed to by both parties during the term of this agreement, the terms and conditions of this Master Service Agreement shall apply. If any terms and conditions on any preprinted written form from Contractor conflicts with this Master Service Agreement, the terms of this Master Service Agreement apply and supersede any other terms to the contrary.

1.6 Service Provider acknowledges that the only means by which any Contractor employee or agent is authorized to procure services from the Service Provider is in writing (purchase order, contract, memo, etc.). Any oral request for services is expressly not authorized by Contractor's corporate officers and Service Provider may not rely upon any representation by any Contractor employee or agent to the contrary.

1.7 No request for payment by any Service Provider will be approved by Contractor unless all terms and conditions of this Master Service Agreement are fulfilled.

## 2. INDEMNIFICATIONS AND INSURANCE

2.1. The Work performed by the Service Provider shall be at the risk of the Service Provider exclusively. Service Provider shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

2.2. Upon execution of this Master Service Agreement, and prior to Service Provider's commencing (in the broadest possible sense of the word) any work or services, the Service Provider shall carry general liability insurance and the Service Provider shall provide Contractor with a Certificate of Insurance naming Contractor as an additional insured hereunder. The coverage available to Contractor as an additional insured, shall not be less than shown under section 2.8 of this contract and providing coverage for completed operations, products liability, and contractual liability.



## SUBCONTRACTOR AGREEMENT

The Subcontractor is an Independent Contractor rather than an employee of Contractor. The Subcontractor is responsible for any loss or damage to materials or equipment furnished to the Subcontractor by Contractor.

Subcontractor shall submit in writing all proposed substitutions or variation from the plans, specification, and or scope of work. Before proceeding, the Contractor must authorize any and all substitutions or variations in writing.

Subcontractor will comply with parking regulations and park in designated areas only. Absolutely, NO PARKING on any garage slab or driveway for any reason.

Subcontractor agrees to permit other Subcontractors reasonable opportunity for storage of materials and execution of their work, and shall properly coordinate its work with theirs.

If any part of the work to be performed by Subcontractor depends, for proper execution, on the work of other Subcontractors or Contractor, Subcontractor shall immediately report defects or omissions that render such other work unsuitable for execution of its work. Proceeding with its work without such report of defects is an acceptance by Subcontractor of the work of others that precedes, or is performed simultaneously with its work.

**ITEM 4. TERMINATION:** Work performed by a Subcontractor, and paid for by Contractor but later found to be defective, will be back charged to the Subcontractor unless corrected by the Subcontractor in a timely manner. In the event of a back charge, Contractor will withhold such funds against any balance due or to become due to the Subcontractor by Contractor.

**ITEM 5. CLEAN UP:** Subcontractor warrants that upon completion of each day and final completion of project or job, that he shall not leave any scraps, leftover materials and or waste on the job site. All scraps, leftover materials and waste will be removed by Subcontractor and disposed of pursuant to the then existing governmental ordinances and regulations.

If Subcontractor enters on to a job site that has not been cleaned by the prior workman or subcontractor, he shall contact the Contractor immediately and the cleanup due to the prior work shall be the responsibility of the Contractor. If Subcontractor is unable to contact Contractor, Subcontractor shall have the right to make a written list of the necessary clean up, said list to be submitted to the Contractor or his agent within 24 hours. If Contractor is not contacted as provided above, Subcontractor agrees that he shall be responsible for cleaning work. By commencing work under subcontract, Subcontractor accepts the work previously performed by others.

Subcontractor shall regularly remove all refuse, waste and debris produced by its operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site or creates a safety concern. Avoidance of safety hazards through good housekeeping is a material part of Subcontractor's obligations. In the event of Subcontractor's failure or refusal to meet these requirements, refuse may be removed by Contractor and the cost of administration, removal and disposal shall be charged against the amount due Subcontractor.

In the event Subcontractor fails to leave a clean job site upon his completion of work, the Contractor shall call the office of the Subcontractor and advise him of the necessary clean up. Should Subcontractor fail to immediately comply with the cleanup, Subcontractor agrees that Contractor may charge Subcontractor a cleanup fee, which will include, but not be limited to, all labor, equipment removal and all disposal fees, plus an administration fee of $100.00.

**ITEM 6. EVIDENCE OF PAYMENT:** Before issuance of any payment, Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, taxes and all known indebtedness connected with the Subcontractor's work and incurred prior to the date thereof has been satisfied. Contractor, at its sole option, shall have the right to require Subcontractor to provide lien releases by all persons supplying labor, materials, or services to Subcontractor for the job performed by Subcontractor and to withhold final payment until such releases are supplied.

**ITEM 7. CONTRACT TIME EXTENSIONS:** Upon notification by the Contractor, specifying therein the date on which

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

Subcontractor's work shall commence: Subcontractor shall timely begin and diligently prosecute the work to completion. The Subcontractor agrees to promptly begin said work within three (3) working days after notification and continue with sufficient qualified workers so as not to delay the agreed upon schedule which may be revised from time to time. Attention is hereby directed to the fact that time is of the essence in this contract. Any Penalties against the Contractor due to the impromptus of the completion of work by the Subcontractor will be deducted from final payment of Subcontractor's account.

Subcontractor shall promptly respond to any Contractor's request for scheduling input data, keep advised on its own initiative of the overall schedule of the project, and comply with both the overall schedule and any revisions thereof. Subcontractor shall cooperate with Contractor in the scheduling and performing his or her work to avoid conflict or interference with the work of others and shall promptly submit shop drawings and samples required in order to perform work efficiently and in a manner that will not cause delay in the progress of the work of the Contractor or other Subcontractors.

It is not the responsibility of Contractor to make any Subcontractor aware of the Contractor's policies. It is the Subcontractor's responsibility to become accustomed and knowledgeable of the Contractor's policies.

**ITEM 8. LOSS AND DAMAGE:** Subcontractor shall be liable for any losses or damage caused by Subcontractor, his agents, employees and /or guests, to any work in place, any equipment and/or materials on the job site.

**ITEM 9. COMPLIANCE WITH LAWS AND REGULATIONS:** Subcontractor warrants to Contractor that Subcontractor has complied and will comply with, at its own expense at all times, all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder, including, but not by way of limitation, the OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 and the WASHINGTON INDUSTRIAL SAFETY HEALTH ACT. The Subcontractor covenants and agrees that in the event any liability is assessed against the Contractor because of failure of Subcontractor to comply with all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder then, Subcontractor shall pay and indemnify Contractor for such amounts and the Contractor may set off one hundred and fifty percent (150%) of any such fines, assessments, penalties, or liability of any nature resulting from such violation against amounts owing to the Subcontractor hereunder. Subcontractor further acknowledges that he has reviewed the Contractor's safety plan and agrees to abide by all of Contractor's rules and regulations.

**ITEM 10. COMPLIANCE WITH DISCRIMINATION LAWS:** Subcontractor agrees in connection with the performance of work under this Agreement not to discriminate against any employee, applicant or client because of race, religion, creed, color or national origin. The aforesaid provision shall include, but not be limited to the following: employment, upgrading, promotion, transfer, recruitment, advertising, layoff, termination, raise of pay or other form of compensation, selection for training, including apprenticeships. Subcontractor agrees to post hereafter in conspicuous places available for employees and applicants for employment, notices to be provided by Subcontractor's contracting office to the extent one is required, setting for the provisions of this nondiscrimination clause and Subcontractor's equal opportunity plan to the extent it is required by law.

**ITEM 11. WORKER'S COMPENSATION:** Subcontractor warrants to Contractor that Subcontractor has obtained, and will maintain, continuous worker's compensation (State Industrial Insurance) coverage for all employees of Subcontractor. If Subcontractor is a sole proprietor, that Subcontractor has obtained worker's compensation (State Industrial Insurance) coverage for the sole proprietor of Subcontractor in accordance with the worker's compensation laws of the State of Washington. It is understood and agreed between the parties hereto that Subcontractor is an independent contractor and is not an employee of the Contractor.

**ITEM 12. PRODUCT AND LABOR WARRANTY:** Subcontractor contracts to perform all obligations in a workman like and timely manner, warrants that labor performed and materials supplied hereunder shall be new, free from defects and fit for the particular purpose the material was intended for a period of two (2) years from the date of completion of the whole of the work to be performed by Subcontractor, as provided herein. Subcontractor agrees to bear all expenses for any repair, modifications or other actions necessary so that the labor performed and materials supplied hereunder comply with the warranty herein contained. The warranty work will be substantially completed within fourteen (14) calendar days from the date of notice by the Contractor to the Subcontractor and completed within fifteen (15) days after the date of notice to the Subcontractor.

Subcontractor shall provide Contractor with copies of written warranties on all products installed by Subcontractor.

Contractor Initial _____    Subcontractor Initial _____

## SUBCONTRACTOR AGREEMENT

It is understood that if said deficiency is not a warranty item, Subcontractor will immediately make this known to the homeowner and or Contractor, giving a written estimate to repair the deficiency with an explanation as to the cause for non-warranty repairs. It is understood that any non-warranty work or changes requested by homeowner after move-in are to be billed directly to homeowner by Subcontractor, and that Contractor accepts no liability for these services.

**ITEM 13. LIABILITY INSURANCE**: Subcontractor warrants to Contractor and will provide to the Contractor prior to the commencement of work or entry on the jobsite, a Certificate of Insurance for Public Liability, Premises Operations, Bodily Injury/Property Damage, Broad Form Property Damage including On Going Completed Operations and Defense Costs. Products Completed Operations for any work performed by on their behalf (by subcontractors or temporary labor). Contractual Liability insuring the obligations assumed by Subcontractor's in this Agreement, Explosions, Collapse and Underground Hazards, Personal Injury Liability, Employer's Liability aka Washington State Stop Gap, Auto Liability for all Owned, Non-Owned & Hired Autos and Worker's Compensation Insurance for Subcontractor and Subcontractor's employees in the following minimum amounts, naming Contractor and Owner as "Additional Named Insured" on an ongoing basis and including defense costs in favor of the contractor with the appropriate forms CG2010 (Additional Insured) along with ACORD Form 25-S (Certificate of Liability Insurance). The insurance carrier for the Subcontractor (and their subcontractors) must have an A.M. Best Rating of A- or better and be listed as such on the certificate of insurance. The Subcontractors insurance cannot contain any exclusion with respect to the work that will be performed. In the event Subcontractor allows its insurance to lapse, is underinsured, or provides insurance that contains exclusion contrary to the terms of this Subcontract, Contractor shall have the right, without notice, to obtain insurance on Subcontractor's behalf and charge Subcontractor for such insurance purchased on Subcontractor's behalf in accordance with the rates charged under Contractor's policy. The insurance will not have any benefit to the Subcontractor and is limited to the work performed and ongoing exposures of the Contractor.

Subcontractor shall provide a Certificate of Insurance prior to starting work. MTT Construction LLC shall be added as an Additional Insured on each subcontractor General and Automobile Liability policies, verified by a Certificate of Insurance and receipt of the Additional Insured form. Limits on the Subcontractor's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of One Million dollars ($1,000,000) Per Occurrence, Two Million dollars ($2,000,000) General Aggregate and Two Million dollars ($2,000,000) Products/Completed Operations Aggregate. If Excess Liability is required, the minimum acceptable Limits are One million ($1,000,000) Per Occurrence and One Million ($1,000,000) Aggregate. No such insurance shall be cancelled without thirty (30) days prior written notice to the Contractor. Subcontractor will be in breach of contract for failure to timely supply and maintain proper insurance at all times as warranted under this contract and evidenced by the certificate provided.

The subcontractor's general liability policy shall have a deductible amount of no greater than $10,000 per occurrence, provide a list of exclusions contained within their policies and disclose any claims paid, open reserves and past, pending or potential litigation. It is the subcontractor's obligation under this contract to notify contractor if they are named in a lawsuit that reduces their limits of insurance available.

If you hire Subcontractors and/or Temporary Labor all of the requirements of this contract apply to them and you will be responsible to maintain certificates naming Contractor and Owner as additional insured owner of the project. We reserve the right to ask for copies of your Subcontractor's certificates at any time.

The Subcontractor understands that it is their responsibility to have a current certificate on file, active Washington State Contractor's license and failure to do so may result in being removed from job-site and/ or contractor withholding payment until proper and acceptable certificate is provided.

The subcontractor's acknowledges that Contractor may hire an outside vendor to obtain and monitor the Certificates of Insurance listed above and agrees to cooperate with their requests, which include, but not limited to the following:

Additional Insured Wording in the "Other Section" regarding the specific project and list the Additional Insured form that must be attached.

Contractor Initial 

Subcontractor Initial

# SUBCONTRACTOR AGREEMENT

Provide and attach to the certificate a list of your policy exclusions or include statement on certificate that there are no exclusions with respect to: multi-family, tract homes, air-space condos, construction defects, vertical construction, water damage, limitation on type of work/classification, land subsidence or any other adverse exclusion relating to the project.

If requested, provide Loss History or Statement from your Agent that the limits shown are available, not reserved or paid already.

Provide 30 days cancellation notification with written notification of 10 days of non-payment of premium

If requested, Per Project Aggregate Limit indicated on the Insurance under the General Liability Section.

If requested, Primary Additional Insured Status and/or Non-Contributory Additional Insured Status

In the event that Subcontractor's corporate form is dissolved or terminated by any means recognized under Washington law, Subcontractor expressly waives the benefit and defense of the two-year limitation on actions set forth in RCW 23B.14.340, but only to the extent of insurance coverage required by this subcontract.

**ITEM 14. WAIVER OF SUBROGATION:** Contractor's failure at any time to require performance of any provisions of the Agreement shall in no way affect Contractor's rights hereunder to enforce the same, nor shall such failure be considered in any respect a waiver by Contractor of any breach of this Agreement. Likewise, payment of any nature from contractor to Subcontractor shall not be construed as a waiver of any rights of Contractor under this Agreement.

**ITEM 15. INDEMNIFICATION:** Subcontractor shall indemnify Contractor in accordance with the indemnification addendum attached hereto as Addendum #1.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

**ITEM 16. DEFAULT:** If Subcontractor refuses or fails to supply enough properly skilled workers or materials to maintain the schedule of work, refuses or fails to make prompt payment to Subcontractors or suppliers of labor, materials, services, fails to correct, replace or re-execute faulty or defective work done or materials furnished, disregards the law, ordinances, rules, regulations or orders of any public authority having jurisdiction, files for bankruptcy or is guilty of material breach of this Subcontract and fails to correct the default and maintain the corrected condition within two (2) working days of receipt of written notice of the default, the Contractor, with prejudice to any rights or remedies otherwise available to it, shall have the right to any or all of the following remedies:

- Supply such numbers of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work or any part thereof, in which Subcontractor has failed to complete or perform after the above notice and to charge the cost thereof to Subcontractor who shall be liable for the payment of the same including reasonable overhead and profit.

- Contract with one or more additional Subcontractors to perform such part of Subcontractor's work, as Contractor shall determine to provide completion of the project and charge the cost thereof to Subcontractor.

- Withhold payment of any monies due or to become due to Subcontractor pending corrective action to the extent required and to the satisfaction of Contractor. Terminate this Subcontract, use any materials, implements, equipment, appliances or tools furnished or belonging to Subcontractor to complete Subcontractor's work and furnish those materials, equipment and/or employ such workers as Contractor deems necessary to maintain the orderly progress of the work.

Subcontractor's equipment shall only be utilized when Subcontractor and when procurement of substitute equipment will not delay

Contractor Initial _____                         Subcontractor Initial _____

## SUBCONTRACTOR AGREEMENT

completion of the project. All of the costs, including reasonable overhead, profit and attorney's fees incurred by Contractor in arranging to and performing Subcontractor's work shall be charged to Subcontractor. Contractor shall have the right to deduct such expenses from monies due or to become due to Subcontractor. Subcontractor shall be liable for the payment of any expenses incurred in excess of the unpaid balance of the Subcontract price.

In the event of any emergency, Contractor may proceed as above without notice.

**ITEM 17. CHANGE ORDER:** Written Change Order supplied and signed by the Contractor or its authorized agent shall only do changes, deletions or additions to items or work under this Agreement. Extra or additional work performed without advance written authorization shall not be paid.

**ITEM 18. NOTICES:** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or by fax or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the address set-forth hereinafter or to such other address as either party may designate in writing and deliver as herein provided:

CONTRACTOR: 16400 Southcenter Pkwy #210 : Tukwila, WA 98188  Phone: 253-981-4388 : Fax: 253-277-0985

SUBCONTRACTOR: Per information provided on page one of this Agreement.

**ITEM 19. CONTINUANCE:** In the event of death, dissolution, liquidation or any other incapacity (other than bankruptcy) of Subcontractor, Contractor may in their sole discretion affirm or terminate the obligations contained in this Agreement. In the event of affirmation, the estate, trustee or other entity terminating the affairs of the departed or dissolved party shall abide by all the terms, covenants and conditions of this Agreement. Each party shall give the other the name of a person authorized to do business in the event of death or incapacity.

**ITEM 20. ARBITRATION AND ATTORNEY FEES:** In the event that a dispute or disagreement shall arise by and between the parties' herein with respect to any of the terms, conditions or covenants hereof, then the same shall be subject to arbitration under the rules of the American Arbitration Association and such arbitration shall take place in King County, in the State of Washington. In any such arbitration preceding the prevailing party shall be entitled to its reasonable costs and attorney's fees incurred and at such time shall be included in any award. The award rendered by the arbitration shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

**ITEM 21. APPLICABLE LAW:** This Agreement shall be governed and constructed in accordance with the law of the State of Washington and the venue of any dispute shall be in King County, in the State of Washington and in accordance with the preceding section.

**ITEM 22. FURTHER ASSURANCES:** The parties hereto agree to promptly execute and deliver any additional agreements or documents and to perform any other acts necessary to effectuate the purposes and intent of the Agreement. The parties hereto warrant they have all right, authority and power to enter into and bind themselves or their respective corporations by the terms of this Agreement.

**ITEM 23. INTEGRATION:** This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained and supersedes all prior negotiations, whether in writing, verbal or implied. This Agreement shall not be modified except in writing and executed by all parties hereto. In the event any provision is deemed to be unenforceable, the remaining provisions shall remain in full force and effect.

**ITEM 24. HEADINGS:** The headings of the several articles and sections herein are inserted for the convenience and are of reference and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

**ITEM 25. COUNTERPARTS:** For the convenience of the parties hereto, this Agreement may be executed in one or more

Contractor Initial _____          Subcontractor Initial _____

## SUBCONTRACTOR AGREEMENT

counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

__ITEM 26. CONSTRUCTION:__ Words of any gender used in this Agreement shall be held to include the other gender, any words in the singular, shall be held to include the plural when the sense requires. The parties hereto have both participated in the drafting of this document and have had the full opportunity to consult independent legal counsel and tax advisors. Therefore, the rule of construction that a document drawn by one party shall be construed against that party in a case of ambiguity should have no application herein.

__ITEM 27. ASSIGNMENT:__ This Agreement shall not be assigned any third party without the expressed written consent of the other party.

IN WITNESS WHEREOF, the parties have hereto affixed their respective signatures the day and year written first above.

By: _____
Agent for Contractor

Subcontractor Name: *Pacific Overland Dev. Inc.*

_Dianne Christensen_
Signature

_Dianne Christensen / Accounting Manager_
Print Name and Title

Contractor Initial _____

Subcontractor Initial _DC_

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #1

### HOLD HARMLESS AGREEMENT AND INDEMNIFICATION ADDENDUM

_Pacific Overhead Door Inc_ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless Contractor from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel-related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

_Dianne Christison_
Signature

_Dianne Christison / Accounting Manager_
Print Name and Title

Contractor Initial _7_          Subcontractor Initial _DC_

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #2

*SAFETY AND ACCIDENT PREVENTION PROGRAM*

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1. Have at least one valid CPR cardholder present.

2. Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3. Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4. Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5. Eye protection when danger of eye injury is present.

6. Hard hat when danger of falling and/or flying objects is present.

7. Hearing protection when required.

8. Respirators when required to protect workers from dust and fumes.

9. Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 266-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

15. Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

16. Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.

17. Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

18. Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary. Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

19. It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

20. Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

_Pacific Wichman Door, Inc._
Subcontractor Name

_Dianne Christensen_
Signature

_Dianne Christensen / Accounting Manager_
Print Name and Title

Contractor Initial

Subcontractor Initial

# MASTER SERVICE AGREEMENT

**This Master Service Agreement is entered into this 20th day of October 2014** by and   Erik, LLC ("Contractor") and Highmark Homes/ MTT  Construction on the following terms and conditions.

## 1. GENERAL PROVISIONS

1.1 Contractor wishes to utilize the services of Service Provider to provide services to Contractor and/or property owners ("Owner") introduced by Contractor. Based upon the nature of the services provided by Service Provider, it is anticipated that it will be impractical to enter into a separate agreement for services each time Contractor desires to use Service Provider.

1.2 Contractor requires that Service Provider meet certain terms and conditions before Contractor uses Service Provider's services. These terms and conditions are set forth in this agreement.

1.3 In order to expedite the use of Service Provider's services each time they are needed, the parties agree to enter into and comply with this Master Service Agreement prior to any actual services being performed. It is the intent of the parties that these terms and conditions apply to any provision of services by Service Provider regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.

1.4 This Master Service Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty days notice. The cancellation of this agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

1.5 Entering into this Master Service Agreement shall not obligate either Contractor or Service Provider to agree to any subsequent request for services or to any volume of business during the term of the policy. The intent is that if any services are procured and agreed to by both parties during the term of this agreement, the terms and conditions of this Master Service Agreement shall apply. If any terms and conditions on any preprinted written form from Contractor conflicts with this Master Service Agreement, the terms of this Master Service Agreement apply and supersede any other terms to the contrary.

1.6 Service Provider acknowledges that the only means by which any Contractor employee or agent is authorized to procure services from the Service Provider is in writing (purchase order, contract, memo, etc.). Any oral request for services is expressly not authorized by Contractor's corporate officers and Service Provider may not rely upon any representation by any Contractor employee or agent to the contrary.

1.7 No request for payment by any Service Provider will be approved by Contractor unless all terms and conditions of this Master Service Agreement are fulfilled.

## 2. INDEMNIFICATIONS AND INSURANCE

2.1. The Work performed by the Service Provider shall be at the risk of the Service Provider exclusively. Service Provider shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

2.2. Upon execution of this Master Service Agreement, and prior to Service Provider's commencing (in the broadest possible sense of the word) any work or services, the Service Provider shall carry general liability insurance and the Service Provider shall provide Contractor with a Certificate of Insurance naming Contractor as an additional insured hereunder. The coverage available to Contractor as an additional insured, shall not be less than shown under section 2.8 of this contract and providing coverage for completed operations, products liability, and contractual liability.

2.3  The obligation of indemnity in this Agreement shall survive the termination of this Agreement and specifically includes Service Provider's duty as Indemnitor to hold harmless and defend the Indemnities' for any and all such loss

following completion of Service Provider's insurance carrier's inability to comply with the additional insured, including completed operations, provisions contained in the insurance requirements of this agreement.

2.4. The insurance coverage required under paragraph 2.8 shall be of sufficient type, scope, and duration to ensure coverage of the Service Provider and Contractor for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of the Contractor in relation to the Project.

2.5. Annually, the Service Provider shall supply Contractor with a new and replacement Certificate of Insurance. Not less than two weeks prior to the expiration, cancellation or termination, the Service Provider will provide the contractor with a new additional insured endorsement naming the Contractor as an additional named insured.

2.6. Additionally, and prior to commencement of services, the Service Provider shall provide Contractor with a Certificate of Insurance showing automobile liability insurance coverage for the Service Provider and any employees, agents, or sub-Service Providers of the Service Provider for any vehicles (owned or non-owned) which enter Contractor's premises at the direction of the Service Provider, its employees, agents, or sub-Service Providers in relation to performance of the Work.

2.7 Service Provider agrees to defend, indemnify, and hold Contractor harmless and, if requested by Contractor, the Owner, their consultants, agents and employees of any of them, from and against any and all claims, suits, losses or liability, including attorneys' fees and litigation expenses, for or on account of injury to or death of persons, including Service Provider's employees, Service Provider's subcontractors or their employees, or damage to or destruction of property, or any bond obtained for same, caused, in whole or in part, by any act or omission, or alleged act or omission, of Service Provider, its employees or agents, whether caused in part by a party indemnified hereunder.

2.8 Limits on the Service Provider's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of:

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products/Comp. Ops Aggregate | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Per Occurrence | $1,000,000 |
| Auto Liability  (including Non-owned & Hired Auto Liability) | $1,000,000 |
| Employer's Liability | $1,000,000 |

2.9 Service Provider and all of its employees shall follow all applicable safety and health laws and requirements pertaining to its work and the conduct thereof, but not limited to, compliance with all applicable laws, ordinances, rules, regulations, and orders issued by a public authority, whether federal, state or local, including OSHA and any safety measures required by Contractor. Service Provider shall immediately report to Contractor all accidents, occupational injuries, and illness involving its employees or those of its subcontractors, relating to the Work or which cause any injury to a third party or which cause damage to the property of Owner, Contractor or a third party. Service Provider shall promptly furnish to Contractor copies of any worker's compensation report of injury or illness forms filed by any of its employees or those of its subcontractors and when requested, assist Contractor in any investigation it may conduct of any such accident, injury or illness.

## 3. WARRANTY AND REPRESENTATIONS

The Service Provider represents and warrants that all materials, labor and/or systems furnished by the Service Provider in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years.

## 4. SAFETY STANDARDS

Service Provider agrees that the Service Provider and all employees of the Service Provider are required to fully comply with and implement all government laws (OSHA) pertaining to safety standards. Service Provider agrees that any fines, assessments or penalties imposed upon the Contractor by failure of the Service Provider or his employees to comply with the government standards will be fully charged back and paid for by the Service Provider.

**THE UNDERSIGNED HEREBY CERTIFY THAT SECTION 2.7 REGARDING "INDEMNIFICATION" WAS MUTUALLY NEGOTIATED.**

Effective as of the date first set forth above.

CONTRACTOR: ERIk ARELLANO

By: _____

Its: owner

SERVICE PROVIDER: _____

By: Thomas Tur~

Its: mana~

D

Dave Sherwood 253-355-4063
E-MAIL SS. Home Repair @ HoTMAil.com

## MASTER SERVICE AGREEMENT
Highmark Homes, LLC

This Master Service Agreement is entered into this _15_ day of _January_, 20_15_ by and between Highmark Homes, LLC ("Contractor") and _S&S Home Repair Inc._ ("Service Provider") on the following terms and conditions.

### 1. GENERAL PROVISIONS

1.1 Contractor wishes to utilize the services of Service Provider to provide services to Contractor and/or property owners ("Owner") introduced by Contractor. Based upon the nature of the services provided by Service Provider, it is anticipated that it will be impractical to enter into a separate agreement for services each time Contractor desires to use Service Provider.

1.2 Contractor requires that Service Provider meet certain terms and conditions before Contractor uses Service Provider's services. These terms and conditions are set forth in this agreement.

1.3 In order to expedite the use of Service Provider's services each time they are needed, the parties agree to enter into and comply with this Master Service Agreement prior to any actual services being performed. It is the intent of the parties that these terms and conditions apply to any provision of services by Service Provider regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.

1.4 This Master Service Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty days notice. The cancellation of this agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

1.5 Entering into this Master Service Agreement shall not obligate either Contractor or Service Provider to agree to any subsequent request for services or to any volume of business during the term of the policy. The intent is that if any services are procured and agreed to by both parties during the term of this agreement, the terms and conditions of this Master Service Agreement shall apply. If any terms and conditions on any preprinted written form from Contractor conflicts with this Master Service Agreement, the terms of this Master Service Agreement apply and supersede any other terms to the contrary.

1.6 Service Provider acknowledges that the only means by which any Contractor employee or agent is authorized to procure services from the Service Provider is in writing (purchase order, contract, memo, etc.). Any oral request for services is expressly not authorized by Contractor's corporate officers and Service Provider may not rely upon any representation by any Contractor employee or agent to the contrary.

1.7 No request for payment by any Service Provider will be approved by Contractor unless all terms and conditions of this Master Service Agreement are fulfilled.

### 2. INDEMNIFICATIONS AND INSURANCE

2.1. The Work performed by the Service Provider shall be at the risk of the Service Provider exclusively. Service Provider shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

2.2. Upon execution of this Master Service Agreement, and prior to Service Provider's commencing (in the broadest possible sense of the word) any work or services, the Service Provider shall carry general liability insurance and the Service Provider shall provide Contractor with a Certificate of Insurance naming Contractor as an additional insured hereunder. The coverage available to Contractor as an additional insured, shall not be less than shown under section 2.8 of this contract and providing coverage for completed operations, products liability, and contractual liability.

INITIAL _DS_

2.3  The obligation of indemnity in this Agreement shall survive the termination of this Agreement and specifically includes Service Provider's duty as Indemnitor to hold harmless and defend the Indemnitees for any and all such loss following completion of Service Provider's insurance carrier's inability to comply with the additional insured, including completed operations, provisions contained in the insurance requirements of this agreement.

2.4.  The insurance coverage required under paragraph 2.8 shall be of sufficient type, scope, and duration to ensure coverage of the Service Provider and Contractor for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of the Contractor in relation to the Project.

2.5.  Annually, the Service Provider shall supply Contractor with a new and replacement Certificate of Insurance. Not less than two weeks prior to the expiration, cancellation or termination, the Service Provider will provide the contractor with a new additional insured endorsement naming the Contractor as an additional named insured.

2.6.  Additionally, and prior to commencement of services, the Service Provider shall provide Contractor with a Certificate of Insurance showing automobile liability insurance coverage for the Service Provider and any employees, agents, or sub-Service Providers of the Service Provider for any vehicles (owned or non-owned) which enter Contractor's premises at the direction of the Service Provider, its employees, agents, or sub-Service Providers in relation to performance of the Work.

2.7  Service Provider agrees to defend, indemnify, and hold Contractor harmless and, if requested by Contractor, the Owner, their consultants, agents and employees of any of them, from and against any and all claims, suits, losses or liability, including attorneys' fees and litigation expenses, for or on account of injury to or death of persons, including Service Provider's employees, Service Provider's subcontractors or their employees, or damage to or destruction of property, or any bond obtained for same, caused, in whole or in part, by any act or omission, or alleged act or omission, of Service Provider, its employees or agents, whether caused in part by a party indemnified hereunder.

2.8  Limits on the Service Provider's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of:

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products/Comp. Ops Aggregate | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Per Occurrence | $1,000,000 |
| Auto Liability  (including Non-owned | |
| & Hired Auto Liability) | $1,000,000 |
| Employer's Liability | $1,000,000 |

2.9  Service Provider and all of its employees shall follow all applicable safety and health laws and requirements pertaining to its work and the conduct thereof, but not limited to, compliance with all applicable laws, ordinances, rules, regulations, and orders issued by a public authority, whether federal, state or local, including OSHA and any safety measures required by Contractor. Service Provider shall immediately report to Contractor all accidents, occupational injuries, and illness involving its employees or those of its subcontractors, relating to the Work or which cause any injury to a third party or which cause damage to the property of Owner, Contractor or a third party. Service Provider shall promptly furnish to Contractor copies of any worker's compensation report of injury or illness forms filed by any of its employees or those of its subcontractors and when requested, assist Contractor in any investigation it may conduct of any such accident, injury or illness.

## 3.  WARRANTY AND REPRESENTATIONS

The Service Provider represents and warrants that all materials, labor and/or systems furnished by the Service Provider in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years.

INITIAL DS

## 4. SAFETY STANDARDS

Service Provider agrees that the Service Provider and all employees of the Service Provider are required to fully comply with and implement all government laws (OSHA) pertaining to safety standards. Service Provider agrees that any fines, assessments or penalties imposed upon the Contractor by failure of the Service Provider or his employees to comply with the government standards will be fully charged back and paid for by the Service Provider.

**THE UNDERSIGNED HEREBY CERTIFY THAT SECTION 2.7 REGARDING "INDEMNIFICATION" WAS MUTUALLY NEGOTIATED.**

Effective as of the date first set forth above.

**CONTRACTOR:** Highmark Homes, LLC

By: _____
Its: _____

**SERVICE PROVIDER:** SAS Home Reppaia INC

By: David Sherwoad
Its: President

**HIGHMARK HOMES, LLC**
16400 Southcenter Pkwy #204
Tukwila, WA 98188

## MASTER SUBCONTRACTOR AGREEMENT
### REFERENCE #1

### HOLD HARMLESS AGREEMENT

## INDEMNIFICATION ADDENDUM

S A S HomeRepair FLC (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless **HIGHMARK HOMES, LLC** from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel- related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

### THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

CONTRACTOR:

HIGHMARK HOMES, LLC

_____

_____

PLEASE PRINT NAME

_____

DATED

SUBCONTRACTOR:

S&S HomeRepair FUC.

_____

David Sherwood

PLEASE PRINT NAME

1-15-13

DATED

Initial: _DS_ Initial: _____

## SAFETY AND ACCIDENT PREVENTION PROGRAM

It is agreed on this _/ S_ day of _Saучену_, 2012, by and between **Highmark Homes, LLC**, hereinafter called "Contractor" and _S d S Home Repair I v c_ hereinafter called "Subcontractor".

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1.  Have at least one valid CPR cardholder present.

2.  Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3.  Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4.  Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5.  Eye protection when danger of eye injury is present.

6.  Hard hat when danger of falling and/or flying objects is present.

7.  Hearing protection when required.

8.  Respirators when required to protect workers from dust and fumes.

9.  Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 266-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.

Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

Subcontractor agrees with the terms and conditions of the Disciplinary Schedule attached hereto, Breach of Contract Addendum may at the Contractor's option result in termination of the original contract between Contractor and Subcontractor.

CONTRACTOR:

HIGHMARK HOMES, LLC

SUBCONTRACTOR:

_SdS Home Repair I vc_

_David Sherwood_

PLEASE PRINT NAME

PLEASE PRINT NAME

_1-15-13_

DATED

DATED

Initial: _P-2_ Initial: _____

E

# SUBCONTRACTOR AGREEMENT

THIS AGREEMENT is being made between _Highmark Homes_ hereinafter called the "Contractor" and
_Fili and Sons Construction Inc._ hereinafter called the "Subcontractor". This Agreement and attached Addenda
1, 2, and 3 shall be referred to as the "Agreement", dated and noted above.

Subcontractor Name: _Luis E. Zuniga_

Main Contact Name: _Luis Zuniga_ Position _President_

Mailing Address: _920 E. 35th St_ City _Tacoma_ State _WA_ Zip _98404_

Office Ph: _253-324-4491_ Fax: _____ Cell: _253-324-4491_ Alt: _____

Email Address: _LuisZuniga33@gmail.com_ Website: _____

Contractor's License# _FILISSC908BR_ Exp Date _3/7/16_ UBI: _602-975-827_

Will you have employees that will be working on our job site (present or future): [X] Yes [ ] No

**ITEM 1. MASTER AGREEMENT**: The parties hereto agree that from time to time from the date hereof until this Agreement is
terminated that Contractor will contract with Subcontractor for the furnishings of materials and/or the performance of various work
on projects being constructed by Contractor. The parties further agree that this Agreement shall be the master agreement between
them and as such shall control the rights, privileges, duties and responsibilities between them, which arise out of Subcontractor
furnishing any materials for and/or performing any work on Contractor's construction projects.

**ITEM 2. PROJECT MANAGEMENT**: Subcontractor shall designate a competent project manager, satisfactory to the Contractor,
who shall be readily available to the project site and shall be empowered to act for the Subcontractor in all respects, if required. A
competent foreman shall either be physically present at the project site or accessible to the Contractor by telephone between 7:00am
and 5:30pm Monday through Friday.

**ITEM 3. SCOPE OF WORK AND PRICE**: Subcontractor agrees to perform, supply and finish in a thorough and workmanlike
manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of
Contractor, the specific materials to be furnished and/or work to be performed per the agreed upon price is referenced herein as
Addendum #3.

Subcontractor shall supply all equipment, tools, utilities, machinery, scaffolding and safety devices, etc. as required, at their own
expense. It shall be the Subcontractor's responsibility to perform field measurements, verify dimensions on drawings, be informed of
all applicable building codes, and to obtain the appropriate inspections and certifications.

Materials delivered by a Subcontractor to the job site must be delivered pursuant to the job superintendent's instructions. It is the
Subcontractor's responsibility to protect its unfinished work against loss or damage.

All extra or additional work requires advance written authorization. Extra or additional work performed without advance written
authorization shall not be paid.

The Subcontractor is responsible for proper use and handling of materials and is further responsible for damage of any kind caused
by the Subcontractor or his agents to the structure or premises.

The Subcontractor is responsible for any delays caused to the Contractor or the owner due to interference with the work of other
trades or Contractor at the job site.

Contractor Initial  Subcontractor Initial _L.E.Z._

# SUBCONTRACTOR AGREEMENT

The Subcontractor is an Independent Contractor rather than an employee of Contractor. The Subcontractor is responsible for any loss or damage to materials or equipment furnished to the Subcontractor by Contractor.

Subcontractor shall submit in writing all proposed substitutions or variation from the plans, specification, and/or scope of work. Before proceeding, the Contractor must authorize any and all substitutions or variations in writing.

Subcontractor will comply with parking regulations and park in designated areas only. Absolutely, NO PARKING on any garage slab or driveway for any reason.

Subcontractor agrees to permit other Subcontractors reasonable opportunity for storage of materials and execution of their work, and shall properly coordinate its work with theirs.

If any part of the work to be performed by Subcontractor depends, for proper execution, on the work of other Subcontractors or Contractor, Subcontractor shall immediately report defects or omissions that render such other work unsuitable for execution of its work. Proceeding with its work without such report of defects is an acceptance by Subcontractor of the work of others that precedes, or is performed simultaneously with its work.

**ITEM 4. TERMINATION:** Work performed by a Subcontractor, and paid for by Contractor but later found to be defective, will be back charged to the Subcontractor unless corrected by the Subcontractor in a timely manner. In the event of a back charge, Contractor will withhold such funds against any balance due or to become due to the Subcontractor by Contractor.

**ITEM 5. CLEAN UP:** Subcontractor warrants that upon completion of each day and final completion of project or job, that he shall not leave any scraps, leftover materials and/or waste on the job site. All scraps, leftover materials and waste will be removed by Subcontractor and disposed of pursuant to the then existing governmental ordinances and regulations.

If Subcontractor enters on to a job site that has not been cleaned by the prior workman or subcontractor, he shall contact the Contractor immediately and the cleanup due to the prior work shall be the responsibility of the Contractor. If Subcontractor is unable to contact Contractor, Subcontractor shall have the right to make a written list of the necessary clean up, said list to be submitted to the Contractor or his agent within 24 hours. If Contractor is not contacted as provided above, Subcontractor agrees that he shall be responsible for cleaning work. By commencing work under subcontract, Subcontractor accepts the work previously performed by others.

Subcontractor shall regularly remove all refuse, waste and debris produced by its operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site or creates a safety concern. Avoidance of safety hazards through good housekeeping is a material part of Subcontractor's obligations. In the event of Subcontractor's failure or refusal to meet these requirements, refuse may be removed by Contractor and the cost of administration, removal and disposal shall be charged against the amount due Subcontractor.

In the event Subcontractor fails to leave a clean job site upon his completion of work, the Contractor shall call the office of the Subcontractor and advise him of the necessary clean up. Should Subcontractor fail to immediately comply with the cleanup, Subcontractor agrees that Contractor may charge Subcontractor a cleanup fee, which will include, but not be limited to, all labor, equipment removal and all disposal fees, plus an administration fee of $100.00.

**ITEM 6. EVIDENCE OF PAYMENT:** Before issuance of any payment, Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, taxes and all known indebtedness connected with the Subcontractor's work and incurred prior to the date thereof has been satisfied. Contractor, at its sole option, shall have the right to require Subcontractor to provide lien releases by all persons supplying labor, materials, or services to Subcontractor for the job performed by Subcontractor and to withhold final payment until such releases are supplied.

**ITEM 7. CONTRACT TIME EXTENSIONS:** Upon notification by the Contractor, specifying therein the date on which

Contractor Initial _____                    Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

Subcontractor's work shall commence; Subcontractor shall timely begin and diligently prosecute the work to completion. The Subcontractor agrees to promptly begin said work within three (3) working days after notification and continue with sufficient qualified workers so as not to delay the agreed upon schedule which may be revised from time to time. Attention is hereby directed to the fact that time is of the essence in this contract. Any Penalties against the Contractor due to the impromptus of the completion of work by the Subcontractor will be deducted from final payment of Subcontractor's account.

Subcontractor shall promptly respond to any Contractor's request for scheduling input data, keep advised on its own initiative of the overall schedule of the project, and comply with both the overall schedule and any revisions thereof. Subcontractor shall cooperate with Contractor in the scheduling and performing his or her work to avoid conflict or interference with the work of others and shall promptly submit shop drawings and samples required in order to perform work efficiently and in a manner that will not cause delay in the progress of the work of the Contractor or other Subcontractors.

It is not the responsibility of Contractor to make any Subcontractor aware of the Contractor's policies. It is the Subcontractor's responsibility to become accustomed and knowledgeable of the Contractor's policies.

**ITEM 8. LOSS AND DAMAGE:** Subcontractor shall be liable for any losses or damage caused by Subcontractor, his agents, employees and /or guests, to any work in place, any equipment and/or materials on the job site.

**ITEM 9. COMPLIANCE WITH LAWS AND REGULATIONS:** Subcontractor warrants to Contractor that Subcontractor has complied and will comply with, at its own expense at all times, all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder, including, but not by way of limitation, the OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 and the WASHINGTON INDUSTRIAL SAFETY HEALTH ACT: The Subcontractor covenants and agrees that in the event any liability is assessed against the Contractor because of failure of Subcontractor to comply with all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder then, Subcontractor shall pay and indemnify Contractor for such amounts and the Contractor may set off one hundred and fifty percent (150%) of any such fines, assessments, penalties, or liability of any nature resulting from such violation against amounts owing to the Subcontractor hereunder. Subcontractor further acknowledges that he has reviewed the Contractor's safety plan and agrees to abide by all of Contractor's rules and regulations.

**ITEM 10. COMPLIANCE WITH DISCRIMINATION LAWS:** Subcontractor agrees in connection with the performance of work under this Agreement not to discriminate against any employee, applicant or client because of race, religion, creed, color or national origin. The aforesaid provision shall include, but not be limited to the following: employment, upgrading, promotion, transfer, recruitment, advertising, layoff, termination, raise of pay or other form of compensation, selection for training, including apprenticeships. Subcontractor agrees to post hereafter in conspicuous places available for employees and applicants for employment, notices to be provided by Subcontractor's contracting office to the extent one is required, setting for the provisions of this nondiscrimination clause and Subcontractor's equal opportunity plan to the extent it is required by law.

**ITEM 11. WORKER'S COMPENSATION:** Subcontractor warrants to Contractor that Subcontractor has obtained, and will maintain, continuous worker's compensation (State Industrial Insurance) coverage for all employees of Subcontractor. If Subcontractor is a sole proprietor, that Subcontractor has obtained worker's compensation (State Industrial Insurance) coverage for the sole proprietor of Subcontractor in accordance with the worker's compensation laws of the State of Washington. It is understood and agreed between the parties hereto that Subcontractor is an independent contractor and is not an employee of the Contractor.

**ITEM 12. PRODUCT AND LABOR WARRANTY:** Subcontractor contracts to perform all obligations in a workman like and timely manner, warrants that labor performed and materials supplied hereunder shall be new, free from defects and fit for the particular purpose the material was intended for a period of two (2) years from the date of completion of the whole of the work to be performed by Subcontractor, as provided herein. Subcontractor agrees to bear all expenses for any repair, modifications or other actions necessary so that the labor performed and materials supplied hereunder comply with the warranty herein contained. The warranty work will be substantially completed within fourteen (14) calendar days from the date of notice by the Contractor to the Subcontractor and completed within fifteen (15) days after the date of notice to the Subcontractor.

Subcontractor shall provide Contractor with copies of written warranties on all products installed by Subcontractor.

Contractor Initial _____    Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

It is understood that if said deficiency is not a warranty item, Subcontractor will immediately make this known to the homeowner and/or Contractor, giving a written estimate to repair the deficiency with an explanation as to the cause for non-warranty repairs. It is understood that any non-warranty work or changes requested by homeowner after move-in are to be billed directly to homeowner by Subcontractor, and that Contractor accepts no liability for these services.

**ITEM 13. LIABILITY INSURANCE**: Subcontractor warrants to Contractor and will provide to the Contractor prior to the commencement of work or entry on the jobsite, a Certificate of Insurance for Public Liability, Premises/Operations, Bodily Injury/Property Damage, Broad Form Property Damage including On Going Completed Operations and Defense Costs, Products/Completed Operations for any work performed by on their behalf (by subcontractors or temporary labor), Contractual Liability insuring the obligations assumed by Subcontractor's in this Agreement, Explosions, Collapse and Underground Hazards, Personal Injury Liability, Employer's Liability aka Washington State Stop Gap, Auto Liability for all Owned, Non-Owned & Hired Autos and Worker's Compensation Insurance for Subcontractor and Subcontractor's employees in the following minimum amounts, naming Contractor and Owner as "Additional Named Insured" on an ongoing basis and including defense costs in favor of the contractor with the appropriate forms CG2010 (Additional Insured) along with ACORD Form 25-S (Certificate of Liability Insurance). The insurance carrier for the Subcontractor (and their subcontractors) must have an A.M. Best Rating of A- or better and be listed as such on the certificate of insurance. The Subcontractors insurance cannot contain any exclusion with respect to the work that will be performed. In the event Subcontractor allows its insurance to lapse, is underinsured, or provides insurance that contains exclusion contrary to the terms of this Subcontract, Contractor shall have the right, without notice, to obtain insurance on Subcontractor's behalf and charge Subcontractor for such insurance purchased on Subcontractor's behalf in accordance with the rates charged under Contractor's policy. The insurance will not have any benefit to the Subcontractor and is limited to the work performed and ongoing exposures of the Contractor.

Subcontractor shall provide a Certificate of Insurance prior to starting work. MTT Construction LLC shall be added as an Additional Insured on each subcontractor General and Automobile Liability policies, verified by a Certificate of Insurance and receipt of the Additional Insured form. Limits on the Subcontractor's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of One Million dollars ($1,000,000) Per Occurrence, Two Million dollars ($2,000,000) General Aggregate and Two Million dollars ($2,000,000) Products/Completed Operations Aggregate. If Excess Liability is required, the minimum acceptable Limits are One million ($1,000,000) Per Occurrence and One Million ($1,000,000) Aggregate. No such insurance shall be cancelled without thirty (30) days prior written notice to the Contractor. Subcontractor will be in breach of contract for failure to timely supply and maintain proper insurance at all times as warranted under this contract and evidenced by the certificate provided.

The subcontractor's general liability policy shall have a deductible amount of no greater than $10,000 per occurrence, provide a list of exclusions contained within their policies and disclose any claims paid, open reserves and past, pending or potential litigation. It is the subcontractor's obligation under this contract to notify contractor if they are named in a lawsuit that reduces their limits of insurance available.

If you hire Subcontractors and/or Temporary Labor all of the requirements of this contract apply to them and you will be responsible to maintain certificates naming Contractor and Owner as additional insured owner of the project. We reserve the right to ask for copies of your Subcontractor's certificates at any time.

The Subcontractor understands that it is their responsibility to have a current certificate on file, active Washington State Contractor's license and failure to do so may result in being removed from job-site and/ or contractor withholding payment until proper and acceptable certificate is provided.

The subcontractor's acknowledges that Contractor may hire an outside vendor to obtain and monitor the Certificates of Insurance listed above and agrees to cooperate with their requests, which include, but not limited to the following;

Additional Insured Wording in the "Other Section" regarding the specific project and list the Additional Insured form that must be attached.

Contractor Initial _____   Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

Provide and attach to the certificate a list of your policy exclusions or include statement on certificate that there are no exclusions with respect to; multi-family, tract homes, air-space condos, construction defects, vertical construction, water damage, limitation on type of work/classification, land subsidence or any other adverse exclusion relating to the project.

If requested, provide Loss History or Statement from your Agent that the limits shown are available, not reserved or paid already.

Provide 30 days cancellation notification with written notification of 10 days of non-payment of premium

If requested, Per Project Aggregate Limit indicated on the Insurance under the General Liability Section.

If requested, Primary Additional Insured Status and/or Non-Contributory Additional Insured Status

In the event that Subcontractor's corporate form is dissolved or terminated by any means recognized under Washington law, Subcontractor expressly waives the benefit and defense of the two-year limitation on actions set forth in RCW 23B.14.340, but only to the extent of insurance coverage required by this subcontract.

**ITEM 14. WAIVER OF SUBROGATION:** Contractor's failure at any time to require performance of any provisions of the Agreement shall in no way affect Contractor's rights hereunder to enforce the same, nor shall such failure be considered in any respect a waiver by Contractor of any breach of this Agreement. Likewise, payment of any nature from contractor to Subcontractor shall not be construed as a waiver of any rights of Contractor under this Agreement.

**ITEM 15. INDEMNIFICATION:** Subcontractor shall indemnify Contractor in accordance with the indemnification addendum attached hereto as Addendum #1.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

**ITEM 16. DEFAULT:** If Subcontractor refuses or fails to supply enough properly skilled workers or materials to maintain the schedule of work, refuses or fails to make prompt payment to Subcontractors or suppliers of labor, materials, services, fails to correct, replace or re-execute faulty or defective work done or materials furnished, disregards the law, ordinances, rules, regulations or orders of any public authority having jurisdiction, files for bankruptcy or is guilty of material breach of this Subcontract and fails to correct the default and maintain the corrected condition within two (2) working days of receipt of written notice of the default, the Contractor, with prejudice to any rights or remedies otherwise available to it, shall have the right to any or all of the following remedies:

- Supply such numbers of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work or any part thereof, in which Subcontractor has failed to complete or perform after the above notice and to charge the cost thereof to Subcontractor who shall be liable for the payment of the same including reasonable overhead and profit.

- Contract with one or more additional Subcontractors to perform such part of Subcontractor's work, as Contractor shall determine to provide completion of the project and charge the cost thereof to Subcontractor.

- Withhold payment of any monies due or to become due to Subcontractor pending corrective action to the extent required and to the satisfaction of Contractor. Terminate this Subcontract, use any materials, implements, equipment, appliances or tools furnished or belonging to Subcontractor to complete Subcontractor's work and furnish those materials, equipment – and/or employ such workers as Contractor deems necessary to maintain the orderly progress of the work.

Subcontractor's equipment shall only be utilized when Subcontractor and when procurement of substitute equipment will not delay

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

completion of the project. All of the costs, including reasonable overhead, profit and attorney's fees incurred by Contractor in arranging to and performing Subcontractor's work shall be charged to Subcontractor. Contractor shall have the right to deduct such expenses from monies due or to become due to Subcontractor. Subcontractor shall be liable for the payment of any expenses incurred in excess of the unpaid balance of the Subcontract price.

In the event of any emergency, Contractor may proceed as above without notice.

**ITEM 17. CHANGE ORDER:** Written Change Order supplied and signed by the Contractor or its authorized agent shall only do changes, deletions or additions to items or work under this Agreement. Extra or additional work performed without advance written authorization shall not be paid.

**ITEM 18. NOTICES:** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or by fax or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the address set-forth hereinafter or to such other address as either party may designate in writing and deliver as herein provided:

*CONTRACTOR*: 16400 Southcenter Pkwy #210 | Tukwila, WA 98188 | Phone: 253-981-4388 | Fax: 253-277-0985

*SUBCONTRACTOR*: Per information provided on page one of this Agreement.

**ITEM 19. CONTINUANCE:** In the event of death, dissolution, liquidation or any other incapacity (other than bankruptcy) of Subcontractor, Contractor may in their sole discretion affirm or terminate the obligations contained in this Agreement. In the event of affirmation, the estate, trustee or other entity terminating the affairs of the departed or dissolved party shall abide by all the terms, covenants and conditions of this Agreement. Each party shall give the other the name of a person authorized to do business in the event of death or incapacity.

**ITEM 20. ARBITRATION AND ATTORNEY FEES:** In the event that a dispute or disagreement shall arise by and between the parties' herein with respect to any of the terms, conditions or covenants hereof, then the same shall be subject to arbitration under the rules of the American Arbitration Association and such arbitration shall take place in King County, in the State of Washington. In any such arbitration preceding the prevailing party shall be entitled to its reasonable costs and attorney's fees incurred and at such time shall be included in any award. The award rendered by the arbitration shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

**ITEM 21. APPLICABLE LAW:** This Agreement shall be governed and constructed in accordance with the law of the State of Washington and the venue of any dispute shall be in King County, in the State of Washington and in accordance with the preceding section.

**ITEM 22. FURTHER ASSURANCES:** The parties hereto agree to promptly execute and deliver any additional agreements or documents and to perform any other acts necessary to effectuate the purposes and intent of the Agreement. The parties hereto warrant they have all right, authority and power to enter into and bind themselves or their respective corporations by the terms of this Agreement.

**ITEM 23. INTEGRATION:** This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained and supersedes all prior negotiations, whether in writing, verbal or implied. This Agreement shall not be modified except in writing and executed by all parties hereto. In the event any provision is deemed to be unenforceable, the remaining provisions shall remain in full force and effect.

**ITEM 24. HEADINGS:** The headings of the several articles and sections herein are inserted for the convenience and are of reference and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

**ITEM 25. COUNTERPARTS:** For the convenience of the parties hereto, this Agreement may be executed in one or more

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

**ITEM 26.  CONSTRUCTION:**  Words of any gender used in this Agreement shall be held to include the other gender, any words in the singular, shall be held to include the plural when the sense requires. The parties hereto have both participated in the drafting of this document and have had the full opportunity to consult independent legal counsel and tax advisors.  Therefore, the rule of construction that a document drawn by one party shall be construed against that party in a case of ambiguity should have no application herein.

**ITEM 27. ASSIGNMENT:**  This Agreement shall not be assigned any third party without the expressed written consent of the other party.

IN WITNESS WHEREOF, the parties have hereto affixed their respective signatures the day and year written first above.

Subcontractor Name: Filiand Sons Inc. (Luis E. Zuniga)

Signature: *Luis E. Zuniga*

By: _____
Agent for Contractor

Print Name and Title: Luis E. Zuniga

Contractor Initial _____

Subcontractor Initial L.E.Z.

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #1

### HOLD HARMLESS AGREEMENT AND INDEMNIFICATION ADDENDUM

_Filiand Sons Construction Inc._ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless Contractor from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel- related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.


_Luis E. Zuniga_
Signature

_Luis E. Zuniga_

Print Name and Title


Contractor Initial _____          Subcontractor Initial _L.E.Z._

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #2

### *SAFETY AND ACCIDENT PREVENTION PROGRAM*

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1.  Have at least one valid CPR cardholder present.

2.  Be equipped with first-aid kit that at least complies with WAC 296-155-125.

3.  Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):

4.  Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.

5.  Eye protection when danger of eye injury is present.

6.  Hard hat when danger of falling and/or flying objects is present.

7.  Hearing protection when required.

8.  Respirators when required to protect workers from dust and fumes.

9.  Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.

10. All safety equipment necessary to perform the work in accordance with WAC 266-155.

11. Have a means of communicating from the job site in the event of an emergency.

12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.

13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.

14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.

15. Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.

16. Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.

17. Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.

18. Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #3

CLERIFY & OVERIDE DESCREPENCIES / CONFLICTS IN THIS AGREEMENT

- Subcontractor "Fili and Sons Construction Inc."
- Designated representatives: Field Manager – Luis Zuniga    tel. 253 324 4491
  Project Manager – Stan Kostecki   tel. 206 310 3231
- Scope of work: LABOR - ROUGH FRAMING, OSB / plywood install, sheer nailing, provide tools, nails, ladder and scaffolding ONLY.
- Contractor to provide Temporary Electric Power at job.
- Contractor to provide and deliver ALL materials and protect / secure its unfinished work against loss or damage.
- Contractor is responsible for ALL supplied material - the quality of material and required warranty.
- Subcontractor is responsible for separating and not using material with visual defects. And will notify the contractor in writing regarding such defects within 24 hrs. Contractor shall pick up the defect materials and restock with adequate material as needed.
- Contractor shall notify the subcontractor in writing within 24 hrs. of any corrections needed on the job. The subcontractor shall correct any and all noted corrections ASAP.
- Clean Up – Contractor shall provide a dumpster / box at site in order for subcontractor to put all scraps and waist. Contractor is responsible for disposal and maintenance of said container.
- Payments: First house at $3.50 / per sf. / Garage at $1.00 / per sf.
            Next houses at $4.00 / per sf. / Garage at $1.00 / per sf.
90% on completion of Rough Framing and sheer wall inspection.
10% on completion of Framing inspection.
  Contractor will assist in two week draws for payroll (based on completion of work) for the first two months. All labor releases for such time shall be submitted at time of payment.
- Contract Time Extension: In the event of extreme weather – additional days for completion shall be recognized and accepted by the contractor. 14 working days shall be agreed on completion for each house, once All lumber is dropped off at the site and there are no problems with the existing foundation and slab.
- ALL correspondence and notifications shall be in writing and within a 24 hr. period.

Contractor Initial _____    Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

19. It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

20. Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

Fili and Sons Construction Inc.
Subcontractor Name

Luis E Zuniga
Signature

Luis E. Zuniga / President
Print Name and Title

Contractor Initial

Subcontractor Initial L.E.Z.

# SUBCONTRACTOR AGREEMENT

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☐ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

☐ Exempt payee

☐ Other (see instructions) ▶

Requester's name and address (optional)

Address (number, street, and apt. or suite no.)

City, state, and ZIP code

List account number(s) here (optional)

**Print or type**
**See Specific Instructions on page 2.**

### Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Social security number

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Employer identification number

### Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here** Signature of U.S. person ▶                          Date ▶

Contractor Initial _____          Subcontractor Initial _____ L.E.L.

F

## MASTER SERVICE AGREEMENT
### Highmark Homes, LLC

This Master Service Agreement is entered into this 15th day of January, 2014 by and between Highmark Homes, LLC ("Contractor") and Durkin Construction on the following terms and conditions.

## 1. GENERAL PROVISIONS

1.1 Contractor wishes to utilize the services of Service Provider to provide services to Contractor and/or property owners ("Owner") introduced by Contractor. Based upon the nature of the services provided by Service Provider, it is anticipated that it will be impractical to enter into a separate agreement for services each time Contractor desires to use Service Provider.

1.2 Contractor requires that Service Provider meet certain terms and conditions before Contractor uses Service Provider's services. These terms and conditions are set forth in this agreement.

1.3 In order to expedite the use of Service Provider's services each time they are needed, the parties agree to enter into and comply with this Master Service Agreement prior to any actual services being performed. It is the intent of the parties that these terms and conditions apply to any provision of services by Service Provider regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.

1.4 This Master Service Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty days notice. The cancellation of this agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

1.5 Entering into this Master Service Agreement shall not obligate either Contractor or Service Provider to agree to any subsequent request for services or to any volume of business during the term of the policy. The intent is that if any services are procured and agreed to by both parties during the term of this agreement, the terms and conditions of this Master Service Agreement shall apply. If any terms and conditions on any preprinted written form from Contractor conflicts with this Master Service Agreement, the terms of this Master Service Agreement apply and supersede any other terms to the contrary.

1.6 Service Provider acknowledges that the only means by which any Contractor employee or agent is authorized to procure services from the Service Provider is in writing (purchase order, contract, memo, etc.). Any oral request for services is expressly not authorized by Contractor's corporate officers and Service Provider may not rely upon any representation by any Contractor employee or agent to the contrary.

1.7 No request for payment by any Service Provider will be approved by Contractor unless all terms and conditions of this Master Service Agreement are fulfilled.

## 2. INDEMNIFICATIONS AND INSURANCE

2.1. The Work performed by the Service Provider shall be at the risk of the Service Provider exclusively. Service Provider shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

2.2. Upon execution of this Master Service Agreement, and prior to Service Provider's commencing (in the broadest possible sense of the word) any work or services, the Service Provider shall carry general liability insurance and the Service Provider shall provide Contractor with a Certificate of Insurance naming Contractor as an additional insured hereunder. The coverage available to Contractor as an additional insured, shall not be less than shown under section 2.8 of this contract and providing coverage for completed operations, products liability, and contractual liability.

2.3 The obligation of indemnity in this Agreement shall survive the termination of this Agreement and specifically includes Service Provider's duty as Indemnitor to hold harmless and defend the Indemnities' for any and all such loss following completion of Service Provider's insurance carrier's inability to comply with the additional insured, including completed operations, provisions contained in the insurance requirements of this agreement.

2.4. The insurance coverage required under paragraph 2.8 shall be of sufficient type, scope, and duration to ensure coverage of the Service Provider and Contractor for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of the Contractor in relation to the Project.

2.5. Annually, the Service Provider shall supply Contractor with a new and replacement Certificate of Insurance. Not less than two weeks prior to the expiration, cancellation or termination, the Service Provider will provide the contractor with a new additional insured endorsement naming the Contractor as an additional named insured.

2.6. Additionally, and prior to commencement of services, the Service Provider shall provide Contractor with a Certificate of Insurance showing automobile liability insurance coverage for the Service Provider and any employees, agents, or sub-Service Providers of the Service Provider for any vehicles (owned or non-owned) which enter Contractor's premises at the direction of the Service Provider, its employees, agents, or sub-Service Providers in relation to performance of the Work.

2.7 Service Provider agrees to defend, indemnify, and hold Contractor harmless and, if requested by Contractor, the Owner, their consultants, agents and employees of any of them, from and against any and all claims, suits, losses or liability, including attorneys' fees and litigation expenses, for or on account of injury to or death of persons, including Service Provider's employees, Service Provider's subcontractors or their employees, or damage to or destruction of property, or any bond obtained for same, caused, in whole or in part, by any act or omission, or alleged act or omission, of Service Provider, its employees or agents, whether caused in part by a party indemnified hereunder.

2.8 Limits on the Service Provider's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of:

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products/Comp. Ops Aggregate | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Per Occurrence | $1,000,000 |
| Auto Liability (including Non-owned & Hired Auto Liability) | $1,000,000 |
| Employer's Liability | $1,000,000 |

2.9 Service Provider and all of its employees shall follow all applicable safety and health laws and requirements pertaining to its work and the conduct thereof, but not limited to, compliance with all applicable laws, ordinances, rules, regulations, and orders issued by a public authority, whether federal, state or local, including OSHA and any safety measures required by Contractor. Service Provider shall immediately report to Contractor all accidents, occupational injuries, and illness involving its employees or those of its subcontractors, relating to the Work or which cause any injury to a third party or which cause damage to the property of Owner, Contractor or a third party. Service Provider shall promptly furnish to Contractor copies of any worker's compensation report of injury or illness forms filed by any of its employees or those of its subcontractors and when requested, assist Contractor in any investigation it may conduct of any such accident, injury or illness.

## 3. **WARRANTY AND REPRESENTATIONS**

The Service Provider represents and warrants that all materials, labor and/or systems furnished by the Service Provider in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years.

## 4. SAFETY STANDARDS

Service Provider agrees that the Service Provider and all employees of the Service Provider are required to fully comply with and implement all government laws (OSHA) pertaining to safety standards. Service Provider agrees that any fines, assessments or penalties imposed upon the Contractor by failure of the Service Provider or his employees to comply with the government standards will be fully charged back and paid for by the Service Provider.

**THE UNDERSIGNED HEREBY CERTIFY THAT SECTION 2.7 REGARDING "INDEMNIFICATION" WAS MUTUALLY NEGOTIATED.**

Effective as of the date first set forth above.

CONTRACTOR: Highmark Homes, LLC

Ducklin Construction and Remodel Inc.
By: _Cory Ducklin_
Its: _Owner / Pres._

SERVICE PROVIDER: _____

By: Thomas Tolle
Its: _____

G



## 4. SAFETY STANDARDS

Service Provider agrees that the Service Provider and all employees of the Service Provider are required to fully comply with and implement all government laws (OSHA) pertaining to safety standards. Service Provider agrees that any fines, assessments or penalties imposed upon the Contractor by failure of the Service Provider or his employees to comply with the government standards will be fully charged back and paid for by the Service Provider.

**THE UNDERSIGNED HEREBY CERTIFY THAT SECTION 2.7 REGARDING "INDEMNIFICATION" WAS MUTUALLY NEGOTIATED.**

Effective as of the date first set forth above.

**CONTRACTOR:** Highmark Homes, LLC

By: JACK W. MURRAY

Its: _____

**SERVICE PROVIDER:** _____

By: THomas Toller

Its: Mowor

H

# SUBCONTRACTOR AGREEMENT

THIS AGREEMENT is being made between **Highmark Homes, LLC, Suntop Communities, LLC, Skagit Highlands Homes, LLC, MTT Construction, LLC, et al.**, hereinafter called the "Contractor" and __VAB QUALITY WORKS LLC__ hereinafter called the "Subcontractor". This Agreement and attached Addenda 1, 2, and 3 shall be referred to as the "Agreement", dated and noted above.

Subcontractor Name: _VAB Quality Works LLC_

Main Contact Name: _Vitaliy_          Position _Sider_

Mailing Address: _PO Box 23336_  City _Federal Way_ State _WA_ Zip _98093_

Office Ph: _206 330 5421_ Fax: _____  Cell: _206 330 5421_ Alt: _____

Email Address: _vab.construction@yahoo.c_ Website: _____

Contractor's License# _VABQUGW 875K8_  Exp Date _05|28|2015_ UBI: _603 277 922_

Will you have employees that will be working on our job site (present or future): [X] Yes  [ ] No

**ITEM 1. MASTER AGREEMENT**: The parties hereto agree that from time to time from the date hereof until this Agreement is terminated that Contractor will contract with Subcontractor for the furnishings of materials and/or the performance of various work on projects being constructed by Contractor. The parties further agree that this Agreement shall be the master agreement between them and as such shall control the rights, privileges, duties and responsibilities between them, which arise out of Subcontractor furnishing any materials for and/or performing any work on Contractor's construction projects.

**ITEM 2. PROJECT MANAGEMENT**: Subcontractor shall designate a competent project manager, satisfactory to the Contractor, who shall be readily available to the project site and shall be empowered to act for the Subcontractor in all respects, if required. A competent foreman shall either be physically present at the project site or accessible to the Contractor by telephone between 7:00am and 5:30pm Monday through Friday.

**ITEM 3. SCOPE OF WORK AND PRICE:** Subcontractor agrees to perform, supply and finish in a thorough and workmanlike manner, in compliance with all applicable national, state and local building codes and regulations and to the reasonable satisfaction of Contractor, the specific materials to be furnished and/or work to be performed per the agreed upon price is referenced herein as Addendum #3.

Subcontractor shall supply all equipment, tools, utilities, machinery, scaffolding and safety devices, etc. as required, at their own expense. It shall be the Subcontractor's responsibility to perform field measurements, verify dimensions on drawings, be informed of all applicable building codes, and to obtain the appropriate inspections and certifications.

Materials delivered by a Subcontractor to the job site must be delivered pursuant to the job superintendent's instructions. It is the Subcontractor's responsibility to protect its unfinished work against loss or damage.

All extra or additional work requires advance written authorization. Extra or additional work performed without advance written authorization shall not be paid.

The Subcontractor is responsible for proper use and handling of materials and is further responsible for damage of any kind caused by the Subcontractor or his agents to the structure or premises.

The Subcontractor is responsible for any delays caused to the Contractor or the owner due to interference with the work of other

Contractor Initial _____          Subcontractor Initial _VB_

# SUBCONTRACTOR AGREEMENT

trades or Contractor at the job site.

The Subcontractor is an Independent Contractor rather than an employee of Contractor. The Subcontractor is responsible for any loss or damage to materials or equipment furnished to the Subcontractor by Contractor.

Subcontractor shall submit in writing all proposed substitutions or variation from the plans, specification, and/or scope of work. Before proceeding, the Contractor must authorize any and all substitutions or variations in writing.

Subcontractor will comply with parking regulations and park in designated areas only. Absolutely, NO PARKING on any garage slab or driveway for any reason.

Subcontractor agrees to permit other Subcontractors reasonable opportunity for storage of materials and execution of their work, and shall properly coordinate its work with theirs.

If any part of the work to be performed by Subcontractor depends, for proper execution, on the work of other Subcontractors or Contractor, Subcontractor shall immediately report defects or omissions that render such other work unsuitable for execution of its work. Proceeding with its work without such report of defects is an acceptance by Subcontractor of the work of others that precedes, or is performed simultaneously with its work.

**ITEM 4. TERMINATION:** Work performed by a Subcontractor, and paid for by Contractor but later found to be defective, will be back charged to the Subcontractor unless corrected by the Subcontractor in a timely manner. In the event of a back charge, Contractor will withhold such funds against any balance due or to become due to the Subcontractor by Contractor.

**ITEM 5. CLEAN UP**: Subcontractor warrants that upon completion of each day and final completion of project or job, that he shall not leave any scraps, leftover materials and/or waste on the job site. All scraps, leftover materials and waste will be removed by Subcontractor and disposed of pursuant to the then existing governmental ordinances and regulations.

If Subcontractor enters on to a job site that has not been cleaned by the prior workman or subcontractor, he shall contact the Contractor immediately and the cleanup due to the prior work shall be the responsibility of the Contractor. If Subcontractor is unable to contact Contractor, Subcontractor shall have the right to make a written list of the necessary clean up, said list to be submitted to the Contractor or his agent within 24 hours. If Contractor is not contacted as provided above, Subcontractor agrees that he shall be responsible for cleaning work. By commencing work under subcontract, Subcontractor accepts the work previously performed by others.

Subcontractor shall regularly remove all refuse, waste and debris produced by its operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site or creates a safety concern. Avoidance of safety hazards through good housekeeping is a material part of Subcontractor's obligations. In the event of Subcontractor's failure or refusal to meet these requirements, refuse may be removed by Contractor and the cost of administration, removal and disposal shall be charged against the amount due Subcontractor.

In the event Subcontractor fails to leave a clean job site upon his completion of work, the Contractor shall call the office of the Subcontractor and advise him of the necessary clean up. Should Subcontractor fail to immediately comply with the cleanup, Subcontractor agrees that Contractor may charge Subcontractor a cleanup fee, which will include, but not be limited to, all labor, equipment removal and all disposal fees, plus an administration fee of $100.00.

**ITEM 6. EVIDENCE OF PAYMENT:** Before issuance of any payment, Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, taxes and all known indebtedness connected with the Subcontractor's work and incurred prior to the date thereof has been satisfied. Contractor, at its sole option, shall have the right to require Subcontractor to provide lien releases by all persons supplying labor, materials, or services to Subcontractor for the job performed by Subcontractor and to withhold final payment until such releases are supplied.

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

**ITEM 7.  CONTRACT TIME EXTENSIONS:**  Upon notification by the Contractor, specifying therein the date on which Subcontractor's work shall commence; Subcontractor shall timely begin and diligently prosecute the work to completion.  The Subcontractor agrees to promptly begin said work within three (3) working days after notification and continue with sufficient qualified workers so as not to delay the agreed upon schedule which may be revised from time to time. Attention is hereby directed to the fact that time is of the essence in this contract.  Any Penalties against the Contractor due to the impromptus of the completion of work by the Subcontractor will be deducted from final payment of Subcontractor's account.

Subcontractor shall promptly respond to any Contractor's request for scheduling input data, keep advised on its own initiative of the overall schedule of the project, and comply with both the overall schedule and any revisions thereof.  Subcontractor shall cooperate with Contractor in the scheduling and performing his or her work to avoid conflict or interference with the work of others and shall promptly submit shop drawings and samples required in order to perform work efficiently and in a manner that will not cause delay in the progress of the work of the Contractor or other Subcontractors.

It is not the responsibility of Contractor to make any Subcontractor aware of the Contractor's policies.  It is the Subcontractor's responsibility to become accustomed and knowledgeable of the Contractor's policies.

**ITEM 8. LOSS AND DAMAGE:**  Subcontractor shall be liable for any losses or damage caused by Subcontractor, his agents, employees and /or guests, to any work in place, any equipment and/or materials on the job site.

**ITEM 9.  COMPLIANCE WITH LAWS AND REGULATIONS:**  Subcontractor warrants to Contractor that Subcontractor has complied and will comply with, at its own expense at all times, all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder, including, but not by way of limitation, the OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 and the WASHINGTON INDUSTRIAL SAFETY HEALTH ACT: The Subcontractor covenants and agrees that in the event any liability is assessed against the Contractor because of failure of Subcontractor to  comply with all federal, state and local laws and ordinances and all lawful orders, rules and regulations hereunder then, Subcontractor shall pay and indemnify Contractor for such amounts and the Contractor may set off one hundred and fifty percent (150%) of any such fines, assessments, penalties, or liability of any nature resulting from such violation against amounts owing to the Subcontractor hereunder.  Subcontractor further acknowledges that he has reviewed the Contractor's safety plan and agrees to abide by all of Contractor's rules and regulations.

**ITEM 10. COMPLIANCE WITH DISCRIMINATION LAWS:** Subcontractor agrees in connection with the performance of work under this Agreement not to discriminate against any employee, applicant or client because of race, religion, creed, color or national origin.  The aforesaid provision shall include, but not be limited to the following: employment, upgrading, promotion, transfer, recruitment, advertising, layoff, termination, raise of pay or other form of compensation, selection for training, including apprenticeships.  Subcontractor agrees to post hereafter in conspicuous places available for employees and applicants for employment, notices to be provided by Subcontractor's contracting office to the extent one is required, setting for the provisions of this nondiscrimination clause and Subcontractor's equal opportunity plan to the extent it is required by law.

**ITEM 11. WORKER'S COMPENSATION:**  Subcontractor warrants to Contractor that Subcontractor has obtained, and will maintain, continuous worker's compensation (State Industrial Insurance) coverage for all employees of Subcontractor.  If Subcontractor is a sole proprietor, that Subcontractor has obtained worker's compensation (State Industrial Insurance) coverage for the sole proprietor of Subcontractor in accordance with the worker's compensation laws of the State of Washington.  It is understood and agreed between the parties hereto that Subcontractor is an independent contractor and is not an employee of the Contractor.

**ITEM 12. PRODUCT AND LABOR WARRANTY:**  Subcontractor contracts to perform all obligations in a workman like and timely manner, warrants that labor performed and materials supplied hereunder shall be new, free from defects and fit for the particular purpose the material was intended for a period of two (2) years from the date of completion of the whole of the work to be performed by Subcontractor, as provided herein.  Subcontractor agrees to bear all expenses for any repair, modifications or other actions necessary so that the labor performed and materials supplied hereunder comply with the warranty herein contained. The warranty work will be substantially completed within fourteen (14) calendar days from the date of notice by the Contractor to the Subcontractor and completed within fifteen (15) days after the date of notice to the Subcontractor.

Contractor Initial _____

Subcontractor Initial _____

## SUBCONTRACTOR AGREEMENT

Subcontractor shall provide Contractor with copies of written warranties on all products installed by Subcontractor.

It is understood that if said deficiency is not a warranty item, Subcontractor will immediately make this known to the homeowner and/or Contractor, giving a written estimate to repair the deficiency with an explanation as to the cause for non-warranty repairs. It is understood that any non-warranty work or changes requested by homeowner after move-in are to be billed directly to homeowner by Subcontractor, and that Contractor accepts no liability for these services.

**ITEM 13. LIABILITY INSURANCE**: Subcontractor warrants to Contractor and will provide to the Contractor prior to the commencement of work or entry on the jobsite, a Certificate of Insurance for Public Liability, Premises/Operations, Bodily Injury/Property Damage, Broad Form Property Damage including On Going Completed Operations and Defense Costs, Products/Completed Operations for any work performed by on their behalf (by subcontractors or temporary labor), Contractual Liability insuring the obligations assumed by Subcontractor's in this Agreement, Explosions, Collapse and Underground Hazards, Personal Injury Liability, Employer's Liability aka Washington State Stop Gap, Auto Liability for all Owned, Non-Owned & Hired Autos and Worker's Compensation Insurance for Subcontractor and Subcontractor's employees in the following minimum amounts, naming Contractor and Owner as "Additional Named Insured" on an ongoing basis and including defense costs in favor of the contractor with the appropriate forms CG2010 (Additional Insured) along with ACORD Form 25-S (Certificate of Liability Insurance). The insurance carrier for the Subcontractor (and their subcontractors) must have an A.M. Best Rating of A- or better and be listed as such on the certificate of insurance. The Subcontractors insurance cannot contain any exclusion with respect to the work that will be performed. In the event Subcontractor allows its insurance to lapse, is underinsured, or provides insurance that contains exclusion contrary to the terms of this Subcontract, Contractor shall have the right, without notice, to obtain insurance on Subcontractor's behalf and charge Subcontractor for such insurance purchased on Subcontractor's behalf in accordance with the rates charged under Contractor's policy. The insurance will not have any benefit to the Subcontractor and is limited to the work performed and ongoing exposures of the Contractor.

Subcontractor shall provide a Certificate of Insurance prior to starting work. MTT Construction LLC shall be added as an Additional Insured on each subcontractor General and Automobile Liability policies, verified by a Certificate of Insurance and receipt of the Additional Insured form. Limits on the Subcontractor's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of One Million dollars ($1,000,000) Per Occurrence, Two Million dollars ($2,000,000) General Aggregate and Two Million dollars ($2,000,000) Products/Completed Operations Aggregate. If Excess Liability is required, the minimum acceptable Limits are One million ($1,000,000) Per Occurrence and One Million ($1,000,000) Aggregate. No such insurance shall be cancelled without thirty (30) days prior written notice to the Contractor. Subcontractor will be in breach of contract for failure to timely supply and maintain proper insurance at all times as warranted under this contract and evidenced by the certificate provided.

The subcontractor's general liability policy shall have a deductible amount of no greater than $10,000 per occurrence, provide a list of exclusions contained within their policies and disclose any claims paid, open reserves and past, pending or potential litigation. It is the subcontractor's obligation under this contract to notify contractor if they are named in a lawsuit that reduces their limits of insurance available.

If you hire Subcontractors and/or Temporary Labor all of the requirements of this contract apply to them and you will be responsible to maintain certificates naming Contractor and Owner as additional insured owner of the project. We reserve the right to ask for copies of your Subcontractor's certificates at any time.

The Subcontractor understands that it is their responsibility to have a current certificate on file, active Washington State Contractor's license and failure to do so may result in being removed from job-site and/ or contractor withholding payment until proper and acceptable certificate is provided.

The subcontractor's acknowledges that Contractor may hire an outside vendor to obtain and monitor the Certificates of Insurance listed above and agrees to cooperate with their requests, which include, but not limited to the following;

Additional Insured Wording in the "Other Section" regarding the specific project and list the Additional Insured form that must be

Contractor Initial _____    Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

attached.

Provide and attach to the certificate a list of your policy exclusions or include statement on certificate that there are no exclusions with respect to; multi-family, tract homes, air-space condos, construction defects, vertical construction, water damage, limitation on type of work/classification, land subsidence or any other adverse exclusion relating to the project.

If requested, provide Loss History or Statement from your Agent that the limits shown are available, not reserved or paid already.

Provide 30 days cancellation notification with written notification of 10 days of non-payment of premium

If requested, Per Project Aggregate Limit indicated on the Insurance under the General Liability Section.

If requested, Primary Additional Insured Status and/or Non-Contributory Additional Insured Status

In the event that Subcontractor's corporate form is dissolved or terminated by any means recognized under Washington law, Subcontractor expressly waives the benefit and defense of the two-year limitation on actions set forth in RCW 23B.14.340, but only to the extent of insurance coverage required by this subcontract.

**ITEM 14. WAIVER OF SUBROGATION:** Contractor's failure at any time to require performance of any provisions of the Agreement shall in no way affect Contractor's rights hereunder to enforce the same, nor shall such failure be considered in any respect a waiver by Contractor of any breach of this Agreement. Likewise, payment of any nature from contractor to Subcontractor shall not be construed as a waiver of any rights of Contractor under this Agreement.

**ITEM 15. INDEMNIFICATION**: Subcontractor shall indemnify Contractor in accordance with the indemnification addendum attached hereto as Addendum #1.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

**ITEM 16. DEFAULT:** If Subcontractor refuses or fails to supply enough properly skilled workers or materials to maintain the schedule of work, refuses or fails to make prompt payment to Subcontractors or suppliers of labor, materials, services, fails to correct, replace or re-execute faulty or defective work done or materials furnished, disregards the law, ordinances, rules, regulations or orders of any public authority having jurisdiction, files for bankruptcy or is guilty of material breach of this Subcontract and fails to correct the default and maintain the corrected condition within two (2) working days of receipt of written notice of the default, the Contractor, with prejudice to any rights or remedies otherwise available to it, shall have the right to any or all of the following remedies:

- Supply such numbers of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work or any part thereof, in which Subcontractor has failed to complete or perform after the above notice and to charge the cost thereof to Subcontractor who shall be liable for the payment of the same including reasonable overhead and profit.

- Contract with one or more additional Subcontractors to perform such part of Subcontractor's work, as Contractor shall determine to provide completion of the project and charge the cost thereof to Subcontractor.

- Withhold payment of any monies due or to become due to Subcontractor pending corrective action to the extent required and to the satisfaction of Contractor. Terminate this Subcontract, use any materials, implements, equipment, appliances or tools furnished or belonging to Subcontractor to complete Subcontractor's work and furnish those materials, equipment and/or employ such workers as Contractor deems necessary to maintain the orderly progress of the work.

Contractor Initial _____

Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

Subcontractor's equipment shall only be utilized when Subcontractor and when procurement of substitute equipment will not delay completion of the project. All of the costs, including reasonable overhead, profit and attorney's fees incurred by Contractor in arranging to and performing Subcontractor's work shall be charged to Subcontractor. Contractor shall have the right to deduct such expenses from monies due or to become due to Subcontractor. Subcontractor shall be liable for the payment of any expenses incurred in excess of the unpaid balance of the Subcontract price.

In the event of any emergency, Contractor may proceed as above without notice.

**ITEM 17. CHANGE ORDER**: Written Change Order supplied and signed by the Contractor or its authorized agent shall only do changes, deletions or additions to items or work under this Agreement. Extra or additional work performed without advance written authorization shall not be paid.

**ITEM 18. NOTICES:** Any notices required or permitted hereunder shall be in writing and delivered either in person to the other party or by fax or by United States Certified Mail, Return Receipt Requested, postage fully prepaid, to the address set-forth hereinafter or to such other address as either party may designate in writing and deliver as herein provided:

*CONTRACTOR*: 16400 Southcenter Pkwy #210 | Tukwila, WA 98188 | Phone: 253-981-4388 | Fax: 253-277-0985

*SUBCONTRACTOR*: Per information provided on page one of this Agreement.

**ITEM 19. CONTINUANCE:** In the event of death, dissolution, liquidation or any other incapacity (other than bankruptcy) of Subcontractor, Contractor may in their sole discretion affirm or terminate the obligations contained in this Agreement. In the event of affirmation, the estate, trustee or other entity terminating the affairs of the departed or dissolved party shall abide by all the terms, covenants and conditions of this Agreement. Each party shall give the other the name of a person authorized to do business in the event of death or incapacity.

**ITEM 20. ARBITRATION AND ATTORNEY FEES:** In the event that a dispute or disagreement shall arise by and between the parties' herein with respect to any of the terms, conditions or covenants hereof, then the same shall be subject to arbitration under the rules of the American Arbitration Association and such arbitration shall take place in King County, in the State of Washington. In any such arbitration preceding the prevailing party shall be entitled to its reasonable costs and attorney's fees incurred and at such time shall be included in any award. The award rendered by the arbitration shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

**ITEM 21. APPLICABLE LAW:** This Agreement shall be governed and constructed in accordance with the law of the State of Washington and the venue of any dispute shall be in King County, in the State of Washington and in accordance with the preceding section.

**ITEM 22. FURTHER ASSURANCES:** The parties hereto agree to promptly execute and deliver any additional agreements or documents and to perform any other acts necessary to effectuate the purposes and intent of the Agreement. The parties hereto warrant they have all right, authority and power to enter into and bind themselves or their respective corporations by the terms of this Agreement.

**ITEM 23. INTEGRATION:** This Agreement contains the entire understanding of the parties hereto relating to the subject matter herein contained and supersedes all prior negotiations, whether in writing, verbal or implied. This Agreement shall not be modified except in writing and executed by all parties hereto. In the event any provision is deemed to be unenforceable, the remaining provisions shall remain in full force and effect.

**ITEM 24. HEADINGS:** The headings of the several articles and sections herein are inserted for the convenience and are of reference and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

Contractor Initial _____

Subcontractor Initial _VB_____

# SUBCONTRACTOR AGREEMENT

**ITEM 25. COUNTERPARTS:** For the convenience of the parties hereto, this Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument.

**ITEM 26. CONSTRUCTION:** Words of any gender used in this Agreement shall be held to include the other gender, any words in the singular, shall be held to include the plural when the sense requires. The parties hereto have both participated in the drafting of this document and have had the full opportunity to consult independent legal counsel and tax advisors. Therefore, the rule of construction that a document drawn by one party shall be construed against that party in a case of ambiguity should have no application herein.

**ITEM 27. ASSIGNMENT:** This Agreement shall not be assigned any third party without the expressed written consent of the other party.

IN WITNESS WHEREOF, the parties have hereto affixed their respective signatures the day and year written first above.

By _____
Agent for Contractor

Subcontractor Name: _VAB Quality Work LLC_

_____
Signature

_Vitaliy        Owner_
Print Name and Title

Contractor Initial _____

Subcontractor Initial _VB_

## SUBCONTRACTOR AGREEMENT

### **ADDENDUM #1**

*HOLD HARMLESS AGREEMENT AND INDEMNIFICATION ADDENDUM*

VAB QUALITY WORKS LLC _____ (hereinafter "Subcontractor") agrees to defend, indemnify and hold harmless Contractor from any and all claims, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract Agreement by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor shall not be required to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor. To the extent that such bodily injury or property damage is caused by the concurrent negligence of (a) Contractor or Contractor's agents or employees and (b) Subcontractor or Subcontractor's agents or employees, Subcontractor shall only be required to indemnify Contractor to the extent of the negligence of Subcontractor and/or its agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under the Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under Worker's Compensation Acts, Disability Benefits Acts, or other Employee Benefits Acts; provided Subcontractor's waiver of immunity by the provisions of this paragraph extends only to claims against Subcontractor by Contractor and does not include or extend to any claims by Subcontractor's employees directly against Subcontractor.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, as to all claims, demands, losses and liability to which it applies, Contractor's personnel- related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement in terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

_____
Signature

Vitaliy owner
_____

Print Name and Title

Contractor Initial _____          Subcontractor Initial _____

# SUBCONTRACTOR AGREEMENT

## ADDENDUM #2

*SAFETY AND ACCIDENT PREVENTION PROGRAM*

This reference shall become a part of any and all existing and future contracts between the Contractor and the Subcontractor whether written or verbal for any and all work to be done by Subcontractor at all job sites.

Subcontractor hereby certifies that crews performing work at job site shall:

1. Have at least one valid CPR cardholder present.
2. Be equipped with first-aid kit that at least complies with WAC 296-155-125.
3. Wear the approved Personal Protective Equipment required by WAC 296-155-PART C. This includes (but is not limited to):
4. Clothing no less than short sleeve shirt, long pants, and appropriate foot gear.
5. Eye protection when danger of eye injury is present.
6. Hard hat when danger of falling and/or flying objects is present.
7. Hearing protection when required.
8. Respirators when required to protect workers from dust and fumes.
9. Fall restraint/fall arrest gear when required by WAC 296-155-part C-1.
10. All safety equipment necessary to perform the work in accordance with WAC 266-155.
11. Have a means of communicating from the job site in the event of an emergency.
12. Be equipped with an appropriate fire-extinguishing device with a minimum ABC rating.
13. Shall be trained to identify hazards on the job-site as well as hazards associated with their work and how to abate such hazards.
14. Shall be trained in what steps to take in an emergency situation. Shall know how to report accidents.
15. Subcontractor hereby certifies that a written accident prevention program complying with the requirements of WAC 296-155 and appropriate for this job site has been developed and is available for review. This plan shall include a disciplinary schedule.
16. Subcontractor agrees to make regular inspections (at least weekly) to insure that its workers are complying with WAC-296-155 and the safety program and that violations are immediately corrected.
17. Subcontractor agreed that all workers report for safety orientation at the job site before beginning work.
18. Subcontractor will immediately abate hazards created by its workers. If removal of safety devices and/or guards is necessary, Subcontractor will provide temporary guarding (including a safety monitor, if necessary) for the hazardous area and will replace permanent safety equipment when work in the area is completed.

Contractor Initial ___ND___ Subcontractor Initial ___VB___

# SUBCONTRACTOR AGREEMENT

19. It is the intent of the Contractor to require Subcontractor and its employees to comply with WAC-296-155-040 and all other Safety Standards for Construction contained in WAC-296-155 as they apply specifically to any and all work performed by Subcontractor at this job site.

20. Subcontractor warrants that it is adequately insured for injury to its employees and others incurring loss or injury as a result of acts of Subcontractor or its employees and/or its subcontractors.

VAB Quality Works LLC

Subcontractor Name

Signature

Vitaliy        owner

Print Name and Title

## SUBCONTRACTOR AGREEMENT

<table>
<tr>
<td>Form <b>W-9</b><br>(Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service</td>
<td align="center"><b>Request for Taxpayer<br>Identification Number and Certification</b></td>
<td><b>Give Form to the<br>requester. Do not<br>send to the IRS.</b></td>
</tr>
</table>

Name (as shown on your income tax return)

VITALIY  BASHINSKIY

Business name/disregarded entity name, if different from above

VAB  QUALITY  WORKS  LLC

Check appropriate box for federal tax classification:

☑ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

☐ Exempt payee

☐ Other (see instructions) ▶

Address (number, street, and apt. or suite no.)

PO  BOX  23336

Requester's name and address (optional)

**Suntop Communities LLC**
**16400 Southcenter Parkway #210**
**Tukwila, WA 98188**

City, state, and ZIP code

FEDERAL WAY,  WA 98093

List account number(s) here (optional)

### Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Social security number**

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Employer identification number**

9 0 - 0 9 5 1 1 9 0

### Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here** Signature of U.S. person ▶  Date ▶  04-16-2014

Contractor Initial ___  Subcontractor Initial ___

I

# MASTER SERVICE AGREEMENT

**This Master Service Agreement is entered into this 20th day of October 2014** by and Erik, LLC ("Contractor") and Highmark Homes/ MTT Construction on the following terms and conditions.

## 1. GENERAL PROVISIONS

1.1 Contractor wishes to utilize the services of Service Provider to provide services to Contractor and/or property owners ("Owner") introduced by Contractor. Based upon the nature of the services provided by Service Provider, it is anticipated that it will be impractical to enter into a separate agreement for services each time Contractor desires to use Service Provider.

1.2 Contractor requires that Service Provider meet certain terms and conditions before Contractor uses Service Provider's services. These terms and conditions are set forth in this agreement.

1.3 In order to expedite the use of Service Provider's services each time they are needed, the parties agree to enter into and comply with this Master Service Agreement prior to any actual services being performed. It is the intent of the parties that these terms and conditions apply to any provision of services by Service Provider regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.

1.4 This Master Service Agreement shall be in full force and effect from the date of signing unless canceled in writing by either party with thirty days notice. The cancellation of this agreement shall not negate any term or condition, such as the indemnity or insurance requirements.

1.5 Entering into this Master Service Agreement shall not obligate either Contractor or Service Provider to agree to any subsequent request for services or to any volume of business during the term of the policy. The intent is that if any services are procured and agreed to by both parties during the term of this agreement, the terms and conditions of this Master Service Agreement shall apply. If any terms and conditions on any preprinted written form from Contractor conflicts with this Master Service Agreement, the terms of this Master Service Agreement apply and supersede any other terms to the contrary.

1.6 Service Provider acknowledges that the only means by which any Contractor employee or agent is authorized to procure services from the Service Provider is in writing (purchase order, contract, memo, etc.). Any oral request for services is expressly not authorized by Contractor's corporate officers and Service Provider may not rely upon any representation by any Contractor employee or agent to the contrary.

1.7 No request for payment by any Service Provider will be approved by Contractor unless all terms and conditions of this Master Service Agreement are fulfilled.

## 2. INDEMNIFICATIONS AND INSURANCE

2.1 The Work performed by the Service Provider shall be at the risk of the Service Provider exclusively. Service Provider shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

2.2. Upon execution of this Master Service Agreement, and prior to Service Provider's commencing (in the broadest possible sense of the word) any work or services, the Service Provider shall carry general liability insurance and the Service Provider shall provide Contractor with a Certificate of Insurance naming Contractor as an additional insured hereunder. The coverage available to Contractor as an additional insured, shall not be less than shown under section 2.8 of this contract and providing coverage for completed operations, products liability, and contractual liability.

2.3. The obligation of indemnity in this Agreement shall survive the termination of this Agreement and specifically includes Service Provider's duty as indemnitor to hold harmless and defend the Indemnities' for any and all such loss

following completion of Service Provider's insurance carrier's inability to comply with the additional insured, including completed operations, provisions contained in the insurance requirements of this agreement.

2.4. The insurance coverage required under paragraph 2.8 shall be of sufficient type, scope, and duration to ensure coverage of the Service Provider and Contractor for liability related to any manifestation date within the applicable statutes of limitation and/or repose which pertain to any work performed by or on behalf of the Contractor in relation to the Project.

2.5. Annually, the Service Provider shall supply Contractor with a new and replacement Certificate of Insurance. Not less than two weeks prior to the expiration, cancellation or termination, the Service Provider will provide the contractor with a new additional insured endorsement naming the Contractor as an additional named insured.

2.6. Additionally, and prior to commencement of services, the Service Provider shall provide Contractor with a Certificate of Insurance showing automobile liability insurance coverage for the Service Provider and any employees, agents, or sub-Service Providers of the Service Provider for any vehicles (owned or non-owned) which enter Contractor's premises at the direction of the Service Provider, its employees, agents, or sub-Service Providers in relation to performance of the Work.

2.7 Service Provider agrees to defend, indemnify, and hold Contractor harmless and, if requested by Contractor, the Owner, their consultants, agents and employees of any of them, from and against any and all claims, suits, losses or liability, including attorneys' fees and litigation expenses, for or on account of injury to or death of persons, including Service Provider's employees, Service Provider's subcontractors or their employees, or damage to or destruction of property, or any bond obtained for same, caused, in whole or in part, by any act or omission, or alleged act or omission, of Service Provider, its employees or agents, whether caused in part by a party indemnified hereunder.

2.8 Limits on the Service Provider's General Liability for Premises/Operations and Products/Completed Operations shall be equal to or greater than the Contractor's limits of:

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products/Comp. Ops Aggregate | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Per Occurrence | $1,000,000 |
| Auto Liability (including Non-owned & Hired Auto Liability) | $1,000,000 |
| Employer's Liability | $1,000,000 |

2.9 Service Provider and all of its employees shall follow all applicable safety and health laws and requirements pertaining to its work and the conduct thereof, but not limited to, compliance with all applicable laws, ordinances, rules, regulations, and orders issued by a public authority, whether federal, state or local, including OSHA and any safety measures required by Contractor. Service Provider shall immediately report to Contractor all accidents, occupational injuries, and illness involving its employees or those of its subcontractors, relating to the Work or which cause any injury to a third party or which cause damage to the property of Owner, Contractor or a third party. Service Provider shall promptly furnish to Contractor copies of any worker's compensation report of injury or illness forms filed by any of its employees or those of its subcontractors and when requested, assist Contractor in any investigation it may conduct of any such accident, injury or illness.

## 3. WARRANTY AND REPRESENTATIONS

The Service Provider represents and warrants that all materials, labor and/or systems furnished by the Service Provider in connection with the construction of all work performed shall be free of defect for a period of one year for workmanship and systems for two years.

## 4. SAFETY STANDARDS

Service Provider agrees that the Service Provider and all employees of the Service Provider are required to fully comply with and implement all government laws (OSHA) pertaining to safety standards. Service Provider agrees that any fines, assessments or penalties imposed upon the Contractor by failure of the Service Provider or his employees to comply with the government standards will be fully charged back and paid for by the Service Provider.

**THE UNDERSIGNED HEREBY CERTIFY THAT SECTION 2.7 REGARDING "INDEMNIFICATION" WAS MUTUALLY NEGOTIATED.**

Effective as of the date first set forth above.

CONTRACTOR: ERIK ARELLANO

By: _____

Its: OWNER

SERVICE PROVIDER:

By: _____

Its: _____

# EXHIBIT
# # 15



# KITSAP COUNTY
## DEPARTMENT OF COMMUNITY DEVELOPMENT
# BUILDING INSPECTION CARD

**PERMIT NUMBER:**

# 12 104446

**This Placard must be posted on or near building and the "Approved" plans must be available at the site.**

**Permit Type:**
Residential Single Family Residence New +/- Attached Garage

**Address:**
296 E 29TH ST

**Owner:**
HIGHMARK HOMES LLC

**Applicant:**
HIGHMARK HOMES LLC

**Code_Edition:**
IRC 2009

## Additional Notes:
Inspection Results Legend:
AP = Approved
DA = Disapproved
DP = Disapproved with Penalty

A reinspection fee will apply if the project is not ready for the requested inspection, or corrections have not been completed.

No concrete shall be poured or reinforcement steel covered without inspection and approval.

No use or occupancy is permitted prior to final inspection and approval for occupancy. A certificate of occupancy will be issued for commercial permits only.

Request Inspections online at:
www.kitsapgov.com/dcd/dailyinspect/irequest_bldg_web.htm
Or call: (360) 337-4696 during business hours to schedule. Finals require 48 hours advance notice.

| Required Inspections<br>Kitsap County Inspection line 337-4696 | Approved By: | Date |
|---|---|---|
| Foundation, Footing Inspection | PR | 3-12-12 |
| Temporary Silt & Erosion Control Inspection | | 3-12-12 |
| Foundation, Stem Wall Inspection | Jerry Cowell | 3-15-12 |
| Underfloor framing (prior to sub-floor) | 98 | 3-23-12 |
| Mechanical, Rough-In Inspection | RP | 4-24-12 |
| Mechanical, Internal Gas Piping Inspection | RP | 4-24-12 |
| Mechanical, Furnace Inspection | 98 | 4-24-12 |
| Plumbing, Rough-In Inspection | 98 | 4-24-12 |
| Shear Wall Nailing Inspection | 98 | 4-10-12 |
| Framing Inspection | 98 | 4-24-12 |
| Insulation Inspection  *See Back* | | |
| Gypsum Wallboard Inspection | PR | 5-2-12 |
| Inspection of secondary storm drainage system | 98 | 3-23-12 |

| **Other required permits that must be completed prior to requesting a final inspection:** |
|---|
| Health District Final Approval<br>Contact KCHD to confirm approval<br>(360) 337-5285 |
| Final Electrical Approval<br>Contact L&I (360) 415-4000 |
| Final Building Inspection |

## Please Note:
Only approved inspections extend permit expiration date.

Notes: ☆ *Footing Drains*  Jerry Cowell  3-21-12



Permit # 12 104446
Rick Pope 11-004
Date 5/21/12
Approved for Occupancy/Use

# EXHIBIT
# # 16



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
Erik Arellano
Erik Construction
203 Meadow Avenue N, #16
Renton, WA 98057

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Arellano:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Erik Construction ("Erik") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Erik's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Erik for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Erik of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures: Complaint
          Notice of Defect

# EXHIBIT

# # 17



**M|B** Law Group

117 SW Taylor Street, Suite 200
Portland, Oregon 97204
Tel: 503-914-2015; Fax: 503-914-1725

*Serving Oregon, Washington and Alaska*

**Thomas W. Purcell**
Admitted in Oregon and Washington
tpurcell@mblglaw.com
Tel: 503-220-4293

February 13, 2018

United Specialty Insurance Company
1900 L Don Dodson Drive
Bedford, TX 76021

| RE: | | | |
|---|---|---|---|
| | Insured | : | Erik Construction |
| | Date of Loss | : | TBA |
| | Claimant | : | Logg, Ric & Kelly |
| | Loss Location | : | 249 E. 29th Street |
| | | | Bremerton, WA 98310 |
| | | | |
| | UW Policy No. | : | AIQ930408; AIQ930408-1 |
| | Policy Period | : | June 1, 2012 – June 1, 2013; June 1, 2013 – June 1, 2014 |
| | | | |
| | Your Policy No. | : | CDG00002159 |
| | Policy Period | : | March 4, 2014 – March 4, 2016 |

Dear Sir or Madam:

My office has been appointed as defense counsel for Erik Construction by Certain Underwriters at Lloyd's, London, ("Underwriters") who provided insurance coverage to Erik Construction from June 1, 2012 to June 1, 2014. We understand that United Specialty Insurance Company also provided insurance to Erik Construction.

We understand that Underwriters' Third Party Administrator, Blair and Co., previously tendered this claim to United Specialty on two occasions but has received no response. Copies of those tender letters are included herewith. We are writing to tender this claim again. Please advise at your earliest convenience whether United Specialty will accept tender and share in the defense costs of your and Underwriters' mutual insured.

If United Specialty will not participate, please explain why so we can advise Erik Construction and it can consider its options. As you may be aware, Washington law is quite strict regarding an insurer's duties, so we recommend a prompt response.

Thank you for your attention to this matter. Please feel free to contact our office with any questions you may have.

Very truly yours,

Thomas W. Purcell

TWP:sk



**BLAIR**

CLAIMS MANAGEMENT
www.blairandco.net

December 18, 2017

**VIA FIRST CLASS MAIL & CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

United Specialty Insurance
1900 L Don Dodson Drive
Bedford, TX 76021

RE:  Insured          :  Erik Construction
     Date of Loss     :  TBA
     Claimant         :  Logg, Ric & Kelly
     Loss Location    :  249 E 29th Street
                         Bremerton, WA 98310

     Policy No.       :  AIQ930408
     Policy Period    :  June 1, 2012 - June 1, 2013
     Our File No.     :  52256 PKE

     Policy No.       :  AIQ930408-1
     Policy Period    :  June 1, 2013 - June 1, 2014
     Our File No.     :  52257 PKE

Dear Sir or Madam:

We are Third Party Administrators for Certain Underwriters at Lloyd's, London
(hereinafter referred to as "Underwriters"), who provide insurance coverage to Erik
Construction.

We have not received a response to the enclosed tender letter. Please advise at your earliest
convenience whether you will accept the tender and share in the defense costs of our
mutual inured.

Thank you for your prompt attention to this matter. Should you have any questions, please
don't hesitate to contact me.

CLAIMS MANAGEMENT
www.blairandco.net
claims@blairandco.net

**United Specialty Insurance Company – Page 2**
**Insured: Erik Construction**
**Our File No. 52256 PKE**
**December 18, 2017**

Very truly yours,

*Pam Keim*

Pam Keim
Blair & Company
Eastern Regional Office
800.487.1263, ext. 213
pam.keim@blairandco.net
PKE:rh

Enclosure:     Tender Letter dated October 26, 2017





**BLAIR**

CLAIMS MANAGEMENT
www.blairandco.net

October 26, 2017

United Specialty Insurance
1900 L Don Dodson Drive
Bedford, TX 76021

RE: Insured            :    Erik Construction
    Date of Loss        :    TBA
    Claimant           :    Logg, Ric & Kelly
    Loss Location       :    249 E 29th Street
                             Bremerton, WA 98310

    Policy No.          :    AIQ930408
    Policy Period       :    June 1, 2012 - June 1, 2013
    Our File No.        :    52256 PKE

    Your Policy No.     :    CGD00002159
    Policy Period       :    March 4, 2014 – March 4, 2016

Dear Sir or Madam:

We are Third Party Administrators for Certain Underwriters at Lloyd's, London (hereinafter referred to as "Underwriters"), who provide insurance coverage to Erik Construction.

We were recently served with a copy of the attached Third Party Complaint in the matter captioned Ric Logg, et al v Highmark Homes, LLC, et al pending in Kitsap County, Washington alleging defective construction work by Erik Construction.

Based on information from the State of Washington's Department of Labor & Industries, we understand that you also provided insurance coverage to Erik Construction from March 4, 2014 to March 4, 2016. Therefore, we are writing to tender defense of the above-referenced claim.

We are currently defending Erik Construction under a reservation of rights and have appointed the following counsel:

**Insured: Erik Construction**
**Our File No. 52256 PKE**
**October 26, 2017**

CLAIMS MANAGEMENT
www.blairandco.net
claims@blairandco.net

John W. Knottnerus & Thomas W. Purcell
MB Law Group, LLP
117 SW Taylor Street
Portland, Oregon 97221
503-914-2015

We are amenable to sharing defense costs going forward and will also be tendering this claim to Houston Specialty Insurance Company, who insured Erik Construction from March 21, 2016 to March 21, 2017. Please advise at your earliest convenience whether you will accept this tender and share in the defense costs of our mutual inured.

Thank you for your prompt attention to this matter. Should you have any questions, please don't hesitate to contact me.

Very truly yours,

Pam Keim

Pam Keim
Blair & Company
Eastern Regional Office
800.487.1263, ext. 213
pam.keim@blairandco.net
PKE:eh

Enclosure:    Third Party Complaint



# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KITSAP

RIC LOGG, a Washington resident; KELLY LOGG, a Washington resident; DERIN WHITE, a Washington resident; ANTHONY MEDINA, a Washington resident; MARISA MEDINA, a Washington resident; RYAN LUNDBERG, a Washington resident; RAULIN ALVIOR, a Washington resident; NICK ORMEROD, a Washington resident; TAYLOR ORMEROD, a Washington resident; DAVID SCHULTZ, a Washington resident; ROBIN EGNATIOS, a Washington resident; BRITTANY SIMMONS, a Washington resident; GRACE JONES, a Washington resident; ANDREW JONES, a Washington resident; MELVIN THOMAS, a Washington resident; ASHLEY BARLOW, a Washington resident; TINA GILLESPIE, a Washington resident; NICHOLAS HURST, a Washington resident; KAYLIN JORDAN, a Washington resident; MIKHAIL JORDAN, a Washington resident; KRISTEN REW, a Washington resident,

Plaintiffs,

vs.

HIGHMARK HOMES, LLC, a Washington Company; TOM TOLLEN, an individual; Washington resident; JOHN DOE COMPANIES and/or CORPORATIONS, Washington Companies,

Defendants.

NO. 16-2-02163-0

DEFENDANTS HIGHMARK HOMES AND TOM TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT, AND HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT

DEFENDANTS HIGHMARK HOMES AND TOM TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT, AND HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT - 1

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

HIGHMARK HOMES, LLC, a Washington
company; TOM TOLLEN, an individual
resident;

        Defendant/Third-Party Plaintiffs,

vs.

BIGFOOT CONSTRUCTION, LLC, a
Washington limited liability company; B&B
CONSTRUCTION & REMODELING LLC, a
Washington limited liability company; BEST
QUALITY FRAMING #1 LLC, a Washington
limited liability company; ERIK
CONSTRUCTION, a Washington sole
proprietorship; FILI AND SONS
CONSTRUCTION INC., a Washington
corporation; PV HOME FRAMING LLC, a
Washington limited liability company; S & S
HOME REPAIR INC., a Washington
corporation; VAB QUALITY WORKS LLC,
Washington limited liability company.

        Third-Party Plaintiffs.

COME NOW Defendants Highmark Homes, LLC and Tom Tollen (hereinafter

collectively referred to as "Highmark" unless indicated otherwise) and answer the Plaintiffs'

Seconded Amended Complaint for Damages.

## PARTIES

1.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

2.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

3.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

4.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

5.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

6.    Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 2

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1  7.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

2  8.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

3  9.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

4  10.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

5  11.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

6  12.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

7  13.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

8  14.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

9  15.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

10 16.  Paragraph 16 does not contain allegations against Highmark and therefore no answer

11 is required. To the extent an answer is required, it is denied.

12 17.  Highmark admits that Highmark Homes is a Washington limited liability company

13 and that it has done business in Bremerton, Washington. The paragraph is otherwise denied.

14 18.  Highmark admits that Highmark Homes was the general contractor for homes within

15 the Vintage Hills development in Bremerton, Washington. The remainder is denied.

16 19.  Admit.

17                              **VENUE/ JURISDICTION**

18

19 20.  Highmark has performed business in Bremerton, Washington. The paragraph is

20 otherwise admitted.

21                              **CAUSES OF ACTION**

22                              **BREACH OF CONTRACT**

23 21.  Highmark incorporates its answers to the preceding paragraphs.

24

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
-3

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

1    22.   The RESPAs speak for themselves. To the extent the allegations are inconsistent with

2    the RESPAs, they are denied. Highmark denies that it entered into RESPAs with each of the

3    Plaintiffs named herein.

4    23.   Paragraph 23 calls for a legal conclusion, and therefore no answer is required. To the

5    extent an answer is required, it is denied.

6    24.   Denied.

7    25.   The RESPAs speak for themselves. To the extent the allegations are inconsistent with

8    the RESPAs, they are denied. The paragraph is otherwise denied.

9

10   26.   Denied.

11   27.   The RESPAs speak for themselves. To the extent the allegations are inconsistent

12   with the RESPAs, they are denied. The paragraph is otherwise denied.

13   28.   Denied.

14   29.   Denied.

15   30.   Denied.

16                    **BREACH OF IMPLIED WARRANTY OF HABITABILT Y**

17   31.   Highmark incorporates its answers to the preceding paragraphs.

18   32.   Paragraph 32 calls for a legal conclusion, and therefore no answer is required. To the

19   extent an answer is required, Highmark Homes admits it was the general contractor for the

20   project, and sold the homes. The paragraph is otherwise denied.

21   33.   Denied.

22

23   34.   Denied.

24   35.   Denied.

25   36.   Denied.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 4

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

## VIOLATION OF CONSUMER PROTECTION ACT (RCW 19.86)

37.    Highmark incorporates its answers to the preceding paragraphs.

38.    Paragraph 38 calls for a legal conclusion, and therefore no answer is required. To the extent an answer is required, Highmark Homes admits it was the general contractor for the project, and sold the homes. The paragraph is otherwise denied.

39.    Denied.

40.    Admit.

41.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with the RESPAs, they are denied. The paragraph is otherwise denied.

42.    Denied.

43.    Denied.

44.    Paragraph 44 calls for a legal conclusion, and therefore no answer is required. To the extent an answer is required, it is denied.

45.    Denied.

46.    Denied.

## BREACH OF THE INDEPENDENT DUTY DOCTRINE

47.    Highmark incorporates its answers to the preceding paragraphs.

48.    Paragraph 48 calls for a legal conclusion, and therefore no answer is required. To the extent an answer is required, Highmark Homes admits it was the general contractor for the project, and sold the homes. The paragraph is otherwise denied.

49.    Paragraph 49 calls for a legal conclusion, and therefore no answer is required. To the extent an answer is required, it is denied.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 5

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

1    50.    Paragraph 50 calls for a legal conclusion, and therefore no answer is required.  To the

2    extent an answer is required, it is denied.

3    51.    Denied.

4    52.    Denied.

5    53.    Denied.

6                               NEGLIGENT MISREPRESENTATION

7    54.    Highmark incorporates its answers to the preceding paragraphs.

8

9    55.    Paragraph 55 calls for a legal conclusion, and therefore no answer is required.  To the

10   extent an answer is required, Highmark Homes admits it was the general contractor for the

11   project, and sold the homes. The paragraph is otherwise denied.

12   56.    Admit.

13   57.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

14   the RESPAs, they are denied.  The paragraph is denied in all other respects.

15   58.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

16   the RESPAs, they are denied.  The paragraph is denied in all other respects.

17   59.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

18   the RESPAs, they are denied.  The paragraph is denied in all other respects.

19   60.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

20   the RESPAs, they are denied

21

22   61.    Highmark denies the homes were constructed with code violations and deviations

23   from the plans and specifications. The paragraph is otherwise denied.

24   62.    Denied.

25   63.    Denied.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 6

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1    64.    Denied.

2    65.    Denied.

3    66.    Denied.

4

<div align="center"><strong>AFFIRMATIVE DEFENSES</strong></div>

5      By way of further answer and affirmative defenses, Highmark alleges as follows:

6    1.    The Plaintiffs may have failed to state a claim upon which relief may be granted.

7    2.    The Plaintiffs may lack standing to assert their claims.

8    3.    The Plaintiffs' claims may be barred by their own breach of contract.

9    4.    The Plaintiffs' claims may be barred or limited by the contractual terms and
10 provisions.

11    5.    The Plaintiffs may have failed to mitigate their damages.

12    6.    The Plaintiffs' damages, if any, may have been proximately caused by their own acts
13 or omissions.

14    7.    The Plaintiffs' damages, if any, may have been proximately caused by acts or
15 omissions of third parties over whom Highmark had no responsibility or control.

16    8.    Plaintiffs' claims may be barred or limited by all applicable warranties that pertain to
17 the contracting parties, if any, including time limitations contained in the warranty.

18    9.    Plaintiffs' claims are barred to the extent their acts or omissions constitute a waiver of
19 any applicable warranties.

20    10.    The Plaintiffs' claims may be barred by the doctrines of waiver, laches, and estoppel.

21    11.    The Plaintiffs may have failed to comply with notice requirements pursuant to RCW
22 64.50 et. seq.

23    12.    The Plaintiffs' claims may be barred or reduced proportionately by their assumption of
24 risk.

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 7

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

1    13.    Highmark hereby asserts all affirmative defenses allowed by CR 12(b)(6).

2    14.    Highmark hereby asserts all affirmative defenses in RCW 4.16.326.

3    15.    Highmark's performance under the contract may be excused by estoppel, waiver,

4    interference with contractual performance, impossibility or impracticability, or frustration of

5    purpose.

6          Highmark reserves the right to amend this answer, including, but not limited to

7    amending or supplementing the affirmative defenses asserted herein, joining additional third

8    parties, and adding counterclaims after further investigation and discovery.

9

10                              **THIRD-PARTY COMPLAINT**

11    1.    Highmark Homes, LLC was at all relevant times a Washington limited liability

12    company doing business in Kitsap County, Washington.

13    2.    Third-Party Defendant Bigfoot Construction, LLC was at all relevant times a

14    Washington limited liability company doing business in Kitsap County, Washington.

15    3.    Third-Party Defendant B&B Construction & Remodeling LLC was at all relevant

16    times a Washington limited liability company doing business in Kitsap County, Washington.

17    4.    Third-Party Defendant Best Quality Framing #1 LLC was at all relevant times a

18    Washington limited liability company doing business in Kitsap County, Washington.

19    5.    Third-Party Defendant Erik Construction was at all relevant times a Washington sole

20    proprietorship doing business in Kitsap County, Washington.

21    6.    Third-Party Defendant Fili and Sons Construction Inc. was at all relevant times a

22    Washington corporation doing business in Kitsap County, Washington.

23    7.    Third-Party Defendant PV Home Framing, LLC was at all relevant times a

24    Washington limited liability company doing business in Kitsap County, Washington.

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 8

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

8.     Third-Party Defendant S & S Home Repair Inc. was at all relevant times a Washington corporation doing business in Kitsap County, Washington.

9.     Third-Party Defendant VAB Quality Works LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

10.    This Court has jurisdiction over the parties and subject matter of this lawsuit, and venue is proper in Kitsap County, Washington because Kitsap County is the location where the parties' contracts were performed and/or breached, and where the parties transacted business.

11.    Highmark entered into contracts with the Third-Party Defendants to perform labor and/or supply materials for the construction of the homes that are the subject of the Plaintiffs' complaint.

12.    The Plaintiffs are alleging, among other things, that the homes suffer from construction defects. Their allegations implicate the Third-Party Defendants' work on the homes.

13.    Highmark denies the Plaintiffs' allegations; however, to the extent the Plaintiffs prevail on any of their claims, then the Third-Party Defendants are liable to Highmark for breach of contract and/or breach of warranty. The breaches have damaged or will damage Highmark in an amount to be proven at trial.

14.    The Third-Party Defendants owe a contractual and/or implied duty to defend and indemnify Highmark. Highmark hereby tenders to the Third-Party Defendants defense and indemnity of this matter. To the extent the Third-Party Defendants fail to meet these obligations, they are in breach. These breaches have damaged or will damage Highmark in an amount to be proven at trial.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 9

GILLASPY & RHODE, PLLC
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

15.    To the extent that the contracts between Highmark and the Third-Party Defendants required the Third-Party Defendants to have Highmark named as an additional insured on their insurance policies, and they have failed to do so, then the Third-Party Defendants are in breach of contract. These breaches have damaged or will damage Highmark in an amount to be proven at trial.

16.    Highmark reserves the right to amend its Third-Party Complaint to join additional Third-Party Defendants..

## PRAYER FOR RELIEF

Wherefore, having answered Plaintiffs' Second Amended Complaint, and having asserted affirmative defenses and third-party claims, Highmark prays for the following relief:

1.    For judgment dismissing the Plaintiffs' claims;

2.    That Highmark be awarded judgment in its favor on its Third-Party Complaint;

3.    For attorney's fees and costs, as appropriate; and

4.    For such other and further relief, the Court deems just and equitable

DATED this 15th   day of June, 2017.

GILLASPY & RHODE, PLLC

Betsy A. Gillaspy, WSBA No. 21340
bgillaspy@gillaspyrhode.com
Patrick McKenna, WSBA No. 35834
pmckenna@gillaspyrhode.com
Attorneys for Defendant Highmark Homes and
Tom Tollen

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 10

GILLASPY & RHODE, PLLC
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

**CERTIFICATE OF SERVICE**

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served a true and accurate copy of the foregoing on the following individuals via email.

Todd K. Skoglund
Christopher R. Casey
Casey & Skoglund PLLC
130 Nickerson Street, Suite 210
Seattle, WA 98109
*Attorneys for Plaintiffs*

Dated this ___ day of June, 2017.

Laura Taylor

---

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 11

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995


# M|B Law Group

117 SW Taylor Street, Suite 200
Portland, Oregon 97204
Tel: 503-914-2015; Fax: 503-914-1725

*Serving Oregon, Washington and Alaska*

Thomas W. Purcell
Admitted in Oregon and Washington
tpurcell@mblglaw.com
Tel: 503-220-4293

June 11, 2018

United Specialty Insurance Company
1900 L Don Dodson Drive
Bedford, TX 76021

RE:     Insured              :     Erik Construction
         Date of Loss       :     TBA
         Claimant          :     Logg, Ric & Kelly
         Loss Location     :     249 E. 29th Street
                                           Bremerton, WA 98310

         UW Policy No.     :     AIQ930408; AIQ930408-1
         Policy Period      :     June 1, 2012 – June 1, 2013; June 1, 2013 – June 1, 2014

         Your Policy No.    :     CDG00002159
         Policy Period      :     March 4, 2014 – March 4, 2016

Dear Sir or Madam:

This letter addresses an upcoming mediation in this matter and United Specialty Insurance Company's ("United Specialty") continued failure to respond to numerous tenders by and on behalf of its insured, Erik Construction ("Erik"). As you know, we are serving as defense counsel for Erik. We were appointed by Certain Underwriters at Lloyd's, London, ("Underwriters") who provided insurance coverage to Erik from June 1, 2012 to June 1, 2014.

As you further know, United Specialty also provided insurance to Erik Construction. Over the last few months Underwriters, and then Erik directly, formally tendered the above claim to United Specialty on at least four occasions but have yet to receive a response. Erik also tendered a number of other claims without response, including the Russell claim, on which we are now in the midst of settlement negotiations with the Plaintiffs – without United Specialty's participation.

Please be advised that a mediation of this case has been set for July 16, 2018. We will attend the mediation on Erik's behalf. I am writing to give you notice that, in order to protect itself, Erik may need to pursue or assign its claims against United Specialty to the plaintiff. Given United Specialty's non-response to multiple tender attempts, that claim or assignment will include any and all applicable claims for bad faith and for violations of Washington's, Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA"). RCW 19.86.020, *et seq.* and 48.030.010, *et seq.*

I strongly encourage United Specialty to participate in the resolution of this claim in order to minimize its and Erik's exposure. We are not aware of – and have not been apprised of – any coverage issues under United Specialty's policies, but at this point believe any potential limitations on coverage have likely been waived or precluded by United Specialty's failure to respond to Erik's tenders.

Very truly yours,

Thomas W. Purcell

TWP:sk

## Tom Purcell

| | |
|---|---|
| **From:** | David Turner <turner@SpecialtyClaims.com> |
| **Sent:** | Saturday, August 11, 2018 12:33 PM |
| **To:** | Tom Purcell |
| **Subject:** | FW: Erik Construction - Coverage Denials re Russell, LeClair, Logg and Darval |
| **Attachments:** | USIC 20171001001 Russell v. Highmark v. Erik Construction Inc. Co-carrier Denial..doc; USIC 20171102001 Logg v. Highmark v. Erik Construction Inc. Co-carrier Denial (002)..doc; USIC 20180118001 Darval v. Highmark v. Erik Construction Inc. Co-carrier Denial..doc; USIC 20170310001 LeClair v. Highmark v. Erik Construction Inc. Co-carrier Denial._.doc |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hello Tom,

Hope you are having a good weekend.

As promised, we have attached coverage denials regarding each of the Russell, LeClair, Logg and Darval actions. Thank you again for your patience and for providing the information and documentation requested. If you have any questions please contact me.

**David J. Turner**
Senior Claims Analyst
Specialty Claims Management
25909 Pala, Suite 395
Mission Viejo, CA 92691

Direct: 949-600-5680
Fax: 949-600-5688
Turner@Specialtyclaims.com
www.specialtyclaims.com



SPECIALTY CLAIMS
MANAGEMENT

This email and any attachment is intended only for the use of the individual(s) or entity to which it is addressed and may contain information that is confidential and legally privileged. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this email and any attachment is strictly prohibited. If you have received this email in error, please notify the sender by telephone or at the email address listed above. Thank you.

**From:** David Turner
**Sent:** Friday, August 3, 2018 3:10 PM
**To:** TPurcell@mblglaw.com
**Subject:** RE: Erik Construction - Past tender letters to United Specialty

Hi Tom,

I am drafting coverage denials on the Russell, LeClair, Logg and Darval actions, which my manager will review when he returns next week from his trip out of the country. Then we will get them out to you.

Again, USIC expressly reserves its right to assert all defenses to coverage under the policy whether set forth in this email or not, including its right to file a declaratory judgment action to determine its duties, if any, under the policy. United is not waiving any rights or admitting any obligations under the policy. No waiver or estoppel is intended or should be inferred.

Have a good weekend.

David

**David J. Turner**
Senior Claims Analyst
Specialty Claims Management
25909 Pala, Suite 395
Mission Viejo, CA 92691

Direct: 949-600-5680
Fax: 949-600-5688
Turner@Specialtyclaims.com
www.specialtyclaims.com



This email and any attachment is intended only for the use of the individual(s) or entity to which it is addressed and may contain information that is confidential and legally privileged. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this email and any attachment is strictly prohibited. If you have received this email in error, please notify the sender by telephone or at the email address listed above. Thank you.

**From:** Tom Purcell <TPurcell@mblglaw.com>
**Sent:** Friday, July 20, 2018 12:52 PM
**To:** David Turner <turner@SpecialtyClaims.com>
**Subject:** RE: Erik Construction - Past tender letters to United Specialty

David,

I just want to confirm United Specialty's position. Based on your email, it appears that United Specialty is denying defense and indemnity to Erik based on the past liabilities exclusion and past construction exclusion. Please let me know if that is the case or if United Specialty is instead continuing not to make a decision.

Thanks,

Tom

Thomas W. Purcell | Attorney

117 SW Taylor St., Suite 200
Portland, OR 97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to: tpurcell@mblglaw.com

**M B** Law Group

CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.

**From:** David Turner [mailto:turner@SpecialtyClaims.com]
**Sent:** Friday, July 20, 2018 11:12 AM
**To:** Tom Purcell <TPurcell@mblglaw.com>
**Subject:** RE: Erik Construction - Past tender letters to United Specialty

Hello Tom,

Thank you for providing the additional documentation. From the information provided it appears all of the homes involved in the Russell, LeClair, Logg and Darval actions were completed prior to inception of Erik Construction's USIC insurance policy CGD00002159 effective 3/4/14 to 3/4/15 and USIC policy CGD00003527-01 effective 3/31/14 to 3/31/15. Each policy contains a past liabilities exclusion and past construction exclusion which precludes coverage for such.

I noticed that the Master Service Agreement between Erik LLC and Highmark Homes has strong indemnity language in favor of Erik Construction. I am just wondering if you tendered this matter to Highmark Homes.

If you have anything else for us to review, please let me know.

This investigation has been, and is being conducted under a complete reservation of rights pursuant to the above-mentioned USIC insurance policies.

United expressly reserves its right to assert all defenses to coverage under the policy whether set forth in this email or not. United also reserves its right to file a declaratory judgment action to determine its duties, if any, under the policies. United is not waiving any rights or admitting any obligations under the policy. No waiver or estoppel is intended or should be inferred.

Thank you.

David

**David J. Turner**
Senior Claims Analyst
Specialty Claims Management
25909 Pala, Suite 395
Mission Viejo, CA 92691

Direct: 949-525-4388
Fax: 949-600-5688
Turner@Specialtyclaims.com
www.specialtyclaims.com



This email and any attachment is intended only for the use of the individual(s) or entity to which it is addressed and may contain information that is confidential and legally privileged. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this email and any attachment is strictly prohibited. If you have received this email in error, please notify the sender by telephone or at the email address listed above. Thank you.

**From:** Tom Purcell <TPurcell@mblglaw.com>
**Sent:** Friday, June 22, 2018 11:57 AM
**To:** David Turner <turner@SpecialtyClaims.com>
**Cc:** John Knottnerus <JKnottnerus@mblglaw.com>
**Subject:** Erik Construction - Past tender letters to United Specialty

Dave,

Thanks for the call-back today. For your records, I've attached some of the various tender letters to United Specialty we have sent over the past few months (which also included past tender letters from Blair and Co. on behalf of Certain Underwriters of Lloyd's London and copies of the complaint).

I understand from our call that you believed you may have requested some information on these claims in the past but did not recall from whom you may have requested it. Could you please send me copies of any correspondence between United Specialty and my client Erik Construction or any agent of Erik Construction?

As we discussed, under Washington law, an insurer must make its coverage determination based solely on the contents of the policy and the complaint (which United Specialty has apparently had since October 2017). However, in light of the upcoming mediation, we will share with you some documents pertaining to each case, including the pleadings, expert report, and repair cost estimates. These files are too large to attach to one email so I will be sending them separately.

Also, as we discussed, there is a mediation scheduled for the LeClair, Logg, and Darval cases on July 16, 2018. Please let me know at your earliest convenience whether United Specialty will be participating at the mediation.

Thank you,

Tom

Thomas W. Purcell | Attorney
117 SW Taylor St., Suite 200
Portland, OR 97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to: tpurcell@mblglaw.com

**M B** Law Group

CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.



**SPECIALTY CLAIMS MANAGEMENT**



August 11, 2018

Sent via e-mail and First-Class U.S. Mail
Tom Purcell, Esq.
MB Law Group
117 SW Taylor Street, Suite 200
Portland, Oregon 97204

| | |
|---|---|
| RE: | Ric Logg, *et al v. Highmark Homes, LLC* |
| | Superior Court of Kitsap County, Washington |
| | Case No. 16-2-02163-0 |
| USIC Insured: | Erik Construction, Inc. |
| Our File: | 20171102001 |
| Policy: | CGD00002159 |
| Effective: | 3/4/2014 – 3/4/2015 |
| Claimants: | Multiple |
| Location of Loss: | Bremerton, Washington |
| Date of Loss: | Ongoing |

Dear Mr. Purcell:

Specialty Claims Management (hereinafter "SCM") administers claims made pursuant to a policy of insurance written by United Specialty Insurance Company (hereinafter "USIC") and held by Erik Construction, Inc. (hereinafter "Erik"). SCM has acknowledged receipt of your co-carrier tender regarding the above-mentioned claim for consideration of coverage pursuant to the above-referenced USIC insurance policy.

This matter involves a lawsuit by the purchasers of multiple homes in the Vintage Hills development located in Bremerton, Washington. The Plaintiff's Amended Complaint was filed April 4, 2018, and includes causes of action for 1) Breach of Contract; 2) Breach of Implied Warranty; 3) Violation of Washington Consumer Protection Act; 4) Breach of Independent Duty Doctrine; and 5) Negligent Misrepresentation.

*25909 Pala, Suite 395*
*Mission Viejo, CA 92691*
*Telephone: 949-600-5680*
*Facsimile 949-600-5688*
*Turner@specialtyclaims.com*

Highmark Homes, LLC ("Highmark") filed a Third-Party Complaint against Erik, which was the framing subcontractor for the project, and numerous other subcontractors.

Following SCM's receipt of this reported loss, SCM investigated the facts of the matter. Based on the material contained in our claims file, SCM now responds and provides you with USIC's position. With consideration of the facts related to this loss and with respect to the USIC insurance policy issued to Erik, we have concluded that there is no coverage afforded. Therefore, USIC will not be providing Erik, or any other person or entity with indemnity or a defense regarding the above-entitled matter.

### Insurance Policy Information

USIC insures Erik pursuant to Commercial General Liability Policy Number CGD00002159, effective 3/4/2014 to 3/4/2015. The Declarations page of the policy reflects a combined aggregate limit of $2 million, with a limit of $1 million per claim. The costs of defense of the Named Insured are outside the policy limits, and a $2,500 per claim Self Insured Retention applies to Erik's indemnity and defense obligations. The policy is modified by several endorsements. Also note that while the policy issued is an "occurrence" based policy, only certain "occurrences" are covered.

### Claim Information

We have reviewed and considered the documentation which we have been provided as well as information we have independently gathered. Documentation in the file indicates that Erik's work on the project was completed by October 24, 2012, as indicated by the final invoice paid to Erik on that date, which is more than sixteen months prior to the inception date of USIC Policy CGD00002159, effective March 4, 2014 to March 4, 2015.

Based on the facts provided to SCM, there is no coverage for this reported loss and USIC will not be providing Erik, or any other person or entity, with indemnity or a defense. The reasons for our determination are set forth below.

### Determination of the Claim

Please first refer to your USIC Commercial General Liability Policy Manuscript under **SECTION I – COVERAGES** where the policy states in part:

**1. Insuring Agreement**

a. "We" will only pay those sums that an "insured" under this insurance policy, becomes legally obligated to pay as compensatory "tort damages" as a direct result of an

SPECIALTY CLAIMS
MANAGEMENT

"occurrence" which takes place during the "policy period", which causes "bodily injury" or "property damage" during the "policy period", and where such "tort damages" are neither intended nor expected from the standpoint of the "insured", to which this insurance applies. "We" will have the right and duty to defend "you", the "Named Insured", against any "suit" seeking those compensatory "tort damages", provided that neither "you" nor any other "insured" has any other insurance coverage which would provide "you" with a defense against such a "suit", or any part of such a "suit". "We" have no duty to defend any other "insured" and our duty to indemnify any other "insured" is expressly limited as set forth in this insurance "Policy". "Our" duty to defend "you" and "our" obligation to indemnify "you" is further limited as provided below and as set forth in the Section of this Policy titled "EXCLUSIONS: COVERAGES A AND B." "We" will have no duty to defend "you" against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. "We" may investigate any "occurrence" and settle any "claim" or "suit" that may result at "our" sole and absolute discretion. However:

(1) The amount "we" will pay for compensatory "tort damages" is limited as described in the Section of this Policy titled **EXCLUSIONS: COVERAGES A AND B as well as in the LIMITS OF INSURANCE (SECTION III)** or the sub limit of insurance elsewhere in this policy; and

(2) Subject to Subparagraph 1(a)(1) above, "our" duty to defend ends when "we" have used up the applicable limit or the applicable sub limit of insurance in the payment of judgments or settlements or Supplementary Payments under Coverages A or B or after the applicable policy limit or the applicable policy sub limit of insurance has been "tendered" to the claimant(s) whether or not "our" "tendered" payment is accepted or rejected or ignored and

(3) Where there is no coverage under this insurance policy, there is no duty for "us" to defend "you" or any other "insured". "We" shall have no duty to defend "you" or any "insured" or indemnify any "insured" from any "claim" or "suit" seeking damages which are excluded from coverage under the terms of this insurance policy. Further, "we" shall have no duty to continue to defend any "claim" or "suit" at such time when allegations made by a claimant or by the claimants regarding damages which would be covered or potentially covered by this insurance policy are either

dropped or dismissed or when extrinsic facts are discovered which eliminate the potential for coverage under this insurance policy and "we" shall be entitled to withdraw from "our" defense of "you" as well as from "our" defense of any other insured at that time.

(4) "We" shall have no duty to defend "you" or any "insured" against any "suit" in which it is alleged or claimed that any "bodily injury" or "property damage" is continuous or progressive in nature or results from continuous or repeated exposure to a condition or to conditions, regardless of the potential for indemnity under this insurance policy, unless the "suit" specifically alleges that all of the "bodily injury" and "property damage" for which compensatory "tort damages" are sought first began as a result of an "occurrence" which first took place during the "policy period" or during a "policy period" during which "we" provide or provided continuous and uninterrupted insurance coverage under this or any other insurance policy issued by "us" to the same "Named Insured".

(5) This insurance policy only covers the amount of "bodily injury", "property damage", "personal injury" or "advertising injury" which is incurred during the policy period. No coverage is provided for the amount of "bodily injury", "personal injury", or "property damage" which takes place after the end of the policy period."

(6) "We" shall have no duty to defend any "suit" filed before the inception of this "policy period", whether or not "you" or any other "insured" were named in the "suit" when it was originally filed. If such "suit" is subsequently dismissed and refiled, the original date of filing the original "suit" shall control for purposes of determining whether "we" have a duty to defend "you".

(7) "We" shall have no duty to defend "you" against any "suit" in which it is alleged or claimed that any "bodily injury" occurred, or any "property damage" began, in whole or in part, prior to the inception date of this insurance policy.

(8) In those cases in which "we" do not have a duty or obligation to defend "you" or any other "insured", "we" shall nonetheless have the right to either defend or intervene in any such "suit" which may involve liability covered by this insurance policy. If "we" exercise "our" right to intervene then "we" will also defend

"you" subject to such reservation of rights, if any, which "we" consider appropriate.

(9) "Our" duty to defend extends only to the payment of attorneys selected by "us". The attorneys "we" select and retain to defend "you" shall not represent "us" nor provide advice to "us" with regard to issues of coverage under this insurance policy. If there exists a conflict of interest, real or perceived, such that the "insured" demands independent counsel, the "insured" may retain its independent counsel to represent the "insured", and such independent counsel may associate with counsel retained by "us". Except as required otherwise by applicable law, such independent counsel retained by the "insured" shall be at the "insured's" sole and exclusive cost and expense and "we" shall not reimburse "you" for such costs or expenses.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" is caused by an "occurrence" which takes place during the "policy period" whether such "occurrence" is known or should have been known to the "insured"; and

(3) The "occurrence" was caused solely and exclusively by the "Named Insured" during the policy period; and

(4) The "bodily injury" or "property damage" resulting from such "occurrence" first takes place during the "policy period" and did not arise out of or result from any damage, defect, deficiency, work, inadequacy or "Dangerous Condition" which was created or which existed prior to the inception date of this insurance policy.

c.  All "bodily injury" or "property damage" arising from, caused by or contributed to by, or in consequence of an "occurrence" shall be deemed to have first taken place at the time of the first such "property damage" or "bodily injury" even though (i) the nature and extent of such "property damage" or "bodily injury" may change; (ii) the "occurrence" giving rise to such "property damage" or "bodily injury" may be the result of continuous or repeated exposure to the same generally harmful conditions; (iii) the "property damage" or "bodily injury" may be continuous,

SPECIALTY CLAIMS
MANAGEMENT

progressive, intermittent, cumulative, changing or evolving; and (iv) even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous, intermittent or repeated exposure to substantially the same general condition or conditions.

As stated in the Insuring Agreement above, USIC will only pay those sums that an insured under the insurance policy become legally obligated to pay as a direct result of an "occurrence". An "occurrence" as defined in the policy is "an accident, including continuous or repeated exposure to substantially the same harmful conditions…"

Although the issued USIC insurance policy is an "occurrence" based policy, the policy only covers certain specified occurrences. For the reasons explained below, if the work on which the claims are based was completed prior to the commencement of the USIC insurance policy period, the fact that damage may have resulted during or after the USIC policy period would not trigger a covered "occurrence." In this instance, there is no coverage because there is no "occurrence" as that term is defined by the USIC insurance policy.

Additionally, for there to be a covered "occurrence", an insured's work must take place and damage also must result during the same policy period. Here, no work took place during the USIC policy period, as evidenced by the fact that the work was completed by October 24, 2012.

Further, based on the above quoted language and with consideration for our understanding of the facts of this loss, coverage does not apply since the Commercial General Liability Manuscript Insurance Policy does not serve to warrant the insured's work or the insured's product. The "products completed operations hazard" is quoted below from **SECTION V – DEFINITIONS** along with other relevant terms for your convenience:

20. "Occurrence" means an accident, event or a series of events, including continuous or repeated exposure to substantially the same general harmful conditions, proximately caused by an act or omission of the "insured" regardless of the number of persons, vehicles or objects affected by the act or omission which results, during the "policy period", in "bodily injury" or "property damage" neither expected nor intended from the standpoint of any "insured". In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one occurrence and shall be deemed to have occurred only when such damage first commences.

24. "Products completed operations hazard" means:

a. All "bodily injury" and "property damage" occurring during the

"policy period" away from premises "you" own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in "your" physical possession; or

(2) "Your" work that has not yet been completed. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in "your" contract has been completed; or

(b) When any person or organization has put "your work" or "your product" to its intended use.

For the purpose of subparagraph (a) and (b) above, "your work" or "your product" which may need service, maintenance, correction, adjustment, repair or replacement after it is completed will be treated as completed even though a contract requires such service, maintenance, correction, adjustment, repair or replacement.

b. "Products completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by "you", and that condition was created by the "loading or unloading" of that vehicle by any "insured"; or

(2) The presence of tools, uninstalled equipment or abandoned or unused materials.

26.　　"Property damage" means:

a. Physical injury or destruction to real property or personal property during the "policy period", including all resulting loss of use of that property during the "policy period". All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

b. Loss of use of tangible or intangible personal property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

SPECIALTY CLAIMS
MANAGEMENT

### Since The Insured's Work Was Completed Or Incorporated Into The Project Prior To The Inception Of The USIC Insurance Policy Period, The Alleged Damage, If Any, Is Excluded From Coverage

The USIC insurance policy excludes coverage for "property damage" that constitutes, or arises out of, the work of its "Named Insured" that was completed or incorporated into a project of construction prior to the inception of a USIC insurance policy period. Accordingly, for purposes of the project at issue, the insured's work was completed or incorporated into the subject project prior to the inception of the USIC insurance policy. Therefore, there is no coverage for Erik under the USIC policy. Your attention is directed to that portion of the policy labeled **2. Exclusions – Coverages A and B** where you will find the following:

This insurance <u>does not</u> apply to:

#### bb. Past Liabilities Exclusion

This insurance does not apply to "bodily injury", "personal injury" or "property damage" arising from or out of the "products completed operations hazard", "your work" and/or "your product" completed or incorporated into a project of construction before the inception date of this policy. This exclusion includes "your work" or "your products" which is or which are incorporated in any project of construction, including multiple units of construction or developments, where a "claim" of defective construction resulting in "personal injury", "bodily injury" or "property damage" is made or occurs either before, during or after the "policy period" and whether more or different allegations of defective construction and/or resulting damage are made before, during or after the "policy period", including any "claims made in any "suit".

#### ss. Past Construction Exclusion

This insurance does not apply to "property damage" arising from "your work" or "your product" included within the "products completed operations hazard", which is incorporated in any project of construction before the "policy period."

These exclusions are further clarified by the USIC insurance policy definitions for "Your product," "Your work" and "Products completed operations hazard," which state as follows:

35. "Your Product" means:

a.     Any goods or products, other than real property,

manufactured, sold, handled, distributed or disposed of by "you"; and

b.      Containers, other than vehicles, materials or parts or equipment furnished in connection with such goods or products distributed or disposed of by "you".

"Your Product" does not include:

a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" or

b.      The providing of or failure to provide warnings or instructions.

c.      Vending machines or other personal property or equipment rented to or located for the use of others but not sold.

36. "Your work" means:

a.      Work or operations performed by "you" or on "your" behalf, and

b.      Materials, parts or equipment furnished in connection with such work or operations.

"Your work" does not include:

a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b.      The providing of or failure to provide warnings or instructions.

"Your work" is specifically limited to only the classification or classifications which are specifically listed on the policy Declarations page under the classification section and that has a premium charged for the class or classes. No other class or classes are covered under this insurance policy.

24. "Products completed operations hazard" means:

a.      All "bodily injury" and "property damage" occurring during the "policy period" away from premises "you" own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in "your" physical possession; or

(2)    "Your" work that has not yet been completed. However, "your work" will be deemed completed at the earliest of the following times:

    (a)    When all of the work called for in "your" contract has been completed.

    (b)    When any person or organization has put "your work" or "your product" to its intended use.

For the purpose of subparagraph (a) and (b) above, "your work" or "your product" which may need service, maintenance, correction, adjustment, repair or replacement after it is completed will be treated as completed even though a contract requires such service, maintenance, correction, adjustment, repair or replacement.

b.    "Products completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

    (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by "you", and that condition was created by the "loading or unloading" of that vehicle by any "insured"; or

    (2)    The presence of tools, uninstalled equipment or abandoned or unused materials.

These exclusions are also in accord with Section 1b(4) of the USIC insurance policy which states that:

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (4) The "bodily injury" or "property damage" resulting from such "occurrence" first takes place during the "policy period" and did not arise out of or result from any damage, defect, deficiency, inadequacy or "Dangerous Condition" which was created or which existed prior to the inception date of this insurance policy.

## CONCLUSION

The information available to USIC shows that Erik's work on the project was fully completed by October 24, 2012. USIC Policy CGD00002159 was not effective until March 4, 2014, more than sixteen months after Erik's work was finished. Since all the insured's work was completed and/or incorporated into the construction project prior to the inception of the USIC insurance policy, there is no coverage under the USIC policy.

Based on the above, USIC has determined that it has no duty to defend or indemnify Erik, or any other person or entity, with respect to the above-referenced matter.

Because as a threshold matter we have determined that coverage is precluded based upon the cited provisions and exclusions, this letter is not intended or meant as a comprehensive statement or analysis of all possible applicable policy provisions and exclusions. If additional information is provided to SCM, or if SCM is asked to reconsider its determination based upon new or different facts, we reserve the right on behalf of USIC to address in further detail additional portions of the policy that may be applicable, including any additional provisions and exclusions.

USIC expressly reserves its right to assert all defenses to coverage under the policy whether set forth in this letter or not. USIC also reserves its right to file a declaratory judgment action to determine its duties, if any, under the policy. USIC is not waiving any rights or admitting any obligations under the policy. No waiver or estoppel is intended or should be inferred.

You may contact the undersigned at the address above for any reason and at any time.

Sincerely,

*David Turner*

_____

David Turner
Senior Claims Analyst
Specialty Claims Management



**M|B** Law Group

117 SW Taylor Street, Suite 200
Portland, Oregon 97204
Tel: 503-914-2015; Fax: 503-914-1725

*Serving Oregon, Washington and Alaska*

Thomas W. Purcell
Admitted in Oregon and Washington
tpurcell@mblglaw.com
Tel: 503-220-4293

February 13, 2018

Houston Specialty Insurance Company
800 Gessner Road, Suite 600
Houston, TX 77024-4538

RE: Insured          :     Erik Construction
      Date of Loss     :     TBA
      Claimant        :     Logg, Ric & Kellly
      Loss Location   :     249 E. 29th Street
                               Bremerton, WA 98310

      UW Policy No.  :     AIQ930408; AIQ930408-1
      Policy Period   :     June 1, 2012 – June 1, 2013; June 1, 2013 – June 1, 2014

      Your Policy No. :     TEN17244
      Policy Period   :     March 21, 2016 – March 21, 2017

Dear Sir or Madam:

My office has been appointed as defense counsel for Erik Construction by Certain Underwriters at Lloyd's, London, ("Underwriters") who provided insurance coverage to Erik Construction from June 1, 2012 to June 1, 2014. We understand that Houston Specialty Insurance Company also provided insurance to Erik Construction.

We understand that Underwriters' Third Party Administrator, Blair and Co., previously tendered this claim to Houston Specialty but has received no response. A Copy of that tender letter is included herewith. We are writing to tender this claim again. Please advise at your earliest convenience whether Houston Specialty will accept tender and share in the defense costs of your and Underwriters' mutual insured.

If Houston Specialty will not participate, please explain why so we can advise Erik Construction and it can consider its options. As you may be aware, Washington law is quite strict regarding an insurer's duties, so we recommend a prompt response.

Thank you for your attention to this matter. Please feel free to contact our office with any questions you may have.

Very truly yours,

Thomas W. Purcell

TWP:sk



**BLAIR**
CLAIMS MANAGEMENT
www.blairandco.net

October 26, 2017

Houston Specialty Insurance Company
800 Gessner Road, Suite 600
Houston, TX 77024-4538

RE:  Insured          :    Erik Construction
     Date of Loss     :    TBA
     Claimant         :    Logg, Ric & Kelly
     Loss Location    :    249 E 29th Street
                           Bremerton, WA 98310

     Policy No.       :    AIQ930408
     Policy Period    :    June 1, 2012 - June 1, 2013
     Our File No.     :    52256 PKE

     Your Policy      :    TEN17244
     Policy Period    :    March 21, 2016 – March 21, 2017

Dear Sir or Madam:

We are Third Party Administrators for Certain Underwriters at Lloyd's, London
(hereinafter referred to as "Underwriters"), who provide insurance coverage to Erik
Construction.

We were recently served with a copy of the attached Third Party Complaint in the matter
captioned Ric Logg, et al v Highmark Homes, LLC, et al pending in Kitsap County,
Washington alleging defective construction work by Erik Construction.

Based on information from the State of Washington's Department of Labor & Industries,
we understand that you also provided insurance coverage to Erik Construction from March
21, 2016 to March 21, 2017.  Therefore, we are writing to tender defense of the
above-referenced claim.

We are currently defending Erik Construction under a reservation of rights and have
appointed the following counsel:

CLAIMS MANAGEMENT
www.blairandco.net
claims@blairandco.net

John W. Knottnerus & Thomas W. Purcell
MB Law Group, LLP
117 SW Taylor Street
Portland, Oregon 97221
503-914-2015

We are amenable to sharing defense costs going forward and will also be tendering this claim to United Specialty Insurance Company, who insured Erik Construction from March 4, 2014 to March 4, 2016. Please advise at your earliest convenience whether you will accept this tender and share in the defense costs of our mutual inured.

Thank you for your prompt attention to this matter. Should you have any questions, please don't hesitate to contact me.

Very truly yours,

Pam Keim

Pam Keim
Blair & Company
Eastern Regional Office
800.487.1263, ext. 213
pam.keim@blairandco.net
PKE:eh

Enclosure:    Third Party Complaint



**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KITSAP**

| | |
|---|---|
| RIC LOGG, a Washington resident; KELLY LOGG, a Washington resident; DERIN WHITE, a Washington resident; ANTHONY MEDINA, a Washington resident; MARISA MEDINA, a Washington resident; RYAN LUNDBERG, a Washington resident; RAULIN ALVIOR, a Washington resident; NICK ORMEROD, a Washington resident; TAYLOR ORMEROD, a Washington resident; DAVID SCHULTZ, a Washington resident; ROBIN EGNATIOS, a Washington resident; BRITTANY SIMMONS, a Washington resident; GRACE JONES, a Washington resident; ANDREW JONES, a Washington resident; MELVIN THOMAS, a Washington resident; ASHLEY BARLOW, a Washington resident; TINA GILLESPIE, a Washington resident; NICHOLAS HURST, a Washington resident; KAYLIN JORDAN, a Washington resident; MIKHAIL JORDAN, a Washington resident; KRISTEN REW, a Washington resident, | NO. 16-2-02163-0 <br><br> DEFENDANTS HIGHMARK HOMES AND TOM TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT, AND HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT |
| Plaintiffs, | |
| vs. | |
| HIGHMARK HOMES, LLC, a Washington Company; TOM TOLLEN, an individual; Washington resident; JOHN DOE COMPANIES and/or CORPORATIONS, Washington Companies, | |
| Defendants. | |

HIGHMARK HOMES, LLC, a Washington company; TOM TOLLEN, an individual resident;

        Defendant/Third-Party Plaintiffs,

vs.

BIGFOOT CONSTRUCTION, LLC, a Washington limited liability company; B&B CONSTRUCTION & REMODELING LLC, a Washington limited liability company; BEST QUALITY FRAMING #1 LLC, a Washington limited liability company; ERIK CONSTRUCTION, a Washington sole proprietorship; FILI AND SONS CONSTRUCTION INC., a Washington corporation; PV HOME FRAMING LLC, a Washington limited liability company; S & S HOME REPAIR INC., a Washington corporation; VAB QUALITY WORKS LLC, Washington limited liability company.

        Third-Party Plaintiffs.

COME NOW Defendants Highmark Homes, LLC and Tom Tollen (hereinafter collectively referred to as "Highmark" unless indicated otherwise) and answer the Plaintiffs' Seconded Amended Complaint for Damages.

## PARTIES

1. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

2. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

3. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

4. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

5. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

6. Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

DEFENDANTS HIGHMARK HOMES AND TOM TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT, AND HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT - 2

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

1  7.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

2  8.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

3  9.   Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

4  10.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

5  11.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

6  12.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

7  13.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

8  14.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

9  15.  Denied for lack of information sufficient to form a belief as the truth or falsity thereof.

10 16.  Paragraph 16 does not contain allegations against Highmark and therefore no answer

11 is required. To the extent an answer is required, it is denied.

12 17.  Highmark admits that Highmark Homes is a Washington limited liability company

13 and that it has done business in Bremerton, Washington. The paragraph is otherwise denied.

14 18.  Highmark admits that Highmark Homes was the general contractor for homes within

15 the Vintage Hills development in Bremerton, Washington. The remainder is denied.

16 19.  Admit.

17                              **VENUE/ JURISDICTION**

18

19 20.  Highmark has performed business in Bremerton, Washington. The paragraph is

20 otherwise admitted.

21                              **CAUSES OF ACTION**

22                              **BREACH OF CONTRACT**

23 21.  Highmark incorporates its answers to the preceding paragraphs.

24

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
-3

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956 Fax (425) 462-4995

1    22.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

2    the RESPAs, they are denied. Highmark denies that it entered into RESPAs with each of the

3    Plaintiffs named herein.

4    23.    Paragraph 23 calls for a legal conclusion, and therefore no answer is required. To the

5    extent an answer is required, it is denied.

6    24.    Denied.

7    25.    The RESPAs speak for themselves. To the extent the allegations are inconsistent with

8    the RESPAs, they are denied. The paragraph is otherwise denied.

9

10   26.    Denied.

11   27.    The RESPAs speak for themselves. To the extent the allegations are inconsistent

12   with the RESPAs, they are denied. The paragraph is otherwise denied.

13   28.    Denied.

14   29.    Denied.

15   30.    Denied.

16                    **BREACH OF IMPLIED WARRANTY OF HABITABILTY**

17   31.    Highmark incorporates its answers to the preceding paragraphs.

18   32.    Paragraph 32 calls for a legal conclusion, and therefore no answer is required. To the

19   extent an answer is required, Highmark Homes admits it was the general contractor for the

20   project, and sold the homes. The paragraph is otherwise denied.

21

22   33.    Denied.

23   34.    Denied.

24   35.    Denied.

25   36.    Denied.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 4

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1    **VIOLATION OF CONSUMER PROTECTION ACT (RCW 19.86)**

2    37.    Highmark incorporates its answers to the preceding paragraphs.

3    38.    Paragraph 38 calls for a legal conclusion, and therefore no answer is required. To the

4    extent an answer is required, Highmark Homes admits it was the general contractor for the

5    project, and sold the homes. The paragraph is otherwise denied.

6    39.    Denied.

7    40.    Admit.

8    41.    The RESPAs speak for themselves. To the extent the allegations are inconsistent

9    with the RESPAs, they are denied. The paragraph is otherwise denied.

10

11   42.    Denied.

12   43.    Denied.

13   44.    Paragraph 44 calls for a legal conclusion, and therefore no answer is required. To the

14   extent an answer is required, it is denied.

15   45.    Denied.

16   46.    Denied.

17   **BREACH OF THE INDEPENDENT DUTY DOCTRINE**

18   47.    Highmark incorporates its answers to the preceding paragraphs.

19
     48.    Paragraph 48 calls for a legal conclusion, and therefore no answer is required. To the
20
     extent an answer is required, Highmark Homes admits it was the general contractor for the
21
     project, and sold the homes. The paragraph is otherwise denied.
22
     49.    Paragraph 49 calls for a legal conclusion, and therefore no answer is required. To the
23
24   extent an answer is required, it is denied.

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 5

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1 | 50. Paragraph 50 calls for a legal conclusion, and therefore no answer is required. To the

2 | extent an answer is required, it is denied.

3 | 51. Denied.

4 | 52. Denied.

5 | 53. Denied.

6 |

## NEGLIGENT MISREPRESENTATION

7 | 54. Highmark incorporates its answers to the preceding paragraphs.

8 |

9 | 55. Paragraph 55 calls for a legal conclusion, and therefore no answer is required. To the

10 | extent an answer is required, Highmark Homes admits it was the general contractor for the

11 | project, and sold the homes. The paragraph is otherwise denied.

12 | 56. Admit.

13 | 57. The RESPAs speak for themselves. To the extent the allegations are inconsistent with

14 | the RESPAs, they are denied. The paragraph is denied in all other respects.

15 | 58. The RESPAs speak for themselves. To the extent the allegations are inconsistent with

16 | the RESPAs, they are denied. The paragraph is denied in all other respects.

17 | 59. The RESPAs speak for themselves. To the extent the allegations are inconsistent with

18 | the RESPAs, they are denied. The paragraph is denied in all other respects.

19 | 60. The RESPAs speak for themselves. To the extent the allegations are inconsistent with

20 | the RESPAs, they are denied

21 |

22 | 61. Highmark denies the homes were constructed with code violations and deviations

23 | from the plans and specifications. The paragraph is otherwise denied.

24 | 62. Denied.

25 | 63. Denied.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 6

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1  64.  Denied.

2  65.  Denied.

3  66.  Denied.

4                    **AFFIRMATIVE DEFENSES**

5       By way of further answer and affirmative defenses, Highmark alleges as follows:

6  1.   The Plaintiffs may have failed to state a claim upon which relief may be granted.

7  2.   The Plaintiffs may lack standing to assert their claims.

8  3.   The Plaintiffs' claims may be barred by their own breach of contract.

9  4.   The Plaintiffs' claims may be barred or limited by the contractual terms and
10 provisions.

11 5.   The Plaintiffs may have failed to mitigate their damages.

12 6.   The Plaintiffs' damages, if any, may have been proximately caused by their own acts
13 or omissions.

14 7.   The Plaintiffs' damages, if any, may have been proximately caused by acts or
15 omissions of third parties over whom Highmark had no responsibility or control.

16 8.   Plaintiffs' claims may be barred or limited by all applicable warranties that pertain to
17 the contracting parties, if any, including time limitations contained in the warranty.

18 9.   Plaintiffs' claims are barred to the extent their acts or omissions constitute a waiver of
19 any applicable warranties.

20 10.  The Plaintiffs' claims may be barred by the doctrines of waiver, laches, and estoppel.

21 11.  The Plaintiffs may have failed to comply with notice requirements pursuant to RCW
22 64.50 et. seq.

23 12.  The Plaintiffs' claims may be barred or reduced proportionately by their assumption of
24 risk.

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 7

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

13. Highmark hereby asserts all affirmative defenses allowed by CR 12(b)(6).

14. Highmark hereby asserts all affirmative defenses in RCW 4.16.326.

15. Highmark's performance under the contract may be excused by estoppel, waiver, interference with contractual performance, impossibility or impracticability, or frustration of purpose.

Highmark reserves the right to amend this answer, including, but not limited to amending or supplementing the affirmative defenses asserted herein, joining additional third parties, and adding counterclaims after further investigation and discovery.

## THIRD-PARTY COMPLAINT

1. Highmark Homes, LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

2. Third-Party Defendant Bigfoot Construction, LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

3. Third-Party Defendant B&B Construction & Remodeling LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

4. Third-Party Defendant Best Quality Framing #1 LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

5. Third-Party Defendant Erik Construction was at all relevant times a Washington sole proprietorship doing business in Kitsap County, Washington.

6. Third-Party Defendant Fili and Sons Construction Inc. was at all relevant times a Washington corporation doing business in Kitsap County, Washington.

7. Third-Party Defendant PV Home Framing, LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 8

GILLASPY & RHODE, PLLC
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

8.     Third-Party Defendant S & S Home Repair Inc. was at all relevant times a Washington corporation doing business in Kitsap County, Washington.

9.     Third-Party Defendant VAB Quality Works LLC was at all relevant times a Washington limited liability company doing business in Kitsap County, Washington.

10.    This Court has jurisdiction over the parties and subject matter of this lawsuit, and venue is proper in Kitsap County, Washington because Kitsap County is the location where the parties' contracts were performed and/or breached, and where the parties transacted business.

11.    Highmark entered into contracts with the Third-Party Defendants to perform labor and/or supply materials for the construction of the homes that are the subject of the Plaintiffs' complaint.

12.    The Plaintiffs are alleging, among other things, that the homes suffer from construction defects. Their allegations implicate the Third-Party Defendants' work on the homes.

13.    Highmark denies the Plaintiffs' allegations; however, to the extent the Plaintiffs prevail on any of their claims, then the Third-Party Defendants are liable to Highmark for breach of contract and/or breach of warranty.  The breaches have damaged or will damage Highmark in an amount to be proven at trial.

14.    The Third-Party Defendants owe a contractual and/or implied duty to defend and indemnify Highmark. Highmark hereby tenders to the Third-Party Defendants defense and indemnity of this matter. To the extent the Third-Party Defendants fail to meet these obligations, they are in breach. These breaches have damaged or will damage Highmark in an amount to be proven at trial.

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 9

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

15. To the extent that the contracts between Highmark and the Third-Party Defendants required the Third-Party Defendants to have Highmark named as an additional insured on their insurance policies, and they have failed to do so, then the Third-Party Defendants are in breach of contract. These breaches have damaged or will damage Highmark in an amount to be proven at trial.

16. Highmark reserves the right to amend its Third-Party Complaint to join additional Third-Party Defendants..

## PRAYER FOR RELIEF

Wherefore, having answered Plaintiffs' Second Amended Complaint, and having asserted affirmative defenses and third-party claims, Highmark prays for the following relief:

1. For judgment dismissing the Plaintiffs' claims;

2. That Highmark be awarded judgment in its favor on its Third-Party Complaint;

3. For attorney's fees and costs, as appropriate; and

4. For such other and further relief, the Court deems just and equitable

DATED this 15th day of June, 2017.

GILLASPY & RHODE, PLLC

Betsy A. Gillaspy, WSBA No. 21340
bgillaspy@gillaspyrhode.com
Patrick McKenna, WSBA No. 35834
pmckenna@gillaspyrhode.com
Attorneys for Defendant Highmark Homes and
Tom Tollen

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 10

GILLASPY & RHODE, PLLC
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995

1

**CERTIFICATE OF SERVICE**

2    The undersigned certifies under the penalty of perjury under the laws of the State of

3  Washington that I am now and at all times herein mentioned, a citizen of the United States, a

4  resident of the State of Washington, over the age of eighteen years, not a party to or interested

5  in the above-entitled action, and competent to be a witness herein.

6    On the date given below I caused to be served a true and accurate copy of the

7  foregoing on the following individuals via email.

8

Todd K. Skoglund
9  Christopher R. Casey
Casey & Skoglund PLLC
10  130 Nickerson Street, Suite 210
Seattle, WA 98109
11  *Attorneys for Plaintiffs*

12

13

14    Dated this *16* day of June, 2017.

15

16

17                                    Laura Taylor

18

19

20

21

22

23

24

25

DEFENDANTS HIGHMARK HOMES AND TOM
TOLLEN'S ANSWERS, AFFIRMATIVE DEFENSES TO
PLAINTIFFS' SECOND AMENDED COMPLAINT, AND
HIGHMARK HOMES, LLC'S THIRD PARTY COMPLAINT
- 11

**GILLASPY & RHODE, PLLC**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Phone (425) 646-2956  Fax (425) 462-4995



# M|B Law Group

117 SW Taylor Street, Suite 200
Portland, Oregon 97204
Tel: 503-914-2015; Fax: 503-914-1725

*Serving Oregon, Washington and Alaska*

Thomas W. Purcell
Admitted in Oregon and Washington
tpurcell@mblglaw.com
Tel: 503-220-4293

June 11, 2018

Ramzy Saleh
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002

RE: Insured              :    Erik Construction
    Date of Loss         :    TBA
    Claimant             :    Logg, Ric & Kelly
    Loss Location        :    249 E. 29th Street
                              Bremerton, WA 98310

    UW Policy No.        :    AIQ930408; AIQ930408-1
    Policy Period        :    June 1, 2012 – June 1, 2013; June 1, 2013 – June 1, 2014

    Your Policy No.      :    TEN17244
    Policy Period        :    March 21, 2016 – March 21, 2017

Dear Mr. Saleh:

        This letter addresses an upcoming mediation in this matter and Houston Casualty
Insurance Company's ("Houston Casualty") continued failure to respond to numerous tenders
by and on behalf of its insured, Erik Construction ("Erik"). As you know, we are serving as
defense counsel for Erik. We were appointed by Certain Underwriters at Lloyd's, London,
("Underwriters") who provided insurance coverage to Erik from June 1, 2012 to June 1, 2014.

        As you further know, Houston Specialty Insurance Company also provided insurance to
Erik Construction. Over the last few months Underwriters, and then Erik directly, formally
tendered the above claim to Houston Specialty on at least four occasions but have yet to
receive a response. Erik also tendered a number of other claims without response, including

the Russell claim, on which we are now in the midst of settlement negotiations with the Plaintiffs – without Houston Specialty's participation. I called you to follow-up on those tenders a number of times and left voicemails when possible (often your mailbox was full and unable to accept new messages). I also emailed you a number of times to discuss the status of Erik's tender, the claim, and whether Houston Specialty would defend and indemnify Erik. You have not substantively responded to the tenders or to those calls or emails.

Please be advised that a mediation of this case has been set for July 16, 2018. We will attend the mediation on Erik's behalf. I am writing to give you notice that, in order to protect itself, Erik may need to pursue or assign its claims against Houston Specialty to the plaintiff. Given Houston Specialty's non-response to multiple tender attempts, that claim or assignment will include any and all applicable claims for bad faith and for violations of Washington's, Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA"). RCW 19.86.020, *et seq.* and 48.030.010, *et seq.*

I strongly encourage Houston Specialty to participate in the resolution of this claim in order to minimize its and Erik's exposure. We are not aware of – and have not been apprised of – any coverage issues under Houston Specialty's policies, but at this point believe any potential limitations on coverage have likely been waived or precluded by Houston Specialty's failure to respond to Erik's tenders.

Very truly yours,

Thomas W. Purcell

TWP:sk

**From:** Mark Powell <MPowell@narisk.com>
**Sent:** Monday, July 16, 2018 8:19 AM
**To:** Tom Purcell
**Subject:** RE: Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

Thanks, Tom.

Mark Powell
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002
mpowell@narisk.com
Phone: (321) 284-0617
Toll Free: (800) 315-6090 Ext. 0617
Fax: (866) 261-8507



**From:** Tom Purcell [mailto:TPurcell@mblglaw.com]
**Sent:** Monday, July 16, 2018 11:11 AM
**To:** Mark Powell <MPowell@narisk.com>
**Subject:** Re: Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

My understanding is the 4th ave address is correct.

Thomas W. Purcell | Attorney
117 SW Taylor St., Suite 200
Portland, OR 97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to: tpurcell@mblglaw.com



CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended

only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.

On Jul 16, 2018, at 5:26 AM, Mark Powell <MPowell@narisk.com> wrote:

Tom,

Just confirming, you indicate the mediation today is at the offices of Christopher J. Soelling, PLLC at 1001 Fourth Ave, Suite 4400, Seattle, WA 98154. I have Mr. Soelling's address as 999 3rd Ave, Suite 3000, Seattle, WA 98104. Is the Fourth Ave address the correct one for the mediation?

Regards,

Mark Powell
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002
mpowell@narisk.com
Phone: (321) 284-0617
Toll Free: (800) 315-6090 Ext. 0617
Fax: (866) 261-8507
<image001.jpg>

**From:** Tom Purcell [mailto:TPurcell@mblglaw.com]
**Sent:** Thursday, July 12, 2018 3:13 PM
**To:** Mark Powell <MPowell@narisk.com>
**Subject:** RE: Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

Hi Mark. The mediation will be July 16, 2018, at 9 am as the offices of Christopher J. Soelling PLLC, 1001 Fourth Avenue, Suite 4400, Seattle, WA 98154. As we discussed a moment ago, we will be happy to send you our confidential mediation correspondence in advance of the mediation as soon as we have written confirmation that Houston Specialty will be attending and has agreed to defend Erik Construction.

Thanks,

Tom


Thomas W. Purcell | Attorney
117 SW Taylor St., Suite 200
Portland, OR 97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to: tpurcell@mblglaw.com

CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.

**From:** Mark Powell [mailto:MPowell@narisk.com]
**Sent:** Thursday, July 12, 2018 10:40 AM
**To:** Tom Purcell <TPurcell@mblglaw.com>
**Subject:** RE: Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

Mr. Purcell,

I am trying to get all this up to speed.   Do you happen to have a pre-mediation report you could supply?

Regards,

Mark Powell
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002
mpowell@narisk.com
Phone: (321) 284-0617
Toll Free: (800) 315-6090 Ext. 0617
Fax: (866) 261-8507
<image001.jpg>

**From:** Tom Purcell [mailto:TPurcell@mblglaw.com]
**Sent:** Friday, July 6, 2018 4:48 PM
**To:** Mark Powell <MPowell@narisk.com>
**Subject:** RE: Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

See attached No. 3

Thomas W. Purcell | Attorney
117 SW Taylor St., Suite 200
Portland, OR 97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to:  tpurcell@mblglaw.com

&lt;image002.png&gt;

CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.

**From:** Mark Powell [mailto:MPowell@narisk.com]
**Sent:** Friday, July 6, 2018 1:12 PM
**To:** Tom Purcell <TPurcell@mblglaw.com>
**Subject:** Logg, et al. v. Highmark Homes, et al. - Your Client / Our Insured: Erik Construction - Our claim # TNHS17110002

Mr. Purcell,

Houston Specialty Insurance Company ("HSIC") has appointed North American Risk Services (NARS) as its third party administrator in this matter. This is a follow up to my voicemail message to you. I have just taken over the handling of the above captioned claim.

We are in the process of investigating the facts and circumstances of this matter in conjunction with the terms and conditions of the HSIC policy issued to Erik Arellano DBA Erik Construction.

Please understand that nothing completed previously or hereafter by this writer or any other representative of NARS or HSIC should be construed as a waiver of any benefits or privileges that may exist under the contract of insurance. The text of this communication is based solely on information that has been provided up to and including the date of this letter. Please be advised the investigation and evaluation undertaken by the undersigned is being conducted under a full reservation of rights.

The phrase "reservation of rights" means that the insured's rights and those of the carrier under the policy and applicable law are fully reserved and any action taken during the course of our investigation and evaluation of this matter should not be deemed a waiver of or "estoppel" to assert any such right. Neither shall the carrier's investigation and evaluation of this matter prejudice the insured's rights under the policy and applicable law.

In order that we may respond to this claim, we would request your attention to responses to the following information.

1. Provide us copies of the job files for Erik Construction as relates to this project, including, but not limited to contracts, invoices, payments, etc. evidencing the work Erik Construction conducted at the project.

2. Please provide us with a copy of any expert reports.

3. Provide us a copy of the notice of completions for the project in question as well as any documentation as to completion dates of Erik Construction's work on this project.

4. Please advise the specifics of any claims, and specifically the resultant damage alleged with the work completed by Erik Construction.

5. Provide us a copy of any statement of claims, defect list, cost of repair, or other document setting forth the alleged issues by your client and their scope and cost to repair such items.

6. Was the project subject to a wrap up or any other kind of owner controlled insurance program?

7. Please provide dates of any scheduled inspections.

8. Please forward a copy of the original complaint.

HSIC fully reserves the right to deny defense and/or indemnification to the extent the allegations made and damages sought fall outside the scope of coverage of the policies; to withdraw from any defense upon reasonable notice to the insured; to seek reimbursement of defense and/or indemnity payments to the extent no such obligations ever existed; to seek reimbursement of defense costs clearly allocable to uncovered claims; and to file an action for declaratory relief to determine the rights and duties of HSIC and the insured/s under the subject policies issued by HSIC.

In the interim, should you have questions, please feel free to contact the undersigned.

Sincerely,

Mark Powell
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002
mpowell@narisk.com
Phone: (321) 285-0617
Toll Free: (800) 315-6090 Ext. 0617
Fax: (866) 261-8507
<image001.jpg>


Mark Powell
Sr. Claims Adjuster
North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
www.narisk.com
Phone: (321) 284-0617
Toll Free: 800-315-6090 Ext. 0617
Fax: (866) 261-8507
Mobile:



If you send an e-mail related to a claim, please send it to the following address so that it can be posted to the claim file: mailroom@narisk.com

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided.

All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery.

NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us.

This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

Mark Powell
Sr. Claims Adjuster
North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
www.narisk.com
Phone: (321) 284-0617
Toll Free: 800-315-6090 Ext. 0617
Fax: (866) 261-8507
Mobile:



If you send an e-mail related to a claim, please send it to the following address so that it can be posted to the claim file: mailroom@narisk.com

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided.

All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery.

NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us.

This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

Mark Powell
Sr. Claims Adjuster
North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
www.narisk.com

Phone: (321) 284-0617
Toll Free: 800-315-6090 Ext. 0617
Fax: (866) 261-8507
Mobile:



If you send an e-mail related to a claim, please send it to the following address so that it can be posted to the claim file: mailroom@narisk.com

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided.

All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery.

NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us.

This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

Mark Powell
Sr. Claims Adjuster
North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
www.narisk.com
Phone: (321) 284-0617
Toll Free: 800-315-6090 Ext. 0617
Fax: (866) 261-8507
Mobile:



If you send an e-mail related to a claim, please send it to the following address so that it can be posted to the claim file: mailroom@narisk.com

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided.

All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery.

NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us.

This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

**Tom Purcell**

| | |
|---|---|
| **From:** | Tom Purcell |
| **Sent:** | Wednesday, June 20, 2018 10:39 AM |
| **To:** | Ramzy Saleh |
| **Subject:** | RE: Tamara Darval, et al., vs. Highmark Homes, et al.  Insured: Erik Construction, Claim No.: TNHS18060027 |
| **Attachments:** | Erik Construction - Logg.zip |

Ramzy,

Thank you for your email regarding the Darval matter. As you are aware, Darval is one of four cases against Houston Specialty's insured, Erik Construction. The other cases, Russell, LeClair, and Logg, have all been tendered to Houston Specialty on numerous occasions, with no response.

There is a mediation set for July 16, 2018, to try and settle the Darval, LeClair, and Logg matters. Thus, to the extent Houston Specialty participates, it should be as to all of the cases concerning its insured, Erik Construction. And, as we have already informed you, to the extent Houston Specialty does not participate, Erik Construction will seek to assign its claims against Houston Specialty (including claims for bad faith and violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act) to the plaintiffs.

Under Washington law, an insurer makes its determination on whether a duty to defend exists based on two documents, the complaint and the insurance policy. Therefore, many of the documents you request below are irrelevant for your determination of the duty to defend. Nevertheless, we have responded to your requests below (in red) and attached certain relevant documents for all four of the cases involving Houston Specialty's insured, Erik Construction. As the files are too large to send together, I will respond to your email separately with each of the four files.

Given the quickly approaching mediation date, we will need a response from Houston Specialty immediately concerning its obligations to Erik Construction on all four claims.

Thank you,

Tom

Thomas W. Purcell | Attorney
117 SW Taylor St., Suite 200
Portland, OR  97204
503-220-4293 (direct)
503-914-2015 (office)
503-914-1725 (fax)
mail to: tpurcell@mblglaw.com

**M B** Law Group

CONFIDENTIALITY NOTICE: The materials in this electronic mail transmission (including all attachments) are private and confidential and are the property of the sender. The information contained in the material is privileged and is intended only for the use of the named addressee(s). If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this

material is strictly prohibited. If you have received this electronic mail transmission in error, please immediately notify the sender by telephone at (503) 914-2015 or send an electronic message to tpurcell@mblglaw.com, and thereafter, destroy it immediately.

**From:** Ramzy Saleh [mailto:RSaleh@narisk.com]
**Sent:** Wednesday, June 20, 2018 8:20 AM
**To:** Tom Purcell <TPurcell@mblglaw.com>
**Subject:** RE: Tamara Darval, et al., vs. Highmark Homes, et al. Insured: Erik Construction, Claim No.: TNHS18060027

Dear Mr. Purcell:

Houston Specialty Insurance Company ("HSIC") has appointed North American Risk Services (NARS) as its third party administrator in this matter. HSIC acknowledges receipt of the recently tendered matter.

We are in the process of investigating the facts and circumstances of this matter in conjunction with the terms and conditions of the HSIC policy issued to Erik Arellano DBA Erik Construction ("Erik").

Please understand that nothing completed previously or hereafter by this writer or any other representative of NARS or HSIC should be construed as a waiver of any benefits or privileges that may exist under the contract of insurance. The text of this communication is based solely on information that has been provided up to and including the date of this letter. Please be advised the investigation and evaluation undertaken by the undersigned is being conducted under a full reservation of rights.

The phrase "reservation of rights" means that the insured's rights and those of the carrier under the policy and applicable law are fully reserved and any action taken during the course of our investigation and evaluation of this matter should not be deemed a waiver of or "estoppel" to assert any such right. Neither shall the carrier's investigation and evaluation of this matter prejudice the insured's rights under the policy and applicable law.

In order that we may respond to this claim, we would request your attention to responses to the following information.

1. Provide us copies of the job files for Erik as relates to this project, including, but not limited to contracts, invoices, payments, etc. evidencing the work Erik conducted at the project. Attached.
2. Please provide us with a copy of underlying complaint. Attached.
3. Provide us a copy of the notice of completions for the project in question as well as any documentation as to completion dates of Erik's work on this project. We do not have "notices of completions" but the attached invoices are instructive.
4. Please advise the specifics of any claims, and specifically the resultant damage alleged with the work completed by Erik. Are any damages claimed with respect to their work outside of the work itself? If so, provide details. See the attached complaint and expert reports.
5. When was the first notice of any claim? The complaint.
6. Provide us a copy of any statement of claims, defect list, cost of repair, or other document setting forth the alleged issues by the claimant and their scope and cost to repair such items. Attached.
7. Was the project subject to a wrap up or any other kind of owner controlled insurance program? Not to our knowledge.
8. Please provide a copy of the HO Matrix and SOW Matrix. We do not know what this is. Please advise.


HSIC fully reserves the right to deny defense and/or indemnification to the extent the allegations made and damages sought fall outside the scope of coverage of the policies; to withdraw from any defense upon reasonable notice to the insured; to seek reimbursement of defense and/or indemnity payments to the extent no such obligations ever existed; to seek reimbursement of defense costs clearly allocable to uncovered claims; and to file an action for declaratory relief to determine the rights and duties of HSIC and the insured/s under the subject policies issued by HSIC.

In the interim, should you have questions, please feel free to contact the undersigned.

Sincerely,

Ramzy Saleh
Sr. Claims Adjuster
North American Risk Services
P.O. Box 166002
Altamonte Springs, FL 32716-6002
rsaleh@narisk.com
Phone: (321) 441-1433
Toll Free: (800) 315-6090 Ext. 1433
Fax: (866) 261-8507



Ramzy Saleh
Sr. Claims Adjuster
North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
www.narisk.com
Phone: (321) 441-1433
Toll Free: (800) 315-6090 Ext. 1433
Fax: (866) 261-8507
Mobile:



If you send an e-mail related to a claim, please send it to the following address so that it can be posted to the claim file: mailroom@narisk.com

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided.

All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery.

NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us.

This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient,

any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

# EXHIBIT

# # 18



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

*VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL*
Fili and Sons Construction Inc
c/o KLComutax Inc, registered agent
6124 Motor Ave SW
Lakewood, WA 98499-1529

RE:     *Logg, et al. v Highmark Homes, LLC*
          Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Fili and Sons Construction Inc. ("Fili") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Fili's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Fili's for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Fili's of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures: Complaint
            Notice of Defect

# EXHIBIT

# # 19



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**VIA EMAIL**
Atlantic Casualty Insurance Company
Attn: Claims
newclaims@atlanticcasualty.net

RE:  *Logg, et al. v Highmark Homes, LLC*
Kitsap County Superior Court Case No. 16-2-02163-0
Our Client:   Highmark Homes, LLC and Tom Tollen
Your Insured:  Fili and Sons Construction Inc.
Policy No:   L179000028 (Eff. 12.28.09-12.28.13)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, Fili and Sons Construction Inc. ("Filing"), was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Fili's work at the Project.

Highmark hereby tenders defense and indemnity to Atlantic Casualty Insurance Company ("Atlantic") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under Fili's policy, and, thus, Atlantic is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.


Very truly yours,

GILLASPY & RHODE, PLLC



Patrick McKenna

PM/lt


Enclosures:  Complaint
                    Notice of Defect

# EXHIBIT

# # 20

This exhibit was left blank intentionally.

# EXHIBIT

# # 21



# GILLASPY & RHODE PLLC

## ATTORNEYS AT LAW

**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

***WASHINGTON OFFICE:***
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

***OREGON OFFICE:***
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
VAB Quality Works, LLC
c/o Vitaliy A. Bashinskiy, Registered Agent
4624 29th Avenue NE
Tacoma, WA 98422
P.O. Box 23336
Federal Way, WA 98093

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Bashinskiy:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand VAB Quality Works, LLC ("VAB") was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate VAB's work at the Project.

March 7, 2017
Page 2
(*Logg, et al. v Highmark Homes, LLC*)

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against VAB for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45 days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to VAB of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures:  Complaint
             Notice of Defect

# EXHIBIT

# # 22



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

***WASHINGTON OFFICE:***
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

***OREGON OFFICE:***
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**VIA EMAIL**
Atlantic Casualty In. Co
Attn Claims
newclaims@atlanticcasualty.net

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0
       Our Client:    Highmark Homes, LLC and Tom Tollen
       Your Insured:  VAB Quality Works LLC
       Policy Nos:    L125001636-0 (Eff. 03.06.12-03.06.13)
                      L1250007913 (Eff. 03.06.2011-03.06.12)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located at 4553, 4532, and 4442 Abalone Street in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the homes. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, VAB Quality Works LLC ("VAB"), was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects sets forth claims that implicate VAB's work at the Project.

Highmark hereby tenders defense and indemnity to Atlantic Casualty Ins. Co. ("Atlantic") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under VAB's policy, and, thus, Atlantic is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures   Complaint
             Notice of Defects

# EXHIBIT

# # 23



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*Please reply to our Washington office*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

March 7, 2017

*<u>VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL</u>*
PV Home Framing, LLC
c/o Pedro Valverde, registered agent
17630 30<sup>th</sup> Ave Ct. E
Tacoma, WA 98446

RE:    *Logg, et al. v Highmark Homes, LLC*
         Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Valverde:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand PV Home Framing, LLC ("PV") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate PV's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against PV for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to PV of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect

EXHIBIT

# 24



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**VIA US MAIL**
Bankers Insurance Company
Attn: Claims
PO Box 33061
St. Petersburg, FL 33733

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0
        Our Client:    Highmark Homes, LLC and Tom Tollen
        Your Insured:  P V Home Framing LLC
        Policy Nos:    460470000673502 (Eff. 06.18.11-06.18.12)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, P V Home Framing LLC ("P V Home"), was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate P V Homes's work at the Project.

Highmark hereby tenders defense and indemnity to Bankers Insurance Company ("Bankers") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under P V Home's policy, and, thus, Bankers is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures:  Complaint
             Notice of Defect

# EXHIBIT

# # 25



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK McKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

April 25, 2017

### *VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL*
PV Home Framing, LLC
c/o Pedro Valverde, registered agent
19317 105th Avenue CT E
Graham, WA 98338-6450

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Valverde:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand PV Home Framing, LLC ("PV") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate PV's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against PV for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to PV of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect

# EXHIBIT

# # 26



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

***WASHINGTON OFFICE:***
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

***OREGON OFFICE:***
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**VIA US MAIL**
Nevada Capital Insurance Company
Attn: Claims
9400 Double R Boulevard
Reno, NV 89521

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0
        Our Client:     Highmark Homes, LLC and Tom Tollen
        Your Insured:  P V Home Framing LLC
        Policy No:      NCIC0005305  (Eff. 06.18.12-06.18.13)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, P V. Home Framing LLC ("P V Home"), was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate P V Home's work at the Project.

Highmark hereby tenders defense and indemnity to Nevada Capital Insurance Company

("Nevada") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under P V Home's policy, and, thus, Nevada is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.


Very truly yours,

GILLASPY & RHODE, PLLC


Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect

# EXHIBIT

# # 27



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK McKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
Best Quality Framing #1 LLC
c/o Jose Manual Gonzalez, registered agent
25 2nd Avenue S.
Algona, WA 98001-8535

RE:     *Logg, et al. v Highmark Homes, LLC*
         Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Gonzalez:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Best Quality Framing #1 LLC ("Best Quality") was a Framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects sets forth claims that implicate Best Quality's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Best Quality for claims, including, but not limited to, breach of contract and indemnity claims, no less

than 45 days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Best Quality of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures: Complaint
Notice of Defect

# EXHIBIT

# # 28



# GILLASPY & RHODE PLLC

## ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**VIA EMAIL**
American Safety Indemnity Company
Attn: Claims
newnotices@trg.com

RE:   *Logg, et al. v Highmark Homes, LLC*
      Kitsap County Superior Court Case No. 16-2-02163-0
      Our Client:   Highmark Homes, LLC and Tom Tollen
      Your Insured: Best Quality Framing #1 LLC
      Policy Nos:   156AUI61630-00  (Eff.  01.05.12-01.05.13)
                    156ALU16091100  (EFF.  01.05.11-01.05.12)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, Best Quality Framing #1 LLC ("Best Quality"), was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Best Quality's work at the Project.

Highmark hereby tenders defense and indemnity to American Safety Indemnity Company ("American") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under Best Quality's policy, and, thus, American is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures:  Complaint
             Notice of Defect

# EXHIBIT
# # 29

This exhibit was left blank intentionally.

# EXHIBIT

# # 30

This exhibit was left blank intentionally.

# EXHIBIT
# # 31



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**<u>VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL</u>**
S & S Home Repair Inc.
c/o David Sherwood, registered agent
3109 Brookdale Rd E
Tacoma, WA 98446

RE:  *Logg, et al. v Highmark Homes, LLC*
     Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
### TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Sherwood:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand S & S Home Repair Inc. ("S & S") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate S & S' work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against S & S for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to S & S of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures: Complaint
            Notice of Defect

EXHIBIT

# 32



GILLASPY & RHODE PLLC

ATTORNEYS AT LAW

PATRICK MCKENNA
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

<u>**VIA US MAIL**</u>
Navigators Specialty Insurance Company
Attn Claims
1375 East Woodfield Road, Suite 720
Schaumburg, IL 60173

RE:     *Logg, et al. v Highmark Homes, LLC*
      Kitsap County Superior Court Case No. 16-2-02163-0
      Our Client:     Highmark Homes, LLC and Tom Tollen
      Your Insured:     S&S Home Repair Inc.
      Policy No:     46-10160949  (Eff.  03.26.12-03.19.13)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter.  Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project").  On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home.  A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed.  The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, S&S Home Repair ("S&S Home"), was a siding subcontractor to Highmark on the Project.  The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate S&S Home's work at the Project.

Highmark hereby tenders defense and indemnity to Navigators Specialty Insurance Company ("Navigators") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under S &S Home's policy, and, thus, Navigators is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.


Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
               Notice of Defect

# EXHIBIT
# # 33



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

PATRICK MCKENNA
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**_VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL_**
Bigfoot Construction, LLC
c/o Dustin Jones, registered agent
680 Eatonville Hwy W., Unit B
Eatonville, WA 98328

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0

<div align="center">

**NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
TENDER OF DEFENSE AND DEMAND FOR INDEMNITY**

</div>

Dear Mr. Jones

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Bigfoot Construction, LLC ("Big Foot") was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects sets forth claims that implicate Bigfoot's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Bigfoot for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Bigfoot of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect

EXHIBIT

# 34



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

April 25, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
Bigfoot Construction, LLC
c/o Dustin Jones, registered agent
P.O. Box 1683
Eatonville, WA 98328

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Jones

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Bigfoot Construction, LLC ("Big Foot") was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects sets forth claims that implicate Bigfoot's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Bigfoot for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Bigfoot of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures: Complaint
Notice of Defect



GILLASPY & RHODE PLLC

ATTORNEYS AT LAW

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

PATRICK MCKENNA
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
Erik Arellano
Erik Construction
203 Meadow Avenue N, #16
Renton, WA 98057

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Arellano:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Erik Construction ("Erik") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Erik's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Erik for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Erik of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
                      Notice of Defect



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
Fili and Sons Construction Inc
c/o KLComutax Inc, registered agent
6124 Motor Ave SW
Lakewood, WA 98499-1529

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
### TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Fili and Sons Construction Inc. ("Fili") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Fili's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Fili's for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Fili's of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect



GILLASPY & RHODE PLLC

ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

January 11, 2018

**VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL**
Brandon Gill
K&T Construction
806 N. Park St.
Colfax, WA 99111

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
### TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Gill

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert alleged defects that are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand K&T Construction ("K&T") was a framing subcontractor to Highmark on the Project. Plaintiffs have indicated that they intend to add claims that implicate Ben Parker.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against K&T for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to K&T of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

*Sent without signature to avoid delay*

Patrick McKenna

PM/lt


Enclosures:  Plaintiffs' Complaint
             Notice of Defect


cc ( w/encl):   Nevada Capital Insurance Co. NCIC0005287  (eff. 5.30.12-1.23.13)



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

***Please reply to our Washington office***

April 25, 2017

**<u>*VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL*</u>**
PV Home Framing, LLC
c/o Pedro Valverde, registered agent
19317 105th Avenue CT   E
Graham, WA 98338-6450

RE:    *Logg, et al. v Highmark Homes, LLC*
          Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Valverde:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand PV Home Framing, LLC ("PV") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate PV's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against PV for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to PV of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures: Complaint
                 Notice of Defect



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
PV Home Framing, LLC
c/o Pedro Valverde, registered agent
17630 30th Ave Ct. E
Tacoma, WA 98446

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Valverde:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand PV Home Framing, LLC ("PV") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate PV's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against PV for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to PV of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

***WASHINGTON OFFICE:***
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

***OREGON OFFICE:***
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
S & S Home Repair Inc.
c/o David Sherwood, registered agent
3109 Brookdale Rd E
Tacoma, WA 98446

RE:   *Logg, et al. v Highmark Homes, LLC*
      Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
### TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Sherwood:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand S & S Home Repair Inc. ("S & S") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate S & S' work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against S & S for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to S & S of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures: Complaint
Notice of Defect



**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

January 11, 2018

**VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL**
Scott Power Contracting, LLC
c/o Washington Registered Agent, LLC
170 S. Lincoln, Suite 100
Spokane, WA 99201

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

**NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
TENDER OF DEFENSE AND DEMAND FOR INDEMNITY**

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert alleged defects that are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Scott Power Contracting LLC. ("Scott") was a framing subcontractor to Highmark on the Project. Plaintiffs have indicated that they intend to add claims that implicate Ben Parker.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Scott for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Scott of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

*Sent without signature to avoid delay*

Patrick McKenna

PM/lt


Enclosures:  Plaintiffs' Complaint
             Notice of Defect


cc (encl):       Nautilus Insurance Co. PN003194 (eff. 4.20.12-4.20.13)
                 Nautilus Insurance Co. PN006502 (eff. 4.20.14-4.20.15)



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**_VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL_**
VAB Quality Works, LLC
c/o Vitaliy A. Bashinskiy, Registered Agent
4624 29th Avenue NE
Tacoma, WA 98422
P.O. Box 23336
Federal Way, WA 98093

RE:   *Logg, et al. v Highmark Homes, LLC*
     Kitsap County Superior Court Case No. 16-2-02163-0

## NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Bashinskiy:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand VAB Quality Works, LLC ("VAB") was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate VAB's work at the Project.

# EXHIBIT

# # 35



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

***Please reply to our Washington office***

March 7, 2017

**VIA US MAIL**
Bankers Insurance Company
Attn: Claims
PO Box 33061
St. Petersburg, FL 33733

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0
       Our Client:   Highmark Homes, LLC and Tom Tollen
       Your Insured: Bigfoot Construction LLC
       Policy Nos:   460440002928902  (Eff. 02.12.12-02.12.13)
                      460440002928901  (EFF. 02.12.11-02.12.12)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, Bigfoot Construction LLC ("Bigfoot"), was a siding subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate Bigfoot's work at the Project.

Highmark hereby tenders defense and indemnity to Bankers Insurance Company ("Bankers") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under Bigfoot's policy, and, thus, Bankers is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt

Enclosures:  Complaint
                     Notice of Defect

# EXHIBIT
# # 36



# GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

***VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL***
B&B Construction & Remodeling LLC
c/o Mark Barber, registered agent
2928 58th Ave NE
Tacoma, WA 98422

RE:    *Logg, et al. v Highmark Homes, LLC*
       Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
### TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Barber:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand B&B Construction & Remodeling LLC ("B&B") was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate B&B's work at the Project.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against B&B for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to B&B of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

Patrick McKenna

PM/lt


Enclosures:  Complaint
             Notice of Defect

EXHIBIT

# 37



# GILLASPY & RHODE PLLC

## ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**WASHINGTON OFFICE:**
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

**OREGON OFFICE:**
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

*Please reply to our Washington office*

March 7, 2017

**<u>VIA EMAIL</u>**
CBIC
Attn Claims
New.Claim@rlicorp.com

RE:     *Logg, et al. v Highmark Homes, LLC*
        Kitsap County Superior Court Case No. 16-2-02163-0
        Our Client:    Highmark Homes, LLC and Tom Tollen
        Your Insured:  B&B Construction & Remodeling LLC
        Policy No:     C11SH7074 (Eff. 02.01.08-02.01.15)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert that the alleged defects are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

Your insured, B&B Construction & Remodeling LLC ("B&B"), was a framing subcontractor to Highmark on the Project. The Plaintiffs' Complaint and Notice of Defects set forth claims that implicate B&B's work at the Project.

Highmark hereby tenders defense and indemnity to CBIC of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under B&B's policy, and, thus, CBIC is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense and indemnity in writing no later than 30 days of the date of this letter. If you do not accept Highmark's tender of defense and indemnity within 30 days of the date of this letter, Highmark may take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.


Very truly yours,

GILLASPY & RHODE, PLLC


Patrick McKenna

PM/lt


Enclosures: Complaint
　　　　　　Notice of Defect

# EXHIBIT

# # 38



**PATRICK McKENNA**
pmckenna@gillaspyrhode.com
*Admitted in Washington and Oregon*

*Please reply to our Washington office*

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

January 11, 2018

**VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL**
Scott Power Contracting, LLC
c/o Washington Registered Agent, LLC
170 S. Lincoln, Suite 100
Spokane, WA 99201

RE:     *Logg, et al. v Highmark Homes, LLC*
         Kitsap County Superior Court Case No. 16-2-02163-0

<div align="center">

**NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND
TENDER OF DEFENSE AND DEMAND FOR INDEMNITY**

</div>

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert alleged defects that are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Scott Power Contracting LLC. ("Scott") was a framing subcontractor to Highmark on the Project. Plaintiffs have indicated that they intend to add claims that implicate Ben Parker.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against Scott for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Scott of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

*Sent without signature to avoid delay*

Patrick McKenna

PM/lt

Enclosures:  Plaintiffs' Complaint
Notice of Defect

cc (encl):           Nautilus Insurance Co. PN003194 (eff. 4.20.12-4.20.13)
Nautilus Insurance Co. PN006502 (eff. 4.20.14-4.20.15)

EXHIBIT

# 39



**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*


**Please reply to our Washington office**

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
1220 SW Morrison, Suite 805
Portland, Oregon 97205
Tele: (503) 688-5020
Fax: (425) 462-4995

January 25, 2018

<u>**VIA EMAIL**</u>
Nautilus Insurance Company
Attn: Claims
nicclaims@nautilus-ins.com

RE:    *Becker, et al. v. Highmark Homes, LLC, et al.*
       Kitsap County Superior Court No. 16-2-02165-6
       Our Client:   Highmark Homes, LLC and Tom Tollen
       Your Insured: Scott Power Contracting, LLC
       Policy Nos.:  PN003194 (Eff. 4.20.12-4.20.13)
                         PN006502 (Eff. 4.20.14-4.20.15)

## TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

To Whom It May Concern:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively, hereinafter referred to as "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family homes in the East Park community in Bremerton, Washington (the "Project"). On or about November 28, 2016, owners of the homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of that home. A copy of the Plaintiff's Complaint and Notice of Defects are enclosed. We have been informed that other homes in the community will be joined in the lawsuit.

Your insured, Scott Power Contracting ("Scott"), was a framing subcontractor to Highmark on the Project. The Notice of Defects set forth claims that implicate Scott's work at the Project.

Accordingly, Highmark hereby tenders defense and indemnity to Nautilus Insurance Company

("Nautilus") of the claims alleged by the Plaintiffs in this matter. The claims alleged by the Plaintiffs trigger coverage under Scott's policy, and, thus, Nautilus is required to assign counsel to defend Highmark in this matter.

Highmark requests that you accept its tender of defense in writing no later than 30 days of the date of this letter.  If you do not accept Highmark's tender of defense within 30 days of the date of this letter, Highmark will take all necessary steps to recover its attorneys' fees and costs as permitted by applicable law.

Please do not hesitate to contact us to discuss this matter further. Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

*Sent without signature to avoid delay*

Patrick McKenna

PM/ky

Enclosures:    Complaint
                       Plaintiffs' Notice of Defect
                       Highmark's RCW 64.50 Notice to Scott Power Contracting

# EXHIBIT

# # 40

This exhibit was left blank intentionally.

EXHIBIT

# 41



## GILLASPY & RHODE PLLC

### ATTORNEYS AT LAW

**PATRICK MCKENNA**
*pmckenna@gillaspyrhode.com*
*Admitted in Washington and Oregon*

**Please reply to our Washington office**

*WASHINGTON OFFICE:*
821 Kirkland Avenue, Suite 200
Kirkland, Washington 98033
Tele: (425) 646-2956
Fax: (425) 462-4995

*OREGON OFFICE:*
520 SW Yamhill Street, Suite 230
Portland, Oregon 97204
Tele: (503) 688-5020
Fax: (425) 462-4995

January 11, 2018

**VIA REGULAR & CERTIFIED/RETURN RECEIPT US MAIL**
Benjamin Parker
Ben Parker Construction
1419 SE Cedar Rd
Port Orchard, WA 98367

RE:     *Logg, et al. v Highmark Homes, LLC*
            Kitsap County Superior Court Case No. 16-2-02163-0

### NOTICE OF CLAIM PURSUANT TO RCW 64.50 ET SEQ. AND TENDER OF DEFENSE AND DEMAND FOR INDEMNITY

Dear Mr. Parker:

This law firm represents Highmark Homes, LLC and Tom Tollen (collectively "Highmark"), in the above referenced matter. Highmark was the general contractor for the construction of single family houses located within the Vintage Hills community in Bremerton, Washington (the "Project"). On or about November 28, 2016, the owners of those homes filed a lawsuit against Highmark alleging defects and property damage related to the construction of the home. A copy of the Plaintiffs' Complaint and Notice of Defects are enclosed. The Plaintiffs assert alleged defects that are substantially similar to defects alleged in another lawsuit against Highmark, where the Court ruled that the construction work did violate building code.

We understand Ben Parker Construction ("Ben Parker") was a framing subcontractor to Highmark on the Project. Plaintiffs have indicated that they intend to add claims that implicate Ben Parker.

Pursuant to RCW 64.50 *et seq.*, Highmark may commence legal proceedings against K&T for claims, including, but not limited to, breach of contract and indemnity claims, no less than 45

days from the date of this letter. All related documents/writings, including this notice, are protected by the privilege set forth in Evidence Rule 408 of the Washington State Court Rules.

Additionally, Highmark hereby tenders defense and indemnity to Ben Parker of the claims alleged by the Plaintiffs in this matter.

Please contact us with any questions. You may also wish to contact your legal counsel and/or your insurer(s) regarding this matter.   Thank you.

Very truly yours,

GILLASPY & RHODE, PLLC

*Sent without signature to avoid delay*

Patrick McKenna

PM/lt

Enclosures:  Plaintiffs' Complaint
             Notice of Defect

cc ( w/encl):    Western Heritage Insurance Co. SCP0889087  (eff. 3.4.12-3.14.13)

# EXHIBIT
# # 42



Water staining and damage around the master bedroom leaking french doors



This sheet rock is falling off what appears to be a load bearing beam. Highmark "assured" me there is no water damage or dry rot to this beam and are just going to replace the sheet rock. I would like the beam inspected.





Checking the siding, I found after a bit of rain, water coming down against the foundation wall from behind the siding.





More siding issues:



The siding is "buckling" and pulling apart at the kitchen window.







The same "buckling" around one of the crawl space air vents.



Very Poor job of "finishing" above the kitchen doorway out to the deck.

All the windows seem to perhaps not been installed correctly. They are supposedly dual pane to protect from the cold, but we can feel cold air emanating from all the windows during the winter. Some of the sliding windows have to be "slammed" shut as they don't line up correctly in their track. When slid with normal pressure, they are crooked and do not line up within the adjoining window frame.
Also, they all have some sort of dirt and or moisture problem





The light coming through, taken without a flash



The back door has been "fixed" 3 times by Highmark, but is still crooked and stick.







Each time the "fix" has left unfinished work on the inside as well.







EXHIBIT

# 43
























# EXHIBIT

# # 44

PICTURES TAKEN OCT 22 2017 → AFTER SO MANY
TIMES THEY TRIED TO FIXED IT STILL LEAKS AND
BULGING





PICTURES TAKEN MAY 16 2016 → IN THE
PROCESS OF REPLACING THE FRENCH DOOR TO
SLIDING DOOR



PICTURE TAKEN OCT 16 2016

# EXHIBIT

# # 45





B



C



D



E



F



G



H



I



J







L



M



# EXHIBIT
# # 46



## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

7016 0340 0000 2320 0635

For delivery information, visit our website at *www.usps.com®*.

SEATTLE, WA 98104

| Certified Mail Fee | $3.30 | |
|---|---|---|
| $2.70 | | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $____ | |
| ☐ Return Receipt (electronic) | $1.00 | |
| ☐ Certified Mail Restricted Delivery | $1.00 | |
| ☐ Adult Signature Required | $1.00 | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $1.36 | |
| Total Postage and Fees | $7.36 | |

Sent To ZACHARY MCISSAC - ASHBAUGH BEAL
Street and Apt. No., or PO Box No. 701 5TH AVE. STE. 4400
City, State, ZIP+4® SEATTLE, WA 98104

08/29/2016

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

7016 0340 0000 2320 0628

For delivery information, visit our website at *www.usps.com®*.

KIRKLAND, WA 98033

| Certified Mail Fee | $3.30 | |
|---|---|---|
| $2.70 | | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $____ | |
| ☐ Return Receipt (electronic) | $1.00 | |
| ☐ Certified Mail Restricted Delivery | $1.00 | |
| ☐ Adult Signature Required | $1.00 | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $1.57 | |
| Total Postage and Fees | $7.57 | |

Sent To PATRICK MCKENNA - GILLASPY RHODE PLLC
Street and Apt. No., or PO Box No. 821 KIRKLAND AVE., STE 200
City, State, ZIP+4® KIRKLAND WA 98033

08/17/2016

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

### SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Zachary McIsaac
Ashbaugh Beal
701 5th Ave. Ste. 4400
Seattle, WA 98104

9590 9402 1279 5246 8610 81

2. Article Number *(Transfer from service label)*

7016 0340 0000 2320 0635

PS Form 3811, July 2015 PSN 7530-02-000-9053

### COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____   ☐ Agent
                       ☐ Addressee
B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

### SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Patrick McKenna
Gillaspy Rhode PLLC
821 Kirkland Ave. Ste. 200
Kirkland, WA 98033

9590 9403 0008 5005 6137 04

2. Article Number *(Transfer from service label)*

7016 0340 0000 2320 0628

PS Form 3811, April 2015 PSN 7530-02-000-9053

### COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____   ☐ Agent
                       ☐ Addressee
B. Received by *(Printed Name)*   C. Date of Delivery
KIRSTEN CHIS   8/22/16

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



CASEY & SKOGLUND, PLLC

August 17, 2016

**Via Certified Mail**
**70160340000023200611**
Zachary McIsaac
Ashbaugh Beal
701 5th Ave. Ste. 500
Seattle, WA  98104

**70160340000023200628**
Patrick McKenna
Gillaspy & Rhode, PLLC
821 Kirkland Ave. Ste. 200
Kirkland, WA  98033

       *Re:*   *Vintage Hills Condominium Project*
             Notice of Construction Defects – RCW 64.50 et. seq.

To Whom It Concerns:

Our law firm was retained to represent the interests of Vintage Hills Condominium Association, Ric & Kelly Logg, Derin White, Anthony & Marisa Medina, Raulin Alvior, Nick & Taylor Ormerod, David Schultz, Brittany Devitt, Grace & Andrew Jones, Melvin Thomas, Ashley Barlow and all of the Homeowners who reside in the community (Collectively hereinafter the "Claimants".)   The Claimant(s) assert a construction defects claim against Highmark Homes, LLC, and this letter provides you formal notice of construction defects on behalf of all aforementioned persons and the Association, and is sent to you pursuant to RCW 64.50 *et. seq.*

Findings - Specific issues with the project:

The Claimants assert the following items are construction defects, causing "property" damage, and need to be corrected:

1.  Exterior siding was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

2.  Weather resistive barrier was not in compliance with the manufacturers' installation requirements, International Building Code and/or Residential Building Code;

3.  Site drainage was not done in compliance with the International Building Code and Residential Building Code;

4. Window and door installation was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

**These construction defects are very similar, if not identical, to those which were found at Valley Haven, a project you constructed and is currently in litigation.**

Invitation for Analysis:

You and/or your insurance carrier may desire verification of claims. We will give you complete and unfettered access to the project as long as you give us 72 hours notice of the time, date, and location of your investigation. We need this notice from you to inform the homeowners you will be investigating the project and that you need access to their homes.

Time is of the Essence:

Please respond to this letter at your earliest convenience, but no later than 28 days after you receive a copy of this letter. *See* RCW 64.50.020.

Conclusion:

To avoid any confusion, please direct all written, telephonic, or electronic communications concerning this letter to Todd Skoglund. You may reach me at the mailing address identified herein or by email at todd@casey-skoglund.com.

I look forward to hearing from you in near future.

Sincerely,

Todd K. Skoglund

Enclosures:
DBC Preliminary Report re: 266 E. 29th Street



March 10, 2016

Casey & Skoglund, PLLC
130 Nickerson St #210
Seattle, WA 98109

Attention: Mr. Chris Casey                    VIA EMAIL ([chris@casey-skoglund.com](mailto:chris@casey-skoglund.com))

**RE.     VINTAGE HILLS – 266 E 29<sup>TH</sup> ST, BREMERTON, WA
            PRELIMINARY REPORT OF VISIT**

Dear Chris:

We visited the property located at 266 E 29<sup>TH</sup> St, Bremerton, Washington, and observed the 2<sup>nd</sup> floor deck, existing panel siding as well as examined the limited investigation areas carried out by Lopez Bros Construction, Inc. on behalf of the Owner. The site visit took place on February 19, 2016. The purpose of this letter is to document our initial observations and concerns regarding the subject residence.



Panel Siding

The panel siding is commonly known as 'T 1-11' and is manufactured by Louisiana-Pacific Corporation under the trade name of Smartside; currently this type of panel siding is installed at 3 of the 4 sides of the residence.  The panels, as currently installed, serve the function of both a weather-protecting layer and a structural layer since there is no plywood or OSB sheathing beneath it.  For these reasons, strict compliance with the installation instructions and recommendations of the manufacturer is of great importance to the longevity of the panel and the residence it protects.

From visual examination of the installed panels, we were able to identify gaps, overcuts, and certain wall penetrations that are not properly sealed to prevent water intrusion.  The windows and exterior doors are not properly detailed with a metal flashing at their headers, which is necessary to divert rainwater runoff to the exterior surface of the panel.  These conditions expose the residence to a high likelihood of water intrusion.

A portion of the panel assembly was gently removed to allow for examination of the wall elements.  We observed that the wood trims used in combination with the panels are made from common 'white wood' and not rot-resistant wood like cedar.

Once the panel was removed we were also able to examine the condition of the concealed water-resistive barrier.  This material is a synthetic woven type, manufactured by Dupont under the trade name "Tyvek HomeWrap".

The required clearance between the panel siding at the top of the windows and at the horizontal flashings was not provided.  As a result, rainwater that penetrates the siding panels does not have the ability to exit the panel system, and damages the edge of the panels.  We recorded elevated moisture readings as high as 33 percent.  At these areas, the panel siding has started to deteriorate.

We observed the Tyvek had cuts and was applied with large gaps at the top and bottom floorlines, leaving important structural framing members unprotected against water intrusion and damage.  We also observed extensive staining on the back of the Tyvek, indicative of ongoing exposure to moisture.  Portions of the structural wood framing were noted with evident water stains; moisture readings taken of those areas were slightly elevated, 14 percent.

In addition to the concerns related to water intrusion and water damage, we are also concerned about the adequacy of the existing panel to fulfill its structural function.  The manufacturer's stamping of the panel declares that the panel is 7/16 inch thick, which

was verified by our own measurement.   A simple review of the existing panel nailing against the published installation instructions of the manufacturer revealed that the required 'double nailing' along the panel's vertical overlaps was not provided. Additional nailing concerns include the spacing of the nail placement, whether or not the nails used to secure the panels are approved for structural use, and overdriven nails; the structural significance of the observed nailing concerns requires further evaluation.


Deck:

The Owners reported water intrusion and interior water damage into the master bedroom and at the finished garage, both in the vicinity of the deck.  The owner reported that the builder dispatched a crew to remediate the source of water intrusion into the master bedroom and that the deck door (French-style door) was temporarily removed and re-set over some sort of flashings.

Interior examination of the door revealed no evidence of a sill pan necessary to properly flash the door and prevent further additional water intrusion.  We observed active intrusion of moisture through the door, into the interior subfloor.  For this reason, any repairs previously made to this door must be considered temporary.

We also observed that the operable tiles of the door are manufactured from fiberglass, however the frame is manufactured from wood.  The wood frame has started to deteriorate due to normal weathering.

At the deck parapet walls we observed the absence of a metal flashing over the wood cap necessary to prevent deterioration of the wood cap and water intrusion.  Removal of the white wood cap revealed extensive water damage to the cap.

The interior finishes of the garage located below this deck were reported to have ongoing water intrusion and damage.  Reportedly a crew from the builder did a service call to remediate the source of water intrusion and to restore the interior finishes; however water intrusion and damage to the interior finishes continues at the same area even after the (unknown) repairs.

We anticipate additional damage to the remaining deck structure, interior finishes and wood framing exists.

Roof:

Regarding the roof, we did not have an opportunity to access the roof at this time, however we observed that the edge of the roof lacks metal flashings which are necessary for adequate weather protection.  Additional roof deficiencies may be present.

CONCLUSIONS AND RECOMMENDATIONS

Physical damage to the interior finishes of the residence, French door frame, deck components and portions of the exterior walls has been identified due to defects on the original construction of the residence, and specifically the poor installation of the French door, deck components and T 1-11 panel siding assembly.  The extent of the damage is unknown and cannot be ascertained at this time unless additional investigation is carried out.

Some of the defects identified during our visit may be deviations from the manufacturer's literature, manufacturer's installation instructions and manufacturer's recommendations.  Some of the defects may also be deviations from the applicable sections of the Building Code and/or original design.  The extent of the defects is unknown and cannot be ascertained at this time unless additional investigation is carried out.

We are very concerned about the structural adequacy of the existing panel siding.  We are currently working on a similar project in Pierce County where similar panels have been deemed unacceptable for structural use, due to their poor installation.  Additional interior damage to the residences at the referenced property has so far been identified as cracking and nail pops of the interior drywall.  The potential interior damage under full code-imposed load can be greater and is starting to manifest itself at the exterior by the bulging of panel siding out of the vertical plane of the wall.

Chris: the residences in this complex all appear to have similar T 1-11 panel siding at the sides and rear elevations.  In walking around the complex, we observed additional residences have exterior decks that appear to be constructed in the same defective manner as the one residence that we analyzed.  This is of great concern.

We recommend the residences at this complex be fully examined to identify construction defects, especially as it pertains to potential water intrusion, water damage and structural deficiencies.  The roof and deck structures should also be examined.

We have provided some photographs taken of the property during our visit, for your reference.  We are willing and available to assist with additional investigations, site testing, and consulting as you and the Owners deem it necessary.

We thank you for your consideration of our services, and look forward to being of assistance for your continued project needs.


**Martin C. Flores**
martin@dimensionalbc.com
principal

Dimensional Building Consultants, LLC
vision • knowledge • solutions



Figure 1 – Partial overview of houses in the Vintage Hills Community.  The sides and rear elevations are detailed with T 1-11 panel siding.



Figure 2 – Partial overview of the right elevation of residence at 266 E 29th.  The panel siding is acting as both, siding and structural sheathing



Figure 3 – Upstairs Master Bedroom Deck.  The lack of proper flashing at the French door continues to allow moisture intrusion.  There is no evidence of a proper sill pan flashing under the door. Notice the heavy staining of the tack strip and rusted tack nails



Figure 4 – French door at threshold to deck transition.  Notice the deterioration of the wood frame resulting from normal weather exposure



Figure 5 – Close up of cap after removal showing staining and rot.  The trim is made from white wood and is already showing evidence of water damage.  Water intrusion into the garage (below) was reported.  Damage to the concealed framing is likely



Figure 6 – Water intrusion and damage to the garage drywall was reported below the deck.  The drywall that fireproofs the structural beam is heavily stained.  The condition of the structural beam is not known



Figure 7 – Partial close up of water-damaged interior drywall. Notice the drywall mud is bubbling and flaking off due to moisture intrusion.  The moisture meter shows elevated moisture readings



Figure 8 – Close up of floorline below the belly band and framing under siding panel.  The Tyvek improperly stops just below the top plate



Figure 9 – Close up of discontinuous Tyvek, leaving framing unprotected



Figure 10 – Partial close up of window header illustrating lack of metal flashing, lack of window flashings and reversed-lapped Tyvek.  Also the panel is improperly set tight against the window.



Figure 11 – Close up of water damaged panel.  Moisture reading is elevated at 33 percent.  This panel was installed in direct contact with a horizontal metal piece



Figure 12 – Partial overview of neighboring houses, which also have the same type of panel siding and deck construction.  The house shown here has a visibly discolored deck, likely caused by moisture intrusion (see Figure 13 for partial close up).



Figure 13 - Partial close up of a neighboring houses, which also have the same type of deck construction.  The ongoing discoloration and deterioration can be better observed here.

END OF DOCUMENT

EXHIBIT

# 47

To:    American Safety Indemnity Company
       1845 The Exchange, Atlanta GA 30339
       Fax Number: (770) 955-6163

Attn:  Claims Department

Policy Numbers:    156AUI61311-00
                   156AUI 62063-00

To Whom It May Concern:

We have received the attached "Notice of Construction Defects -- RCW 64.50 *et seq.*" letters from the law firm of Casey & Skoglund, PLLC. These letters are in relation to two projects: (1) Vintage Hills; and (2) Bay Vista. The closings on these properties occurred as follows: (1) Vintage Hills – First Close 5/31/2012, Last Close 4/24/2013; (2) Bay Vista – First Close 2/28/2013, Last Close 9/30/2014. Please note that while the letters suggest these are condominium projects they are not. They are single family residences.

In the attached letters it is alleged that the work of Highmark Homes, LLC was defective and has led to resultant property damage. As a result, Highmark Homes hereby tenders these claims seeking all available coverages under all available policies.

Sincerely,

To:     American Safety Indemnity Company
        1845 The Exchange, Atlanta GA 30339
        Fax Number: (770) 955-6163

Attn:   Claims Department

Policy Numbers:     156AUI61311-00
                    156AUI 62063-00

To Whom It May Concern:

We have received the attached "Notice of Construction Defects -- RCW 64.50 *et seq.*" letters from the law firm of Casey & Skoglund, PLLC. These letters are in relation to two projects: (1) Vintage Hills; and (2) Bay Vista. The closings on these properties occurred as follows: (1) Vintage Hills – First Close 5/31/2012, Last Close 4/24/2013; (2) Bay Vista – First Close 2/28/2013, Last Close 9/30/2014. Please note that while the letters suggest these are condominium projects they are not. They are single family residences.

In the attached letters it is alleged that the work of Highmark Homes, LLC was defective and has led to resultant property damage. As a result, Highmark Homes hereby tenders these claims seeking all available coverages under all available policies.

Sincerely,



SEP 21

# CASEY & SKOGLUND, PLLC

September 15, 2016

**Via Certified Mail**
**70160340000023200697**
Zachary McIsaac
Ashbaugh Beal
701 5th Ave. Ste. 4400
Seattle, WA 98104

**70160340000023200703**
Patrick McKenna
Gillaspy & Rhode, PLLC
821 Kirkland Ave. Ste. 200
Kirkland, WA 98033

**70160340000023200710**
Tom Tollen
Highmark Homes LLC
16400 Southcenter Pkwy #210
Tukwila, WA 98188

> *Re:* *Vintage Hills Condominium Project*
> Notice of Construction Defects – RCW 64.50 et. seq.

To Whom It Concerns:

Our law firm was retained to represent the interests of Vintage Hills Condominium Association, Ric & Kelly Logg, Derin White, Anthony & Marisa Medina, Raulin Alvior, Nick & Taylor Ormerod, David Schultz, Brittany Devitt, Grace & Andrew Jones, Melvin Thomas, Ashley Barlow and all of the Homeowners who reside in the community (Collectively hereinafter the "Claimants".) The Claimant(s) assert a construction defects claim against Highmark Homes, LLC, and this letter provides you formal notice of construction defects on behalf of all aforementioned persons and the Association, and is sent to you pursuant to RCW 64.50 *et. seq.*

Findings - Specific issues with the project:

The Claimants assert the following items are construction defects, causing "property" damage, and need to be corrected:

1. Exterior siding was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

2. Weather resistive barrier was not in compliance with the manufacturers' installation requirements, International Building Code and/or Residential Building Code;
3. Site drainage was not done in compliance with the International Building Code and Residential Building Code;
4. Window and door installation was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

**These construction defects are very similar, if not identical, to those which were found at Valley Haven, a project you constructed and is currently in litigation.**

Invitation for Analysis:

You and/or your insurance carrier may desire verification of claims. We will give you complete and unfettered access to the project as long as you give us 72 hours notice of the time, date, and location of your investigation. We need this notice from you to inform the homeowners you will be investigating the project and that you need access to their homes.

Time is of the Essence:

Please respond to this letter at your earliest convenience, but no later than 28 days after you receive a copy of this letter. *See* RCW 64.50.020.

Conclusion:

To avoid any confusion, please direct all written, telephonic, or electronic communications concerning this letter to Todd Skoglund. You may reach me at the mailing address identified herein or by email at todd@casey-skoglund.com.

I look forward to hearing from you in near future.

Sincerely,

Todd K. Skoglund

Enclosures:
DBC Preliminary Report re: 266 E. 29th Street (Tollen Only)



# CASEY & SKOGLUND, PLLC

September 15, 2016

**Via Certified Mail**
**70160340000023200758**
Zachary McIsaac
Ashbaugh Beal
701 5ᵗʰ Ave. Ste. 4400
Seattle, WA 98104

**70160340000023200734**
LA Williams Construction LTD
Marc Cochran, Registered Agent
820 "A" Street, Suite 600
Tacoma, WA 98401

**70160340000023200741**
Patrick McKenna
Gillaspy & Rhode, PLLC
821 Kirkland Ave. Ste. 200
Kirkland, WA 98033

**70160340000023200727**
Tom Tollen
Highmark Homes LLC
16400 Southcenter Pkwy #210
Tukwila, WA 98188

 *Re:* *Bay Vista Condominium Project*
   Notice of Construction Defects – RCW 64.50 et. seq.

To Whom It Concerns:

Our law firm was retained to represent the interests of Bay Vista Condominium Association, Richard LeClair, Steven & Brianna Olim, William & Rona McQuillan, Doranne Carleton, Nickolette Doering, and all of the Homeowners who reside in the community (Collectively hereinafter the "Claimants".) The Claimant(s) assert a construction defects claim against Highmark Homes LLC and LA Williams Construction LTD, and this letter provides you formal notice of construction defects on behalf of all aforementioned persons and the Association, and is sent to you pursuant to RCW 64.50 *et. seq.*

Findings - Specific issues with the project:

The Claimants assert the following items are construction defects, causing "property" damage, and need to be corrected:

1. Exterior siding was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

2. Weather resistive barrier was not in compliance with the manufacturers' installation requirements, International Building Code and/or Residential Building Code;

3. Site drainage was not done in compliance with the International Building Code and Residential Building Code;

4. Window and door installation was not installed in compliance with the manufacturers' installation requirements or in compliance with the International Building Code and/or Residential Building Code;

**These construction defects are very similar, if not identical, to those which were found at Valley Haven, a project Highmark Homes constructed.**

Invitation for Analysis:

You and/or your insurance carrier may desire verification of claims. We will give you complete and unfettered access to the project as long as you give us 72 hours notice of the time, date, and location of your investigation. We need this notice from you to inform the homeowners you will be investigating the project and that you need access to their homes.

Time is of the Essence:

Please respond to this letter at your earliest convenience, but no later than 28 days after you receive a copy of this letter. *See* RCW 64.50.020.

Conclusion:

To avoid any confusion, please direct all written, telephonic, or electronic communications concerning this letter to Todd Skoglund. You may reach me at the mailing address identified herein or by email at todd@casey-skoglund.com.

I look forward to hearing from you in near future.

Sincerely,

Todd K. Skoglund

Enclosures:
DBC Preliminary Report re: 4515 Abalone
DBC Preliminary Report re: 4558 Abalone



626 120th Ave NE suite B101 Bellevue WA 98005
425 455 2046 / f 425 455 2069
dimensionalbc.com

March 14, 2016

Casey & Skoglund, PLLC
130 Nickerson St #210
Seattle, WA 98109

Attention: Mr. Chris Casey          VIA EMAIL (chris@casey-skoglund.com)

RE.    BAY VISTA – 4558 ABALONE ST, BREMERTON, WA
       PRELIMINARY REPORT OF VISIT

Dear Chris:

We visited the property located at 4558 Abalone St, Bremerton, Washington, and observed the limited investigation areas carried out by Lopez Bros Construction, Inc. on behalf of the Owner.  The site visit took place on March 4th, 2016. The purpose of this letter is to document our initial observations and concerns regarding the panel siding of the subject residence.



vision · knowledge · solutions

## SUMMARY OF INITIAL OBSERVATIONS

### Panel Siding

The panel siding is commonly known as 'T 1-11' and is manufactured by Louisiana-Pacific Corporation under the trade name of Smartside, on its 76 Series; currently this type of panel siding is installed at 3 of the 4 sides of the residence, and 2 of the 4 sides of the separate garage structure. The panels, as currently installed, serve the function of both a weather-protecting layer and a structural layer since there is no plywood or OSB sheathing beneath it. For these reasons, strict compliance with the installation instructions and recommendations of the manufacturer is of great importance to the longevity of the panel and the residence it protects.

From visual examination of the installed panels, we were able to identify gaps, overcuts, and certain wall penetrations that are not properly sealed to prevent water intrusion. The windows and exterior doors are not properly detailed with a metal flashing at their headers, which is necessary to divert rainwater runoff to the exterior surface of the panel. These conditions expose the residence to a high likelihood of water intrusion.

A portion of the panel assembly was gently removed to allow for examination of the wall elements. We observed that the wood trims used in combination with the panels are made from common 'white wood' and not rot-resistant wood like cedar.

Once the panel was removed we were also able to examine the condition of the concealed water-resistive barrier. This material is a synthetic woven type, manufactured by Fortifiber under the trade name "WeatherSmart" HomeWrap.

We observed vertical water staining on the front (exterior surface) of the WeatherSmart as well as the back (interior), indicative of exposure to moisture. The stains were dry at the time of examination. The WeatherSmart does not completely extend onto the concrete foundation leaving a portion of the pressure treated sill plate without coverage.

Where the panel siding from the first floor abuts the panels siding from the second floor we observed a horizontal metal flashing. The lap in the metal flashing examined is not sealed to prevent water intrusion.

In addition to the concerns related to the weather barrier and metal flashing, we are also concerned about the adequacy of the existing panel to fulfill its structural function. The manufacturer's stamping of the panel declares that the panel is 7/16 inch thick, which was verified by our own measurement. A simple review of the existing panel nailing against the published installation instructions of the manufacturer revealed that the

required 'double nailing' along the panel's vertical overlaps was not provided. Additional nailing concerns include the spacing of the nail placement, whether or not the nails used to secure the panels are approved for structural use, and overdriven nails; the structural significance of the observed nailing concerns requires further evaluation.

Garage

The owner reported an ongoing presence of elevated moisture in the garage requiring them to maintain a heater and/or fans at all times in an attempt to keep the space dry. Black stains were present on all unpainted sheetrock surfaces throughout the interior space, and significant cracking of the concrete floor was present. Efflorescence was present in many cracks.

A floor mat was removed to examine the concrete surface below, and found to be saturated with moisture. The wood blocking used to prop up some of the stored appliances was noted with moisture damage, in excess of 26 percent. The effect of the elevated moisture and possible moisture damage to the remaining wood cabinetry is not known. Spots of dark discoloration were also observed at the roof structure.

Roof

Regarding the roof, we did not have an opportunity to access the roof at this time, however we observed the following:

a. Missing Flashings. The edge of the roof lacks metal flashings which are necessary for adequate weather protection.

b. Wind Damage. A number of shingles were observed partially lifted from the roof surface, indicative of ongoing wind damage.

Additional roof deficiencies may be present. We recommend additional investigation.

CONCLUSIONS AND RECOMMENDATIONS

We have identified likely defects in the installation of the roof shingles, weather barrier, metal flashings, T 1-11 panel siding assembly, and likely the slab on grade at the garage. Physical damage is occurring to the garage flooring, garage walls, garage attic, surfaces, garage attic space and interior garage furnishings. The extent of the damage is

unknown and cannot be ascertained at this time unless additional investigation is carried out.

Some of the defects identified during our visit may be deviations from the manufacturer's literature, manufacturer's installation instructions and manufacturer's recommendations. Some of the defects may also be deviations from the applicable sections of the Building Code and/or original design. The extent of the defects is unknown and cannot be ascertained at this time unless additional investigation is carried out.

We are very concerned about the structural adequacy of the existing panel siding. We are currently working on a similar project in Pierce County where similar panels have been deemed unacceptable for structural use, due to their poor installation. Additional interior damage to the residences at the referenced property has so far been identified as cracking and nail pops of the interior drywall. The potential interior damage under full code-imposed load can be greater and is starting to manifest itself at the exterior by the bulging of panel siding out of the vertical plane of the wall, just like at this subject residence.

<u>Chris: the residences in this complex all appear to have similar T 1-11 panel siding at the sides and rear elevations, similar ground water issues and similar type of roofing. This is of great concern. Property damage is occurring due to likely construction defect.</u>

We recommend the residences at this complex be fully examined to identify construction defects, especially as it pertains to potential water intrusion, water damage and structural deficiencies.

We have provided some photographs taken of the property during our visit, for your reference. We are willing and available to assist with additional investigations, site testing, and consulting as you and the Owners deem it necessary.

We thank you for your consideration to our services, and look forward to continue being of assistance to your project needs.

Martin C. Flores,
martin@dimensionalbc.com
principal

Dimensional Building Consultants, LLC



Figure 1 – Partial overview of houses in the Bay Vista Community. The sides and rear elevations are detailed with T 1-11 panel siding.



Figure 2 – Partial overview of rear elevation of residence at 4558 Abalone Street. The panel siding is acting as both, siding and structural sheathing.



Figure 3 – Side elevation of residence at 4558 Abalone Street, detailed with T 1-11 panel siding.



Figure 4 – Partial overview of WeatherSmart wrap. Vertical staining from water intrusion behind siding is observed.



Figure 5 – Close up rear of siding panel, showing evidence of water damage and elevated moisture readings. Moisture reading is 32.9 percent.



Figure 6 – Partial view of garage interior. Discoloration present on the walls and flooring indicates excess moisture levels.



Figure 7 – Partial close up of damaged sheetrock panel on interior garage wall.



Figure 8 – Close up of garage floor moisture reading with efflorescence emanating from the fissure in the concrete.



Figure 9 – Close up of garage floor efflorescence.



Figure 10 – Partial overview of moisture-damaged wood blocking at garage floor. Notice the moisture stains and efflorescence in the vicinity of the wood blocking





Figure 11 - Partial overview of moisture-damaged roof wood truss element at garage attic. Notice the dark stains along the wood truss.



Figure 12 - Partial overview of moisture accumulation inside the garage, over the concrete slab on grade, next to the wood cabinetry.



626 120<sup>th</sup> Ave NE suite B104 Bellevue WA 98005
425 455 2046  f 425 455 2069
dimensionalbc.com

March 8, 2016

Casey & Skoglund, PLLC
130 Nickerson St #210
Seattle, WA 98109

Attention: Mr. Chris Casey          VIA EMAIL (chris@casey-skoglund.com)

RE.   BAY VISTA – 4515 ABALONE ST, BREMERTON, WA
      PRELIMINARY REPORT OF VISIT

Dear Chris:

We visited the property located at 4515 Abalone St, Bremerton, Washington, and observed the limited investigation areas carried out by Lopez Bros Construction, Inc. on behalf of the Owner.  The site visit took place on March 4<sup>th</sup>, 2016. The purpose of this letter is to document our initial observations and concerns regarding the panel siding of the subject residence.



## SUMMARY OF INITIAL OBSERVATIONS

### Panel Siding

The panel siding is commonly known as 'T 1-11' and is manufactured by Louisiana-Pacific Corporation under the trade name of Smartside, on its 76 Series; currently this type of panel siding is installed at 3 of the 4 sides of the residence. The panels, as currently installed, serve the function of both a weather-protecting layer and a structural layer since there is no plywood or OSB sheathing beneath it. For these reasons, strict compliance with the installation instructions and recommendations of the manufacturer is of great importance to the longevity of the panel and the residence it protects.

From visual examination of the installed panels, we were able to identify gaps, overcuts, and certain wall penetrations that are not properly sealed to prevent water intrusion. The windows and exterior doors are not properly detailed with a metal flashing at their headers, which is necessary to divert rainwater runoff to the exterior surface of the panel. These conditions expose the residence to a high likelihood of water intrusion.

A portion of the panel assembly was gently removed to allow for examination of the wall elements. We observed that the wood trims used in combination with the panels are made from common 'white wood' and not rot-resistant wood like cedar.

Once the panel was removed we were also able to examine the condition of the concealed water-resistive barrier. This material is a synthetic woven type, manufactured by Dupont under the trade name "Tyvek" HomeWrap.

The required clearance between the panel siding at the top of the windows and at the horizontal flashings was not provided. As a result, rainwater that penetrates the siding panels does not have the ability to exit the panel system, and damages the edge of the panels. We recorded elevated moisture readings as high as 33 percent. At these areas, the panel siding has started to deteriorate.

The Tyvek appears to have been topically applied after the window was installed, thereby resulting in lack of flexible flashings and a reversed lap along the window sill nailing flange. Reversed laps result in likely funnels for rainwater to enter into the exterior wall.

We observed the Tyvek is applied with large gaps at the top and bottom floorlines, leaving important structural framing members unprotected against water intrusion and damage.

We also observed vertical staining on the front (exterior surface) of the Tyvek, indicative of ongoing exposure to moisture. This moisture runs downward and reaches onto the unprotected structural wood framing. We observed portions of the framing with evidence of ongoing water damage; moisture readings taken of those areas were as high as 34 percent.

We also observed evidence of ongoing moisture intrusion emanating from where the Tyvek is reversed-lapped over the window sill flange. This moisture runs downward along the vertical wood frame and reaches onto the bottom plate located under the Tyvek. We observed portions of the framing with evidence of ongoing water damage; moisture readings taken of those areas were as high as 20 percent.

In addition to the concerns related to water intrusion and water damage, we are also concerned about the adequacy of the existing panel to fulfill its structural function. The manufacturer's stamping of the panel declares that the panel is 7/16 inch thick, which was verified by our own measurement. A simple review of the existing panel nailing against the published installation instructions of the manufacturer revealed that the required 'double nailing' along the panel's vertical overlaps was not provided. Additional nailing concerns include the spacing of the nail placement, whether or not the nails used to secure the panels are approved for structural use, and overdriven nails; the structural significance of the observed nailing concerns requires further evaluation.

We should note that a section of the panel siding located along the left elevation of the residence has a visible outwards bow. The bowing was measured as much as ¾ inch in less than 48 inches span. As with the nailing, the structural significance of the bowing requires further evaluation.

Vinyl Window and Exterior Patio Door

The window located in the area of the test cut was observed with no nails along the right jamb (side). When the siding was being pulled, the window was also being partially dislodged from the framing. It is unlikely this installation meets any standards.

Additionally, the window sill was observed out of plane, and appears the window frame is distorted however the cause for the window deformation is not known.

Access to the side yard is by means of a vinyl patio door. The Owner reported that the screen had to be replaced couple of times as it continues to have difficulty in opening and closing. Our examination revealed a noticeable deformation of the door frame at the header. The deformation was measured as much as 3/16 inches in 3 feet. As with the window, the cause for the door deformation is not known.

Grade Drainage

The residence is experiencing significant ground water intrusion into the crawl space. We observed approximately 12 inches of standing water in the crawl space. The Owners reported that they are planning to install a sump pump to assist in the removal of water from the crawl space.

Noticeably absent from view was the foundation waterproofing, which if present may assist in preventing water intrusion through the concrete foundation. We found no evidence of a footing drain or footing drain cleanouts which if present, would assist in dissipating ground water to appropriate collection systems.

Similar evidence of elevated ground water tables was observed in other residences. This appears to be a widespread issue and is of great concern. Additional investigation by proper design professionals is advised.

Roof:

Regarding the roof, we did not have an opportunity to access the roof at this time, however we observed the following:

a. Missing Flashings. The edge of the roof lacks metal flashings which are necessary for adequate weather protection.

b. Wind Damage. A number of shingles were observed partially lifted from the roof surface, indicative of ongoing wind damage.

Additional roof deficiencies may be present. We recommend additional investigation.

CONCLUSIONS AND RECOMMENDATIONS

Physical damage to important wood structural members and roof shingles have been identified due to defects on the original construction of the residence, and specifically the poor installation of the T 1-11 panel siding assembly, water-resistive barrier, flashings and likely the roof. The extent of the damage is unknown and cannot be ascertained at this time unless additional investigation is carried out.

Some of the defects identified during our visit may be deviations from the manufacturer's literature, manufacturer's installation instructions and manufacturer's

recommendations. Some of the defects may also be deviations from the applicable sections of the Building Code and/or original design. The extent of the defects is unknown and cannot be ascertained at this time unless additional investigation is carried out.

We are very concerned about the structural adequacy of the existing panel siding. We are currently working on a similar project in Pierce County where similar panels have been deemed unacceptable for structural use, due to their poor installation. Additional interior damage to the residences at the referenced property has so far been identified as cracking and nail pops of the interior drywall. The potential interior damage under full code-imposed load can be greater and is starting to manifest itself at the exterior by the bulging of panel siding out of the vertical plane of the wall, just like at this subject residence.

<u>Chris: the residences in this complex all appear to have similar T 1-11 panel siding at the sides and rear elevations, similar ground water issues and similar type of roofing. This is of great concern. The residence is experiencing property damage due to likely construction defect.</u>

We recommend the residences at this complex be fully examined to identify construction defects, especially as it pertains to potential water intrusion, water damage and structural deficiencies. The roof and deck structures should also be examined.

We have provided some photographs taken of the property during our visit, for your reference. We are willing and available to assist with additional investigations, site testing, and consulting as you and the Owners deem it necessary.

We thank you for your consideration to our services, and look forward to continue being of assistance to your project needs.

Martin C. Flores,
martin@dimensionalbc.com
principal

Dimensional Building Consultants, LLC



Figure 1 – Partial overview of houses in the Bay Vista Community. The sides and rear elevations
are detailed with T 1-11 panel siding.



Figure 2 – Partial overview of rear elevation of residence at 4515 Abalone Street. The panel
siding is acting as both, siding and structural sheathing



Figure 3 – Overview of panel siding at window header. The window/ door headers do not have a metal head flashing



Figure 4 – Close up of panel siding at window sill. The panel was improperly over-cut which results in excessive gap and excessive use of caulking. The window sill has deflection



Figure 5 – Close up of white wood trim with water staining.



Figure 6 – Close up of panel transition at window, during panel removal. Note excessive caulking material used to seal the excessive gap between the panel and the window frame



Figure 7 – Close up rear of siding panel, showing evidence of water damage and elevated moisture readings. Moisture reading is 31.9 percent



Figure 8 – Partial overview of first floor floorline, where the Tyvek is not applied. Water damage to the structural wood frame is observed



Figure 9 – Moisture reading of the structural wood framing is elevated, at 33.9 percent



Figure 10 – Vinyl frame patio door deflection is evident even across from the neighboring property



Figure 11 – Measure of the door deflection is 3/16 inch over a 3 foot span



Figure 12 – Significant standing water was observed in the crawl space. Additionally, we observed no evidence of waterproofing along the foundation



Figure 13 – Elevated water table was observed at this residence, and the neighboring residence. An elevated water table renders the yard practically un-usable



Figure 14 – Partial close up the roof, showing wind damaged roof shingles

# EXHIBIT

# # 48

RECEIVED FOR FILING
KITSAP COUNTY CLERK

NOV 28 2016

DAVID W. PETERSON



**SUPERIOR COURT OF WASHINGTON FOR KITSAP COUNTY**

RIC LOGG, a Washington resident; KELLY LOGG, a Washington resident; DERIN WHITE, a Washington resident; ANTHONY MEDINA, a Washington resident; MARISA MEDINA, a Washington resident; RYAN LUNDBERG, a Washington resident; RAULIN ALVIOR, a Washington resident; NICK ORMEROD, a Washington resident; TAYLOR ORMEROD, a Washington resident; DAVID SCHULTZ, a Washington resident; BRITTANY SIMMONS, a Washington resident; GRACE JONES, a Washington resident; ANDREW JONES, a Washington resident; MELVIN THOMAS, a Washington resident;

Plaintiffs,

vs.

HIGHMARK HOMES, LLC, a Washington Company d/b/a MTT HOLDINGS, INC., a Washington Corporation; TOM TOLLEN, an individual; Washington resident; JOHN DOE COMPANIES and/or CORPORATIONS, Washington Companies,

Defendants.

NO. 16 2 02163 0

PLAINTIFFS' COMPLAINT FOR:

- BREACH OF CONTRACT
- BREACH OF IMPLIED WARRANTY
- VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT
- BREACH OF INDEPENDENT DUTY DOCTRINE
- NEGLIGENT MISREPRESENTATION

COMES NOW, Plaintiffs Ric Logg et al, by and through their attorneys, Casey & Skoglund PLLC, and for their complaint against Defendants, hereby assert the following:

PLAINTIFFS' COMPLAINT - 1

**CASEY & SKOGLUND PLLC**
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

# I. PARTIES

1. Plaintiffs Ric & Kelly Logg are the owners of a Vintage Hills home located at 249 E. 29th Street in Bremerton, Washington.

2. Plaintiff Derin White is the owner of a Vintage Hills home located at 282 E. Fulton Way.

3. Plaintiffs Anthony & Marisa Medina are the owners of a Vintage Hills home located at 297 E. 29th Street in Bremerton, Washington.

4. Plaintiff Ryan Lundberg is the owner of a Vintage Hills home located at 2975 Gerard Place East in Bremerton, Washington.

5. Plaintiff Raulin Alvior is the owner of a Vintage Hills home located at 278 E. 29th Street in Bremerton, Washington.

6. Plaintiffs Nick & Taylor Ormerod are the owners of a Vintage Hills home located at 284 E. 29th Street in Bremerton, Washington.

7. Plaintiff David Schultz is the owner of a Vintage Hills home located at 260 E. 29th Street in Bremerton, Washington.

8. Plaintiff Brittany (Devitt) Simmons is the owner of a Vintage Hills home located at 289 E. Fulton Way in Bremerton, Washington.

9. Plaintiffs Grace & Andrew Jones are the owners of a Vintage Hills home located at 269 E. Barlow Ct. E. in Bremerton, Washington.

10. Plaintiff Melvin Thomas is the owner of a Vintage Hills home located at 272 E. 29th Street in Bremerton, Washington.

PLAINTIFFS' COMPLAINT - 2

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

1    11.    Hereinafter, the above named individual Plaintiffs will collectively be referred
2    to as "Plaintiffs."

3    12.    Defendant Highmark Homes (hereinafter "Highmark") LC is a Washington
4    company doing business in Bremerton Washington.

5    13.    On information and belief "Highmark Homes LLC" is also a d/b/a for various
6    other LLCs or Corporations owned and/or operated by Defendant Tom Tollen, including MTT
7    Holdings, Incorporated.
8
9    14.    Defendant or Defendants constructed homes located within the Vintage Hills
10   project development in Bremerton, Washington.

11   15.    Defendant Highmark marketed and sold homes located within the Vintage
12   Hills development.

13                                  **VENUE / JURISDICTION**

14   16.    Kitsap County Superior Court is the proper venue for this action and also has
15   jurisdiction over this matter as the property and damages associated therewith is located in
16   Bremerton, Kitsap County, Washington; the Defendant performs business related hereto in
17   Bremerton, Kitsap County, Washington, and the Plaintiffs' properties and sales contracts
18   related hereto are located and were executed in Bremerton, Kitsap County, Washington.
19
                                     **CAUSES OF ACTION:**
20
                                     **BREACH OF CONTRACT**
21
22   17.    Plaintiffs incorporate all preceding paragraphs.

23   18.    Defendants entered real-estate purchase and sales agreements ("REPSA") with
24   the Plaintiffs named herein.

25

PLAINTIFFS' COMPLAINT - 3                          **CASEY & SKOGLUND PLLC**
                                                   130 NICKERSON STREET, SUITE 210
                                                   SEATTLE, WA 98109
                                                   T: 206.284.8165 | F: 206.456.4210

19.     The REPSAs, and documents related thereto or made a part thereof, include an implied duty to act in good faith.

20.     Defendants failed to exercise good faith by failing to ensure the homes, prior to their sale, meet minimum construction standards.

21.     Defendants promised the construction of the project complied with the plans and specifications.

22.     Defendants' construction of the project fails to comply with the plans and specifications.

23.     Defendants promised the construction of the project complied with all laws and / or regulations in place at the time of and pertaining to said construction.

24.     Defendants' construction of the project does not comply with all laws and / or regulations in place at the time of and pertaining to the construction of Vintage Hills.

25.     As a direct and proximate result of Defendants' breach of contract, the project has sustained "property" damage and Plaintiffs' homes have experienced property damage as a result of defendants' operations.

26.     Plaintiffs are entitled to recover the full cost to repair and any consequential losses arising out of or related to Defendants' breach, and the property damages caused thereby, including any costs paid to investigate and make necessary immediate / emergency repairs, and stigma damages.

## BREACH OF IMPLIED WARRANTY OF HABITABILTY

27.     Plaintiffs incorporate all preceding paragraphs.

28.     Defendants are builder-vendors of the homes.

PLAINTIFFS' COMPLAINT - 4

CASEY & SKOGLUND PLLC
130 NICKERSON STREET, SUITE 210
SEATTLE, WA 98109
T: 206.284.8165 | F: 206.456.4210

29.    Defendants constructed homes with code violations and deviations from the plans and specifications.

30.    The homes are experiencing property damage as a result of defendants' actions.

31.    As a direct and proximate result of Defendants' actions, the project and Plaintiffs' homes have experienced property damage.

32.    Plaintiffs are entitled to recover the full cost to repair and any consequential losses arising out of or related to Defendants' breach, and the property damages caused thereby, including any costs paid to investigate and make necessary immediate / emergency repairs, and stigma damages.

## VIOLATION OF CONSUMER PROTECTION ACT (RCW 19.86)

33.    Plaintiffs incorporate all preceding paragraphs.

34.    Defendants are builder-vendors of the homes.

35.    Defendants constructed homes with code violations and deviations from the plans and specifications.

36.    Defendants marketed the homes to the general public.

37.    Plaintiffs purchased homes from the Defendants.

38.    The homes are experiencing property damage as a result of Defendants' actions.

39.    Defendants' actions violate RCW 19.27.020, *i.e.* Washington's application of applicable building codes (see RCW 19.27.031).

40.    Pursuant to Washington law, a private action under 19.86 et. seq. is established

PLAINTIFFS' COMPLAINT - 5

where the alleged act is injurious to the public interest where it violates a statute identifying protection of a public interest and/or is injurious to another, has the capacity to injure another, or has the capacity to injure other persons.

41.    As a direct and proximate result of Defendants' actions, the project and Plaintiffs' homes have experienced property damage.

42.    Plaintiffs are entitled to recover the full cost to repair and any consequential losses arising out of or related to Defendants' breach, and the property damages caused thereby, including any costs paid to investigate and make necessary immediate / emergency repairs, and stigma damages.

## BREACH OF THE INDEPENDENT DUTY DOCTRINE

43.    Plaintiffs incorporate all preceding paragraphs.

44.    Defendants are builder-vendors of the homes.

45.    Defendants had a duty to construct the homes in compliance with RCW 19.27.

46.    Defendants had a duty to construct the homes in compliance with the plans and specifications submitted and approved by the city and/or county.

47.    Defendants failed to construct the homes in compliance with RCW 19.27 and the plans and specifications.

48.    As a direct and proximate result of Defendants' actions, the project and Plaintiffs' homes have experienced property damage.

49.    Plaintiffs are entitled to recover the full cost to repair and any consequential losses arising out of or related to Defendants' breach, and the property damages caused thereby, including any costs paid to investigate and make necessary immediate / emergency

PLAINTIFFS' COMPLAINT - 6

1    repairs, and stigma damages.

2                        **NEGLIGENT MISREPRESENTATION**

3        50.    Plaintiffs incorporate all preceding paragraphs.

4        51.    Defendants are builder-vendors of the homes.

5        52.    Defendants marketed the homes to the general public.

6        53.    Defendants represented to owners the homes were of high quality.

7        54.    Defendants represented that the homes were built in compliance with the plans

8
9    and specifications

10       55.    Defendants represented the homes were built to the building code.

11       56.    Plaintiffs purchased homes from the Defendants.

12       57.    Defendants knew or should have known the homes were constructed with code

13   violations and deviations from the plans and specifications.

14       58.    Defendants were negligent in either obtaining or communicating false

15   information.

16       59.    Plaintiffs relied on Defendants' misrepresentations and the false information.

17       60.    Plaintiffs' reliance was reasonable considering the relationship between the

18   parties and the surrounding circumstances.

19       61.    The homes are experiencing property damage as a result of defendant's

20
21   actions.

22       62.    As a direct and proximate result of Defendants' dissemination of false

23   information, the Plaintiffs have been damaged and Plaintiffs' homes have experienced

24   property damage.

25
     PLAINTIFFS' COMPLAINT - 7                          CASEY & SKOGLUND PLLC
                                                    130 NICKERSON STREET, SUITE 210
                                                         SEATTLE, WA 98109
                                                 T: 206.284.8165 | F: 206.456.4210

## RELIEF REQUESTED

The Plaintiffs pray for judgment against the Defendants as follows:

1.     Damages for breach of contract in an amount to be proven at time of trial;

2.     Damages for breach of implied warranty of habitability in an amount to be proven at trial;

3.     Damages for violation of the Washington Consumer Protection Act, including treble damages, attorney fees, and reasonable costs;

4.     Damages for breach of independent duty doctrine and negligent misrepresentation in an amount to be proven at trial; and

5.     For such other and further relief as the Court may deem just and equitable.

DATED this _18_ day of November, 2016.

CASEY & SKOGLUND PLLC

By:_____

Todd K. Skoglund, WSBA #30403
Christopher R. Casey, WSBA #27684
Attorney for Plaintiffs

PLAINTIFFS' COMPLAINT - 8

EXHIBIT

# 49



**RIVERSTONE**

A FAIRFAX Company

**LINDA PRETZEL**
CLAIMS DEPARTMENT
Linda_Pretzel@trg.com



RECEIVED

JAN 0 6 2017

ASHBAUGH BEAL

250 COMMERCIAL STREET
SUITE 5000
MANCHESTER, NH 03101
DIRECT DIAL: (858) 716-2232
FACSIMILE: (678) 385-9105

December 30, 2016

| | |
|---|---|
| Highmark Homes LLC<br>16400 Southcenter Parkway, # 210<br>Tukwila, Washington 98188<br><br>Attn: Tim Tollen or Tiffanie Clark-Tollen | Ashbaugh Beal<br>4400 Columbia Center<br>701 Fifth Avenue<br>Seattle, WA 98104<br><br>Attn: Zachary O. McIsaac |

RE:     ***Vintage Hills***
            **Pre-litigation claim**
            **American Safety Insured:**    Highmark Homes, LLC
            **Policy Numbers/Periods:**    156AUI 60577-00: 02/17/10 to 02/17/11
                                              156AUI 61311-00: 02/17/11 to 02/17/12
                                              156AUI 62063-00: 02/17/12 to 02/17/13
            **Claim File Number:**    WM000116129

Dear Mr. Tollen and Atty. McIsaac:

RiverStone Claims Management LLC ("RiverStone") is handling this matter for TIG Insurance Company, for itself and as successor by merger to American Safety Indemnity Company ("ASIC"). ASIC provided commercial general liability coverage to Highmark Homes, LLC, as indicated above. ASIC received initial notice of this matter on December 12, 2016, and is in the process of investigating and evaluating this claim.

**Factual Background:**

This construction defect claim involves single-family homes in the Vintage Hills development in Bremerton, Washington. The homes were completed and sold from May 2012 to April 2013. We understand Highmark Homes was the developer and/or General Contractor. Highmark Homes received an RCW 64.50 notice from the claimant attorney on 09/15/16.

**Request For Information:**

ASIC is continuing its investigation of this matter. We would greatly appreciate your assistance in providing the following information and documents:

- Please provide information on the Vintage Hills project: How many homes were built? What was Highmark Homes' role? Please describe the homes. How many homes are part of this claim?
- Please provide information on the design of the homes, and the name and contact information for the architect(s) and engineers.

- Please provide a list of all of the subcontractors involved in the building of this project. Please provide their contracts, and proof of insurance.
- Please advise of your response to the claimants' RCW 64.50 notice. Has there been further investigation and communication? Please provide copies of the communication, and a summary of your investigation.

**Full and Complete Reservation of All Rights**

Please be advised that ASIC is specifically reserving all of its rights with respect to the subject policy(ies) and applicable law, including a right of reimbursement if fees and expenses are incurred. The investigation and evaluation undertaken by ASIC is being conducted with a full reservation of its rights. Any action taken during the course of ASIC's investigation and evaluation of this matter shall not be deemed a waiver of or an estoppel to assert any such right. ASIC, by investigating this matter, does not waive any right, power, privilege, defense, provision, term, limitation, condition or exclusion under the subject policies and applicable law.

Thank you for your continued courtesy and cooperation. If you have any questions or comments, please do not hesitate to contact my office at any time.

Sincerely,
Riverstone Claims Management, LLC


Linda Pretzel
Claims Analyst
Linda_Pretzel@TRG.com
858-716-2232

# EXHIBIT

# # 50

This exhibit was left blank intentionally.

EXHIBIT

# 51

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.

# CONDOMINIUM, APARTMENT, TOWNHOUSE OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES**, paragraph **2.** Exclusions of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph 2. Exclusions of **COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to:

**Condominium, Apartment and Townhouse**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work",or "your product", that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 25 units. This exclusion does not apply if "your work" or "your product" occurs after the condominium, apartment or townhouse project has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

**Tract Housing**

 "Bodily injury", "property damage" or "person or advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's sub-contractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development".

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred prior to completion and certification for occupancy.

As used in the endorsement, the following is added to **SECTION V – DEFINITIONS:**

"Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

# EXHIBIT
# # 52





B



C



D



E



F



G



H



I



J







# EXHIBIT
# # 53





B



C



D



E



F



G



H



I



J







L



M



N







P



Q



R



S



T



U



V







X



EXHIBIT

# 54





B



C



D



E



F



G



Vintage
Cut
3

H



I



J







Vintage
272
cut 2

L



M



N







P



Q



R



Vintage
Cut
3

S



T



U



V







X



Y



Z

# EXHIBIT

# # 55





B



C



D



E



F



VINTAGE
25A
CUT
1

G



H



I



J







L



M



N







# EXHIBIT

# # 56




2016/02/19

B



C



E



D



# EXHIBIT

# # 57





**SmartSide®**

TRIM & SIDING

**PRECISION SERIES 38 SERIES, 76 SERIES, 190 SERIES
PRIMED PANEL SIDING INCLUDING SILVERSIDE & SMARTFINISH**
(smooth square edge panel siding is approved
for use with Carrara Stucco Finish ONLY)

## General

• At the time of manufacture, LP's Precision Series primed panel siding meets or exceeds the performance standards set forth in ICC-ES acceptance criteria ACC321 and has achieved code recognition under the ICC-ES Report ESR-1301, and HUD recognition under HUD-MR-1318. For copies of ESR-1301, call LP Customer Support at 1-800-648-6893 or go on-line at http://www.icc-es.org/reports/pdf_files/ICC-ES/ESR-1301.pdf.

• Minimum 6 in. clearance must be maintained between siding and finish grade.

• Siding applied adjacent to porches, patios, walks, etc. must have a clearance of at least 1 in. above any surface.

• Minimum 1" clearance at intersection with roof line

• Apply siding in a manner that prevents moisture intrusion and water buildup.

• All exposed wood substrate must be primed and painted in a manner that prevents moisture intrusion and water buildup.

• In non-traditional ICF and SIP assemblies, the ICF or SIP manufacturer must prescribe the fastening specifications. Note: LP does not recommend LP SmartSide for use in these non-traditional assemblies. If used, LP will not warrant for Buckling and Shrinkage. However, balance of warranty does remain intact.

• When using wet blown cellulose insulation, the insulation must not be in direct contact with the siding and it must be allowed to dry a minimum of 24 hours or longer if specified by the insulation manufacturer.

• DO NOT USE STAPLES

## Storage

• Store off the ground well supported, on a flat surface, under a roof or separate waterproof covering

• Keep siding clean and dry. Inspect prior to application.

• Allow siding to adjust to atmospheric conditions before application.

## Stud Spacing

• Precision Series 38 Series and 76 Series panel siding must be installed on 16 in. OC framing only. When installing on 24 in. OC framing, Precision Series 190 Series panel siding is required.

## Moisture

• Moisture control and moisture vapor control are critical elements of proper housing design. Check your local building codes for application procedures for handling moisture and moisture vapor in your area.

• As with all wood products, do not apply engineered wood siding to a structure having excessive moisture conditions such as drying concrete or plaster. If such conditions exist, the building should be well ventilated to allow it to dry prior to the application of the siding.

• Siding must not be applied to green or crooked structural framing members. Do not apply siding over rain-soaked or buckled sheathing materials.

• Gutters are recommended for control of roof water run off.

## Vapor Retarder/Weather Barrier

• A properly installed breathable water-resistive barrier is required behind the siding.

• Consult your local building code for details.

• LP will assume no responsibility for water penetration.

## Gaps & Sealants

• Seal all gaps with a high-quality, non-hardening, paintable sealant with a minimum stated service life of 30 years. Follow the sealant manufacturer's instructions for application.

## Flashing, Windows, Doors & Openings

• All openings must be properly sealed or flashed in a manner that prevents moisture intrusion or buildup. Several examples that accomplish this are shown on the following pages.

## Trim

Trim should be thick enough so the siding does not extend beyond the face of the trim.

• Trim and fascia must be applied in a manner that will not allow moisture intrusion or water buildup.

• LP® SmartSide® siding is not designed and/or manufactured to be used as trim or fascia. LP SmartSide trim and fascia are available in a variety of dimensions.

## Finishing Instructions

DO
• Priming all exposed wood substrates before painting is highly recommended.

• Paint all exposed siding surfaces including drip edges.

• Thoroughly paint the bottom edges of siding especially all cut ends next to the roof line.

• Apply paint as soon as possible and within 180 days of application.

• Follow the coating manufacturer's application and maintenance instructions.

• High-quality acrylic latex paint, specially formulated for use on wood and engineered wood substrates, is highly recommended. Semi-gloss or satin finish oil or alkyd paints are acceptable. For flat alkyd paint, please check with the coating manufacturers for their recommendations for use on composite wood siding.

## Nailing Instructions

- Use minimum 6d, corrosion resistant according to ASTM 641, box style nails for 38 Series and 76 Series panels and minimum 8d for 190 Series panels. . Do not use electroplated fasteners.

- Penetrate studs or studs and wood sheathing a combined minimum of 1 1/2 in.



Alignment bead
3/8 in. min. from edge
1/8 in. gap
Nail penetration min. 1 1/2 in.
Single row of nails



Alignment bead
1/8 in. gap
Double row of nails

- For 38 Series panels, double nailing procedure meets wall bracing requirements and 5/16 in. shear wall design values.

- For 76 Series and 190 Series panels, single nailing meets wall bracing requirements. To meet the equivalent 3/8" shear wall design values, double nailing procedures must be used. It may be necessary to angle drive the second nail in order to penetrate the framing. Seal nails driven below the surface.

- Shear values for panels applied directly to studs shall be no greater than noted in Table 1 of the ICC-ES report ESR-1301.

- Not warranted for application on SIP and ICF assemblies.

CAUTION

- 38 Series and 76 Series panels must be installed on 16 in. OC framing only. When installing on 24 in. OC framing, 190 Series panels are required.

- Backside of panel must not come in contact with masonry foundation.

- Do not force siding into place. Maintain the illustrated 1/8 in. space behind the joint to allow for expansion while the panel equilibrates with the local environment.

- LP® SmartSide® Panel siding must not be attached by stapling.

- DO NOT INSTALL OVER ALIGNMENT BEAD. Install panels in light contact to the edge of alignment bead. (see above drawing)



Nail a min 3/8 in. from edge
12 in. max. field nail spacing
6 in. max. perimeter nail spacing
Nail corner first
6 in. min. ground clearance
Masonry
Do not let panel contact masonry
6 in. max. perimeter nail spacing



| CONDITION | | CORRECTION | |
|---|---|---|---|
| Snug | | OK | |
| Flush | | OK | |
| Visible fiber | | Paint | |
| Countersunk 1/16 in.–1/8 in. | | Seal with caulking | |
| Countersunk more than 1/8 in. | | Seal with caulk and renail | |

### 4 FT. X 8 FT. Ungrooved Shiplap Panel



1/8 in. gap
1/8 in. gap

### LP SmartSide Panel Siding Joint Details

#### HORIZONTAL WALL JOINTS



BUTT & FLASH
3/8 in. min. gap
Siding
Blocking
Sloped flashing (galv. or aluminum)

LAP
Siding
Blocking
1 in. min. overlap
Lap top panel over bottom panel

LAPPED HORIZONTAL WALL JOINT



Siding
Framing (band joist, truss chord, etc.)
1 in. min. overlap
Wall Framing

# Application instructions (cont.)

## LP SmartSide Panel Siding Joint Details (contiinue

### HORIZONTAL BELTLINE JOINTS

For multi-story buildings, make provisions at horizontal joints for "setting" shrinkage of framing, especially when applying siding directly to studs.



- Siding (4 ft. x 8ft.)
- Aluminum or galv. flashing
- BAND BOARD OVER PANEL FILLER
- 2 in. x 10 in. band board
- Filler
- Siding (4 ft. x 8 ft.)

## Siding Must Not Contact Masonry



- Bottom plate
- Stud
- OR
- Floor system
- Sill plate
- Extend siding below sill plate
- Flashing or moisture barrier
- Min. $1/8$ in. or flashing between siding and masonry.
- Masonry foundation

## 1 in. Roof & Chimney Clearance



- Trim
- Min. $3/16$ in. space at joint
- 4 in. min. flashing
- Paint bottom edges
- 1 in. min. clearance from roofing

## Gap, Flash Doors & Windows



- Interior Wall Finish
- Header
- Siding
- Casing
- Code Approved Breathable Water-Resistive Barrier
- $3/16$ in. gap
- Insulation Filler
- Code Approved Flashing
- Trim
- Nail fin (do not damage)
- Space according to the window/door manufacturer's instruction

The Louisiana-Pacific Corporation ("LP") LP SmartSide Siding (the "Products") limited warranty (the "Warranty") applies only to structures on which the Products have been applied, finished and maintained in accordance with the published application, finishing and maintenance instructions in effect at the time of application. The failure to follow such application, finishing or maintenance instructions will void the Warranty as to the portion of the Products affected by the variance (the "Affected Products").

LP assumes no liability for any loss or damage sustained by the Affected Products and is expressly released by the purchaser or owner from any such loss or liability.

Any modification of the Warranty's application, finishing or maintenance requirements is void and unenforceable unless approved in writing prior to application by the Siding General Manager or his designee and a member of the LP Legal Department.

For a copy of the warranty or for installation and technical support, visit the LP SmartSide product support Web site at:

## www.lpcorp/smartside.com
or for additional support call 800.450.6106.

WARRANTY REMEDIES ARE NOT AVAILABLE IF REQUIREMENTS ARE NOT FOLLOWED.

**Cal. Prop 65 Warning:** Use of this product may result in exposure to wood dust, known to the State of California to cause cancer.



LP SMARTSIDE®
BUILDING PRODUCTS    TRIM & SIDING

© 2011 Louisiana-Pacific Corporation. All rights reserved. LP and SmartSide are registered trademarks of Louisiana-Pacific Corporation. Printed in U.S.A.

NOTE: Louisiana-Pacific Corporation periodically updates and revises its product information. To verify that this version is current, call 800-450-6106.

LPZB0512



**alternate inside corner details**

gap 3/16" and caulk

gap 3/16" and caulk

caulk

vapor barrier
if required
by code

**Breathable weather resistant barrier**

6"

12"

6"

Shiplap Edge Panel

paint

6" minimum

**bottom course detail**

**panel joint**

**ground clearance**

B



(800) 442-8544 | www.cascadewindows.com

# Installation Instructions

*The instructions on the previous two pages are based on AAMA standards for new residential and light commercial applications. PLEASE SEE ACTUAL AAMA INSTALLATION GUIDELINES FOR FLUSH-FIN STYLE WINDOWS, IF APPLICABLE. Detailed, illustrated instructions are also available upon request.*

## Updated 09/26/11





*Please Note: The following installation instructions are written with the understanding that the installer has an essential comprehension of common construction materials, practices, terminology and proper flashing and sealing techniques. Please contact Cascade Windows if you have any questions about these instructions. Thank you.*

# Installation Instructions

Please read all instructions before beginning installation.

## Storage and Handling:

- Care must be taken during storage and handling of this product.
- Store on a level surface in a protected area, out of direct sunlight.
- No more than 5 windows per stack, with only a very slight lean. Never lay windows flat.
- Leave sufficient space between windows to allow for proper ventilation.
- Provide full support for head and sill to prevent bowing or deformation of product.
- Window must be lifted and carried with full support under the frame. Do not lift or carry using the top of the frame.
- DO NOT drop product, or subject it to any form of sudden impact.
- Protect product from construction traffic, debris and other potential damaging hazards.

## Installation:

1. Make sure window is in closed and locked position.
2. Apply flashing[1] across bottom of opening, extending beyond each side of the opening by the width of the flashing.
3. Apply flashing[1] to sides, extending beyond the top and bottom of the opening by the width of the flashing.
4. Apply a 3/8" nominal bead of flexible sealant around the entire perimeter of the window, behind the nailing fin, aligning bead with the pre-punched holds in the nailing fin. [For Sliding Glass Doors—also seal liberally beneath sill, and follow additional installation instructions provided for Sliding Glass Doors on page 5].
5. Center the unit in the opening, weep holes down and to the exterior. Press window firmly into opening, insuring a good continuous seal between the window and the structure.

6.  Apply one fastener through a pre-punched hole in the nailing fin at the side of the frame, approximately 3-4" below an upper corner of the unit – to "lock" the unit in place. Use fasteners that will penetrate into the stud at least 1".

7.  Ensure unit is SQUARE, PLUMB, AND LEVEL, with FULL support under sill.

8.  Apply another fastener through the nailing fin at the opposite diagonal (lower) corner of the unit. Verify the unit is still SQUARE, PLUMB AND LEVEL, that unit operates smoothly, and that operable sash are sitting square in their openings.

9.  Continue fastening window, using every other pre-punched hold in the nailing fin.

*Please Note: When fastening the head portion of the window, place the fastener at the top of the elongated holes, and DO NOT over compress the fin with the fastener. This will allow for any header deflection that may occur. (IT IS HIGHLY RECOMMENDED THAT ROOF LOADS BE APPLIED BEFORE WINDOWS ARE INSTALLED. THIS HELPS TO ENSURE THAT ANY POSSIBLE HEADER DEFLECTION WILL HAVE OCCURRED, MAKING THE OPENINGS MORE STABLE).*

10. Apply flashing[1] across the top of the unit, overlapping the nailing fin and the side flashing pieces, and extending beyond the outer edges of the side flashing pieces by at least 1". Seal flashing to the face of the nailing fin with flexible sealant.

11. Be sure to properly integrate any weather-resistant barrier (house wrap) with flashing components, to ensure moisture drainage to the outside of the structure (starting at the base, overlap materials working towards the top).

12. IF INSULATING FOAM IS TO BE USED: Use only non-expanding or low expanding foam products specifically designed for use around vinyl windows, in strict adherence to application instructions. Do not overfill cavity. Confirm product compatibility with vinyl and other surrounding materials. Any distortion of window frame due to improper use of insulating foam may void the window warranty. Otherwise, insulate around window using fiber insulation, being careful to not bow the jamb.

13. Proper installation is necessary to ensure smooth operation of windows. Check for smooth operation prior to applying any finish materials.

14. Leave adequate clearance (1/8"-1/4") between window frame and exterior finish application (siding, trim, etc.) to allow for expansion and contraction of window and surrounding materials. Fill gap, creating a suitable expansion joint, using flexible sealant, backer rod, etc.

15. All exposed surfaces should be cleaned of any debris as soon as possible after installation. Use only mild detergents. DO NOT USE any harsh solvents or abrasive materials when cleaning any window surface.

> *¹ Please Note: Non-adhesive flexible flashing material must be at least 9" wide. If flexible flashing is adhesive, narrower material may be used based on application appropriateness. NOTE: It is critical that all of the flashing manufacturers' guidelines are followed precisely, including temperature considerations, the use of primers, and the use and compatibility with sealants and substrates. The use of adhesive flexible flashing may also call for the side flashing components to be installed over the nailing fin, after the window is set and fastened (putting step #3 between steps #10 and #11). This is an acceptable alteration.*

> *IMPORTANT: Verify compatibility between sealants, PVC, flashing materials and weather-resistant barrier.*

The instructions on the previous two pages are based on AAMA standards for new residential and light commercial applications. PLEASE SEE ACTUAL AAMA INSTALLATION GUIDELINES FOR FLUSH-FIN STYLE WINDOWS, IF APPLICABLE. Detailed, illustrated instructions are also available upon request.

# Specialty Products Installation Instructions

## Bow and Bay Windows

Follow all applicable installation instructions as written, PLUS: any bow, bay, garden or other window assembly projecting outward from the face of the wall MUST BE FULLY SUPPORTED to prevent the window from sagging. Any supports used must be suitable for the application and able to support the weight of the product for the life of its installation. Types of supports include (but are not limited to): corbels, framing and cable support systems (Cable support systems are available through Cascade Windows). Failure to support the bottom of any projected window can result in damage to the product and would void the warranty.

## Flush-Fin or Block Frame Window or Configuration

Follow all applicable installation instructions as written, PLUS: installation for these types of frames must include the use of sealant butt-joints around the entire perimeter of the unit, using backer-rod to set the proper sealant joint depth. Any penetrations made through the frame of the unit must be pre-drilled and filled with sealant prior to the insertion of any fastener. AT NO TIME SHALL A FASTENER PENETRATE THE BOTTOM (SILL) PORTION OF THE WINDOW FRAME. Any fasteners used must not interfere with hardware or moving parts of the window (i.e. sash balances, vent sashes, hinges, etc.). These types of installations may not allow for the use of flashing materials, thus the integrity of the sealant joint is critical.

## Accent Windows

Follow all applicable installation instructions as written PLUS: for any irregular shaped frames (trapezoids, round-tops, etc.) extra framing may be needed in order to provide proper support for fastening. Extra attention and care must also be taken to insure that any irregular shaped frame is properly flashed, using weather-board fashion (starting at the bottom, overlap each piece with the piece being applied above).

## Sliding Glass Doors

Follow all applicable installation instructions as written PLUS: Once Sliding Glass Door frame is installed square, plumb, and level – prior to finishing the installation; provide proper support blocking between the door frame and framing on the opening side of the jamb, in line with the latch keeper. Fasten the keeper into place using the longer screws provided – anchoring the keeper through the frame and support blocking, into the framing. The support blocking should be sized properly so that once the latch screws are tightened properly, the side jamb remains plumb. Once fastened, re-check the reveal between the sliding door panel and side jamb. The reveal should be consistent along the entire edge. Then, adjust the wheels of the sliding panel using a large straight slot or Philips-head screwdriver, raising the door panel to a proper height, and assisting in the alignment of the panel with the frame at the leading edge. When properly adjusted, the weather-stripping on the outer edge of the sliding panel should be fully hidden by the door frame, and the panel should slide smoothly and unimpeded. Finally, check to insure that the locking device is integrating properly with the keeper, providing a secure attachment. If needed, the locking device can be adjusted further by using a straight-slot screwdriver to move the tongue of the lock in or out to properly interface with the keeper. When adjusted properly, there should be very little 'play' in the sliding panel in the locked position.

*Please Note: It is the responsibility of the owner, architect, or builder to make product selections in compliance with applicable laws, building codes and requirement.*

C



[ARCHITECTURAL manual]



# ARCHITECTURAL MANUAL

Product List & Performance      pg. 2

Features & Benefits      pg. 25

Horizontal Sliders      pg. 28

Single Hungs      pg. 38

Picture Windows      pg. 46

Accent Windows      pg. 55

Awnings      pg. 65

Casements      pg. 70

Patio Doors      pg. 87

Bays & Bows      pg. 95

Specifications      pg. 98

Cascade Series      pg. 108

Installation Instructions      pg. 119

"CHANGING THE WAY YOU LOOK AT *windows*"



# Cascade Windows Product Line Information

| MODEL | VISUAL | PRODUCT DESCRIPTION | PARAMETERS |
|---|---|---|---|
| 9011 | | 1-lite Picture Unit | 11-1/2" min. 1 side dm.<br>40 Sq.Ft. max -<br>119-1/2" max. 1 side dim. |
| 9021 | | 2-lite Picture Unit w/ vert. T-bar | 11-1/2" min. 1 side dm.<br>40 Sq.Ft. max -<br>119-1/2" max. 1 side dim. |
| 9031 | | 3-lite Picture Unit w/ vert. T-bars | 40 Sq.Ft. max. (annealed)<br>120" max. 1 side dim.<br>104" x 78" max (temp) |
| 9012 | | 2-lite Picture Unit w/ horiz. T-bar | 11-1/2" min. 1 side dm.<br>40 Sq.Ft. max -<br>119-1/2" max. 1 side dim. |
| 9100 | | Single Vent Horizontal Slider | 36 sqft max OA / 11-1/2" min. ht.<br>84" max. wd / 36" max.vent wd<br>23-1/2"x 15-1/2" min. OA<br>72" x 72" max. OA |
| 9100P (P/XO) | | Single Vent Horizontal Slider w/ Pic above. | 23-1/2" x 27-1/2" min.<br>71-1/2" x 83-1/2" max.<br>28 sqft max Pic |
| 9100P (XO/P) | | Single Vent Horizontal Slider w/ Pic below. | 23-1/2" x 27-1/2" min.<br>71-1/2" x 83-1/2" max.<br>28 sqft max Pic |
| 9130 | | XOX Horizontal Slider | 47-1/2" x 11-1/2" min.<br>119-1/2" x 59-1/2" max. |
| 9130P (P/XOX) | | XOX Horizontal Slider w/ Pic above | 49 Sq.Ft. Max<br>96" max 1 side<br>32 sqft max Pic. (cert. pending) |
| 9130P (XOX/P) | | XOX Horizontal Slider w/ Pic below | 49 Sq.Ft. Max<br>96" max 1 side<br>32 sqft max Pic. (cert. pending) |
| 9200 | | Single Hung | 11-1/2" min wd. (w/ 29-1/2" ht.)<br>47-1/2" max. wd<br>15-1/2" x 23-1/2" min. OA<br>47-1/2" x 95-1/2" max. OA |
| 9210 | | Single Hung / Pic combination | 23-1/2" x 23-1/2" min. OA<br>95-1/2" x 77-1/2" max. OA |
| 9220 | | Twin Single Hung | 23-1/2" x 23-1/2" min. OA<br>95-1/2" x 77-1/2" max. OA |
| 9230 | | Single Hung / Pic / Single Hung combination | 35-1/2" x 23-1/2" min. OA<br>107-1/2" 77-1/2" max. OA |
| 9240 | | Pic / Single Hung / Pic combination | 35-1/2" x 23-1/2" min. OA<br>107-1/2"x 77-1/2" max. OA |

| | | | |
|---|---|---|---|
| 9300 | | Single Casement | 16" min. wd / 17-1/2" min. ht<br>35-1/2"x 59-1/2" or<br>29-1/2" x 71-1/2" max. OA |
| 9310 | | Casement / Pic combination w/ T-mullion | 36"x 48" / 34"x60" / 24"x 66"<br>(max. vents)<br>33" x 16-1/2" min. OA<br>45 Sq.Ft. Max OA |
| 9320 | | Double Casement | 36"x 48" / 34"x60" / 24"x 66"<br>(max. vents)<br>33" x 16-1/2" min. OA<br>28 Sq.Ft. Max OA |
| 9330 | | Casement / Pic / Casement combination w/ T-mullion | 36"x 48" / 34"x60" / 24"x 66"<br>(max. vents)<br>49-1/2" x 16-1/2" min. OA<br>45 Sq.Ft. Max OA |
| 9301 | | Casement Picture Unit | 16-1/2" min. 1 side dm.<br>40 Sq.Ft. max -<br>119-1/2" max. 1 side dim. |
| 9400 | | Awning | 19-1/2" min. wide<br>17-1/2" min. high<br>48" x 48" max. |
| 9410 | | Awning / Pic combination | See Awning and Casement-Pic parameters  *Tests pending |
| 9400P | | Pic over Awning combination w/ T-mullion | See Awning and Casement-Pic parameters  *Tests pending |
| 9420 | | Double Awning | See Awning and Casement-Pic parameters  *Tests pending |
| 9700 | | XO or OX Patio Door | 59-1/2" x 79-1/2" min.<br>95-1/2" x 95-1/2" max. |
| 9730 | | 3-panel Patio Door (XO/O,OX/O,O/XO,O/OX) | 88" x 79-1/2" min.<br>142" x 81-1/2" max. |
| 9700P | | XO or OX Patio Door w/ integral transom lite | 95-1/2" x 105-1/2" max. |
| 9730P | | 3-panel Patio Door (XO/O,OX/O,O/XO,O/OX) w/ integral transom lite | 88" x 105-1/2" or<br>106" x 95-1/2" max. |
| 9011-AT | | Arch-Top Picture Unit | 40 Sq.Ft. max<br>119-1/2" max. dim.<br>5-1/2" min. leg,<br>210" max radius |
| 9011-HR | | Half-Round Picture Unit | 32 Sq.Ft. Max<br>30" Min. wd<br>96" Max. wd |
| 9011-FR | | Full-Round Picture Unit | 36 Sq.Ft. Max.<br>30" Min. wd<br>72" Max. wd |
| 9011-QR | | Quarter-Round Picture Unit | 36 Sq.Ft. Max.<br>15" Min. wd<br>72" Max. wd |

| Code | Shape | Name | Specifications |
|------|-------|------|----------------|
| 9011-QAT | | Quarter Arch-Top Picture Unit | 40 Sq.Ft. Max.<br>15" Min. wd<br>72" Max. wd<br>210" Max.radius / 5-1/2" min.leg |
| 9011-RT | | Round-Top Picture Unit | 40 Sq.Ft. Max<br>30" Min. wd.<br>96" Max. wd. |
| 9011-SEG | | Segment Picture Unit | 40 Sq.Ft. Max.<br>15" Min. wd<br>72" Max. wd<br>210" Max.radius / 5-1/2" min.leg |
| 9011-EB | | Eyebrow Picture Unit | 40 Sq.Ft. Max.<br>48" Min. wd (w x .25 min. ht.)<br>119-1/2" Max. wd<br>210" Max.radius |
| 9011-ELP | | Ellipse Picture Unit | 40 Sq.Ft. Max.<br>48" Min. wd (w x .33 min. ht.)<br>95-1/2" Max. wd |
| 9011-QRT | | Quarter-Round-Top Picture Unit | 40 Sq.Ft. Max<br>15" Min. wd.<br>48" Max. wd. |
| 9011-TRP | | Trapezoid Picture Unit | 40 Sq.Ft. Max<br>5-1/2" Min. leg |
| 9011-TRI (O) | | Offset Triangle Picture Unit | 40 Sq.Ft. Max<br>6:12 Min. Pitch |
| 9011-TRI (R) | | 90 degree Triangle Picture Unit (Right hand) | 40 Sq.Ft. Max<br>6:12 Min. Pitch<br>5-1/2" Min. leg |
| 9011-TRI (L) | | 90 degree Triangle Picture Unit (Left hand) | 40 Sq.Ft. Max<br>6:12 Min. Pitch<br>5-1/2" Min. leg |
| 9011-TRI (I) | | Isosceles (3-equal sides) Triangle Picture Unit | 40 Sq.Ft. Max<br>6:12 Min. Pitch |
| 9011-APN | | Angled Pentagon Picture Unit | 40 Sq.Ft. Max<br>5-1/2" Min. leg |
| 9011-PPN | | Peak Pentagon Picture Unit | 40 Sq.Ft. Max<br>5-1/2" Min. leg |
| 9011-HEX | | Hexagon Picture Unit | 40 Sq.Ft. Max.<br>23-1/2" min. OA |
| 9011-OCT | | Octagon Picture Unit | 40 Sq.Ft. Max.<br>23-1/2" x 23-1/2" min. OA |
| 9011-PAR | | Parallelogram Picture Unit | 40 Sq.Ft. Max<br>6:12 Min. Pitch |
| 9200-APN | | Angled Pentagon Single Hung | Same as 9200 plus:<br>24" Min. Short .eg |

| | | | |
|---|---|---|---|
| 9200-QAT |  | Quarter-Arch-Top Single Hung | Same as 9200 plus:<br>24" Min. Short leg<br>210" Max. radius |
| 9200-RT |  | Round-Top Single Hung | Same as 9200 plus:<br>24" Min. Short leg |
| 9200-QRT |  | Quarter-Round-Top Single Hung | Same as 9200 plus:<br>24" Min. Short leg |
| 9200-AT |  | Arch-Top Single Hung | Same as 9200 plus:<br>24" Min. Short leg<br>210" Max. radius |
| 9200-TRP |  | Trapezoid Single Hung | Same as 9200 plus:<br>24" Min. Short leg |
| 9200-PPN |  | Peak Pentagon Single Hung | Same as 9200 plus:<br>24" Min. Short leg |
| | | *Parameters are subject to change* | |

# Cascade Windows - Frame Options

| Series | Frame Code | Common Application |
|---|---|---|
| WinPro | W | 3-1/4" wide, 1-1/4" nail-fin setback |
| Cascade | W | New construction - all exteriors |
| Thermal-Pro | W | Available with 'Ripped Fin' for block-frame installations, and wood double-hung replacement |
| WinPro | F | 3-1/4" wide, w/ dual-wall flush-fin (1-1/2") |
| Cascade | F | Replacement - stucco exterior, other exteriors |
| Thermal-Pro | F | |
| WinPro | J | 3-1/4" wide, w/ integral J-trim (3/4" x 3/4" channel) |
| Cascade | J | New construction - vinyl siding exteriors |
| Thermal-Pro | (n/a) | |
| WinPro | K | 3" wide, w/ 1" setback fin and exterior edge lip. |
| Cascade | K | New construction - stucco exterior |
| Thermal-Pro | (n/a) | |
| WinPro | N | 2-3/4" wide (at outer edge), 1-3/8" nail-fin setback |
| Cascade | (n/a) | Aluminum window replacement - various exteriors |
| Thermal-Pro | N | Available with 'Ripped Fin' for block-frame installations. Full bottom support required (interior and exterior of nail-fin) |
| WinPro | Z | 2-3/4" wide, w/ stepped 1-7/8" flush-fin (z-bar) |
| Cascade | (n/a) | Replacement - stucco exterior, other exteriors |
| Thermal-Pro | Z | |

Additional Frame options available:   "R" = "F" frame profile on bottom only, with "W" frame at top and sides, with nail fin removed.

"D" = "J" frame profile on bottom only with "W" frame at top and sides, with nail fin removed.

# Structural Performance Ratings* (AAMA Certified)

*Please Note: For the most recent version of this document
go to www.cascadewindows.com/products.*

| | Operation | Test Size | Air Infiltration (cfm/sqft) | Water Resistance Test Pressure (psf) | Structural Rating |
|---|---|---|---|---|---|
| **WinPro Series** | | | | | |
| Picture | Fixed-O | 79" X 79" | < .01 | 14.6 | F-C40 |
| Slider | XO | 72" X 60" | .08 | 5.4 | HS-C35 |
| Slider | XOX | 120" X 60" | .08 | 4.6 | HS-LC30 |
| Single Hung | H | 48" X 72" | .12 | 5.25 | LC-PG35 |
| Sliding Glass Door | SGD-XO | 72" X 82" | .15 | 4.5 | LC-PG35 |
| **Empire Series** | | | | | |
| Picture | Fixed-O | 79" X 79" | < .01 | 14.6 | F-C40 |
| Slider | XO | 72" X 60" | .08 | 5.4 | HS-C35 |
| Slider | XOX | 120" X 60" | .08 | 4.6 | HS-C30 |
| Single Hung | H | 48" X 72" | .06 | 5.25 | LC-PG35 |
| **Cascade Series** | | | | | |
| Picture | Fixed-O | 96" X 79" | < .01 | 12.12 | LC-PG30 |
| Slider | XO | 72" X 60" | .08 | 5.4 | HS-C35 |
| Slider | XOX | 120" X 72" | .11 | 3.76 | HS-LC25 |
| Single Hung | H | 48" X 72" | .06 | 5.25 | LC-PG35 |
| Casement | X | 36" X 60" | .01 | 12.0 | LC-PG50 |
| Awning | X | 48" X 32" | < .01 | 6.0 | LC-PG40 |
| Sliding Glass Door | SGD-XO | 72" X 82" | .15 | 4.5 | LC-PG35 |
| **ThermalPro Series** | | | | | |
| Picture | Fixed-O | 79" X 79" | < .01 | 14.6 | F-C40 |
| Slider | XO | 72" X 60" | .08 | 5.4 | HS-C35 |
| Slider | XOX | 120" X 60" | .08 | 4.6 | HS-C30 |
| Single Hung | H | 48" X 96" | .06 | 5.25 | LC-PG35 |
| **LbL 8000 Series** | | | | | |
| Tilt Double Hung | TDH | 48" X 77" | .19 | 3.75 | LC-PG25 |
| Picture | Fixed-O | 108" X 72" | .02 | 12 | LC-PG30 |
| Slider | XXX | 120" X 60" | .09 | 3.75 | LC-PG25 |

*Revised 1/24/2012*

* Data shown on this sheet is subject to change based on test dates and certification cycles. Data is based on results from certified tests and/or simulations performed by accredited independent laboratories on products manufactured by Cascade Windows. Actual product performance may vary.





# Thermal Performance Ratings* - NFRC Certified (Page 1 of 2)

*Please Note: For the most recent version of this document go to www.cascadewindows.com/products.*

| | Glass = Clear | Glass = Ec Thermal Spacer = Intercept | Glass = Ec Thermal Spacer = Intercept w/ Argon Gas | Glass = Ec Thermal Spacer = SuperSpacer | Glass = Ec Thermal Spacer = SuperSpacer w/ Argon Gas | Glass = Ec+ Thermal Spacer = Intercept | Glass = Ec+ Thermal Spacer = Intercept w/ Argon Gas | Glass = Ec+ Thermal Spacer = SuperSpacer | Glass = Ec+ Thermal Spacer = SuperSpacer w/ Argon Gas |
|---|---|---|---|---|---|---|---|---|---|
| **WinPro Series** | | | | | | | | | |
| **Picture** | | | | | | | | | |
| U-Values | .47 | .32 | .28 | .31 | .26 | .31 | .27 | .30 | .26 |
| SHGC | .70 | .35 | .35 | .35 | .35 | .25 | .25 | .25 | .25 |
| **Slider** | | | | | | | | | |
| U-Values | .49 | .34 | .30 | .33 | .29 | .34 | .30 | .32 | .28 |
| SHGC | .64 | .32 | .32 | .32 | .32 | .23 | .22 | .23 | .22 |
| **Single Hung** | | | | | | | | | |
| U-Values | .49 | .34 | .30 | .33 | .29 | .34 | .30 | .32 | .28 |
| SHGC | .64 | .32 | .32 | .32 | .32 | .23 | .22 | .23 | .22 |
| **Sliding Glass Door** | | | | | | | | | |
| U-Values | .48 | .34 | .30 | .33 | .29 | .33 | .29 | .32 | .28 |
| SHGC | .63 | .33 | .32 | .33 | .32 | .23 | .23 | .23 | .23 |
| **Empire Series** | | | | | | | | | |
| **Picture** | | | | | | | | | |
| U-Values | .47 | .32 | .28 | .31 | .26 | .31 | .27 | .30 | .26 |
| SHGC | .70 | .35 | .35 | .35 | .35 | .25 | .25 | .25 | .25 |
| **Slider** | | | | | | | | | |
| U-Values | .49 | .35 | .31 | .33 | .29 | .34 | .31 | .32 | .28 |
| SHGC | .64 | .32 | .32 | .32 | .32 | .23 | .22 | .23 | .22 |
| **Single Hung** | | | | | | | | | |
| U-Values | .49 | .35 | .31 | .33 | .29 | .34 | .31 | .32 | .28 |
| SHGC | .64 | .32 | .32 | .32 | .32 | .23 | .22 | .23 | .22 |
| **Cascade Series** | | | | | | | | | |
| **Picture** | | | | | | | | | |
| U-Values | .45 | .31 | .27 | .30 | .26 | .31 | .27 | .30 | .26 |
| SHGC | .64 | .32 | .32 | .32 | .32 | .23 | .22 | .23 | .22 |
| **Slider** | | | | | | | | | |
| U-Values | .49 | .35 | .32 | .33 | .30 | .35 | .31 | .33 | .30 |
| SHGC | .59 | .30 | .30 | .30 | .30 | .21 | .21 | .21 | .21 |
| **Single Hung** | | | | | | | | | |
| U-Values | .48 | .35 | .32 | .34 | .30 | .35 | .31 | .33 | .30 |
| SHGC | .59 | .30 | .30 | .30 | .30 | .21 | .21 | .21 | .21 |

*Revised 11/11/2011*

\* These values are subject to change without notice, based on testing and certification cycles. All Cascade Windows products may be ordered to meet or exceed Energy Star requirements. Please visit www.energystar.gov to view specific US climate zone requirements. SHGC values are shown with no internal dividers (aka grids or muntins). Values shown are with standard reinforcement configurations.





*Please Note: For the most recent version of this document
go to www.cascadewindows.com/products.*

| | Glass = Clear | Glass = Ec, Thermal Spacer = Intercept | Glass = Ec, Thermal Spacer = Intercept w/ Argon Gas | Glass = Ec, Thermal Spacer = SuperSpacer | Glass = Ec, Thermal Spacer = SuperSpacer w/ Argon Gas | Glass = Ec+, Thermal Spacer = Intercept | Glass = Ec+, Thermal Spacer = Intercept w/ Argon Gas | Glass = Ec+, Thermal Spacer = SuperSpacer | Glass = Ec+, Thermal Spacer = SuperSpacer w/ Argon Gas |
|---|---|---|---|---|---|---|---|---|---|
| **Cascade Series** *(Continued)* | | | | | | | | | |
| **Casement** | | | | | | | | | |
| U-Values | .42 | .30 | .28 | .29 | .26 | .30 | .27 | .29 | .26 |
| SHGC | .52 | .26 | .26 | .26 | .26 | .19 | .19 | .19 | .19 |
| **Awning** | | | | | | | | | |
| U-Values | .42 | .30 | .27 | .29 | .26 | .30 | .27 | .29 | .26 |
| SHGC | .52 | .26 | .26 | .26 | .26 | .19 | .19 | .19 | .19 |
| **Sliding Glass Door** | | | | | | | | | |
| U-Values | .48 | .34 | .30 | .33 | .29 | .33 | .29 | .32 | .28 |
| SHGC | .63 | .33 | .32 | .33 | .32 | .23 | .23 | .23 | .23 |
| **ThermalPro Series** | | | | | | | | | |
| **Picture** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .30 | .26 | N/A | N/A | .30 | .26 |
| SHGC | N/A | N/A | N/A | .35 | .35 | N/A | N/A | .25 | .25 |
| **Slider** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .32 | .29 | N/A | N/A | .32 | .28 |
| SHGC | N/A | N/A | N/A | .32 | .32 | N/A | N/A | .23 | .22 |
| **Single Hung** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .32 | .29 | N/A | N/A | .32 | .28 |
| SHGC | N/A | N/A | N/A | .32 | .32 | N/A | N/A | .23 | .22 |
| **LbL Series** | | | | | | | | | |
| **Picture (8000 Frame)** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .27 | N/A | N/A | N/A | N/A | .27 |
| SHGC | N/A | N/A | N/A | .33 | N/A | N/A | N/A | N/A | .22 |
| **Double Slider (8000 Frame)** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .30 | N/A | N/A | N/A | N/A | .30 |
| SHGC | N/A | N/A | N/A | .31 | N/A | N/A | N/A | N/A | .20 |
| **Double Hung (8000 Frame)** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .30 | N/A | N/A | N/A | N/A | .30 |
| SHGC | N/A | N/A | N/A | .30 | N/A | N/A | N/A | N/A | .20 |
| **Sliding Glass Door (SGD 5000 Frame)** | | | | | | | | | |
| U-Values | N/A | N/A | N/A | .29 | N/A | N/A | N/A | N/A | .29 |
| SHGC | N/A | N/A | N/A | .34 | N/A | N/A | N/A | N/A | .22 |

*Revised 11/11/2011*

*\* These values are subject to change without notice, based on testing and certification cycles. All Cascade Windows products may be ordered to meet or exceed Energy Star requirements. Please visit www.energystar.gov to view specific US climate zone requirements. SHGC values are shown with no internal dividers (aka grids or muntins). Values shown are with standard reinforcement configurations.*







# DESIGN INNOVATION

Cascade Windows engineers excel in developing intelligent design that brings exceptional value to our customers.

**MAINFRAME** Our window mainframes feature a wide 3 1/4" frame depth with fusion-welded corners. This gives you beautiful, distinctive shadow lines and improved window stability. When the application requires, Cascade offers a 2 3/4" mainframe.

**CELCON® ROLLERS** Our slider windows feature Celcon rollers mounted on stainless steel axles. They provide years of durable service without causing unsightly markings often associated with other materials.

## Frames Built to Last



**Construction**
Heavy, multi-chambered frame

**Stability**
Set-back fixed glass

**Protection**
Double weather-stripping

**Strength**
Reinforced meeting rails

**Integrity**
Fusion-welded corners

**REINFORCED MEETING RAILS** The meeting rails on many of our single-hung and slider windows are reinforced with steel. This steel reinforcement provides rigidity to enhance structural integrity and forms a secure and stable platform for locking hardware.

**COMBINATION UNITS** Cascade offers a wide selection of window combination units, bringing design flexibility, functionality and creativity to any window project.



**Handle & Lock Options**

AutoLock

Casement Multi-Point Lock Lever

CamLock

Patio Door Handle

Secondary Lock (Patio Door)

**Color Options**

Clay

Almond

White

*"CHANGING THE WAY YOU LOOK AT windows"*



# ENERGY EFFICIENT QUALITY

With rising energy costs and concern for the environment, it is important to choose energy efficient products. Many Cascade windows meet the Department of Energy's Energy Star® guidelines. We offer insulated glass panels with high performance, heat reflective coatings; warm edge spacers and dual weather stripping. Optimum efficiency is achieved by combining our vinyl mainframes with PPG's patented Solarban® glass and our warm edge spacer technology. These features further reduce energy costs while increasing the comfort of your home.

**VINYL** Cascade vinyl windows ensure consistency of quality in materials, lifespan, and maintenance. Our vinyl windows never need painting, saving you time and money. You will also appreciate a reduction in energy costs due to the energy saving performance of Cascade windows.



## Superior Windows

Dual Pane Glass

Solarban® Low-E Glass

**Heat Flow**

Warm Edge Spacer

Energy Efficiency

**DUAL PANE GLASS** Windows have improved dramatically since the days when only a single pane of glass stood between you and the elements. Dual pane windows are quieter and more energy efficient. Plus, our windows are sealed with formulated butylene sealant, ensuring lasting performance.

**LOW-E GLASS** Cascade windows deliver superior year-round performance. High performance glass coatings reflect outside heat in the summer and interior heat in the winter, reducing your air conditioning and heating requirements. Additionally, Solarban® coated glass blocks many of the sun's damaging ultraviolet rays that can fade carpets, curtains, and furniture.

**WARM EDGE SPACER** Cascade's Warm Edge Spacer system conducts less heat through the window. This technology can significantly improve a home's overall energy efficiency.



*"CHANGING THE WAY YOU LOOK AT windows"*



# AAMA & NFRC CERTIFIED

**American Architectural Manufacturers Association**
- tests for **structural performance** and integrity:
>    Air Infiltration
>    Water Infiltration
>    Structural Load
>    Forced Entry



**National Fenestration Rating Council**
- tests for **thermal performance** and integrity:
>    U-Value
>    Solar Heat Gain Coefficient
>    Visual Light Transmittance
>    Condensation Resistance



# HORIZONTAL SLIDER

## MODEL 9100







## *Features & Specifications*

- ♦ *Designed especially for use in new construction applications.*
- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ♦ *High performance weather-stripping minimizing air infiltration, reducing energy costs.*
- ♦ *Streamlined frame and sash design.*
- ♦ *Positive locking with sweep-cam latch tightens sash providing a weathertight seal and security.*
- ♦ *Integral screen pockets assure a tight fit.*
- ♦ *Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.*
- ♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ♦ *Celcon rollers on stainless axles providing smooth operation and reliable performance year after year.*
- ♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*
- ♦ *Available with fresh air vent.*

### GENERAL SPECIFICATIONS:

| Frame Width | 3.25" |
|---|---|
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 24" X 18" |
| Maximum Unit Size (RO) | 72" X 72" |
| Egress (Minimum Size) | 48" X 48" |
| Handing | XO, OX |

### STRUCTURAL PERFORMANCE GRADE
### HS-C30 (120 X 60), HS-R20 (120X 72)

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / ARGON / CLEAR | 0.48 | 2.08 |
| CLEAR / AIR / LOW E .04 | 0.35 | 2.86 |
| CLEAR / ARGON / LOW E .04 | 0.32 | 3.13 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA / NWWDA 101/I.S.-2-97.

# VINYL HORIZONTAL SLIDER WINDOW
## MODEL 9100



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING | | CLEAR OPENING |
|---|---|---|---|---|
| | | VENT | FIXED | |
| 2020 | 24 x 24 | 8 1/8 x 18 1/16 | 9 3/16 x 20 9/16 | 8 3/4 x 20 1/2 |
| 2026 | 24 x 30 | 8 1/8 x 24 1/16 | 9 3/16 x 26 9/16 | 8 3/4 x 26 1/2 |
| 2030 | 24 x 36 | 8 1/8 x 30 1/16 | 9 3/16 x 32 9/16 | 8 3/4 x 32 1/2 |
| 2620 | 30 x 24 | 11 1/8 x 18 1/16 | 12 3/16 x 20 9/16 | 11 3/4 x 20 1/2 |
| 2626 | 30 x 30 | 11 1/8 x 24 1/16 | 12 3/16 x 26 9/16 | 11 3/4 x 26 1/2 |
| 2630 | 30 x 36 | 11 1/8 x 30 1/16 | 12 3/16 x 32 9/16 | 11 3/4 x 32 1/2 |
| 2636 | 30 x 42 | 11 1/8 x 36 1/16 | 12 3/16 x 38 9/16 | 11 3/4 x 38 1/2 |
| 3020 | 36 x 24 | 14 1/8 x 18 1/16 | 15 3/16 x 20 9/16 | 14 3/4 x 20 1/2 |
| 3026 | 36 x 30 | 14 1/8 x 24 1/16 | 15 3/16 x 26 9/16 | 14 3/4 x 26 1/2 |
| 3030 | 36 x 36 | 14 1/8 x 30 1/16 | 15 3/16 x 32 9/16 | 14 3/4 x 32 1/2 |
| 3036 | 36 x 42 | 14 1/8 x 36 1/16 | 15 3/16 x 38 9/16 | 14 3/4 x 38 1/2 |
| 3040 | 36 x 48 | 14 1/8 x 42 1/16 | 15 3/16 x 44 9/16 | 14 3/4 x 44 1/2 |
| 3046 | 36 x 54 | 14 1/8 x 48 1/16 | 15 3/16 x 50 9/16 | 14 3/4 x 50 1/2 |
| 3050 | 36 x 60 | 14 1/8 x 54 1/16 | 15 3/16 x 56 9/16 | 14 3/4 x 56 1/2 |
| 3620 | 42 x 24 | 17 1/8 x 18 1/16 | 18 3/16 x 20 9/16 | 17 3/4 x 20 1/2 |
| 3626 | 42 x 30 | 17 1/8 x 24 1/16 | 18 3/16 x 26 9/16 | 17 3/4 x 26 1/2 |
| 3630 | 42 x 36 | 17 1/8 x 30 1/16 | 18 3/16 x 32 9/16 | 17 3/4 x 32 1/2 |
| 3636 | 42 x 42 | 17 1/8 x 36 1/16 | 18 3/16 x 38 9/16 | 17 3/4 x 38 1/2 |
| 3640 | 42 x 48 | 17 1/8 x 42 1/16 | 18 3/16 x 44 9/16 | 17 3/4 x 44 1/2 |
| 3646 | 42 x 54 | 17 1/8 x 48 1/16 | 18 3/16 x 50 9/16 | 17 3/4 x 50 1/2 |
| 3650 | 42 x 60 | 17 1/8 x 54 1/16 | 18 3/16 x 56 9/16 | 17 3/4 x 56 1/2 |
| 4020 | 48 x 24 | 20 1/8 x 18 1/16 | 21 3/16 x 20 9/16 | 20 3/4 x 20 1/2 |
| 4026 | 48 x 30 | 20 1/8 x 24 1/16 | 21 3/16 x 26 9/16 | 20 3/4 x 26 1/2 |
| 4030 | 48 x 36 | 20 1/8 x 30 1/16 | 21 3/16 x 32 9/16 | 20 3/4 x 32 1/2 |
| 4036 | 48 x 42 | 20 1/8 x 36 1/16 | 21 3/16 x 38 9/16 | 20 3/4 x 38 1/2 |
| *4040 | 48 x 48 | 20 1/8 x 42 1/16 | 21 3/16 x 44 9/16 | 20 3/4 x 44 1/2 |
| *4046 | 48 x 54 | 20 1/8 x 48 1/16 | 21 3/16 x 50 9/16 | 20 3/4 x 50 1/2 |
| *4050 | 48 x 60 | 20 1/8 x 54 1/16 | 21 3/16 x 56 9/16 | 20 3/4 x 56 1/2 |
| 5020 | 60 x 24 | 20 1/8 x 18 1/16 | 27 3/16 x 20 9/16 | 26 3/4 x 20 1/2 |
| 5026 | 60 x 30 | 26 1/8 x 24 1/16 | 27 3/16 x 26 9/16 | 26 3/4 x 26 1/2 |
| 5030 | 60 x 36 | 26 1/8 x 30 1/16 | 27 3/16 x 32 9/16 | 26 3/4 x 32 1/2 |
| *5036 | 60 x 42 | 26 1/8 x 36 1/16 | 27 3/16 x 38 9/16 | 26 3/4 x 38 1/2 |
| *5040 | 60 x 48 | 26 1/8 x 42 1/16 | 27 3/16 x 44 9/16 | 26 3/4 x 44 1/2 |
| *5046 | 60 x 54 | 26 1/8 x 48 1/16 | 27 3/16 x 50 9/16 | 26 3/4 x 50 1/2 |
| *5050 | 60 x 60 | 26 1/8 x 54 1/16 | 27 3/16 x 56 9/16 | 26 3/4 x 56 1/2 |
| 6020 | 72 x 24 | 32 1/8 x 18 1/16 | 33 3/16 x 20 9/16 | 32 3/4 x 20 1/2 |
| 6026 | 72 x 30 | 32 1/8 x 24 1/16 | 33 3/16 x 26 9/16 | 32 3/4 x 26 1/2 |
| 6030 | 72 x 36 | 32 1/8 x 30 1/16 | 33 3/16 x 32 9/16 | 32 3/4 x 32 1/2 |
| *6036 | 72 x 42 | 32 1/8 x 36 1/16 | 33 3/16 x 38 9/16 | 32 3/4 x 38 1/2 |
| *6040 | 72 x 48 | 32 1/8 x 42 1/16 | 33 3/16 x 44 9/16 | 32 3/4 x 44 1/2 |
| *6046 | 72 x 54 | 32 1/8 x 48 1/16 | 33 3/16 x 50 9/16 | 32 3/4 x 50 1/2 |
| *6050 | 72 x 60 | 32 1/8 x 54 1/16 | 33 3/16 x 56 9/16 | 32 3/4 x 56 1/2 |

*Meets Egress

NOTE:  All Dimensions are given as width x height.

# VINYL HORIZONTAL SLIDER STANDARD GRID PATTERN
## MODEL 9100



| | | | | | | |
|---|---|---|---|---|---|---|
| 2020 | 2620 | 3020 | 3620 | 4020 | 5020 | 6020 |
| 2026 | 2626 | 3026 | 3626 | 4026 | 5026 | 6026 |
| 2030 | 2630 | 3030 | 3630 | 4030 | 5030 | 6030 |
| | 2636 | 3036 | 3636 | 4036 | 5036 | 6036 |
| | | 3040 | 3640 | 4040 | 5040 | 6040 |
| | | 3046 | 3646 | 4046 | 5046 | 6046 |
| | | 3050 | 3650 | 4050 | 5050 | 6050 |

# HORIZONTAL SLIDER

## MODEL 9130





### Features & Specifications

♦ *Designed especially for use in new construction applications.*

♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*

♦ *Precision mitered and heat-fusion welded corners.*

♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 31/4" set back).*

♦ *High performance weather-stripping minimizing air infiltration, reducing energy costs.*

♦ *Streamlined frame and sash design.*

♦ *Positive locking with sweep-cam latch tightens sash providing a weathertight seal and security.*

♦ *Integral screen pockets assure a tight fit.*

♦ *Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.*

♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*

♦ *Celcon rollers on stainless axles providing smooth operation and reliable performance year after year.*

♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*

### DETAILED SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 48" X 18" |
| Maximum Unit Size (RO) | 120" X 60" |
| Egress (Minimum Size) | 96" X 48" |
| Handing | XOX |

### STRUCTURAL PERFORMANCE GRADE
**HS-R20**

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / ARGON / CLEAR | 0.48 | 2.08 |
| CLEAR / AIR / LOW E .04 | 0.35 | 2.86 |
| CLEAR / ARGON / LOW E .04 | 0.31 | 3.23 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA / NWWDA 101/I.S.-2-97.

# VINYL XOX DOUBLE VENTING HORIZONTAL SLIDER WINDOW
## MODEL 9130



Using 1/4 width vents (Standard)

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING | | CLEAR OPENING |
|---|---|---|---|---|
| | | VENT | FIXED | |
| 6020 | 72 x 24 | 14 1/8  x  18 1/16 | 33 3/4  x  20 9/16 | 15 1/8  x  20 1/2 |
| 6026 | 72 x 30 | 14 1/8  x  24 1/16 | 33 3/4  x  26 9/16 | 15 1/8  x  26 1/2 |
| 6030 | 72 x 36 | 14 1/8  x  30 1/16 | 33 3/4  x  32 9/16 | 15 1/8  x  32 1/2 |
| 6036 | 72 x 42 | 14 1/8  x  36 1/16 | 33 3/4  x  38 9/16 | 15 1/8  x  38 1/2 |
| 6040 | 72 x 48 | 14 1/8  x  42 1/16 | 33 3/4  x  44 9/16 | 15 1/8  x  44 1/2 |
| 6046 | 72 x 54 | 14 1/8  x  48 1/16 | 33 3/4  x  50 9/16 | 15 1/8  x  50 1/2 |
| 6050 | 72 x 60 | 14 1/8  x  54 1/16 | 33 3/4  x  56 9/16 | 15 1/8  x  56 1/2 |
| 7020 | 84 x 24 | 17 1/8  x  18 1/16 | 39 3/4  x  20 9/16 | 18 1/8  x  20 1/2 |
| 7026 | 84 x 30 | 17 1/8  x  24 1/16 | 39 3/4  x  26 9/16 | 18 1/8  x  26 1/2 |
| 7030 | 84 x 36 | 17 1/8  x  30 1/16 | 39 3/4  x  32 9/16 | 18 1/8  x  32 1/2 |
| 7036 | 84 x 42 | 17 1/8  x  36 1/16 | 39 3/4  x  38 9/16 | 18 1/8  x  38 1/2 |
| 7040 | 84 x 48 | 17 1/8  x  42 1/16 | 39 3/4  x  44 9/16 | 18 1/8  x  44 1/2 |
| 7046 | 84 x 54 | 17 1/8  x  48 1/16 | 39 3/4  x  50 9/16 | 18 1/8  x  50 1/2 |
| 7050 | 84 x 60 | 17 1/8  x  54 1/16 | 39 3/4  x  56 9/16 | 18 1/8  x  56 1/2 |
| 8020 | 96 x 24 | 20 1/8  x  18 1/16 | 45 3/4  x  20 9/16 | 21 1/8  x  20 1/2 |
| 8026 | 96 x 30 | 20 1/8  x  24 1/16 | 45 3/4  x  26 9/16 | 21 1/8  x  26 1/2 |
| 8030 | 96 x 36 | 20 1/8  x  30 1/16 | 45 3/4  x  32 9/16 | 21 1/8  x  32 1/2 |
| 8036 | 96 x 42 | 20 1/8  x  36 1/16 | 45 3/4  x  38 9/16 | 21 1/8  x  38 1/2 |
| *8040 | 96 x 48 | 20 1/8  x  42 1/16 | 45 3/4  x  44 9/16 | 21 1/8  x  44 1/2 |
| *8046 | 96 x 54 | 20 1/8  x  48 1/16 | 45 3/4  x  50 9/16 | 21 1/8  x  50 1/2 |
| *8050 | 96 x 60 | 20 1/8  x  54 1/16 | 45 3/4  x  56 9/16 | 21 1/8  x  56 1/2 |

*Meets Egress
NOTE:  All Dimensions are given as width x height.

# VINYL XOX DOUBLE VENTING HORIZONTAL SLIDER
## STANDARD GRID PATTERN  - MODEL 9130



6020     7020     8020

6026     7026     8026

6030     7030     8030

6036     7036     8036

6040     7040     8040

6046     7046     8046

6050     7050     8050

# WINDOW COMBINATION OPTIONS: "XOP"-BARS

**MODELS 9100, 9130 HORIZONTAL SLIDERS**

An "XOP"-Bar is a vinyl profile that is placed between a fixed lite and a sliding unit within one common frame. It provides a more streamline appearance than a true "mull", in which two or more separate window units are joined together with their frames "back to back".

The amount of vinyl present between daylight openings of a mulled unit is 3-1/2" inches (see below), while the overall width of an "XOP"-bar is only 2-5/16".

Because an "XOP"-bar does not provide as much structural integrity as a true mull, there may be some size restrictions depending on the lite configuration chosen. Contact your Window Products, Inc. representative for some common sizes and configurations of "XOP"-Bar units.

**MULLED UNIT -**
**FRAMES "BACK TO BACK"**
**(# 9100 / 9011)**



3-1/2"

**HORIZONTAL SLIDER**
**WITH "XOP"-BAR**
**(# 9100P)**



2-5/16"

# WINDOW SECTIONS
## MODELS 9100, 9130

**SCALE: 3/4" = 1"**





# WINDOW SECTIONS
## MODELS 9100, 9130

**SCALE: 3/4" = 1"**





H0

# WINDOW SECTIONS
**MODELS 9100, 9130**
**H-Mull Section (typical)**
**SCALE: 3/4" = 1"**





1/2"



# SINGLE HUNG

## MODEL 9200



## Features & Specifications

- ♦ *Designed especially for use in new construction applications.*
- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ♦ *High performance weather-stripping minimizing air infiltration, reducing energy costs.*
- ♦ *Metal reinforced interlock where required, providing superior strength and rigidity.*
- ♦ *Positive locking with sweep-cam latch tightens sash providing a weathertight seal and security.*
- ♦ *Integral screen pockets assure a tight fit.*
- ♦ *Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.*
- ♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ♦ *Concealed block and tackle balances provide smooth and reliable operation.*
- ♦ *Standard 5/8" wide Internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*
- ♦ *Available with fresh air vent.*
- ♦ *Single Hungs can be mulled to additional windows.*

## DETAILED SPECIFICATIONS:

| Frame Width | 3.25" |
|---|---|
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 18" X 24" |
| Maximum Unit Size(RO) | 48" X 78" |
| Egress (Minimum Size) | 36" X 60" |
| Handing | |

### STRUCTURAL PERFORMANCE GRADE

**H-LC30 (48 x 96)**

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / ARGON / CLEAR | 0.48 | 2.08 |
| CLEAR / AIR / LOW E .04 | 0.35 | 2.86 |
| CLEAR / ARGON / LOW E .04 | 0.32 | 3.13 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA / NWWDA 101/I.S.-2-97.

# VINYL SINGLE HUNG - MODEL 9200



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING | | CLEAR OPENING |
|---|---|---|---|---|
| | | FIXED | VENT | |
| 1620 | 18 x 24 | 14 9/16 x 9 3/16 | 12 1/16 x 8 1/8 | 14 1/2 x 8 1/2 |
| 1626 | 18 x 30 | 14 9/16 x 12 3/16 | 12 1/16 x 11 1/8 | 14 1/2 x 11 1/2 |
| 1630 | 18 x 36 | 14 9/16 x 15 3/16 | 12 1/16 x 14 1/8 | 14 1/2 x 14 1/2 |
| 1636 | 18 x 42 | 14 9/16 x 18 3/16 | 12 1/16 x 17 1/8 | 14 1/2 x 17 1/2 |
| 1640 | 18 x 48 | 14 9/16 x 21 3/16 | 12 1/16 x 20 1/8 | 14 1/2 x 20 1/2 |
| 1646 | 18 x 54 | 14 9/16 x 24 3/16 | 12 1/16 x 23 1/8 | 14 1/2 x 23 1/2 |
| 1650 | 18 x 60 | 14 9/16 x 27 3/16 | 12 1/16 x 26 1/8 | 14 1/2 x 26 1/2 |
| 1656 | 18 x 66 | 14 9/16 x 30 3/16 | 12 1/16 x 29 1/8 | 14 1/2 x 29 1/2 |
| 1660 | 18 x 72 | 14 9/16 x 33 3/16 | 12 1/16 x 32 1/8 | 14 1/2 x 32 1/2 |
| 1666 | 18 x 78 | 14 9/16 x 36 3/16 | 12 1/16 x 35 1/8 | 14 1/2 x 32 1/2 |
| 2020 | 24 x 24 | 20 9/16 x 9 3/16 | 18 1/16 x 8 1/8 | 20 1/2 x 8 1/2 |
| 2026 | 24 x 30 | 20 9/16 x 12 3/16 | 18 1/16 x 11 1/8 | 20 1/2 x 11 1/2 |
| 2030 | 24 x 36 | 20 9/16 x 15 3/16 | 18 1/16 x 14 1/8 | 20 1/2 x 14 1/2 |
| 2036 | 24 x 42 | 20 9/16 x 18 3/16 | 18 1/16 x 17 1/8 | 20 1/2 x 17 1/2 |
| 2040 | 24 x 48 | 20 9/16 x 21 3/16 | 18 1/16 x 20 1/8 | 20 1/2 x 20 1/2 |
| 2046 | 24 x 54 | 20 9/16 x 24 3/16 | 18 1/16 x 23 1/8 | 20 1/2 x 23 1/2 |
| 2050 | 24 x 60 | 20 9/16 x 27 3/16 | 18 1/16 x 26 1/8 | 20 1/2 x 26 1/2 |
| 2056 | 24 x 66 | 20 9/16 x 30 3/16 | 18 1/16 x 29 1/8 | 20 1/2 x 29 1/2 |
| 2060 | 24 x 72 | 20 9/16 x 33 3/16 | 18 1/16 x 32 1/8 | 20 1/2 x 32 1/2 |
| 2066 | 24 x 78 | 20 9/16 x 36 3/16 | 18 1/16 x 35 1/8 | 20 1/2 x 32 1/2 |
| 2620 | 30 x 24 | 26 9/16 x 9 3/16 | 24 1/16 x 8 1/8 | 26 1/2 x 8 1/2 |
| 2626 | 30 x 30 | 26 9/16 x 12 3/16 | 24 1/16 x 11 1/8 | 26 1/2 x 11 1/2 |
| 2630 | 30 x 36 | 26 9/16 x 15 3/16 | 24 1/16 x 14 1/8 | 26 1/2 x 14 1/2 |
| 2636 | 30 x 42 | 26 9/16 x 18 3/16 | 24 1/16 x 17 1/8 | 26 1/2 x 17 1/2 |
| 2640 | 30 x 48 | 26 9/16 x 21 3/16 | 24 1/16 x 20 1/8 | 26 1/2 x 20 1/2 |
| 2646 | 30 x 54 | 26 9/16 x 24 3/16 | 24 1/16 x 23 1/8 | 26 1/2 x 23 1/2 |
| 2650 | 30 x 60 | 26 9/16 x 27 3/16 | 24 1/16 x 26 1/8 | 26 1/2 x 26 1/2 |
| 2656 | 30 x 66 | 26 9/16 x 30 3/16 | 24 1/16 x 29 1/8 | 26 1/2 x 29 1/2 |
| *2660 | 30 x 72 | 26 9/16 x 33 3/16 | 24 1/16 x 32 1/8 | 26 1/2 x 32 1/2 |
| *2666 | 30 x 78 | 26 9/16 x 36 3/16 | 24 1/16 x 35 1/8 | 26 1/2 x 32 1/2 |
| 3020 | 36 x 24 | 32 9/16 x 9 3/16 | 30 1/16 x 8 1/8 | 32 1/2 x 8 1/2 |
| 3026 | 36 x 30 | 32 9/16 x 12 3/16 | 30 1/16 x 11 1/8 | 32 1/2 x 11 1/2 |
| 3030 | 36 x 36 | 32 9/16 x 15 3/16 | 30 1/16 x 14 1/8 | 32 1/2 x 14 1/2 |
| 3036 | 36 x 42 | 32 9/16 x 18 3/16 | 30 1/16 x 17 1/8 | 32 1/2 x 17 1/2 |
| 3040 | 36 x 48 | 32 9/16 x 21 3/16 | 30 1/16 x 20 1/8 | 32 1/2 x 20 1/2 |
| 3046 | 36 x 54 | 32 9/16 x 24 3/16 | 30 1/16 x 23 1/8 | 32 1/2 x 23 1/2 |
| *3050 | 36 x 60 | 32 9/16 x 27 3/16 | 30 1/16 x 26 1/8 | 32 1/2 x 26 1/2 |
| *3056 | 36 x 66 | 32 9/16 x 30 3/16 | 30 1/16 x 29 1/8 | 32 1/2 x 29 1/2 |
| *3060 | 36 x 72 | 32 9/16 x 33 3/16 | 30 1/16 x 32 1/8 | 32 1/2 x 32 1/2 |
| *3066 | 36 x 78 | 32 9/16 x 36 3/16 | 30 1/16 x 35 1/8 | 32 1/2 x 32 1/2 |
| 3626 | 42 x 30 | 38 9/16 x 12 3/16 | 36 1/16 x 11 1/8 | 38 1/2 x 11 1/2 |
| 3630 | 42 x 36 | 38 9/16 x 15 3/16 | 36 1/16 x 14 1/8 | 38 1/2 x 14 1/2 |
| 3636 | 42 x 42 | 38 9/16 x 18 3/16 | 36 1/16 x 17 1/8 | 38 1/2 x 17 1/2 |
| 3640 | 42 x 48 | 38 9/16 x 21 3/16 | 36 1/16 x 20 1/8 | 38 1/2 x 20 1/2 |
| 3646 | 42 x 54 | 38 9/16 x 24 3/16 | 36 1/16 x 23 1/8 | 38 1/2 x 23 1/2 |
| *3650 | 42 x 60 | 38 9/16 x 27 3/16 | 36 1/16 x 26 1/8 | 38 1/2 x 26 1/2 |
| *3656 | 42 x 66 | 38 9/16 x 30 3/16 | 36 1/16 x 29 1/8 | 38 1/2 x 29 1/2 |
| *3660 | 42 x 72 | 38 9/16 x 33 3/16 | 36 1/16 x 32 1/8 | 38 1/2 x 32 1/2 |
| *3666 | 42 x 78 | 38 9/16 x 36 3/16 | 36 1/16 x 35 1/8 | 38 1/2 x 32 1/2 |
| 4026 | 48 x 30 | 44 9/16 x 12 3/16 | 42 1/16 x 11 1/8 | 44 1/2 x 11 1/2 |
| 4030 | 48 x 36 | 44 9/16 x 15 3/16 | 42 1/16 x 14 1/8 | 44 1/2 x 14 1/2 |
| 4036 | 48 x 42 | 44 9/16 x 18 3/16 | 42 1/16 x 17 1/8 | 44 1/2 x 17 1/2 |
| 4040 | 48 x 48 | 44 9/16 x 21 3/16 | 42 1/16 x 20 1/8 | 44 1/2 x 20 1/2 |
| 4046 | 48 x 54 | 44 9/16 x 24 3/16 | 42 1/16 x 23 1/8 | 44 1/2 x 23 1/2 |
| *4050 | 48 x 60 | 44 9/16 x 27 3/16 | 42 1/16 x 26 1/8 | 44 1/2 x 26 1/2 |
| *4056 | 48 x 66 | 44 9/16 x 30 3/16 | 42 1/16 x 29 1/8 | 44 1/2 x 29 1/2 |
| *4060 | 48 x 72 | 44 9/16 x 33 3/16 | 42 1/16 x 32 1/8 | 44 1/2 x 32 1/2 |
| *4066 | 48 x 78 | 44 9/16 x 36 3/16 | 42 1/16 x 35 1/8 | 44 1/2 x 32 1/2 |

*Meets Egress          NOTE: All dimensions are given as width x height.

♦ Half vents are standard unless otherwise specified.

♦ Special vent net opening height:   18" vent  -  14 1/2" net operating height
                                     24" vent  -  20 1/2" net operating height
                                     30" vent  -  26 1/2" net operating height
                 Maximum vent size -  36" vent  -  32 1/2" net operating height

# VINYL SINGLE HUNG STANDARD GRID PATTERN
## MODEL 9200

Approximate Scale: 1/4" = 1'



1620    2020    2620    3020

1626    2026    2626    3026    3626    4026

*1630    *2030    *2630    *3030    *3630    *4030

*1636    *2036    *2636    *3036    *3636    *4036

1640    2040    2640    3040    3640    4040

1646    2046    2646    3046    3646    4046

**\*  Horizontal grid patterns on these units do not correspond to those of picture units of the same height, due to the presence of the interlocking rail on all single hungs.**

***To achieve a similar grid pattern with a picture unit of the same height, a special vent size (bar set) must be specified for the Single Hung, or a special grid pattern must be specified for the picture unit.***

# VINYL SINGLE HUNG STANDARD GRID PATTERN
## MODEL 9200

Approximate Scale: 1/4" = 1'

*1650  *2050  *2650  *3050  *3650  *4050

*1656  *2056  *2656  *3056  *3656  *4056

1660  2060  2660  3060  3660  4060

1666  2066  2666  3066  3666  4066

**\*  Horizontal grid patterns on these units do not correspond to those of picture units of the same height, due to the presence of the interlocking rail on all single hungs.**

*To achieve a similar grid pattern with a picture unit of the same height, a special vent size (bar set) must be specified for the Single Hung, or a special grid pattern must be specified for the picture unit.*

# ACCENT TOP SINGLE HUNG MODELS







**MODEL 9200-RT**
ROUND TOP
SINGLE HUNG

**MODEL 9200-QRT**
QUARTER
ROUND TOP
SINGLE HUNG

**MODEL 9200-AT**
ARCH TOP
SINGLE HUNG

**MODEL 9200-TRP**
TRAPEZOID TOP
SINGLE HUNG

**MODEL 9200-PPN**
PENTAGON TOP
SINGLE HUNG



**Note:**
For accent-top single hungs -
To achieve full venting capabilities in the unit, the *leg*
height must be equal to or greater than the vent height.

For windows requiring only limited, or restricted venting
(no egress applications), a minimum leg dimension of
12" is required to allow for balances.



12" min.

# WINDOW COMBINATION OPTIONS: "TWIN"-BARS

**MODEL 9200 SINGLE HUNG**

A "Twin"-bar is a vinyl profile that is placed between two or more single hung units within one common frame. It provides a more streamline appearance than a true "mull", in which two or more separate window units are joined together with their frames "back to back".

The amount of vinyl present between daylight openings of a mulled unit is 3-1/2" inches (see below), while the overall width of a "Twin"-bar is only 2-5/16".

Because a "Twin"-bar does not provide as much structural integrity as a true mull, there may be some size restrictions depending on the lite configuration chosen. Contact your Window Products, Inc. representative for some common sizes and configurations of "Twin"-bar units.

**MULLED UNIT -
FRAMES "BACK TO BACK"
(# 9200-2)**



**SINGLE HUNG PAIR
WITH "Twin"-BAR
(# 9220)**



# WINDOW SECTIONS
## MODEL 9200

### SCALE: 3/4" = 1"







# WINDOW SECTIONS
## MODEL 9200 - Twin Mullion Section

**SCALE: 3/4" = 1"**



2 5/8

2 5/16

# PICTURE WINDOW

## MODEL 9011





### Features & Specifications

♦ Designed especially for use in new construction applications.

♦ Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.

♦ Precision mitered and heat-fusion welded corners.

♦ Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).

♦ Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.

♦ High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.

♦ Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.

♦ Available with fresh air vent.

♦ Picture units can be mulled to additional windows.

## DETAILED SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 12" X 12" |
| Maximum Unit Size(RO) | 96" X 48" |
| Egress (Minimum Size) | N/A |
| Handing | N/A |

| STRUCTURAL PERFORMANCE GRADE |
|---|
| F-C35 |

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.49 | 2.04 |
| CLEAR / ARGON / CLEAR | 0.47 | 2.13 |
| CLEAR / AIR / LOW E .04 | 0.33 | 3.03 |
| CLEAR / ARGON / LOW E .04 | 0.29 | 3.45 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA / NWWDA 101/I.S.-2-97.

# VINYL PICTURE WINDOW
## MODEL 9011



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 1016 | 12 x 18 | 8 1/2  x  14 1/2 |
| 1020 | 12 x 24 | 8 1/2  x  20 1/2 |
| 1026 | 12 x 30 | 8 1/2  x  26 1/2 |
| 1030 | 12 x 36 | 8 1/2  x  32 1/2 |
| 1036 | 12 x 42 | 8 1/2  x  38 1/2 |
| 1040 | 12 x 48 | 8 1/2  x  44 1/2 |
| 1046 | 12 x 54 | 8 1/2  x  50 1/2 |
| 1050 | 12 x 60 | 8 1/2  x  56 1/2 |
| 1060 | 12 x 72 | 8 1/2  x  68 1/2 |
| 2016 | 24 x 18 | 20 1/2  x  14 1/2 |
| 2020 | 24 x 24 | 20 1/2  x  20 1/2 |
| 2026 | 24 x 30 | 20 1/2  x  26 1/2 |
| 2030 | 24 x 36 | 20 1/2  x  32 1/2 |
| 2036 | 24 x 42 | 20 1/2  x  38 1/2 |
| 2040 | 24 x 48 | 20 1/2  x  44 1/2 |
| 2046 | 24 x 54 | 20 1/2  x  50 1/2 |
| 2050 | 24 x 60 | 20 1/2  x  56 1/2 |
| 2060 | 24 x 72 | 20 1/2  x  68 1/2 |
| 3016 | 36 x 18 | 32 1/2  x  14 1/2 |
| 3020 | 36 x 24 | 32 1/2  x  20 1/2 |
| 3026 | 36 x 30 | 32 1/2  x  26 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3036 | 36 x 42 | 32 1/2  x  38 1/2 |
| 3040 | 36 x 48 | 32 1/2  x  44 1/2 |
| 3046 | 36 x 54 | 32 1/2  x  50 1/2 |
| 3050 | 36 x 60 | 32 1/2  x  56 1/2 |
| 3060 | 36 x 72 | 32 1/2  x  68 1/2 |
| 4016 | 48 x 18 | 44 1/2  x  14 1/2 |
| 4020 | 48 x 24 | 44 1/2  x  20 1/2 |
| 4026 | 48 x 30 | 44 1/2  x  26 1/2 |
| 4030 | 48 x 36 | 44 1/2  x  32 1/2 |
| 4036 | 48 x 42 | 44 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| 4046 | 48 x 54 | 44 1/2  x  50 1/2 |
| 4050 | 48 x 60 | 44 1/2  x  56 1/2 |
| 4060 | 48 x 72 | 44 1/2  x  68 1/2 |
| 5016 | 60 x 18 | 56 1/2  x  14 1/2 |
| 5020 | 60 x 24 | 56 1/2  x  20 1/2 |
| 5026 | 60 x 30 | 56 1/2  x  26 1/2 |
| 5030 | 60 x 36 | 56 1/2  x  32 1/2 |
| 5036 | 60 x 42 | 56 1/2  x  38 1/2 |
| 5040 | 60 x 48 | 56 1/2  x  44 1/2 |
| 5046 | 60 x 54 | 56 1/2  x  50 1/2 |
| 5050 | 60 x 60 | 56 1/2  x  56 1/2 |
| 5060 | 60 x 72 | 56 1/2  x  68 1/2 |

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 6016 | 72 x 18 | 68 1/2  x  14 1/2 |
| 6020 | 72 x 24 | 68 1/2  x  20 1/2 |
| 6026 | 72 x 30 | 68 1/2  x  26 1/2 |
| 6030 | 72 x 36 | 68 1/2  x  32 1/2 |
| 6036 | 72 x 42 | 68 1/2  x  38 1/2 |
| 6040 | 72 x 48 | 68 1/2  x  44 1/2 |
| 6046 | 72 x 54 | 68 1/2  x  50 1/2 |
| 6050 | 72 x 60 | 68 1/2  x  56 1/2 |
| >6060 | 72 x 72 | 68 1/2  x  68 1/2 |
| 7016 | 84 x 18 | 80 1/2  x  14 1/2 |
| 7020 | 84 x 24 | 80 1/2  x  20 1/2 |
| 7026 | 84 x 30 | 80 1/2  x  26 1/2 |
| 7030 | 84 x 36 | 80 1/2  x  32 1/2 |
| 7036 | 84 x 42 | 80 1/2  x  38 1/2 |
| 7040 | 84 x 48 | 80 1/2  x  44 1/2 |
| >7046 | 84 x 54 | 80 1/2  x  50 1/2 |
| >7050 | 84 x 60 | 80 1/2  x  56 1/2 |
| 8016 | 96 x 18 | 92 1/2  x  14 1/2 |
| 8020 | 96 x 24 | 92 1/2  x  20 1/2 |
| 8026 | 96 x 30 | 92 1/2  x  26 1/2 |
| 8030 | 96 x 36 | 92 1/2  x  32 1/2 |
| 8036 | 96 x 42 | 92 1/2  x  38 1/2 |
| >8040 | 96 x 48 | 92 1/2  x  44 1/2 |
| >8046 | 96 x 54 | 92 1/2  x  50 1/2 |
| >8050 | 96 x 60 | 92 1/2  x  56 1/2 |

>Glazed with 3/16" glass

**NOTES:   All dimensions are given as width x height.**

♦ T-bar Divided Picture Window:
    (2 lite) #9021, (3 lite) #9031
♦ Mulled Unit Picture Window:
    (2 unit) #9011-2, (3 unit) #9011-3

# VINYL PICTURE WINDOW STANDARD GRID PATTERN
## MODEL 9011

Approximate Scale: 1/4" = 1'



# VINYL PICTURE WINDOW STANDARD GRID PATTERN

## MODEL 9011

Approximate Scale: 1/4" = 1'

| | | | |
|---|---|---|---|
| 4616 | 5016 | 5616 | 6016 |
| 4620 | 5020 | 5620 | 6020 |
| 4626 | 5026 | 5626 | 6026 |
| 4630 | 5030 | 5630 | 6030 |
| 4636 | 5036 | 5636 | 6036 |
| 4640 | 5040 | 5640 | 6040 |
| 4650 | 5050 | 5650 | 6050 |
| 4660 | 5060 | 5660 | 6060 |

# VINYL PICTURE WINDOW STANDARD GRID PATTERN
## MODEL 9011
Approximate Scale: 1/4" = 1'

7016

8016

7020

8020

7026

8026

7030

8030

7036

8036

7040

8040

7050

8050

# VINYL STANDARD TEMPERED PICTURE WINDOW
## MODEL 9011T (Using standard tempered door lites)

Window Products, Inc. offers a cost effective alternative for large glazing applications calling for tempered glass. This is done by utilizing standard tempered door glazing within a Model 9011 picture unit frame. These units are available with clear tempered and Low-E tempered glass. Other glazing options are available at an additional charge.

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 29 1/8  x  75 3/4 | 29 1/2 x 76 1/4 | 26 1/8  x  72 3/4 |
| 29 1/8  x  77 3/4 | 29 1/2 x 78 1/4 | 26 1/8  x  74 3/4 |
| 35 1/8  x  77 3/4 | 35 1/2 x 76 1/4 | 32 1/8  x  72 3/4 |
| 35 1/8  x  77 3/4 | 35 1/2 x 78 1/4 | 32 1/8  x  74 3/4 |
| 47 1/8  x  77 3/4 | 47 1/2 x 76 1/4 | 44 1/8  x  72 3/4 |
| 47 1/8  x  77 3/4 | 47 1/2 x 78 1/4 | 44 1/8  x  74 3/4 |

Approximate Scale: 1/2" = 1'



29 1/2 x 76 1/4
29 1/2 x 78 1/4



35 1/2 x 76 1/4
35 1/2 x 78 1/4



47 1/2 x 76 1/4
47 1/2 x 78 1/4

# WINDOW COMBINATION OPTIONS: "T"-BARS

**MODEL 9011 PICTURE WINDOW**

A "T"-bar is a vinyl profile that is placed between two or more lites of glass within one common frame. It provides a more streamline appearance than a true "mull", in which two or more separate window units are joined together with their frames "back to back".

The amount of vinyl present between daylight openings of a mulled unit is 3-1/2" inches (see below), while the overall width of a "T"-bar is only 2-7/16".

Because a "T"-bar does not provide as much structural integrity as a true mull, there may be some size restrictions depending on the lite configuration chosen. Contact your Window Products, Inc. representative for some common sizes and configurations of "T"-bar units.

**MULLED UNIT -
FRAMES "BACK TO BACK"
(#9011-2)**



**PICTURE UNIT -
WITH "T"-BAR
(#9021)**



# MULL V. T-BAR DAYLIGHT MEASUREMENTS



# WINDOW SECTIONS
## MODEL 9011 - Section

### SCALE: 3/4" = 1"







# WINDOW SECTIONS
## MODEL 9011 - T-Bar Section

**SCALE: 3/4" = 1"**





# ACCENT WINDOWS

## SERIES 9000



### *Features & Specifications*

♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities.*

♦ *Precision mitered and heat-fusion welded corners.*

♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*

♦ *3/4" overall glass is standard for maximum energy efficiency. (9/16" airspace)*

♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*

♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold.*



Series 9000 window units are engineered to provide lasting performance with simple, efficient design. With streamlined, compact components, these systems excel in new construction applications.

### DETAILED SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | (varies per model) |
| Maximum Unit Size(RO) | (varies per model) |
| Egress (Minimum Size) | N/A |
| Handing | N/A |

| STRUCTURAL PERFORMANCE GRADE |
|---|
| F-LC35 |

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / ARGON / CLEAR | 0.48 | 2.04 |
| CLEAR / AIR / LOW E .04 | 0.33 | 3.03 |
| CLEAR / ARGON / LOW E .04 | 0.29 | 3.45 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA / NWWDA 101/I.S.-2-97.

# ACCENT WINDOWS

## VINYL FULL ROUND
### MODEL 9011-FR



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 2626 | 30 x 30 | 26 1/2  x  26 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3636 | 42 x 42 | 38 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| >5050 | 60 x 60 | 56 1/2  x  56 1/2 |
| >6060 | 72 x 72 | 68 1/2  x  68 1/2 |

## VINYL QUARTER ROUND
### MODEL 9011-QR



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 2020 | 24 x 24 | 20 1/2  x  20 1/2 |
| 2626 | 30 x 30 | 26 1/2  x  26 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3636 | 42 x 42 | 38 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| >5050 | 60 x 60 | 56 1/2  x  56 1/2 |
| >6060 | 72 x 72 | 68 1/2  x  68 1/2 |

**NOTE:  All dimensions are given as width x height.
Net Frame Dimensions are 1/2" less than
R.O. Dimensions.**

Please contact Window Products, Inc. Sales Department for window size and grid pattern parameters.

# VINYL EXTENDED QUARTER ROUND AND QUARTER ARCH TOP
## MODELS 9011-QRT, 9011-SEG and 9011-QAT



**Extended Quarter Round**

**MODEL 9011-QRT**

**Segment**

**MODEL 9011-SEG**

**Extended Quarter Archtop**

**MODEL 9011-QAT**

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 1020 | 12 x 24 | 8 1/2  x  20 1/2 |
| 1030 | 12 x 36 | 8 1/2  x  32 1/2 |
| 1036 | 12 x 42 | 8 1/2  x  38 1/2 |
| 1040 | 12 x 48 | 8 1/2  x  44 1/2 |
| 1046 | 12 x 54 | 8 1/2  x  50 1/2 |
| 1050 | 12 x 60 | 8 1/2  x  56 1/2 |
| 1060 | 12 x 72 | 8 1/2  x  68 1/2 |
| 2020 | 24 x 24 | 20 1/2  x  20 1/2 |
| 2030 | 24 x 36 | 20 1/2  x  32 1/2 |
| 2036 | 24 x 42 | 20 1/2  x  38 1/2 |
| 2040 | 24 x 48 | 20 1/2  x  44 1/2 |
| 2046 | 24 x 54 | 20 1/2  x  50 1/2 |
| 2050 | 24 x 60 | 20 1/2  x  56 1/2 |
| 2060 | 24 x 72 | 20 1/2  x  68 1/2 |
| 2620 | 30 x 24 | 26 1/2  x  20 1/2 |
| 2630 | 30 x 36 | 26 1/2  x  32 1/2 |
| 2636 | 30 x 42 | 26 1/2  x  38 1/2 |
| 2640 | 30 x 48 | 26 1/2  x  44 1/2 |
| 2646 | 30 x 54 | 26 1/2  x  50 1/2 |
| 2650 | 30 x 60 | 26 1/2  x  56 1/2 |
| 2660 | 30 x 72 | 26 1/2  x  68 1/2 |
| 3020 | 36 x 24 | 32 1/2  x  20 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3036 | 36 x 42 | 32 1/2  x  38 1/2 |
| 3040 | 36 x 48 | 32 1/2  x  44 1/2 |
| 3046 | 36 x 54 | 32 1/2  x  50 1/2 |
| 3050 | 36 x 60 | 32 1/2  x  56 1/2 |
| 3060 | 36 x 72 | 32 1/2  x  68 1/2 |
| 3070 | 36 x 84 | 32 1/2  x  80 1/2 |
| 3080 | 36 x 96 | 32 1/2  x  92 1/2 |
| 4020 | 48 x 24 | 44 1/2  x  20 1/2 |
| 4030 | 48 x 36 | 44 1/2  x  32 1/2 |
| 4036 | 48 x 42 | 44 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| 4046 | 48 x 54 | 44 1/2  x  50 1/2 |
| 4050 | 48 x 60 | 44 1/2  x  56 1/2 |
| 4060 | 48 x 72 | 44 1/2  x  68 1/2 |
| >4070 | 48 x 84 | 44 1/2  x  80 1/2 |
| >4080 | 48 x 96 | 44 1/2  x  92 1/2 |

> Glazed with 3/16" Glass

**NOTE:  All dimensions are given as width x height. Net Frame Dimensions are 1/2" less than R.O. Dimensions.**

# ACCENT WINDOWS

## VINYL HALF ROUND
### MODEL 9011-HR



| CALL OUT | ROUGH OPENING |
|----------|---------------|
| *2613 | 30 x 15 |
| *2814 | 32 x 16 |
| 3016 | 36 x 18 |
| 3619 | 42 x 21 |
| 4020 | 48 x 24 |
| 5026 | 60 x 30 |
| 6030 | 72 x 36 |
| >7036 | 84 x 42 |
| >8040 | 96 x 48 |

> Glazed with 3/16" glass
\* Radius grid hub not available
  in these sizes

---

## VINYL EYEBROW
### MODEL 9011-EB



| CALL OUT | ROUGH OPENING |
|----------|---------------|
| 4010 | 48 x 12 |
| 5013 | 60 x 15 |
| 6016 | 72 x 18 |
| 7019 | 84 x 21 |
| 8020 | 96 x 24 |

**Note:** An Eyebrow window must possess a minimum height that is the overall width x .25. See following formula:

Width x .25 = Height
(i.e. 72" x .25 = 18")

Example:



A 72" eyebrow must have a minimum height of 18". (Eyebrows with heights greater than width x .25 are allowed)

---

## VINYL ELLIPTICAL
### MODEL 9011-ELP



| CALL OUT | ROUGH OPENING |
|----------|---------------|
| 4014 | 48 x 16 |
| 5018 | 60 x 20 |
| 6020 | 72 x 24 |
| 7024 | 84 x 28 |
| 8028 | 96 x 32 |

**Note:** Elliptical windows are only available in heights that are the overall width x .33. See following formula:

Width x 33 = Height (Round to next even inch)
(i.e. 72" x .33 = 23.76" [Round to 24"] )
(Dimensions shown are Rough Opening)



A 72" elliptical must have a height of 24".

**NOTE: All dimensions are given as width x height. Net Frame Dimensions a re 1/2" less than R.O. Dimensions.**

# VINYL ROUND TOP
## MODEL 9011-RT

   

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 2626 | 30 x 30 | 26 1/2  x  26 1/2 |
| 2630 | 30 x 36 | 26 1/2  x  32 1/2 |
| 2636 | 30 x 42 | 26 1/2  x  38 1/2 |
| 2640 | 30 x 48 | 26 1/2  x  44 1/2 |
| 2646 | 30 x 54 | 26 1/2  x  50 1/2 |
| 2650 | 30 x 60 | 26 1/2  x  56 1/2 |
| 2660 | 30 x 72 | 26 1/2  x  68 1/2 |
| 3026 | 36 x 30 | 32 1/2  x  26 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3036 | 36 x 42 | 32 1/2  x  38 1/2 |
| 3040 | 36 x 48 | 32 1/2  x  44 1/2 |
| 3046 | 36 x 54 | 32 1/2  x  50 1/2 |
| 3050 | 36 x 60 | 32 1/2  x  56 1/2 |
| 3060 | 36 x 72 | 32 1/2  x  68 1/2 |
| 3070 | 36 x 84 | 32 1/2  x  80 1/2 |
| 3080 | 36 x 96 | 32 1/2  x  92 1/2 |
| 4026 | 48 x 30 | 44 1/2  x  26 1/2 |
| 4030 | 48 x 36 | 44 1/2  x  32 1/2 |
| 4036 | 48 x 42 | 44 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| 4046 | 48 x 54 | 44 1/2  x  50 1/2 |
| 4050 | 48 x 60 | 44 1/2  x  56 1/2 |
| 4060 | 48 x 72 | 44 1/2  x  68 1/2 |
| >4070 | 48 x 84 | 44 1/2  x  80 1/2 |
| >4080 | 48 x 96 | 44 1/2  x  92 1/2 |
| 5030 | 60 x 36 | 56 1/2  x  32 1/2 |
| 5036 | 60 x 42 | 56 1/2  x  38 1/2 |
| 5040 | 60 x 48 | 56 1/2  x  44 1/2 |
| >5046 | 60 x 54 | 56 1/2  x  50 1/2 |
| >5050 | 60 x 60 | 56 1/2  x  56 1/2 |
| >5060 | 60 x 72 | 56 1/2  x  68 1/2 |
| >5070 | 60 x 84 | 56 1/2  x  80 1/2 |
| >5080 | 60 x 96 | 56 1/2  x  92 1/2 |
| 6036 | 72 x 42 | 68 1/2  x  38 1/2 |
| 6040 | 72 x 48 | 68 1/2  x  44 1/2 |
| >6046 | 72 x 54 | 68 1/2  x  50 1/2 |
| >6050 | 72 x 60 | 68 1/2  x  56 1/2 |
| >6060 | 72 x 72 | 68 1/2  x  68 1/2 |
| >7040 | 84 x 48 | 80 1/2  x  44 1/2 |
| >7046 | 84 x 54 | 80 1/2  x  50 1/2 |
| >7050 | 84 x 60 | 80 1/2  x  56 1/2 |
| >8046 | 96 x 54 | 92 1/2  x  50 1/2 |
| >8050 | 96 x 60 | 92 1/2  x  56 1/2 |

>Glazed with 3/16" glass

NOTE:  All dimensions are given as width x height.
Net Frame Dimensions are 1/2" less than
R.O. Dimensions.

# VINYL  ARCH TOP W/EXTENDED LEG -  MODEL 9011-AT



| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING |
|---|---|---|
| 2020 | 24 x 24 | 20 1/2  x  20 1/2 |
| 2026 | 24 x 30 | 20 1/2  x  26 1/2 |
| 2030 | 24 x 36 | 20 1/2  x  32 1/2 |
| 2036 | 24 x 42 | 20 1/2  x  38 1/2 |
| 2040 | 24 x 48 | 20 1/2  x  44 1/2 |
| 2046 | 24 x 54 | 20 1/2  x  50 1/2 |
| 2050 | 24 x 60 | 20 1/2  x  56 1/2 |
| 2060 | 24 x 72 | 20 1/2  x  68 1/2 |
| 3020 | 36 x 24 | 32 1/2  x  20 1/2 |
| 3026 | 36 x 30 | 32 1/2  x  26 1/2 |
| 3030 | 36 x 36 | 32 1/2  x  32 1/2 |
| 3036 | 36 x 42 | 32 1/2  x  38 1/2 |
| 3040 | 36 x 48 | 32 1/2  x  44 1/2 |
| 3046 | 36 x 54 | 32 1/2  x  50 1/2 |
| 3050 | 36 x 60 | 32 1/2  x  56 1/2 |
| 3060 | 36 x 72 | 32 1/2  x  68 1/2 |
| 3070 | 36 x 84 | 32 1/2  x  80 1/2 |
| 3080 | 36 x 96 | 32 1/2  x  92 1/2 |
| 4020 | 48 x 24 | 44 1/2  x  20 1/2 |
| 4026 | 48 x 30 | 44 1/2  x  26 1/2 |
| 4030 | 48 x 36 | 44 1/2  x  32 1/2 |
| 4036 | 48 x 42 | 44 1/2  x  38 1/2 |
| 4040 | 48 x 48 | 44 1/2  x  44 1/2 |
| 4046 | 48 x 54 | 44 1/2  x  50 1/2 |
| 4050 | 48 x 60 | 44 1/2  x  56 1/2 |
| 4060 | 48 x 72 | 44 1/2  x  68 1/2 |
| >4070 | 48 x 84 | 44 1/2  x  80 1/2 |
| >4080 | 48 x 96 | 44 1/2  x  92 1/2 |
| 5020 | 60 x 24 | 56 1/2  x  20 1/2 |
| 5026 | 60 x 30 | 56 1/2  x  26 1/2 |
| 5030 | 60 x 36 | 56 1/2  x  32 1/2 |
| 5036 | 60 x 42 | 56 1/2  x  38 1/2 |
| 5040 | 60 x 48 | 56 1/2  x  44 1/2 |
| >5046 | 60 x 54 | 56 1/2  x  50 1/2 |
| >5050 | 60 x 60 | 56 1/2  x  56 1/2 |
| >5060 | 60 x 72 | 56 1/2  x  68 1/2 |
| >5070 | 60 x 84 | 56 1/2  x  80 1/2 |
| 6020 | 72 x 24 | 68 1/2  x  20 1/2 |
| 6026 | 72 x 30 | 68 1/2  x  26 1/2 |
| 6030 | 72 x 36 | 68 1/2  x  32 1/2 |
| 6036 | 72 x 42 | 68 1/2  x  38 1/2 |
| 6040 | 72 x 48 | 68 1/2  x  44 1/2 |
| >6046 | 72 x 54 | 68 1/2  x  50 1/2 |
| >6050 | 72 x 60 | 68 1/2  x  56 1/2 |
| >6060 | 72 x 72 | 68 1/2  x  68 1/2 |
| 7026 | 84 x 30 | 80 1/2  x  26 1/2 |
| 7030 | 84 x 36 | 80 1/2  x  32 1/2 |
| 7036 | 84 x 42 | 80 1/2  x  38 1/2 |
| >7040 | 84 x 48 | 80 1/2  x  44 1/2 |
| >7046 | 84 x 54 | 80 1/2  x  50 1/2 |
| >7050 | 84 x 60 | 80 1/2  x  56 1/2 |
| 8026 | 96 x 30 | 92 1/2  x  26 1/2 |
| 8030 | 96 x 36 | 92 1/2  x  32 1/2 |
| >8036 | 96 x 42 | 92 1/2  x  38 1/2 |
| >8040 | 96 x 48 | 92 1/2  x  44 1/2 |
| >8046 | 96 x 54 | 92 1/2  x  50 1/2 |
| >8050 | 96 x 60 | 92 1/2  x  56 1/2 |

>Glazed with 3/16" glass

**Note:**   A minimum 6" leg is required for any Model 9011-AT window.

**NOTE:  All dimensions are given as width x height.**
        **Net Frame Dimensions are 1/2" less than**
        **R.O. Dimensions.**

# STANDARD ARCH TOP SELECTIONS - MODELS 'AT'

Window Products, Inc offers standard radius tops for Extended Leg Eyebrow units. These selections are based on aesthetically pleasing, proportional springlines with radii that are near equal to their width. For simplicity in the field, these numbers have been adjusted slightly to provide whole number Rough Opening springlines or "Rises".

Window Products, Inc. can also produce custom radius top units that vary from the standard patterns listed, however, additional production charges may apply.



| R.O. Width | | Pattern # | R.O. Radius | Net Frame O.S. Radius | | R.O. RISE | Net Frame RISE |
|---|---|---|---|---|---|---|---|
| 24 | X | A - | 25   1/2 | 25 | = | 3 | 2 7/8 |
| 30 | X | B - | 30   1/8 | 29   5/8 | = | 4 | 3 7/8 |
| 36 | X | C - | 34  15/16 | 34   7/16 | = | 5 | 4 7/8 |
| 48 | X | D - | 51 | 50   1/2 | = | 6 | 5 7/8 |
| 60 | X | E - | 60   1/4 | 59   3/4 | = | 8 | 7 7/8 |
| 72 | X | F - | 69  13/16 | 69   5/16 | = | 10 | 9 7/8 |
| 84 | X | G - | 85  11/16 | 85   3/16 | = | 11 | 10 7/8 |
| 96 | X | H - | 95   1/8 | 94   5/8 | = | 13 | 12 7/8 |
| 108 | X | J - | 111   1/8 | 110   5/8 | = | 14 | 13 7/8 |

# ACCENT WINDOWS

## SERIES 9000 (Cont.'d)

## VINYL TRIANGLE
### MODEL 9011-TRI

**Note:** Triangle Accent windows are only available with *minimum* heights as per the following formulas:

width x .46 = Height (Round to nearest 16th): 90" x .46 = 41.4"

Example:





$41 \, ^7/_{16}$"     $5 \, ^1/_2$" $\overline{|12}$

90"

A 90" right triangle must have a minimum height of 41 $^7/_{16}$".

---

$^1/_2$ width x .46 = Height (Round to nearest 16th): 45" x .46 = 20.7"



$20 \, ^3/_4$"

90"

A 90" peak triangle must have a minimum height of 20 $^3/_4$".

## VINYL PEAK PENTAGON
### MODEL 9011-PPN



Minimum Leg Height = 6" R.O.

## VINYL ANGLED PENTAGON
### MODEL 9011-APN



Minimum Leg Height = 6" R.O.

## ACCENT WINDOWS

**SERIES 9000 (Cont.'d)**

## VINYL TRAPEZOID
### MODEL 9011-TRP



Minimum Leg Height = 6" R.O.

## VINYL HEXAGON
### MODEL 9011-HEX



Minimum Size = 24" x 24" R.O.
Maximum Size = 60" x 60" R.O.

## VINYL OCTAGON
### MODEL 9011-OCT



Minimum Size = 24" x 24" R.O.
Maximum Size = 60" x 60" R.O.

## VINYL PARALLELOGRAM
### MODEL 9011-PAR



**MINIMUM SIZE AVAILABLE:**
- ◆ **Trapezoid -** minimum short leg height 5 1/2" NFD.
- ◆ **Triangle -** minimum angle is 40°.
- ◆ **Pitch -** minimum pitch 5/12.

**NOTE: All dimensions are given as width x height. Net Frame Dimensions are 1/2" less than R.O. Dimensions.**

# ACCENT WINDOW SECTIONS
## SERIES 9000

**SCALE: 3/4" = 1"**



# AWNING

## MODELS 9400 - 9420



## *Features & Specifications*

- ◆ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ◆ *Precision mitered and heat-fusion welded corners.*
- ◆ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ◆ *High performance triple weather-stripping minimizing air infiltration, reducing energy costs.*
- ◆ *Heavy duty Maxim hardware by Truth.*
- ◆ *Concealed, adjustable E-Gard coated hinges and operating hardware by Truth provide durable, reliable performance.*
- ◆ *Removable interior screens.*
- ◆ *Warm-Edge Technology incorporated into 3/4" overall glass is standard for maximum energy efficiency.*
- ◆ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ◆ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*
- ◆ *Metal reinforced for screw retention.*



## DETAILED SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .071" |
| Minimum Unit Size (RO) | 20" x 15" |
| Maximum Unit Size (RO) | 48" x 48" |
| Egress (Minimum Size) | N/A |
| Handing | N/A |



### STRUCTURAL PERFORMANCE GRADE
### AP-LC30 (48 X 48)
### AP-LC50 (48 X 36)

## ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.44 | 2.27 |
| CLEAR / ARGON / CLEAR | 0.42 | 2.38 |
| CLEAR / AIR / LOW E .04 | 0.32 | 3.13 |
| CLEAR / ARGON / LOW E .04 | 0.29 | 3.45 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA/NWWDA 101/I.S.2-97

# VINYL AWNINGS
## MODEL 9400



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING | CLEAR OPENING |
|---------|---------------|-----------|------------------|---------------|
| 2020 | 24 X 24 | 23 1/2 X 23 1/2 | 17 3/8 X 17 3/8 | N/A |
| 2026 | 24 X 30 | 23 1/2 X 29 1/2 | 17 3/8 X 23 3/8 | N/A |
| 2030 | 24 X 36 | 23 1/2 X 35 1/2 | 17 3/8 X 29 3/8 | N/A |
| 2036 | 24 X 42 | 23 1/2 X 41 1/2 | 17 3/8 X 35 3/8 | N/A |
| 2040 | 24 X 48 | 23 1/2 X 47 1/2 | 17 3/8 X 41 3/8 | N/A |
| 2620 | 30 X 24 | 29 1/2 X 23 1/2 | 23 3/8 X 17 3/8 | N/A |
| 2626 | 30 X 30 | 29 1/2 X 29 1/2 | 23 3/8 X 23 3/8 | N/A |
| 2630 | 30 X 36 | 29 1/2 X 35 1/2 | 23 3/8 X 29 3/8 | N/A |
| 2636 | 30 X 42 | 29 1/2 X 41 1/2 | 23 3/8 X 35 3/8 | N/A |
| 2640 | 30 X 48 | 29 1/2 X 47 1/2 | 23 3/8 X 41 3/8 | N/A |
| 3020 | 36 X 24 | 35 1/2 X 23 1/2 | 29 3/8 X 17 3/8 | N/A |
| 3026 | 36 X 30 | 35 1/2 X 29 1/2 | 29 3/8 X 23 3/8 | N/A |
| 3030 | 36 X 36 | 35 1/2 X 35 1/2 | 29 3/8 X 29 3/8 | N/A |
| 3036 | 36 X 42 | 35 1/2 X 41 1/2 | 29 3/8 X 35 3/8 | N/A |
| 3040 | 36 X 48 | 35 1/2 X 47 1/2 | 29 3/8 X 41 3/8 | N/A |
| 3620 | 42 X 24 | 41 1/2 X 23 1/2 | 35 3/8 X 17 3/8 | N/A |
| 3626 | 42 X 30 | 41 1/2 X 29 1/2 | 35 3/8 X 23 3/8 | N/A |
| 3630 | 42 X 36 | 41 1/2 X 35 1/2 | 35 3/8 X 29 3/8 | N/A |
| 3636 | 42 X 42 | 41 1/2 X 41 1/2 | 35 3/8 X 35 3/8 | N/A |
| 3640 | 42 X 48 | 41 1/2 X 47 1/2 | 35 3/8 X 41 3/8 | N/A |
| 4020 | 48 X 24 | 47 1/2 X 23 1/2 | 41 3/8 X 17 3/8 | N/A |
| 4026 | 48 X 30 | 47 1/2 X 29 1/2 | 41 3/8 X 23 3/8 | N/A |
| 4030 | 48 X 36 | 47 1/2 X 35 1/2 | 41 3/8 X 29 3/8 | N/A |
| 4036 | 48 X 42 | 47 1/2 X 41 1/2 | 41 3/8 X 35 3/8 | N/A |
| 4040 | 48 X 48 | 47 1/2 X 47 1/2 | 41 3/8 X 41 3/8 | N/A |

AWNING WINDOWS DO NOT MEET EGRESS REQUIREMENTS

# VINYL BOTTOM AWNINGS W/ DIRECT SET DEADLITE
## MODEL 9400P



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING | CLEAR OPENING |
|---------|---------------|-----------|------------------|---------------|
| 2030 | 24 X 36 | 23 1/2 X 35 1/2 | 17 3/8 X 11 7/8 | N/A |
| 2036 | 24 X 42 | 23 1/2 X 41 1/2 | 17 3/8 X 14 7/8 | N/A |
| 2040 | 24 X 48 | 23 1/2 X 47 1/2 | 17 3/8 X 17 7/8 | N/A |
| 2046 | 24 X 54 | 23 1/2 X 53 1/2 | 17 3/8 X 20 7/8 | N/A |
| 2050 | 24 X 60 | 23 1/2 X 59 1/2 | 17 3/8 X 23 7/8 | N/A |
| 2056 | 24 X 66 | 23 1/2 X 65 1/2 | 17 3/8 X 26 7/8 | N/A |
| 2060 | 24 X 72 | 23 1/2 X 71 1/2 | 17 3/8 X 29 7/8 | N/A |
| 2630 | 30 X 36 | 29 1/2 X 35 1/2 | 23 3/8 X 11 7/8 | N/A |
| 2636 | 30 X 42 | 29 1/2 X 41 1/2 | 23 3/8 X 14 7/8 | N/A |
| 2640 | 30 X 48 | 29 1/2 X 47 1/2 | 23 3/8 X 17 7/8 | N/A |
| 2646 | 30 X 54 | 29 1/2 X 53 1/2 | 23 3/8 X 20 7/8 | N/A |
| 2650 | 30 X 60 | 29 1/2 X 59 1/2 | 23 3/8 X 23 7/8 | N/A |
| 2656 | 30 X 66 | 29 1/2 X 65 1/2 | 23 3/8 X 26 7/8 | N/A |
| 2660 | 30 X 72 | 29 1/2 X 71 1/2 | 23 3/8 X 29 7/8 | N/A |
| 3030 | 36 X 36 | 35 1/2 X 35 1/2 | 29 3/8 X 11 7/8 | N/A |
| 3036 | 36 X 42 | 35 1/2 X 41 1/2 | 29 3/8 X 14 7/8 | N/A |
| 3040 | 36 X 48 | 35 1/2 X 47 1/2 | 29 3/8 X 17 7/8 | N/A |
| 3046 | 36 X 54 | 35 1/2 X 53 1/2 | 29 3/8 X 20 7/8 | N/A |
| 3050 | 36 X 60 | 35 1/2 X 59 1/2 | 29 3/8 X 23 7/8 | N/A |
| 3056 | 36 X 66 | 35 1/2 X 65 1/2 | 29 3/8 X 26 7/8 | N/A |
| 3060 | 36 X 72 | 35 1/2 X 71 1/2 | 29 3/8 X 29 7/8 | N/A |
| 3630 | 42 X 36 | 41 1/2 X 35 1/2 | 35 3/8 X 11 7/8 | N/A |
| 3636 | 42 X 42 | 41 1/2 X 41 1/2 | 35 3/8 X 14 7/8 | N/A |
| 3640 | 42 X 48 | 41 1/2 X 47 1/2 | 35 3/8 X 17 7/8 | N/A |
| 3646 | 42 X 54 | 41 1/2 X 53 1/2 | 35 3/8 X 20 7/8 | N/A |
| 3650 | 42 X 60 | 41 1/2 X 59 1/2 | 35 3/8 X 23 7/8 | N/A |
| 3656 | 42 X 66 | 41 1/2 X 65 1/2 | 35 3/8 X 26 7/8 | N/A |
| 3660 | 42 X 72 | 41 1/2 X 71 1/2 | 35 3/8 X 29 7/8 | N/A |
| 4036 | 48 X 42 | 47 1/2 X 41 1/2 | 41 3/8 X 14 7/8 | N/A |
| 4040 | 48 X 48 | 47 1/2 X 47 1/2 | 41 3/8 X 17 7/8 | N/A |
| 4046 | 48 X 54 | 47 1/2 X 53 1/2 | 41 3/8 X 20 7/8 | N/A |
| 4050 | 48 X 60 | 47 1/2 X 59 1/2 | 41 3/8 X 23 7/8 | N/A |
| 4056 | 48 X 66 | 47 1/2 X 65 1/2 | 41 3/8 X 26 7/8 | N/A |
| 4060 | 48 X 72 | 47 1/2 X 71 1/2 | 41 3/8 X 29 7/8 | N/A |

AWNING WINDOWS DO NOT MEET EGRESS REQUIREMENTS

# VINYL AWNINGS W/ DIRECT SET DEADLITE
## MODEL 9410



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING (ea. Unit) | CLEAR OPENING |
|---------|---------------|-----------|-----------------------------|---------------|
| 3020 | 36 X 24 | 35 1/2 X 23 1/2 | 11 7/8 X 17 3/8 | N/A |
| 3026 | 36 X 30 | 35 1/2 X 29 1/2 | 11 7/8 X 23 3/8 | N/A |
| 3030 | 36 X 36 | 35 1/2 X 35 1/2 | 11 7/8 X 29 3/8 | N/A |
| 3036 | 36 X 42 | 35 1/2 X 41 1/2 | 11 7/8 X 35 3/8 | N/A |
| 3040 | 36 X 48 | 35 1/2 X 47 1/2 | 11 7/8 X 41 3/8 | N/A |
| 3620 | 42 X 24 | 41 1/2 X 23 1/2 | 14 7/8 X 17 3/8 | N/A |
| 3626 | 42 X 30 | 41 1/2 X 29 1/2 | 14 7/8 X 23 3/8 | N/A |
| 3630 | 42 X 36 | 41 1/2 X 35 1/2 | 14 7/8 X 29 3/8 | N/A |
| 3636 | 42 X 42 | 41 1/2 X 41 1/2 | 14 7/8 X 35 3/8 | N/A |
| 3640 | 42 X 48 | 41 1/2 X 47 1/2 | 14 7/8 X 41 3/8 | N/A |
| 4020 | 48 X 24 | 47 1/2 X 23 1/2 | 17 7/8 X 17 3/8 | N/A |
| 4026 | 48 X 30 | 47 1/2 X 29 1/2 | 17 7/8 X 23 3/8 | N/A |
| 4030 | 48 X 36 | 47 1/2 X 35 1/2 | 17 7/8 X 29 3/8 | N/A |
| 4036 | 48 X 42 | 47 1/2 X 41 1/2 | 17 7/8 X 35 3/8 | N/A |
| 4040 | 48 X 48 | 47 1/2 X 47 1/2 | 17 7/8 X 41 3/8 | N/A |
| 4620 | 54 X 24 | 53 1/2 X 23 1/2 | 20 7/8 X 17 3/8 | N/A |
| 4626 | 54 X 30 | 53 1/2 X 29 1/2 | 20 7/8 X 23 3/8 | N/A |
| 4630 | 54 X 36 | 53 1/2 X 35 1/2 | 20 7/8 X 29 3/8 | N/A |
| 4636 | 54 X 42 | 53 1/2 X 41 1/2 | 20 7/8 X 35 3/8 | N/A |
| 4640 | 54 X 48 | 53 1/2 X 47 1/2 | 20 7/8 X 41 3/8 | N/A |
| 5020 | 60 X 24 | 59 1/2 X 23 1/2 | 23 7/8 X 17 3/8 | N/A |
| 5026 | 60 X 30 | 59 1/2 X 29 1/2 | 23 7/8 X 23 3/8 | N/A |
| 5030 | 60 X 36 | 59 1/2 X 35 1/2 | 23 7/8 X 29 3/8 | N/A |
| 5036 | 60 X 42 | 59 1/2 X 41 1/2 | 23 7/8 X 35 3/8 | N/A |
| 5040 | 60 X 48 | 59 1/2 X 47 1/2 | 23 7/8 X 41 3/8 | N/A |
| 6020 | 72 X 24 | 71 1/2 X 23 1/2 | 29 7/8 X 17 3/8 | N/A |
| 6026 | 72 X 30 | 71 1/2 X 29 1/2 | 29 7/8 X 23 3/8 | N/A |
| 6030 | 72 X 36 | 71 1/2 X 35 1/2 | 29 7/8 X 29 3/8 | N/A |
| 6036 | 72 X 42 | 71 1/2 X 41 1/2 | 29 7/8 X 35 3/8 | N/A |
| 6040 | 72 X 48 | 71 1/2 X 47 1/2 | 29 7/8 X 41 3/8 | N/A |
| 7020 | 84 X 24 | 83 1/2 X 23 1/2 | 35 7/8 X 17 3/8 | N/A |
| 7026 | 84 X 30 | 83 1/2 X 29 1/2 | 35 7/8 X 23 3/8 | N/A |
| 7030 | 84 X 36 | 83 1/2 X 35 1/2 | 35 7/8 X 29 3/8 | N/A |
| 7036 | 84 X 42 | 83 1/2 X 41 1/2 | 35 7/8 X 35 3/8 | N/A |
| 7040 | 84 X 48 | 83 1/2 X 47 1/2 | 35 7/8 X 41 3/8 | N/A |
| 8020 | 96 X 24 | 95 1/2 X 23 1/2 | 41 7/8 X 17 3/8 | N/A |
| 8026 | 96 X 30 | 95 1/2 X 29 1/2 | 41 7/8 X 23 3/8 | N/A |
| 8030 | 96 X 36 | 95 1/2 X 35 1/2 | 41 7/8 X 29 3/8 | N/A |
| 8036 | 96 X 42 | 95 1/2 X 41 1/2 | 41 7/8 X 35 3/8 | N/A |

AWNING WINDOWS DO NOT MEET EGRESS REQUIREMENTS

# VINYL DOUBLE AWNINGS
## MODEL 9420



| CALLOUT | ROUGH OPENING | | | NET FRAME | | | | | DAYLIGHT OPENING (ea. Unit) | | | | | CLEAR OPENING |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3620 | 42 | X | 24 | 41 | 1/2 | X | 23 | 1/2 | 14 | 7/8 | X | 17 | 3/8 | N/A |
| 3626 | 42 | X | 30 | 41 | 1/2 | X | 29 | 1/2 | 14 | 7/8 | X | 23 | 3/8 | N/A |
| 3630 | 42 | X | 36 | 41 | 1/2 | X | 35 | 1/2 | 14 | 7/8 | X | 29 | 3/8 | N/A |
| 3636 | 42 | X | 42 | 41 | 1/2 | X | 41 | 1/2 | 14 | 7/8 | X | 35 | 3/8 | N/A |
| 4020 | 48 | X | 24 | 47 | 1/2 | X | 23 | 1/2 | 17 | 7/8 | X | 17 | 3/8 | N/A |
| 4026 | 48 | X | 30 | 47 | 1/2 | X | 29 | 1/2 | 17 | 7/8 | X | 23 | 3/8 | N/A |
| 4030 | 48 | X | 36 | 47 | 1/2 | X | 35 | 1/2 | 17 | 7/8 | X | 29 | 3/8 | N/A |
| 4636 | 48 | X | 42 | 47 | 1/2 | X | 41 | 1/2 | 17 | 7/8 | X | 35 | 3/8 | N/A |
| 4620 | 54 | X | 24 | 53 | 1/2 | X | 23 | 1/2 | 20 | 7/8 | X | 17 | 3/8 | N/A |
| 4626 | 54 | X | 30 | 53 | 1/2 | X | 29 | 1/2 | 20 | 7/8 | X | 23 | 3/8 | N/A |
| 4630 | 54 | X | 36 | 53 | 1/2 | X | 35 | 1/2 | 20 | 7/8 | X | 29 | 3/8 | N/A |
| 4636 | 54 | X | 42 | 53 | 1/2 | X | 41 | 1/2 | 20 | 7/8 | X | 35 | 3/8 | N/A |
| 5020 | 60 | X | 24 | 59 | 1/2 | X | 23 | 1/2 | 23 | 7/8 | X | 17 | 3/8 | N/A |
| 5026 | 60 | X | 30 | 59 | 1/2 | X | 29 | 1/2 | 23 | 7/8 | X | 23 | 3/8 | N/A |
| 5030 | 60 | X | 36 | 59 | 1/2 | X | 35 | 1/2 | 23 | 7/8 | X | 29 | 3/8 | N/A |
| 5036 | 60 | X | 42 | 59 | 1/2 | X | 41 | 1/2 | 23 | 7/8 | X | 35 | 3/8 | N/A |
| 6020 | 72 | X | 24 | 71 | 1/2 | X | 23 | 1/2 | 29 | 7/8 | X | 17 | 3/8 | N/A |
| 6026 | 72 | X | 30 | 71 | 1/2 | X | 29 | 1/2 | 29 | 7/8 | X | 23 | 3/8 | N/A |
| 6030 | 72 | X | 36 | 71 | 1/2 | X | 35 | 1/2 | 29 | 7/8 | X | 29 | 3/8 | N/A |
| 6036 | 72 | X | 42 | 71 | 1/2 | X | 41 | 1/2 | 29 | 7/8 | X | 35 | 3/8 | N/A |
| 7020 | 84 | X | 24 | 83 | 1/2 | X | 23 | 1/2 | 35 | 7/8 | X | 17 | 3/8 | N/A |
| 7026 | 84 | X | 30 | 83 | 1/2 | X | 29 | 1/2 | 35 | 7/8 | X | 23 | 3/8 | N/A |
| 7030 | 84 | X | 36 | 83 | 1/2 | X | 35 | 1/2 | 35 | 7/8 | X | 29 | 3/8 | N/A |
| 7036 | 84 | X | 42 | 83 | 1/2 | X | 41 | 1/2 | 35 | 7/8 | X | 35 | 3/8 | N/A |
| 8020 | 96 | X | 24 | 95 | 1/2 | X | 23 | 1/2 | 41 | 7/8 | X | 17 | 3/8 | N/A |
| 8026 | 96 | X | 30 | 95 | 1/2 | X | 29 | 1/2 | 41 | 7/8 | X | 23 | 3/8 | N/A |
| 8030 | 96 | X | 36 | 95 | 1/2 | X | 35 | 1/2 | 41 | 7/8 | X | 29 | 3/8 | N/A |
| 8036 | 96 | X | 42 | 95 | 1/2 | X | 41 | 1/2 | 41 | 7/8 | X | 35 | 3/8 | N/A |

AWNING WINDOWS DO NOT MEET EGRESS REQUIREMENTS

# CASEMENT

## MODELS 9300 - 9330





### *Features & Specifications*

- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ♦ *High performance triple weather-stripping minimizing air infiltration, reducing energy costs.*
- ♦ *Heavy duty dual-arm Maxim hardware by Truth.*
- ♦ *Concealed, adjustable E-Gard coated hinges and operating hardware by Truth provide durable, reliable performance.*
- ♦ *Multipoint locking system provides a sleek look, ease of operation and additional security.*
- ♦ *Removable interior screens.*
- ♦ *Warm-Edge Technology incorporated into 3/4" overall glass is standard for maximum energy efficiency.*
- ♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ♦ *Beveled sash that opens a full 90° (with standard hardware), allowing for the cleaning of exterior glass.*
- ♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*
- ♦ *Metal reinforced for screw retention.*

### STRUCTURAL PERFORMANCE GRADE
**C-C50 (30 X 72)**
**C-C45 (36 X 60)**

## DETAILED SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .071" |
| Minimum Unit Size (RO) | 18" X 24" |
| Maximum Unit Size(RO) | 30" X 72" 36" X 60" |
| Egress (Minimum Size) | 30" X 48" |
| Handing | Left / Right |

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.44 | 2.27 |
| CLEAR / ARGON / CLEAR | 0.42 | 2.38 |
| CLEAR / AIR / LOW E .04 | 0.32 | 3.13 |
| CLEAR / ARGON / LOW E .04 | 0.29 | 3.45 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA/NWWDA 101/I.S.2-97

# VINYL SINGLE CASEMENT

## MODEL 9300

| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING | CLEAR OPENING |
|---|---|---|---|---|
| 1620 | 18 X 24 | 17 1/2 X 23 1/2 | 11 3/8 X 17 3/8 | 5 9/16 X 17 3/8 |
| 1626 | 18 X 30 | 17 1/2 X 29 1/2 | 11 3/8 X 23 3/8 | 5 9/16 X 23 3/8 |
| 1630 | 18 X 36 | 17 1/2 X 35 1/2 | 11 3/8 X 29 3/8 | 5 9/16 X 29 3/8 |
| 1636 | 18 X 42 | 17 1/2 X 41 1/2 | 11 3/8 X 35 3/8 | 5 9/16 X 35 3/8 |
| 1640 | 18 X 48 | 17 1/2 X 47 1/2 | 11 3/8 X 41 3/8 | 5 9/16 X 41 3/8 |
| 1646 | 18 X 54 | 17 1/2 X 53 1/2 | 11 3/8 X 47 3/8 | 5 9/16 X 47 3/8 |
| 1650 | 18 X 60 | 17 1/2 X 59 1/2 | 11 3/8 X 53 3/8 | 5 9/16 X 53 3/8 |
| 2020 | 24 X 24 | 23 1/2 X 23 1/2 | 17 3/8 X 17 3/8 | 11 9/16 X 17 3/8 |
| 2026 | 24 X 30 | 23 1/2 X 29 1/2 | 17 3/8 X 23 3/8 | 11 9/16 X 23 3/8 |
| 2030 | 24 X 36 | 23 1/2 X 35 1/2 | 17 3/8 X 29 3/8 | 11 9/16 X 29 3/8 |
| 2036 | 24 X 42 | 23 1/2 X 41 1/2 | 17 3/8 X 35 3/8 | 11 9/16 X 35 3/8 |
| 2040 | 24 X 48 | 23 1/2 X 47 1/2 | 17 3/8 X 41 3/8 | 11 9/16 X 41 3/8 |
| 2046 | 24 X 54 | 23 1/2 X 53 1/2 | 17 3/8 X 47 3/8 | 11 9/16 X 47 3/8 |
| 2050 | 24 X 60 | 23 1/2 X 59 1/2 | 17 3/8 X 53 3/8 | 11 9/16 X 53 3/8 |
| 2620 | 30 X 24 | 29 1/2 X 23 1/2 | 23 3/8 X 17 3/8 | 17 9/16 X 17 3/8 |
| 2626 | 30 X 30 | 29 1/2 X 29 1/2 | 23 3/8 X 23 3/8 | 17 9/16 X 23 3/8 |
| 2630 | 30 X 36 | 29 1/2 X 35 1/2 | 23 3/8 X 29 3/8 | 17 9/16 X 29 3/8 |
| 2636 | 30 X 42 | 29 1/2 X 41 1/2 | 23 3/8 X 35 3/8 | 17 9/16 X 35 3/8 |
| ****2640** | **30 X 48** | **29 1/2 X 47 1/2** | **23 3/8 X 41 3/8** | **17 9/16 X 41 3/8** |
| ****2646** | **30 X 54** | **29 1/2 X 53 1/2** | **23 3/8 X 47 3/8** | **17 9/16 X 47 3/8** |
| ****2650** | **30 X 60** | **29 1/2 X 59 1/2** | **23 3/8 X 53 3/8** | **17 9/16 X 53 3/8** |
| 21020 | 34 X 24 | 33 1/2 X 23 1/2 | 27 3/8 X 17 3/8 | 21 9/16 X 17 3/8 |
| 21026 | 34 X 30 | 33 1/2 X 29 1/2 | 27 3/8 X 23 3/8 | 21 9/16 X 23 3/8 |
| 21030 | 34 X 36 | 33 1/2 X 35 1/2 | 27 3/8 X 29 3/8 | 21 9/16 X 29 3/8 |
| ****21036** | **34 X 42** | **33 1/2 X 41 1/2** | **27 3/8 X 35 3/8** | **21 9/16 X 35 3/8** |
| ***21040** | **34 X 48** | **33 1/2 X 47 1/2** | **27 3/8 X 41 3/8** | **21 9/16 X 41 3/8** |
| ***21046** | **34 X 54** | **33 1/2 X 53 1/2** | **27 3/8 X 47 3/8** | **21 9/16 X 47 3/8** |
| ***21050** | **34 X 60** | **33 1/2 X 59 1/2** | **27 3/8 X 53 3/8** | **21 9/16 X 53 3/8** |
| 3026 | 36 X 30 | 35 1/2 X 29 1/2 | 29 3/8 X 23 3/8 | 23 9/16 X 23 3/8 |
| ****3030** | **36 X 36** | **35 1/2 X 35 1/2** | **29 3/8 X 29 3/8** | **23 9/16 X 29 3/8** |
| ***3036** | **36 X 42** | **35 1/2 X 41 1/2** | **29 3/8 X 35 3/8** | **23 9/16 X 35 3/8** |
| ***3040** | **36 X 48** | **35 1/2 X 47 1/2** | **29 3/8 X 41 3/8** | **23 9/16 X 41 3/8** |

*** Meets Egress**

****Meets Egress with Egress Hardware**

**NOTE: All dimensions are given as width x height.**

- Clear opening sizes calculated using standard hinges.
- When using egress hardware – Add 4-3/8” to Clear Opening width.

# VINYL SINGLE CASEMENT STANDARD GRID PATTERN

## MODEL 9300

Approximate Scale: 1/4" = 1'



# VINYL SINGLE CASEMENT W/ DEADLITE
## MODEL 9310



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING (each side) | CLEAR OPENING |
|---|---|---|---|---|
| 3020 | 36 X 24 | 35 1/2 X 23 1/2 | 11 7/8 X 17 3/8 | 6 1/16 X 17 3/8 |
| 3026 | 36 X 30 | 35 1/2 X 29 1/2 | 11 7/8 X 23 3/8 | 6 1/16 X 23 3/8 |
| 3030 | 36 X 36 | 35 1/2 X 35 1/2 | 11 7/8 X 29 3/8 | 6 1/16 X 29 3/8 |
| 3036 | 36 X 42 | 35 1/2 X 41 1/2 | 11 7/8 X 35 3/8 | 6 1/16 X 35 3/8 |
| 3040 | 36 X 48 | 35 1/2 X 47 1/2 | 11 7/8 X 41 3/8 | 6 1/16 X 41 3/8 |
| 3046 | 36 X 54 | 35 1/2 X 53 1/2 | 11 7/8 X 47 3/8 | 6 1/16 X 47 3/8 |
| 3050 | 36 X 60 | 35 1/2 X 59 1/2 | 11 7/8 X 53 3/8 | 6 1/16 X 53 3/8 |
| 3620 | 42 X 24 | 41 1/2 X 23 1/2 | 14 7/8 X 17 3/8 | 9 1/16 X 17 3/8 |
| 3626 | 42 X 30 | 41 1/2 X 29 1/2 | 14 7/8 X 23 3/8 | 9 1/16 X 23 3/8 |
| 3630 | 42 X 36 | 41 1/2 X 35 1/2 | 14 7/8 X 29 3/8 | 9 1/16 X 29 3/8 |
| 3636 | 42 X 42 | 41 1/2 X 41 1/2 | 14 7/8 X 35 3/8 | 9 1/16 X 35 3/8 |
| 3640 | 42 X 48 | 41 1/2 X 47 1/2 | 14 7/8 X 41 3/8 | 9 1/16 X 41 3/8 |
| 3646 | 42 X 54 | 41 1/2 X 53 1/2 | 14 7/8 X 47 3/8 | 9 1/16 X 47 3/8 |
| 3650 | 42 X 60 | 41 1/2 X 59 1/2 | 14 7/8 X 53 3/8 | 9 1/16 X 53 3/8 |
| 4020 | 48 X 24 | 47 1/2 X 23 1/2 | 17 7/8 X 17 3/8 | 12 1/16 X 17 3/8 |
| 4026 | 48 X 30 | 47 1/2 X 29 1/2 | 17 7/8 X 23 3/8 | 12 1/16 X 23 3/8 |
| 4030 | 48 X 36 | 47 1/2 X 35 1/2 | 17 7/8 X 29 3/8 | 12 1/16 X 29 3/8 |
| 4036 | 48 X 42 | 47 1/2 X 41 1/2 | 17 7/8 X 35 3/8 | 12 1/16 X 35 3/8 |
| 4040 | 48 X 48 | 47 1/2 X 47 1/2 | 17 7/8 X 41 3/8 | 12 1/16 X 41 3/8 |
| 4046 | 48 X 54 | 47 1/2 X 53 1/2 | 17 7/8 X 47 3/8 | 12 1/16 X 47 3/8 |
| 4050 | 48 X 60 | 47 1/2 X 59 1/2 | 17 7/8 X 53 3/8 | 12 1/16 X 53 3/8 |
| 4620 | 54 X 24 | 53 1/2 X 23 1/2 | 20 7/8 X 17 3/8 | 15 1/16 X 17 3/8 |
| 4626 | 54 X 30 | 53 1/2 X 29 1/2 | 20 7/8 X 23 3/8 | 15 1/16 X 23 3/8 |
| 4630 | 54 X 36 | 53 1/2 X 35 1/2 | 20 7/8 X 29 3/8 | 15 1/16 X 29 3/8 |
| 4636 | 54 X 42 | 53 1/2 X 41 1/2 | 20 7/8 X 35 3/8 | 15 1/16 X 35 3/8 |
| 4640 | 54 X 48 | 53 1/2 X 47 1/2 | 20 7/8 X 41 3/8 | 15 1/16 X 41 3/8 |
| 4646 | 54 X 54 | 53 1/2 X 53 1/2 | 20 7/8 X 47 3/8 | 15 1/16 X 47 3/8 |
| 4650 | 54 X 60 | 53 1/2 X 59 1/2 | 20 7/8 X 53 3/8 | 15 1/16 X 53 3/8 |

# VINYL SINGLE CASEMENT W/ DEADLITE
## MODEL 9310 (Cont.)



| CALLOUT | ROUGH OPENING | NET FRAME | | | DAYLIGHT OPENING (each side) | | | CLEAR OPENING | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5020 | 60 X 24 | 59 1/2 | X | 23 1/2 | 23 7/8 | X | 17 3/8 | 18 1/16 | X | 17 3/8 |
| 5026 | 60 X 30 | 59 1/2 | X | 29 1/2 | 23 7/8 | X | 23 3/8 | 18 1/16 | X | 23 3/8 |
| 5030 | 60 X 36 | 59 1/2 | X | 35 1/2 | 23 7/8 | X | 29 3/8 | 18 1/16 | X | 29 3/8 |
| 5036 | 60 X 42 | 59 1/2 | X | 41 1/2 | 23 7/8 | X | 35 3/8 | 18 1/16 | X | 35 3/8 |
| **5040 | 60 X 48 | 59 1/2 | X | 47 1/2 | 23 7/8 | X | 41 3/8 | 18 1/16 X | | 41 3/8 |
| **5046 | 60 X 54 | 59 1/2 | X | 53 1/2 | 23 7/8 | X | 47 3/8 | 18 1/16 X | | 47 3/8 |
| **5050 | 60 X 60 | 59 1/2 | X | 59 1/2 | 23 7/8 | X | 53 3/8 | 18 1/16 X | | 53 3/8 |
| 5820 | 68 X 24 | 67 1/2 | X | 23 1/2 | 27 7/8 | X | 17 3/8 | 22 1/16 | X | 17 3/8 |
| 5826 | 68 X 30 | 67 1/2 | X | 29 1/2 | 27 7/8 | X | 23 3/8 | 22 1/16 | X | 23 3/8 |
| 5830 | 68 X 36 | 67 1/2 | X | 35 1/2 | 27 7/8 | X | 29 3/8 | 22 1/16 | X | 29 3/8 |
| **5836 | 68 X 42 | 67 1/2 | X | 41 1/2 | 27 7/8 | X | 35 3/8 | 22 1/16 X | | 35 3/8 |
| *5840 | 68 X 48 | 67 1/2 | X | 47 1/2 | 27 7/8 | X | 41 3/8 | 22 1/16 X | | 41 3/8 |
| *5846 | 68 X 54 | 67 1/2 | X | 53 1/2 | 27 7/8 | X | 47 3/8 | 22 1/16 X | | 47 3/8 |
| *5850 | 68 X 60 | 67 1/2 | X | 59 1/2 | 27 7/8 | X | 53 3/8 | 22 1/16 X | | 53 3/8 |
| 6020 | 72 X 24 | 71 1/2 | X | 23 1/2 | 29 7/8 | X | 17 3/8 | 24 1/16 | X | 17 3/8 |
| 6026 | 72 X 30 | 71 1/2 | X | 29 1/2 | 29 7/8 | X | 23 3/8 | 24 1/16 | X | 23 3/8 |
| **6030 | 72 X 36 | 71 1/2 | X | 35 1/2 | 29 7/8 | X | 29 3/8 | 24 1/16 X | | 29 3/8 |
| *6036 | 72 X 42 | 71 1/2 | X | 41 1/2 | 29 7/8 | X | 35 3/8 | 24 1/16 X | | 35 3/8 |
| *6040 | 72 X 48 | 71 1/2 | X | 47 1/2 | 29 7/8 | X | 41 3/8 | 24 1/16 X | | 41 3/8 |

* Meets Egress
**Meets Egress with Egress Hardware
NOTE: All dimensions are given as width x height.
- Clear opening sizes calculated using standard hinges.
- When using egress hardware – Add 4-3/8" to Clear Opening width.

# MODEL 9310 STANDARD GRID PATTERN



3616  4016  4616  5016

3620  4020  4620  5020

3626  4026  4626  5026

3630  4030  4630  5030

3636  4036  4636  5036

3640  4040  4640  5040

3646  4046  4646  5046

3650  4050  4650  5050

# MODEL 9310 STANDARD GRID PATTERN (Cont.'d)



| | |
|---|---|
| 5816 | 6016 |
| 5820 | 6020 |
| 5826 | 6026 |
| 5830 | 6030 |
| 5836 | 6036 |
| 5840 | 6040 |
| 5846 | |
| 5850 | |

# VINYL DOUBLE OPERATING CASEMENT
## MODEL 9320



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING (each side) | CLEAR OPENING |
|---|---|---|---|---|
| 3020 | 36 X 24 | 35 1/2 X 23 1/2 | 11 7/8 X 17 3/8 | 6 1/16 X 17 3/8 |
| 3026 | 36 X 30 | 35 1/2 X 29 1/2 | 11 7/8 X 23 3/8 | 6 1/16 X 23 3/8 |
| 3030 | 36 X 36 | 35 1/2 X 35 1/2 | 11 7/8 X 29 3/8 | 6 1/16 X 29 3/8 |
| 3036 | 36 X 42 | 35 1/2 X 41 1/2 | 11 7/8 X 35 3/8 | 6 1/16 X 35 3/8 |
| 3040 | 36 X 48 | 35 1/2 X 47 1/2 | 11 7/8 X 41 3/8 | 6 1/16 X 41 3/8 |
| 3046 | 36 X 54 | 35 1/2 X 53 1/2 | 11 7/8 X 47 3/8 | 6 1/16 X 47 3/8 |
| 3050 | 36 X 60 | 35 1/2 X 59 1/2 | 11 7/8 X 53 3/8 | 6 1/16 X 53 3/8 |
| 3620 | 42 X 24 | 41 1/2 X 23 1/2 | 14 7/8 X 17 3/8 | 9 1/16 X 17 3/8 |
| 3626 | 42 X 30 | 41 1/2 X 29 1/2 | 14 7/8 X 23 3/8 | 9 1/16 X 23 3/8 |
| 3630 | 42 X 36 | 41 1/2 X 35 1/2 | 14 7/8 X 29 3/8 | 9 1/16 X 29 3/8 |
| 3636 | 42 X 42 | 41 1/2 X 41 1/2 | 14 7/8 X 35 3/8 | 9 1/16 X 35 3/8 |
| 3640 | 42 X 48 | 41 1/2 X 47 1/2 | 14 7/8 X 41 3/8 | 9 1/16 X 41 3/8 |
| 3646 | 42 X 54 | 41 1/2 X 53 1/2 | 14 7/8 X 47 3/8 | 9 1/16 X 47 3/8 |
| 3650 | 42 X 60 | 41 1/2 X 59 1/2 | 14 7/8 X 53 3/8 | 9 1/16 X 53 3/8 |
| 4020 | 48 X 24 | 47 1/2 X 23 1/2 | 17 7/8 X 17 3/8 | 12 1/16 X 17 3/8 |
| 4026 | 48 X 30 | 47 1/2 X 29 1/2 | 17 7/8 X 23 3/8 | 12 1/16 X 23 3/8 |
| 4030 | 48 X 36 | 47 1/2 X 35 1/2 | 17 7/8 X 29 3/8 | 12 1/16 X 29 3/8 |
| 4036 | 48 X 42 | 47 1/2 X 41 1/2 | 17 7/8 X 35 3/8 | 12 1/16 X 35 3/8 |
| 4040 | 48 X 48 | 47 1/2 X 47 1/2 | 17 7/8 X 41 3/8 | 12 1/16 X 41 3/8 |
| 4046 | 48 X 54 | 47 1/2 X 53 1/2 | 17 7/8 X 47 3/8 | 12 1/16 X 47 3/8 |
| 4050 | 48 X 60 | 47 1/2 X 59 1/2 | 17 7/8 X 53 3/8 | 12 1/16 X 53 3/8 |
| 4620 | 54 X 24 | 53 1/2 X 23 1/2 | 20 7/8 X 17 3/8 | 15 1/16 X 17 3/8 |
| 4626 | 54 X 30 | 53 1/2 X 29 1/2 | 20 7/8 X 23 3/8 | 15 1/16 X 23 3/8 |
| 4630 | 54 X 36 | 53 1/2 X 35 1/2 | 20 7/8 X 29 3/8 | 15 1/16 X 29 3/8 |
| 4636 | 54 X 42 | 53 1/2 X 41 1/2 | 20 7/8 X 35 3/8 | 15 1/16 X 35 3/8 |
| 4640 | 54 X 48 | 53 1/2 X 47 1/2 | 20 7/8 X 41 3/8 | 15 1/16 X 41 3/8 |
| 4646 | 54 X 54 | 53 1/2 X 53 1/2 | 20 7/8 X 47 3/8 | 15 1/16 X 47 3/8 |
| 4650 | 54 X 60 | 53 1/2 X 59 1/2 | 20 7/8 X 53 3/8 | 15 1/16 X 53 3/8 |

# VINYL DOUBLE OPERATING CASEMENT

## MODEL 9320 (Cont.)



| CALLOUT | ROUGH OPENING | NET FRAME | DAYLIGHT OPENING (each side) | CLEAR OPENING |
|---|---|---|---|---|
| 5020 | 60 X 24 | 59 1/2 X 23 1/2 | 23 7/8 X 17 3/8 | 18 1/16 X 17 3/8 |
| 5026 | 60 X 30 | 59 1/2 X 29 1/2 | 23 7/8 X 23 3/8 | 18 1/16 X 23 3/8 |
| 5030 | 60 X 36 | 59 1/2 X 35 1/2 | 23 7/8 X 29 3/8 | 18 1/16 X 29 3/8 |
| 5036 | 60 X 42 | 59 1/2 X 41 1/2 | 23 7/8 X 35 3/8 | 18 1/16 X 35 3/8 |
| **5040 | 60 X 48 | 59 1/2 X 47 1/2 | 23 7/8 X 41 3/8 | 18 1/16 X 41 3/8 |
| **5046 | 60 X 54 | 59 1/2 X 53 1/2 | 23 7/8 X 47 3/8 | 18 1/16 X 47 3/8 |
| **5050 | 60 X 60 | 59 1/2 X 59 1/2 | 23 7/8 X 53 3/8 | 18 1/16 X 53 3/8 |
| 5820 | 68 X 24 | 67 1/2 X 23 1/2 | 27 7/8 X 17 3/8 | 22 1/16 X 17 3/8 |
| 5826 | 68 X 30 | 67 1/2 X 29 1/2 | 27 7/8 X 23 3/8 | 22 1/16 X 23 3/8 |
| 5830 | 68 X 36 | 67 1/2 X 35 1/2 | 27 7/8 X 29 3/8 | 22 1/16 X 29 3/8 |
| **5836 | 68 X 42 | 67 1/2 X 41 1/2 | 27 7/8 X 35 3/8 | 22 1/16 X 35 3/8 |
| *5840 | 68 X 48 | 67 1/2 X 47 1/2 | 27 7/8 X 41 3/8 | 22 1/16 X 41 3/8 |
| *5846 | 68 X 54 | 67 1/2 X 53 1/2 | 27 7/8 X 47 3/8 | 22 1/16 X 47 3/8 |
| *5850 | 68 X 60 | 67 1/2 X 59 1/2 | 27 7/8 X 53 3/8 | 22 1/16 X 53 3/8 |
| 6020 | 72 X 24 | 71 1/2 X 23 1/2 | 29 7/8 X 17 3/8 | 24 1/16 X 17 3/8 |
| 6026 | 72 X 30 | 71 1/2 X 29 1/2 | 29 7/8 X 23 3/8 | 24 1/16 X 23 3/8 |
| **6030 | 72 X 36 | 71 1/2 X 35 1/2 | 29 7/8 X 29 3/8 | 24 1/16 X 29 3/8 |
| *6036 | 72 X 42 | 71 1/2 X 41 1/2 | 29 7/8 X 35 3/8 | 24 1/16 X 35 3/8 |
| *6040 | 72 X 48 | 71 1/2 X 47 1/2 | 29 7/8 X 41 3/8 | 24 1/16 X 41 3/8 |

\* Meets Egress
\*\*Meets Egress with Egress Hardware
NOTE: All dimensions are given as width x height.
- Clear opening sizes calculated using standard hinges.
- When using egress hardware – Add 4-3/8" to Clear Opening width.

# VINYL DOUBLE OPERATING CASEMENT
# STANDARD GRID PATTERN

**MODEL 9320**                    Approximate Scale: 1/4" = 1'



| | | | |
|---|---|---|---|
| 3616 | 4016 | 4616 | 5016 |
| 3620 | 4020 | 4620 | 5020 |
| 3626 | 4026 | 4626 | 5026 |
| 3630 | 4030 | 4630 | 5030 |
| 3636 | 4036 | 4636 | 5036 |
| 3640 | 4040 | 4640 | 5040 |
| 3646 | 4046 | 4646 | 5046 |
| 3650 | 4050 | 4650 | 5050 |

# VINYL DOUBLE OPERATING CASEMENT
# STANDARD GRID PATTERN

## MODEL 9320

Approximate Scale: 1/4" = 1'



5816

6016

5820

6020

5826

6026

5830

6030

5836

6036

5840

6040

5846

5850

# VINYL TRIPLE CASEMENT
# XOX OPERATION
### MODEL 9330



| CALLOUT | ROUGH OPENING | NET FRAME | | | Nom. Vent | DAYLIGHT OPENING (ea. Unit) | | | CLEAR OPENING | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6020 | 72 X 24 | 71 1/2 | X | 23 1/2 | 24 | 17 7/8 | X | 17 3/8 | 12 1/16 | X | 17 | 3/8 |
| 6026 | 72 X 30 | 71 1/2 | X | 29 1/2 | 24 | 17 7/8 | X | 23 3/8 | 12 1/16 | X | 23 | 3/8 |
| 6030 | 72 X 36 | 71 1/2 | X | 35 1/2 | 24 | 17 7/8 | X | 29 3/8 | 12 1/16 | X | 29 | 3/8 |
| 6036 | 72 X 42 | 71 1/2 | X | 41 1/2 | 24 | 17 7/8 | X | 35 3/8 | 12 1/16 | X | 35 | 3/8 |
| 6040 | 72 X 48 | 71 1/2 | X | 47 1/2 | 24 | 17 7/8 | X | 41 3/8 | 12 1/16 | X | 41 | 3/8 |
| 6046 | 72 X 54 | 71 1/2 | X | 53 1/2 | 24 | 17 7/8 | X | 47 3/8 | 12 1/16 | X | 47 | 3/8 |
| 6050 | 72 X 60 | 71 1/2 | X | 59 1/2 | 24 | 17 7/8 | X | 53 3/8 | 12 1/16 | X | 53 | 3/8 |
| 7020 | 84 X 24 | 83 1/2 | X | 23 1/2 | 28 | 21 7/8 | X | 17 3/8 | 16 1/16 | X | 17 | 3/8 |
| 7026 | 84 X 30 | 83 1/2 | X | 29 1/2 | 28 | 21 7/8 | X | 23 3/8 | 16 1/16 | X | 23 | 3/8 |
| 7030 | 84 X 36 | 83 1/2 | X | 35 1/2 | 28 | 21 7/8 | X | 29 3/8 | 16 1/16 | X | 29 | 3/8 |
| 7036 | 84 X 42 | 83 1/2 | X | 41 1/2 | 28 | 21 7/8 | X | 35 3/8 | 16 1/16 | X | 35 | 3/8 |
| **7040 | 84 X 48 | 83 1/2 | X | 47 1/2 | 28 | 21 7/8 | X | 41 3/8 | 16 1/16 | X | 41 | 3/8 |
| **7046 | 84 X 54 | 83 1/2 | X | 53 1/2 | 28 | 21 7/8 | X | 47 3/8 | 16 1/16 | X | 47 | 3/8 |
| **7050 | 84 X 60 | 83 1/2 | X | 59 1/2 | 28 | 21 7/8 | X | 53 3/8 | 16 1/16 | X | 53 | 3/8 |
| 8020 | 96 X 24 | 95 1/2 | X | 23 1/2 | 32 | 25 7/8 | X | 17 3/8 | 20 1/16 | X | 17 | 3/8 |
| 8026 | 96 X 30 | 95 1/2 | X | 29 1/2 | 32 | 25 7/8 | X | 23 3/8 | 20 1/16 | X | 23 | 3/8 |
| 8030 | 96 X 36 | 95 1/2 | X | 35 1/2 | 32 | 25 7/8 | X | 29 3/8 | 20 1/16 | X | 29 | 3/8 |
| **8036 | 96 X 42 | 95 1/2 | X | 41 1/2 | 32 | 25 7/8 | X | 35 3/8 | 20 1/16 | X | 35 | 3/8 |
| *8040 | 96 X 48 | 95 1/2 | X | 47 1/2 | 32 | 25 7/8 | X | 41 3/8 | 20 1/16 | X | 41 | 3/8 |
| *8046 | 96 X 54 | 95 1/2 | X | 53 1/2 | 32 | 25 7/8 | X | 47 3/8 | 20 1/16 | X | 47 | 3/8 |
| *8050 | 96 X 60 | 95 1/2 | X | 59 1/2 | 32 | 25 7/8 | X | 53 3/8 | 20 1/16 | X | 53 | 3/8 |
| 9020 | 108 X 24 | 107 1/2 | X | 23 1/2 | 36 | 29 7/8 | X | 17 3/8 | 24 1/16 | X | 17 | 3/8 |
| 9026 | 108 X 30 | 107 1/2 | X | 29 1/2 | 36 | 29 7/8 | X | 23 3/8 | 24 1/16 | X | 23 | 3/8 |
| **9030 | 108 X 36 | 107 1/2 | X | 35 1/2 | 36 | 29 7/8 | X | 29 3/8 | 24 1/16 | X | 29 | 3/8 |
| *9036 | 108 X 42 | 107 1/2 | X | 41 1/2 | 36 | 29 7/8 | X | 35 3/8 | 24 1/16 | X | 35 | 3/8 |
| *9040 | 108 X 48 | 107 1/2 | X | 47 1/2 | 36 | 29 7/8 | X | 41 3/8 | 24 1/16 | X | 41 | 3/8 |
| *9046 | 108 X 54 | 107 1/2 | X | 53 1/2 | 34 | *27 7/8* | X | 47 3/8 | *24 1/16* | X | 47 | 3/8 |
| *9050 | 108 X 60 | 107 1/2 | X | 59 1/2 | 34 | *27 7/8* | X | 53 3/8 | *24 1/16* | X | 53 | 3/8 |

**\* Meets Egress**
**\*\*Meets Egress with Egress Hardware**
*These underlined dimensions are for vent portions of the window.*

**NOTE: All dimensions are given as width x height.**
- Clear opening sizes calculated using standard hinges.
- When using egress hardware – Add 4-3/8" to Clear Opening width.

# VINYL TRIPLE CASEMENT - XOX OPERATION
## model 9330 - STANDARD GRID PATTERNS



6016     7016     8016

6020     7020     8020

6026     7026     8026

6030     7030     8030

6036     7036     8036

6040     7040     8040

6046     7046     8046

6050     7050     8050

# VINYL TRIPLE CASEMENT - XOX OPERATION
## model 9330 - STANDARD GRID PATTERNS (Cont.'d)



9016

9020

9026

9030

9036

9040

9046

9050

# WINDOW SECTIONS
## MODELS 9300 - 9330
## Operable Section

**SCALE: 3/4" = 1"**





J-14
# WINDOW SECTIONS
## MODELS 9300 - 9330
**Fixed Section**

**SCALE: 3/4" = 1"**





# WINDOW SECTIONS
## MODELS 9300 - 9330
## T-Mullion Section  (@ 90 deg.)

## SCALE: 3/4" = 1"





5-3/4"

3 1/4"

# PATIO DOOR

## MODELS 9700 & 9730





## Features & Specifications

- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation. (1-3/8" setback)*
- ♦ *High performance dual weather-stripping minimizing air infiltration reducing energy costs.*
- ♦ *Metal reinforced interlock providing superior strength and rigidity.*
- ♦ *Flared interlocking profiles result in consistent and reliable operation and a tight seal.*
- ♦ *Heavy duty lock and interior handle are standard on all units. They also provide easy opening and closing with maximum security and air-tight seal.*
- ♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ♦ *Two fully adjustable metal rollers provide smooth operation and reliable performance year after year.*
- ♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns available.*
- ♦ *Available with fresh air vent.*
- ♦ *Rolling screens are standard on all units.*
- ♦ *Available with keyed lock.*

## DETAILED SPECIFICATIONS:

| Frame Width | 4.3125" |
|---|---|
| IG Glass Thickness OA | 1" |
| Air Space | 3/4" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .08" |
| Minimum Unit Size (RO) | 60 " x 80" |
| Maximum Unit Size(RO) | 142-5/8" X 82" |
| Egress (Minimum Size) | N/A |
| Handing | XO, OX OX/O, O/XO, O/OX, XO/O |

| STRUCTURAL PERFORMANCE GRADE |
|---|
| SGD-R20 (142 X 82 OXO) |

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / ARGON / CLEAR | 0.48 | 2.08 |
| CLEAR / AIR / LOW E .04 | 0.36 | 2.78 |
| CLEAR / ARGON / LOW E .04 | 0.32 | 3.13 |

NOTE: All U-Values per NFRC 100-97 Certified Products Procedures. Meets or exceeds certification requirements per AAMA/NWWDA 101/I.S.2-97

# VINYL PATIO DOOR
## MODEL 9700 (XO, OX)




| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING | | CLEAR OPENING |
|---|---|---|---|---|
| | | VENT | FIXED | |
| 5068 | 60 x 80 | 26 1/4  x  72 7/8 | 26 1/4  x  72 7/8 | 25 1/2  x  76 7/8 |
| 50610 | 60 x 82 | 26 1/4  x  74 7/8 | 26 1/4  x  74 7/8 | 25 1/2  x  78 7/8 |
| 6068 | 72 x 80 | 32 1/4  x  72 7/8 | 32 1/4  x  72 7/8 | 31 1/2  x  76 7/8 |
| 60610 | 72 x 82 | 32 1/4  x  74 7/8 | 32 1/4  x  74 7/8 | 31 1/2  x  78 7/8 |
| 8068 | 96 x 80 | 44 1/4  x  72 7/8 | 44 1/4  x  72 7/8 | 43 1/2  x  76 7/8 |
| 80610 | 96 x 82 | 44 1/4  x  74 7/8 | 44 1/4  x  74 7/8 | 43 1/2  x  78 7/8 |

# GLASS SIZES FOR MODEL 9700

| CALL OUT | ROUGH OPENING | GLASS SIZE | GLASS DIMENSION | SCREEN SIZE |
|---|---|---|---|---|
| 5068 | 60 x 80 | 1/8" | 27 1/4" x 73 7/8" | 30" x 78 1/8" |
| 50610 | 60 x 82 | 1/8" | 27 1/4" x 75 7/8" | 30" x 80 1/8" |
| 6068 | 72 x 80 | 1/8" | 33 1/4" x 73 7/8" | 36" x 78 1/8" |
| 60610 | 72 x 82 | 1/8" | 33 1/4" x 75 7/8" | 36" x 80 1/8" |
| 8068 | 96 x 80 | 5/32" | 45 1/4" x 73 7/8" | 48" x 78 1/8" |
| 80610 | 96 x 82 | 5/32" | 45 1/4" x 75 7/8" | 48" x 80 1/8" |

**NOTE:  All dimensions are given as width x height.**
♦ Transom Window system available - Model 9700P and 9730P
**HANDING:** (Outside looking in)
XO - Slides left to right.
OX - Slides right to left.

# VINYL PATIO DOOR
# STANDARD GRID PATTERN
## MODEL 9700

Approximate Scale: 1/4" = 1'



5068



50610



6068



60610



8068



80610

# VINYL PATIO DOOR
## MODEL 9730 (XOO, OOX, O/XO, OX/O)

 

 

| CALL OUT | ROUGH OPENING | DAYLIGHT OPENING VENT | FIXED | CLEAR OPENING |
|---|---|---|---|---|
| 7668 | 88 1/2 x 80 | 26 1/4 x 72 7/8 | 26 1/4 x 72 7/8 | 25 1/2 x 76 7/8 |
| 76610 | 88 1/2 x 82 | 26 1/4 x 74 7/8 | 26 1/4 x 74 7/8 | 25 1/2 x 78 7/8 |
| 9068 | 106 1/2 x 80 | 32 1/4 x 72 7/8 | 32 1/4 x 72 7/8 | 31 1/2 x 76 7/8 |
| 90610 | 106 1/2 x 82 | 32 1/4 x 74 7/8 | 32 1/4 x 74 7/8 | 31 1/2 x 78 7/8 |
| 12068 | 142 1/2 x 80 | 44 1/4 x 72 7/8 | 44 1/4 x 72 7/8 | 43 1/2 x 76 7/8 |
| 120610 | 142 1/2 x 82 | 44 1/4 x 74 7/8 | 44 1/4 x 74 7/8 | 43 1/2 x 78 7/8 |

## GLASS SIZES FOR MODEL 9730

| CALL OUT | ROUGH OPENING | GLASS THICKNESS | GLASS DIMENSION | SCREEN SIZE |
|---|---|---|---|---|
| 7668 | 88 1/2 x 80 | 1/8" | 27 1/4" x 73 7/8" | 30" x 78 1/8" |
| 76610 | 88 1/2 x 82 | 1/8" | 27 1/4" x 75 7/8" | 30" x 80 1/8" |
| 9068 | 106 1/2 x 80 | 1/8" | 33 1/4" x 73 7/8" | 36" x 78 1/8" |
| 90610 | 106 1/2 x 82 | 1/8" | 33 1/4" x 75 7/8" | 36" x 80 1/8" |
| 12068 | 142 1/2 x 80 | 5/32" | 45 1/4" x 73 7/8" | 48" x 78 1/8" |
| 120610 | 142 1/2 x 82 | 5/32" | 45 1/4" x 75 7/8" | 48" x 80 1/8" |

**NOTE: All dimensions are given as width x height.**
♦ Transom Window system available - Models 9700P and 9730P

**HANDING:** (Outside looking in)
XOO - Slides left to right.
OOX - Slides right to left.
OX/O - Center slides to left.
O/XO - Center slides to right.

# VINYL PATIO DOOR STANDARD GRID PATTERN
## MODEL 9730 (OXO, XOO, OOX)     Approximate Scale: 1/4" = 1'



7668 / 76610



9068 / 90610



12068 / 120610

# PATIO DOOR TRANSOM SYSTEM
## MODELS 9700P, 9730P

Series 9700, 9730 patio doors are available with an integral transom.  This is achieved with the use of a special frame component placed between the sliding door panels and the fixed glass above.  The "P" designation behind the model number indicates the presence of a "Picture Unit within the door system.



---

# PATIO DOOR TRANSOM SECTION
## MODELS 9700P, 9730P

### SCALE: 3/8" = 1"



# PATIO DOOR SECTIONS
## MODELS 9700, 9730

### SCALE: 1/2" = 1"







CASCADE WINDOWS

Model 9700/C9700 - Patio Door
Flush Fin





Vertical Section



Horizontal Section



# 30 Degree Bay Windows

**6300**
**Csmt Flankers**



**6302**
**S.H. Flankers**



**6303**
**Pic Flankers**



| Bay R.O. Width | Flanker NFD-W | Center NFD-W | Projection |
|---|---|---|---|
| | | | |
| 5' 0" (60") | 16" | 30-11/16" | 11-11/16" |
| 5' 0" (60") | 20" | 23-3/4" | 13-11/16" |
| 5' 0" (60") | 24" | 16-13/16" | 15-11/16" |
| | | | |
| 6' 0" (72") | 16" | 42-11/16" | 11-11/16" |
| 6' 0" (72") | 20" | 35-3/4" | 13-11/16" |
| 6' 0" (72") | 24" | 28-13/16" | 15-11/16" |
| | | | |
| 7' 0" (84") | 16" | 54 11/16" | 11-11/16" |
| 7' 0" (84") | 20" | 47 3/4" | 13-11/16" |
| 7' 0" (84") | 24" | 40 13/16" | 15-11/16" |
| | | | |
| 8' 0" (96") | 16" | 66 11/16 | 11-11/16" |
| 8' 0" (96") | 20" | 59 3/4" | 13-11/16" |
| 8' 0" (96") | 24" | 52 13/16 | 15-11/16" |
| | | | |
| 9' 0" (108") | 16" | 78 11/16" | 11-11/16" |
| 9' 0" (108") | 20" | 71 3/4" | 13-11/16" |
| 9' 0" (108") | 24" | 64 13/16" | 15-11/16" |
| | | | |
| 10' 0" (120") | 16" | 90 11/16" | 11-11/16" |
| 10' 0" (120") | 20" | 83 3/4" | 13-11/16" |
| 10' 0" (120") | 24" | 76 13/16" | 15-11/16" |

**Height Calculations:  R.O. - 1/2" = Net Bay Height**
**(w/ head and seat boards)**
**R.O. - 2" = Net Frame Height**

- **3/4" Oak head and seat boards standard for units 8' wide and under.**
- **Bays over 8' wide - sanded one side plywood is used.**
- **Standard jamb widths: 4-9/16" and 6-9/16.**
- **Jambs over 6-9/16" available per quote.**
- **Factory mulled unit w/ no head and seat boards available.**
- **No Special Angle Bays**



# 45 Degree Bay Windows

| 6450 | 6452 | 6453 |
| Csmt Flankers | S.H. Flankers | Pic Flankers |

  

| Bay R.O. Width | Flanker NFD-W | Center NFD-W | Projection |
|---|---|---|---|
| | | | |
| 5' 0" (60") | 16" | 35-15/16" | 13-1/8" |
| 5' 0" (60") | 20" | 30-5/16" | 15-15/16" |
| 5' 0" (60") | 24" | 24-5/8" | 18-13/16" |
| | | | |
| 6' 0" (72") | 16" | 47-15/16" | 13-1/8" |
| 6' 0" (72") | 20" | 42-5/16" | 15-15/16" |
| 6' 0" (72") | 24" | 36-5/8" | 18-13/16" |
| | | | |
| 7' 0" (84") | 16" | 59-15/16" | 13-1/8" |
| 7' 0" (84") | 20" | 54-5/16" | 15-15/16" |
| 7' 0" (84") | 24" | 48-5/8" | 18-13/16" |
| | | | |
| 8' 0" (96") | 16" | 71-15/16" | 13-1/8" |
| 8' 0" (96") | 20" | 66-5/16" | 15-15/16" |
| 8' 0" (96") | 24" | 60-5/8" | 18-13/16" |
| | | | |
| 9' 0" (108") | 16" | 83-15/16" | 13-1/8" |
| 9' 0" (108") | 20" | 78-5/16" | 15-15/16" |
| 9' 0" (108") | 24" | 72-5/8" | 18-13/16" |
| | | | |
| 10' 0" (120") | 16" | 95-15/16" | 13-1/8" |
| 10' 0" (120") | 20" | 90-5/16" | 15-15/16" |
| 10' 0" (120") | 24" | 84-5/8" | 18-13/16" |

**Height Calculations: R.O. - 1/2" = Net Bay Height**
**(w/ head and seat boards)**
**R.O. - 2" = Net Frame Height**

- **3/4" Oak head and seat boards standard for units 8' wide and under.**
- **Bays over 8' wide - sanded one side plywood is used.**
- **Standard jamb widths: 4-9/16" and 6-9/16.**
- **Jambs over 6-9/16" available per quote.**
- **Factory mulled unit w/ no head and seat boards available.**
- **No Special Angle Bays**



## 4 Lite Bows

**6040**
Csmt Flankers



**6042**
S.H. Flankers



**6043**
Pic Flankers



| Bow Callout Width | Frame NFD-W | Projection |
|---|---|---|
| 6' 0" | 17-3/4" | 7-13/16" |
| 7' 0" | 20-13/16" | 8-7/8" |
| 8' 0" | 23-13/16" | 9-15/16" |
| 9' 0" | 26-7/8" | 11" |
| 10" 0" | 29-15/16" | 12" |

## 5-Lite Bows

**6050**
Csmt Flankers



**6052**
S.H. Flankers



**6053**
Pic Flankers




| Bow Callout Width | Frame NFD-W | Projection |
|---|---|---|
| 6' 0" | 14-3/16" | 9-1/16" |
| 7' 0" | 16-11/16" | 10-3/8" |
| 8' 0" | 19-3/16" | 11-5/8" |
| 9' 0" | 21-5/8" | 12-15/16" |
| 10" 0" | 24-1/8" | 14-3/16" |

**Height Calculations: R.O. - 1/2" = Net Bay Height**
**(w/ head and seat boards)**
**R.O. - 2" = Net Frame Height**

- 3/4" Oak head and seat boards standard for units 8' wide and under.
- Bows over 8' wide - sanded one side plywood is used.
- Standard jamb widths: 4-9/16" and 6-9/16.
- Jambs over 6-9/16" available per quote.
- Factory mulled unit w/ no head and seat boards available.
- No Special Angle Bows (10 degree angle is standard)

# SPECIFICATIONS

The information included in this section is intended for use by Architects in the specification of particular vinyl window criteria desired for a given project. The data given is representative of validated test results for various product models as manufactured by Cascade Windows, Copies of the actual test reports are available from Cascade Windows upon request. *Please note the header of each page of this section as it pertains to the particular model or series referred to in the accompanying information.*

The specifications are presented in a generic format that should be compatible with typical specification layouts. Other than on the header of each page, Cascade Windows is not mentioned in the body of any specification except for being listed as an approved manufacturer.

Other information is presented throughout this Architectural Manual, i.e. specific U-values, detailed sections, etc.

If any additional information is desired, including specific test reports or other test data on unit sizes varying from those shown, please feel free to contact your Cascade Windows representative.



PART 1        GENERAL

1.1    DESCRIPTION  OF  WORK

A.    Factory assembled UV stabilized polyvinyl-chloride (PVC) extrusion windows as
manufactured by Cascade Windows.  Each unit shall be complete with all
hardware, glazing and weather-stripping as set forth in this specification.

1.2    REFERENCE  STANDARDS

A.    AAMA/NWWDA   101/I.S. 2-97        "Voluntary Specifications for PVC  (Vinyl) Prime
Windows and Glass Doors."

B.    UBC 1994.  Section 310.4          "Emergency Escape and Egress Requirements"

C.    ASTM  Class A                     "Insulated  Glass  Units"

1.3    SUBMITTALS

A.    Shop Drawings:  Submit shop drawings which include typical elevations and scaled
sections of each type of window unit required.

B.    Manufacturer's Data:  Submit manufacturer's specifications, performance data,
standard details, and recommendations for each type of window unit required.
Include information on fabrication methods, hardware, weather-stripping, finishing
and glazing.

C.    Maintenance:  Include manufacturer's recommended cleaning, maintenance and
adjustment procedures.

1.4    QUALITY  ASSURANCE

A.    All windows shall be marked with AAMA and NFRC certification labels in accordance
with the requirements of the applicable referenced standard.

B.    Insulated glass units to conform to ASTM Class A standards.

1.5    DELIVERY,  STORAGE  AND  HANDLING

A.    Protect components from damage and soiling at all times during delivery and storage.

B.    Store components on a level surface, clear of ground.

GENERAL SPECIFICATIONS FOR: SERIES 9000 VINYL WINDOWS
AS MANUFACTURED BY CASCADE WINDOWS.
(Cont.'d)

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

1.6     PERFORMANCE REQUIREMENTS

A.    Vinyl horizontal sliding windows to conform to AAMA/NWWDA 101/I.S. 2-97, HS-R20
      (120" x 72" XOX),  and HS-C30 (120" x 60" XOX, reinf.), and have minimum performance
      requirements as follows:

      1.     Air infiltration: not to exceed .05 cfm/ft. (R20) and .06 cfm/ft. (C30) @ 1.57
             psf.  ASTM E-283.

      2.     Water infiltration: No entry with WTP = 3.75 psf. (R20), and  4.5 psf. (C30)
             @ 5.00 gph/sq.ft.  ASTM E-547.

      3.     Uniform load: no breakage, failure or deformation using both positive and
             negative pressures of 30 psf (R20), 45 (C30).  Deflections not to exceed
             .190".  ASTM E-330

B.    Vinyl single hung windows to conform to AAMA/NWWDA  101/I.S. 2-97, H-LC30
      (48"x 96", reinf), and have minimum performance requirements as follows:

      1.     Air infiltration: not to exceed .08 cfm/ft. (48" x 96", reinf) @ 1.57 psf. ASTM E-283

      2.     Water infiltration: No entry with WTP = 4.5 psf.  (48"x 96")@ 5.00 gph/sq.ft.
              ASTM E-547

      3.     Uniform load: no breakage, failure or deformation using both positive and
             negative pressures of 52.5 psf.  Deflections not to exceed .06". ASTM E-330

C.    Vinyl picture windows to conform to AAMA/NWWDA 101/I.S. 2-97, F-C35 (96" x 60")
      and have  minimum performance requirements as follows:

      1.     Air infiltration: not to exceed .06 cfm/ft. @ 6.24 psf. ASTM E-283

      2.     Water infiltration: No entry with WTP = 5.25 psf. @ 5.00 gph/sq.ft.  ASTM E-547

      3.     Uniform load: no breakage, failure or deformation using both positive and
             negative pressures of 52.5 psf.  ASTM E-330

**GENERAL SPECIFICATIONS FOR: SERIES 9000 (WinPro) VINYL WINDOWS
AS MANUFACTURED BY CASCADE WINDOWS.
(Cont.'d)**

**DIVISION 8
VINYL WINDOWS
SECTION 8600**

D.  Vinyl Sliding Glass Doors to conform to AAMA/NWWDA 101/I.S.2-97, SGD-R30 (72" x 82" XO), SGD-R20 (142 x 82" OXO), SGD-R15 (96" x 96" XO), and have minimum performance requirements as follows:

1.  Air infiltration: not to exceed .10 cfm/ft. (R30), .10 cfm/ft. (R20), and .26 cfm/ft. (R15), at 1.56 psf. ASTM E-283.

2.  Water infiltration: No entry with WTP = 4.5psf (R30), 4.5 psf (R20) and (R15) at 5.00 gph/sq.ft ASTM E-547.

3.  Uniform load: No breakage or failure using both positive and negative pressures of 45 psf (R30), 30.0 psf (R20), and 22.5 psf (R15). ASTM E-330.

**GENERAL SPECIFICATIONS FOR: SERIES 9000 VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

PART 2       PRODUCTS

2.1    MANUFACTURERS

A.    Subject to compliance with thes e specifications, manufacturers offering window units that may be incorporated in the work include, but are not limited to the following:

1. Cascade Windows
2. OTHER
3. OTHER

2.2    MATERIALS

A.    All units shall be fabricated of rigid polyvinyl-chloride (PVC) multi-chambered extrusions. Secondary members, i.e. reinforcement, weather-stripping, etc. may be of other suitable and compatible materials as specified.

B.    Lineal frame and sash members to be multi-chambered vacuum calibrated PVC extrusions with a minimum exterior wall thickness of .065". Outer frame component shall possess an integral prepunched vinyl nailing flange. Interlocking frame member shall be reinforced with metal profile designed to provide additional rigidity and structural integrity.

C.    Weather-strip: Nylon pile with polypropylene backing and integral pliable fin.

D.    Glazing: Fabricator shall provide glazing as specified by Architect, incorporated into insulated glass units of 3/4" overall thickness. Warm-Edge technology air spacer shall be incorporated into glazing units for all standard applications. Glazing shall be sealed into frame and sash components with the use of dual sided closed-cell adhesive foam glazing tape, and held into place with an exterior vinyl glazing stop.

E.    Hardware: Metal sweep cam-latch locking mechanism and keeper.

1.    Horizontal sliding windows to possess dual celcon rollers on stainless steel rollers in nylon. housings. Visible screws to be finished to match integral PVC color.

2.    Single hung windows to possess one (1) pair of block and tackle type sash balances per operating sash. Balances must be of the appropriate weight rating and size for the size and weight of the glazed sash. Disengagement clips shall be present in the frame to allow for removal of the sash when activated.

F.    Finish: Solid (homogeneous) frame color. White or Almond as chosen by Architect.

**GENERAL SPECIFICATIONS FOR: SERIES 9000 VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

G.   Insect screens:  Metal screen frame assemblies, compliant to SMA 1201-2002 to be color matched with PVC, and removable.  Screen cloth to be 18 x 16 fiber mesh, held into screen frame with vinyl spline.  One screen per operable sash.


2.3   FABRICATION

A.   Fabricate all window units in a neat workmanlike manner in a facility having appropriate equipment and skilled personnel.  All frame and sash corner joinery shall be mitre-cut and fusion welded.


PART 3 EXECUTION

3.1   INSTALLATION

A.   Install windows in accordance with manufacturer's recommendations and instructions to achieve a weather tight and satisfactory operating unit.

B.   Field-applied trim shall be of compatible materials furnished by others, as selected by the Architect.

C.   Window to be factory sized to fit in each framed opening to allow 1/4" clearance on all sides.

D.   Operable panels to be closed and locked during installation.  Set units plumb, level, and true to line without warp or rack of frames or sash.  Provide proper support for window unit.

E.   Align window with adjacent work and anchor securely into place, keeping unit plumb, level and square.  Fill perimeter spaces with proper and approved insulation material to maintain continuity of building thermal envelope.

F.   Window and trim shall be installed by experienced workmen in exact accordance with the manufacturer's instructions.

G.   Cleaning:  remove visible labels and clean window assembly and glass using non-abrasive cleaning agents compatible with PVC.


END OF SECTION

**GENERAL SPECIFICATIONS FOR:**
**SERIES 9300 STANDARD VINYL CASEMENTS**
**AND SERIES 9400 STANDARD VINYL AWNINGS**
**AS MANUFACTURED BY CASCADE WINDOWS.**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

PART 1     GENERAL

1.1    DESCRIPTION  OF  WORK

A.    Factory assembled UV stabilized polyvinyl-chloride (PVC) extrusion windows as manufactured by Window Products, Inc.  Each unit shall be complete with all hardware, glazing and weather-stripping as set forth in this specification.

1.2    REFERENCE  STANDARDS

A.    AAMA/NWWDA   101/I.S. 2-97     "Voluntary Specifications for PVC  (Vinyl) Prime Windows and Glass Doors."

B.    UBC 1994.  Section 310.4     "Emergency Escape and Egress Requirements"

C.    ASTM  Class A     "Insulated Glass Units"

1.3    SUBMITTALS

A.    Shop Drawings:  Submit shop drawings which include typical elevations and scaled sections of each type of window unit required.

B.    Manufacturer's Data:  Submit manufacturer's specifications, performance data, standard details, and recommendations for each type of window unit required. Include information on fabrication methods, hardware, weather-stripping, finishing and glazing.

C.    Maintenance:  Include manufacturer's recommended cleaning, maintenance and adjustment procedures.

1.4    QUALITY  ASSURANCE

A.    All windows shall be marked with AAMA and NFRC certification labels in accordance with the requirements of the applicable referenced standard.

B.    Insulated glass units to conform to ASTM Class A standards.

1.5    DELIVERY, STORAGE  AND  HANDLING

A.    Protect components from damage and soiling at all times during delivery and storage.

B.    Store components on a level surface, clear of ground.

**GENERAL SPECIFICATIONS FOR:**
**SERIES 9300 STANDARD VINYL CASEMENTS**
**AND SERIES 9400 STANDARD VINYL AWNINGS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

1.6    PERFORMANCE REQUIREMENTS

  A.    Vinyl casement windows to conform to AAMA/NWWDA  101/I.S. 2-97, C-C45
        (36" x 60"), and C-C50 (30" x 72"),  and have minimum performance requirements as
        follows:

        1.      Air infiltration: not to exceed .01 cfm/ft. @ 1.56 psf. ASTM E-283

        2.      Water infiltration: No entry with WTP = 7.5 psf. @ 5.00 gph/sq.ft.  ASTM E-547
                and ASTM E-331.

        3.      Uniform load: no breakage, failure or deformation using both positive and
                negative pressures of 67.5 psf (36" x 60), and 75.0 psf (30" x 72").  Deflections not
                to exceed .04". ASTM E-330

  B.    Vinyl awning windows to conform to AAMA/NWWDA  101/I.S. 2-97, AP-LC50
        (48" x 36"),  and have minimum performance requirements as follows:

        1.      Air infiltration: not to exceed .01 cfm/ft. @ 1.56 psf. ASTM E-283

        2.      Water infiltration: No entry with WTP = 7.5 psf. @ 5.00 gph/sq.ft.  ASTM E-547
                and ASTM E-331.

        3.      Uniform load: no breakage, failure or deformation using both positive and
                negative pressures of 75.0 psf (30" x 72").  Deflections not to exceed .03".
                ASTM E-330


  PART 2        PRODUCTS


  2.1    MANUFACTURERS


  A.    Subject to compliance with these specifications, manufacturers offering window units
        that may be incorporated in the work include, but are not limited to the following:

        1. Window Products, Inc.
        2. OTHER
        3. OTHER

**GENERAL SPECIFICATIONS FOR:**
**SERIES 9300 STANDARD VINYL CASEMENTS**
**AND SERIES 9400 STANDARD VINYL AWNINGS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

2.2    MATERIALS

A.    All units shall be fabricated of rigid polyvinyl-chloride (PVC) multi-chambered extrusions. Secondary members, i.e. reinforcement, weather-stripping, etc. may be of other suitable and compatible materials as specified.

B.    Lineal frame and sash members to be multi-chambered vacuum calibrated PVC extrusions with a minimum exterior wall thickness of .071". Outer frame component shall possess an integral prepunched vinyl nailing flange.

C.    Weather-strip: Thermo-plastic rubber (TPE) encased cross-linked closed-cell foam filled bulb. Weather-strip is to be attached by insertion of an integral barb into grooves present in the vinyl profiles. Unit is to have at least three (3) full-perimeter applications of weather-strip.

D.    Glazing: Fabricator shall provide glazing as specified by Architect, incorporated into insulated glass units of 3/4" overall thickness. Warm-Edge technology air spacer shall be incorporated into glazing units for all standard applications. Glazing shall be sealed into frame and sash components with the use of dual sided closed-cell adhesive foam glazing tape, and held into place with an exterior vinyl glazing stop.

E.    Hardware:

    1.  Casement windows are to incorporate a corrosion resistant roto-style operator of appropriate size and application. Finish (including any visible screw heads) to match to match integral PVC color. Multi-point locking mechanism is to be of stainless steel or other corrosion resistant material.

    2.  Awning windows shall incorporate a roto-style corrosion resistant operator, center-mounted within bottom frame component. Locking mechanisms shall be present on both sides of unit, providing additional security.

    3.  Hinges to be concealed, heavy-duty, multi-arm scissor type, of stainless steel and/or possessing a corrosion resistant coating.

F.    Finish: Solid (homogeneous) frame color. White or Almond as chosen by Architect.

G.    Insect screens: Metal screen frame assemblies compliant to SMA 1201-2002 to be color matched with PVC, and removable. Screen cloth to be 18 x 16 fiber mesh held into screen frame with vinyl spline. One screen per operable sash.

**GENERAL SPECIFICATIONS FOR:**
**SERIES 9300 STANDARD VINYL CASEMENTS**
**AND SERIES 9400 STANDARD VINYL AWNINGS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

2.3    FABRICATION

A.    Fabricate all window units in a neat workmanlike manner in a facility having appropriate equipment and skilled personnel.  All frame and sash corner joinery shall be mitre-cut and fusion welded.

PART 3        EXECUTION

3.1    INSTALLATION

A.    Install windows in accordance with manufacturer's recommendations and instructions to achieve a weather tight and satisfactory operating unit.

B.    Field-applied trim shall be of compatible materials furnished by others, as selected by the Architect.

C.    Window to be factory sized to fit in each framed opening to allow 1/4" clearance on all sides.

D.    Operable panels to be closed and locked during installation.  Set units plumb,  level, and true to line without warp or rack of frames or sash.  Provide proper support for window unit.

E.    Align window with adjacent work and anchor securely into place, keeping unit plumb, level and square.  Fill perimeter spaces with proper and approved insulation material          to maintain continuity of building thermal envelope.

F.    Window and trim shall be installed by experienced workmen in exact accordance with the manufacturer's instructions.

G.    Cleaning:  remove visible labels and clean window assembly and glass using non-abrasive cleaning agents compatible with PVC.

END OF SECTION

# HORIZONTAL SLIDER

## MODEL C9100 CASCADE







### Features & Specifications

- ♦ *Designed especially for use in custom homes and higher end light commercial and commercial projects.*
- ♦ *Deep set fixed sash reminiscent of traditional wood window designs, providing equal glass sightlines.*
- ♦ *Self-activating "Auto-lock" for secure and convenient operation*
- ♦ *High-performance Low E glazing standard for optimum thermal performance*
- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ♦ *High performance weather-stripping minimizing air infiltration, reducing energy costs.*
- ♦ *Integral screen pockets assure a tight fit.*
- ♦ *Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.*
- ♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. Custom designed grid patterns are also available.*

### GENERAL SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 24" X 18" |
| Maximum Unit Size (RO) | 72" X 72" |
| Egress (Minimum Size) | 48" X 48" |
| Handing | XO, OX |

### STRUCTURAL PERFORMANCE GRADE
**HS-C35 (72 X 60), HS-LC25 (120 X 72)**

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / AIR / LOW E .04 | 0.37 | 2.70 |
| CLEAR / ARGON / LOW E .04 | 0.33 | 3.03 |



3 1/4

1 1/4    1 15/16

9/16

2 3/4    1 1/2

Vertical Section



2 7/8

Horizontal Section

1/4 scale

# SINGLE HUNG

## MODEL C9200 CASCADE





## Features & Specifications

- ◆ *Designed especially for use in custom homes and higher end light commercial and commercial projects.*
- ◆ *Deep set fixed sash reminiscent of traditional wood window designs, providing equal glass sightlines.*
- ◆ *Self-activating "Auto-lock" for secure and convenient operation*
- ◆ *High-performance Low E glazing standard for optimum thermal performance*
- ◆ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ◆ *Precision mitered and heat-fusion welded corners.*
- ◆ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ◆ *High performance weather-stripping minimizing air infiltration, reducing energy costs.*
- ◆ *Integral screen pockets assure a tight fit.*
- ◆ *Warm-Edge Technology incorporated into 3/4" overall glazing is standard for maximum energy efficiency.*
- ◆ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. 1" wide sculptured grids are available to add another touch of traditional style and enhanced appeal. Custom designed grid patterns are also available.*

### GENERAL SPECIFICATIONS:

| | |
|---|---|
| Frame Width | 3.25" |
| IG Glass Thickness OA | 3/4" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .065" |
| Minimum Unit Size (RO) | 18" X 24" |
| Maximum Unit Size (RO) | 48" X 96" |
| Egress (Minimum Size) | 36" X 60" |
| Handing | X |

**STRUCTURAL PERFORMANCE GRADE**
**H-LC35 (48 X 78), H-LC25 (54 X 90)**

### ENERGY DATA

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.50 | 2.00 |
| CLEAR / AIR / LOW E .04 | 0.37 | 2.70 |
| CLEAR / ARGON / LOW E .04 | 0.33 | 3.03 |



Window Products, Inc.
C9100 Cascade
Horizontal Slider

2 7/8

Vertical Section

2 3/4
9/16
1 1/4
3 1/4
1 15/16
1 1/2

Horizontal Section

1/4 scale

# PICTURE WINDOW

## MODEL 9501 CASCADE





## Features & Specifications

- ♦ *Designed especially for use in custom homes and higher end light commercial and commercial projects.*
- ♦ *Large profile with attractive lines and bevels resulting in a traditional wood window look.*
- ♦ *Rigid multi-chambered PVC extrusions providing structural integrity and high sound and thermal insulation qualities. Available in white or almond.*
- ♦ *Precision mitered and heat-fusion welded corners.*
- ♦ *Integral vinyl prepunched nailing flange for fast and efficient installation (1 1/4" set back).*
- ♦ *Warm-Edge Technology incorporated into 3/4" (standard) overall glazing is standard for maximum energy efficiency.*
- ♦ *High performance glazing options include Low "E" coatings, tints, Solar Cool reflective glass, and argon gas.*
- ♦ *Standard 5/8" wide internal grids available in white or almond. Decorative 3/8" wide Pencil grids and Slimline grids available in white or gold. 1" wide sculptured grids are available to add another touch of traditional style and enhanced appeal. Custom designed grid patterns are also available.*
- ♦ *Picture units can be mulled to additional windows.*

### STRUCTURAL PERFORMANCE GRADE
**F-LC35 (96 X 60) F-LC25 (96 X 72)**

### ENERGY DATA

### DETAILED SPECIFICATIONS:



| Frame Width | 3.25" |
|---|---|
| IG Glass Thickness OA | 3/4" or 1" |
| Air Space | 9/16" |
| Grid Size (standard) | 5/8" |
| Wall Thickness | .071" |
| Minimum Unit Size (RO) | 12" X 12" |
| Maximum Unit Size(RO) | 96" X 60 |
| Egress (Minimum Size) | N/A |
| Handing | N/A |

| ENERGY DATA | U-VALUE* | R-VALUE |
|---|---|---|
| CLEAR / AIR / CLEAR | 0.47 | 2.13 |
| CLEAR / AIR / LOW E .04 | 0.32 | 3.13 |
| CLEAR / ARGON / LOW E .04 | 0.29 | 3.45 |

Model 9501
Cascade Series
Picture Window



1/4 Scale (approx.)

**DIVISION 8
VINYL WINDOWS
SECTION 8600**

PART 1     GENERAL

1.1    DESCRIPTION  OF  WORK

A.    Factory assembled UV stabilized polyvinyl-chloride (PVC) extrusion windows as manufactured by Window Products, Inc.  Each unit shall be complete with all hardware, glazing and weather-stripping as set forth in this specification.

1.2    REFERENCE  STANDARDS

A.    AAMA/NWWDA   101/I.S. 2-97     "Voluntary Specifications for PVC  (Vinyl) Prime Windows and Glass Doors."

B.    UBC 1994.  Section 310.4     "Emergency Escape and Egress Requirements"

C.    ASTM  Class A     "Insulated Glass Units"

1.3    SUBMITTALS

A.    Shop Drawings:  Submit shop drawings which include typical elevations and scaled sections of each type of window unit required.

B.    Manufacturer's Data:  Submit manufacturer's specifications, performance data, standard details, and recommendations for each type of window unit required. Include information on fabrication methods, hardware, weather-stripping, finishing and glazing.

C.    Maintenance:  Include manufacturer's recommended cleaning, maintenance and adjustment procedures.

1.4    QUALITY  ASSURANCE

A.    All windows shall be marked with AAMA and NFRC certification labels in accordance with the requirements of the applicable referenced standard.

B.    Insulated glass units to conform to ASTM Class A standards.

1.5    DELIVERY, STORAGE  AND  HANDLING

A.    Protect components from damage and soiling at all times during delivery and storage.

B.    Store components on a level surface, clear of ground.

**GENERAL SPECIFICATIONS FOR: SERIES C9000 (CASCADE) VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

1.6    PERFORMANCE REQUIREMENTS

A.    Vinyl horizontal sliding windows to conform to AAMA/NWWDA 101/I.S. 2-97, HS-C35
(72" x 60" XO), HS-C30 (120" x 60" XOX, reinf.), and HS-LC25 (120" x 72" XOX), and have
minimum performance requirements as follows:

1.    Air infiltration: not to exceed .05 cfm/ft. (C35), .12 cfm/ft. (C30), and  .10 cfm/ft.
(LC25) at 1.57psf.  ASTM E-283.

2.    Water infiltration: No entry with WTP = 5.25 psf. (C35), 4.5 psf. (C30), and 3.75 psf.
(LC25) @ 5.00 gph/sq.ft.  ASTM E-547.

3.    Uniform load: no breakage, failure or deformation using both positive and
negative pressures of 52.5, (C35), 45.0 psf (C30), 37.5 (LC25).  Deflections not to
exceed .18 (C35), .12 (C30), or .26" (LC25).  ASTM E-330

B.    Vinyl single hung windows to conform to AAMA/NWWDA  101/I.S. 2-97, H-LC25
(54" x 90") and H-LC35 (48"x 78", reinf), and have minimum performance requirements as
follows:

1.    Air infiltration: not to exceed .10 cfm/ft. (54" x 90"), and .18 cfm/ft. (48" x 78", reinf)
@ 1.56 psf. ASTM E-283

2.    Water infiltration: No entry with WTP = 3.75 psf.  (54"x 90"), and 5.25 psf.
(48" x 78", reinf.) @ 5.00 gph/sq.ft.  ASTM E-547

3.    Uniform load: no breakage, failure or deformation using both positive and
negative pressures of 37.5 psf (54" x 90"), and 52.5 psf. (48" x 78"). ASTM E-330

C.    Vinyl picture windows to conform to AAMA/NWWDA 101/I.S. 2-97, F-LC30 (96" x 60"),
and F-LC25 (96" x 72") and have  minimum performance requirements as follows:

1.    Air infiltration: not to exceed .01 cfm/ft. @ 1.57 psf. ASTM E-283

2.    Water infiltration: No entry with WTP = 9.00 psf. @ 5.00 gph/sq.ft.  ASTM E-547

3.    Uniform load: no breakage, failure or deformation using both positive and
negative pressures of 37.5 psf. (LC25), and 45 psf. (LC30)  ASTM E-330

**GENERAL SPECIFICATIONS FOR: SERIES C9000 (CASCADE) VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS.**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

D.   Vinyl Sliding Glass Doors to conform to AAMA/NWWDA 101/I.S.2-97, SGD-R25 (72" x 82" XO), SGD-R20 (142 x 82" OXO), SGD-R15 (96" x 96" XO), and have minimum performance requirements as follows:

1.   Air infiltration: not to exceed .21 cfm/ft. (R25), .23 cfm/ft. (R20), and .20 cfm/ft. (R15), at 1.56 psf.  ASTM E-283.

2.   Water infiltration:  No entry with WTP = 3.75psf (R25), 3.0 psf (R20) and (R15) at 5.00 gph/sq.ft  ASTM E-547.

3.   Uniform load:  No breakage or failure using both positive and negative pressures of 37.5 psf (R25), 30.0 psf (R20), and 22.5 psf (R15).  ASTM E-330.

**GENERAL SPECIFICATIONS FOR: SERIES C9000 (CASCADE) VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

PART 2        PRODUCTS

2.1    MANUFACTURERS

A.    Subject to compliance with thes e specifications, manufacturers offering window units that may be incorporated in the work include, but are not limited to the following:

1. Window Products, Inc.
2. OTHER
3. OTHER

2.2    MATERIALS

A.    All units shall be fabricated of rigid polyvinyl-chloride (PVC) multi-chambered extrusions. Secondary members, i.e. reinforcement, weather-stripping, etc. may be of other suitable and compatible materials as specified.

B.    Lineal frame and sash members to be multi-chambered vacuum calibrated PVC extrusions with a minimum exterior wall thickness of .065". Outer frame component shall possess an integral prepunched vinyl nailing flange. Interlocking frame member shall be reinforced with metal profile designed to provide additional rigidity and structural integrity.

C.    Weather-strip: Nylon pile with polypropylene backing and integral pliable fin.

D.    Glazing:  Fabricator shall provide glazing as specified by Architect, incorporated into insulated glass units of 3/4" overall thickness. Warm-Edge technology air spacer shall be incorporated into glazing units for all standard applications. Glazing shall be sealed into frame and sash components with the use of dual sided closed-cell adhesive foam glazing tape, and held into place with an exterior vinyl glazing stop.

E.    Hardware: Metal self-activated auto-locking mechanism and keeper.

1.  Horizontal sliding windows to  possess dual celcon rollers on stainless steel axles in nylon housing. Visible screws to be finished to match integral PVC color.

2.  Single hung windows to possess one (1) pair of block and tackle type sash balances per operating sash. Balances must be of the appropriate weight rating and size for the size and weight of the glazed sash. Disengagement clips shall be present in the frame to allow for removal of the sash when activated.

F.    Finish: Solid (homogeneous) frame color.  White or Almond as chosen by Architect.

**GENERAL SPECIFICATIONS FOR: SERIES C9000 (CASCADE) VINYL WINDOWS**
**AS MANUFACTURED BY CASCADE WINDOWS**
**(Cont.'d)**

**DIVISION 8**
**VINYL WINDOWS**
**SECTION 8600**

G.   Insect screens:  Metal screen frame assemblies compliant to SMA 1201-2002 to be color matched with PVC, and removable.  Screen cloth to be 18 x 16 fiber mesh held into screen frame with vinyl spline.  One screen per operable sash.

2.3   FABRICATION

A.   Fabricate all window units in a neat workmanlike manner in a facility having appropriate equipment and skilled personnel.  All frame and sash corner joinery shall be mitre-cut and fusion welded.

PART 3 EXECUTION

3.1   INSTALLATION

A.   Install windows in accordance with manufacturer's recommendations and instructions to achieve a weather tight and satisfactory operating unit.

B.   Field-applied trim shall be of compatible materials furnished by others, as selected by the Architect.

C.   Window to be factory sized to fit in each framed opening to allow 1/4" clearance on all sides.

D.   Operable panels to be closed and locked during installation.  Set units plumb, level, and true to line without warp or rack of frames or sash.  Provide proper support for window unit.

E.   Align window with adjacent work and anchor securely into place, keeping unit plumb, level and square.  Fill perimeter spaces with proper and approved insulation material to maintain continuity of building thermal envelope.

F.   Window and trim shall be installed by experienced workmen in exact accordance with the manufacturer's instructions.

G.   Cleaning:  remove visible labels and clean window assembly and glass using non-abrasive cleaning agents compatible with PVC.

END OF SECTION



*TOP*

# INSTALLATION INSTRUCTIONS

**The following installation instructions are written on the basis that the installer has a good understanding of common construction materials, practices, terminology and <u>proper flashing and sealing techniques</u>.  Please contact Window Products, Inc. if you have any questions about these instructions.  Thank you.**

## *PLEASE READ ALL INSTRUCTIONS BEFORE BEGINNING INSTALLATION*

**STORAGE AND HANDLING:**
- Care must be taken during storage and handling of this product.
- Store on a level surface in a protected area, out of direct sunlight.
- No more than 5 windows per stack, with only a very slight lean. <u>*Never lay windows flat.*</u>
- Leave sufficient space between windows to allow for proper ventilation.
- Provide full support for head and sill to prevent bowing or deformation of product.
- Window must be lifted and carried with full support under the frame.  Do not lift or carry using the top of the frame.
- DO NOT drop product, or subject it to any form of sudden impact.
- Protect product from construction traffic, debris and other potential damaging hazards.

**INSTALLATION:**
1. Make sure window is in closed and locked position.
2. Apply flashing* across bottom of opening, extending beyond each side of the opening by the width of the flashing.
3. Apply flashing* to sides, extending beyond the top and bottom of the opening by the width of the flashing.
4. Apply a 3/8" nominal bead of flexible sealant around the entire perimeter of the window, behind the nailing fin, aligning bead with the pre-punched holes in the nailing fin. [For Patio Doors – also *seal liberally beneath sill*, and *follow additional installation instructions provided for Patio Doors*].
5. Center the unit in the opening, weep holes down and to the exterior.  Press window firmly into opening, insuring a good continuous seal between the window and the structure.
6. Apply one fastener through a pre-punched hole in the nailing fin at the side of the frame, approximately 3 – 4" below an upper corner of the unit – to "tack" the unit in place.  Use fasteners that will penetrate into the stud at least 1".
7. Ensure unit is *SQUARE, PLUMB, AND LEVEL, with FULL support under sill.*
8. Apply another fastener through the nailing fin at the opposite diagonal (lower) corner of the unit.  Verify the unit is still *SQUARE, PLUMB AND LEVEL,* that unit operates smoothly, and that operable sash are sitting square in their openings.
9. Continue fastening window, using every other pre-punched hole in the nailing fin.  -
10. NOTE:  *When fastening the head portion of the window, place the fastener at the top of the elongated holes, and **DO NOT** over compress the fin with the fastener.  This will allow for any header deflection that may occur.*  (IT IS HIGHLY RECOMMENDED THAT ROOF LOADS BE APPLIED BEFORE WINDOWS ARE INSTALLED.  THIS HELPS TO ENSURE THAT ANY POSSIBLE HEADER DEFLECTION WILL HAVE OCCURRED, MAKING THE OPENINGS MORE STABLE).
11. Apply flashing* across the top of the unit, overlapping the nailing fin and the side flashing pieces, and extending beyond the outer edges of the side flashing pieces by at least 1".  Seal flashing to the face of the nailing fin with flexible sealant.
12. Be sure to properly integrate any weather-resistant barrier (house wrap) with flashing components, to ensure moisture drainage to the outside of the structure (starting at the base, overlap materials working towards the top).
13. DO NOT USE INSULATING FOAM to insulate around vinyl windows.  When packing insulation around window, use care not to bow the jamb.
14. Proper installation is necessary to ensure smooth operation of windows.  Check for smooth operation prior to applying any finish materials.
15. Leave adequate clearance (1/8"-1/4") between window frame and exterior finish application (siding, trim, etc.), to allow for expansion and contraction of window and surrounding materials. Fill gap, creating a suitable expansion joint, using flexible sealant, backer rod, etc.
16. All exposed surfaces should be cleaned of any debris as soon as possible after installation.  Use only mild detergents. DO NOT USE any harsh solvents or abrasive materials when cleaning any window surface.

    **\****Flashing material must be at least 9" wide*.  NOTE: If *adhesive* flexible flashing is used, it is *critical that all of the manufacturers guidelines are followed precisely*, including temperature considerations, the use of primers, and the use and compatibility with sealants and substrates.  The use of adhesive flexible flashing may also call for the side flashing components to be installed *over* the nailing fin, after the window is set and fastened (putting step # 3 between steps # 10 and #11).

    *IMPORTANT: Verify compatibility between sealants, PVC, flashing materials and weather-resistant barrier.*

**The above instructions are based on AAMA standards for new residential and light commercial applications.
PLEASE SEE ADDITIONAL INSTRUCTIONS PROVIDED FOR FLUSH-FIN STYLE WINDOWS, IF APPLICABLE.**  Detailed, illustrated instructions are also available upon request.

*It is the responsibility of the owner, architect, or builder to make product selections in compliance with applicable laws, building codes and requirements.*



By Window Products, Inc.

# W-Frame Installation / Stucco or EIFS(typical)
## New construction with stucco, 'Power-Wall' or other EIFS exterior application

Stucco, 'Power-wall',
or other EIFS exterior

Weather Barrier
and Flexible Flashing
applied per AAMA
standards.

Sealant (bedding bead
behind nailing flange)
- full perimeter

Sealant (butt-joint
bead with backer rod
- full perimeter

Insulation

New 9100 Slider with
W-Frame option



This application is the most common frame style (W-frame). Here it is shown incorporated into a stucco application. As compared to a '3-coat' stucco application, some other stucco variations may result in a thicker overall exterior, such as Power-Wall or EIFS (Exterior Insulation Finish System), which both incorporate a foam backing and an outer stucco coat layer. This type of exterior finish will typically finish out at about 1-1/4", which is the same dimension as the portion of the W-frame that is to the exterior side of the nailing flange.

# W-Frame Installation / Siding Exterior
## New construction with panelized or wood siding (T-111, etc.) exterior



T-111 or other panelized
siding material

1 X Wood Trim

Weather Barrier
and Flexible Flashing
applied per AAMA
standards.

Sealant (bedding bead
behind nailing flange)
- full perimeter

Sealant (butt-joint
bead with backer rod
- full perimeter

Insulation

New 9100 Slider with
W-Frame option

This application is very common and shows the W-frame incorporated into a
new construction wall using a panelized (T-111 type) siding system and exterior
wood trim. A lap-siding installation would also be very similar.

In replacement applications, if the entire existing frame can be removed, this type
of installation can also be achieved, providing proper flashing and sealing can
be applied.

# J-Frame install (typical)
## New construction with vinyl siding

Vinyl Siding

Weather Barrier
and Flexible Flashing
applied per AAMA
standards.

Sealant (bedding bead
behind nailing flange -
full perimeter)

Insulation



New 9100 Horizontal Slider
with J-Frame option

This application is designed for use specifically with vinyl siding. The J-Frame extrusion provides
a pocket for the siding to fit into around the perimeter of the window. This eliminates the need
for the added J-trim piece that would otherwise be applied around the window.

# F-Frame Installation (typical)

Existing aluminum window frame remains
in wall, and is modified to maximize opening
for new replacement window.

Existing Stucco Exterior ———————

Existing aluminum window
frame (modified to allow
for new window intallation,
including wood support
blocks)

Insulation (applied between
existing window frame and
new window frame)



New 9100 Horizontal Slider
w/ F-Frame option

*Primary bead of sealant
(bedding bead)

Interior Trim piece

*Secondary bead of sealant
(fillet bead)

\* These beads of sealant are applied around the full perimeter of the window frame, EXCEPT, at the sill,
where 1" voids will be left, to allow for the existing aluminum window weep system to work properly
if any incidental water infiltrates.

This application is appropriate when the existing aluminum frame is left intact inside the wall.
The existing frame is cut back to allow for maximum sizing of the replacement window.  Provisions
must be made for any incidental water to still weep through the existing aluminum frame's sill.  This
is done by leaving the 1" voids in the applied sealant as described above.

*Note:  if the existing aluminum frame shows signs of leaking around the perimeter (top and sides),
this application may not be suitable.  Complete removal of the existing frame would then be advised
(see N-frame installation).*

# Z-Frame Installation (typical)

Existing aluminum window frame remains
in wall, and is modified to maximize opening
for new replacement window.



Existing Stucco Exterior

Existing aluminum window
frame (modified to allow
for new window intallation,
including wood support
blocks)

Insulation (applied between
existing window frame and
new window frame)

New 9100 Horizontal Slider
w/ F-Frame option

*Primary bead of sealant
(bedding bead)

Interior Trim piece

*Secondary bead of sealant
(fillet bead)

* These beads of sealant are applied around the full perimeter of the window frame, EXCEPT, at the sill,
where 1" voids will be left, to allow for the existing aluminum window weep system to work properly
if any incidental water infiltrates.

This application is appropriate when the existing aluminum frame is left intact inside the wall.
The existing frame is cut back to allow for maximum sizing of the replacement window.  Provisions
must be made for any incidental water to still weep through the existing aluminum frame's sill.  This
is done by leaving the 1" voids in the applied sealant as described above.

***Note:  if the existing aluminum frame shows signs of leaking around the perimeter (top and sides),
this application may not be suitable.  Complete removal of the existing frame would then be advised
(see N-frame installation).***

# N-Frame Installation (typical)

Replacement when original aluminum frame has been removed
(shown with stucco exterior... may also be used with other exteriors)

Stucco exterior (or other) -
replaced after original
frame has been removed.

Existing weather barrier
and flashing

Sealant (bedding bead
behind nailing flange)
- full perimeter

Sealant (butt-joint
bead with backer rod
- full perimeter

Insulation

New 9100 Slider with
N-Frame option



This application would typically be used when a narrow aluminum frame window has
been totally removed. This narrow vinyl frame (N-frame) works well because it is closer
to the original aluminum frame size, minimizing any re-working of the interior portion
of the install (drywall, etc.)

In this type of installation, it is important to inspect the existing flashing material and
weather barrier to make sure they are adequate to provide a weather-tight  system.  Any
material is found to be damaged, it should be repaired or replaced accordingly.

# K-Frame Installation (typical)

## New construction with '3-coat' stucco exterior application



3-coat Stucco exterior

Weather Barrier
and Flexible Flashing
applied per AAMA
standards.

Sealant (bedding bead
behind nailing flange)
- full perimeter

Sealant (butt-joint
bead with backer rod
- full perimeter

Insulation

New 9100 Slider with
K-Frame option

Metal 'J-mold' stucco
cap (typical - by others) at
full perimeter - to facilitate
proper expansion joint
between stucco and
window frame

Flexible flashing at
sill - behind nailing flange

This application is designed for use with a 3-coat stucco exterior. Typical 3-coat systems result in
a 7/8" to 15/16" thick stucco layer.

# RF (Rip Fin) Frame Installation
## In Concrete or CMU (block) wall, with a wood buck

Concrete or CMU wall

Perimeter (butt-joint) sealant
with backer rod

Wood buck frame

Perimeter (butt-joint) sealant
with backer rod

Wood Shim

New 9100 Horizontal Slider
with RF (Rip Fin) option.



This application is shown in a CMU wall and a buck frame. However, this installation would
be typical of any block frame (Ripped Fin) install, as far as sealing and attaching are concerned.

As compared to an installation using a nailing flange, a block frame installation is usually
used in a 'Surface Barrier Wall system'. This type of installation uses NO flashing, and relies
totally on the perimeter butt-joint sealants to keep the water from infiltrating.

# R-Sill Installation (typical)
## Replacement using existing wood double-hung frame



Exterior Trim

Interior Trim

Existing wood
double hung frame

Insulation

Sealant (bedding bead)

9200 Single Hung
w/ D-Sill option

Sealant (bedding bead)

F-frame window (sill piece only)
trimmed to fit sloped sill angle

Sealant (fillet bead)

This application is appropriate when the existing wood double-hung frame is still
in good condition. the 3-1/4" wide vinyl frame is the perfect size to fit between most
common double hung interior and exterior stops. The installation can be accomplished
from either the outside or the inside of the home, based on which side is easier to access
and would result in as little disruption to the existing trim.

# D-Sill Installation (typical)

## Replacement using existing wood double-hung frame

Exterior Trim

Interior Trim

Exisiting wood
double hung frame

Insulation

Sealant (bedding bead)

9200 Single Hung
w/ D-Sill option

Sealant (bedding bead)

J-frame window (sill piece only)

Sealant (fillet bead)



This application is appropriate when the existing wood double-hung frame is still
in good condition.  the 3-1/4" wide vinyl frame is the perfect size to fit between most
common double hung interior and exterior stops.  The installation can be accomplished
from either the outside or the inside of the home, based on which side is easier to access
and would result in as little disruption to the existing trim.









800.442.8544
www.cascadewindows.com





