1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6 | RIC LOGG et al.,

7 |                      Plaintiffs,

8 |       v.

9 | TIG INSURANCE COMPANY, et al.,

10 |                     Defendants.

Case No. 3:21-cv-5280-DGE-TLF

REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Noted for: SEPTEMBER 1, 2023

11

      This matter comes before the Court on plaintiffs' motion for partial summary

12 judgment (Dkt. 95) and defendant TIG Insurance Company's, ("TIG")'s, motion for

13 summary judgment (Dkt. 98). This matter has been referred to the undersigned

14 Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C.

15 § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court

16 should GRANT defendant TIG's motion for summary judgment and DENY plaintiffs'

17 motion for partial summary judgment because TIG has demonstrated that plaintiffs'

18 allegations do not entitle them to relief. Thus, plaintiffs' claims against TIG should be

19 dismissed with prejudice.

20

**DISCUSSION**

21

**I.     Factual Allegations**

22

      This case is an insurance coverage dispute arising out of underlying construction

23 litigation. Plaintiffs, who are owners of homes in Auburn, Washington, located in the

24

25

Vintage Hills Housing development ("the homeowners"), are seeking an order granting partial summary judgment – that TIG's Condominium, Apartment, Townhouse, or Tract Housing Coverage Limitation Endorsement ("CATT Exclusion") does not preclude coverage in this matter; and that TIG violated the common law duty of good faith and fair dealing, committed a violation of the bad faith provisions and certain Washington Administrative Code provisions, relating to the Washington Insurance Fair Conduct Act. Dkt.1, Complaint, at 49-64; Dkt. 95. Defendant TIG opposes plaintiffs' motion, and brings its own motion for summary judgment on all counts of plaintiffs' complaint that contain allegations against TIG (Dkt. 1 at 49-64). Dkt. 98.

The Vintage Hills Development project began as "Gerard's View" in 2007, when Camp Corporation purchased the land and built nine homes. Dkt. 96, Fifth Declaration of Todd Skoglund, Ex. 1, 2. Camp corporation built its final home in 2010. Dkt. 96, Fifth Skoglund Decl., Ex. 2.

In 2012, Highmark Homes LLC ("Highmark"), a developer/ contractor resumed development. Dkt. 96, Fifth Skoglund Decl., Ex. 1.

TIG, as successor by merger to American Safety Indemnity Company ("ASIC") issued three general commercial liability policies to Highmark. Dkt. 96, Fifth Skoglund Decl., Ex. 20.  These annual, consecutive policies covered the period from June 17, 2010, to June 17, 2013. *Id*. HDI Global Specialty SE. f/k/a/ International Insurance Company of Hannover SE ("Hannover") issued two general commercial liability policies to Highmark which covered the period from July 17, 2013 to July 17, 2015. Dkt. 1-3 at Ex. 91. Four homes were sold during TIG's second policy period, 21 homes were sold during TIG's third policy period. Dkt. 96, Fifth Skoglund Decl., Ex. 3, 4.

1

The TIG policies contained the following provision:

2

**CONDOMINIUM, APARTMENT, TOWNHOUSE, OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT**

3

This insurance does not apply to:

4

**Tract Housing**

5

6

"Bodily injury," "property damage," or "person or advertising injury", however, caused, arising, directly or indirectly, out of, or related to an insured's or an insured's subcontractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development".

7

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your work" or "your product" that occurred before completion and certification for occupancy.

8

9

10

As used in the endorsement, the following is added to **SECTION V – DEFINITIONS:**

11

12

"Tract housing" or "tract housing project development" means any housing project or development that includes the construction, repair, or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

13

14

Dkt. 96, Fifth Skoglund Decl., at 20.

15

On November 28, 2016, plaintiffs filed a construction default suit against

16

Highmark and others in Kitsap County Superior Court claiming breach of contract,

17

breach of the implied warranty of habitability, violations of the Washington Consumer

18

Protection Act, violations of the independent duty doctrine, and negligent

19

misrepresentation (the "Vintage Hills Suit"). Dkt. 1-1 Ex. 48. The complaint was initially

20

brought on behalf of 14 homeowners of 10 homes, but the complaint was amended to

21

16 plaintiffs and then to 21 plaintiffs. Dkt. 1-1, Ex. 48; Dkt. 1-2, Ex. 63, Dkt. 1-3, Ex. 75.

22

Highmark tendered the claims to Hannover and TIG. Dkt. 1 at 16.

23

24

25

On December 30, 2016, TIG responded to a pre-litigation notice of construction defects from Highmark acknowledging the notice, reserving rights, and requesting additional information from Highmark. Dkt. 1-1, Ex. 49. On March 1, 2017, TIG sent Highmark a supplemental reservation of rights letter again reserving rights and further explaining Highmark's policy coverages and exceptions. Dkt. 1-2, Ex. 64.

In July 2018, Highmark notified TIG that "Highmark worked on 25 tract homes" in the Vintage Hills Development. Dkt. 99, Declaration of Stephania Denton, Ex. 11, excerpt of TIG claim file – email dated 7-9-2018, Dkt. 99, Ex. 12, excerpt of TIG claim file, letter dated 6-21-2018, at 1. On September 18, 2018, TIG (Riverstone, a claims management company, administered the claims on behalf of TIG) notified Highmark that there was no potential coverage for loss in this case and TIG would have no duty to indemnify Highmark because TIG had determined that Highmark was the developer and/or the General Contractor for 25 houses in the Subject Property; therefore, indemnity coverage was precluded by the CATT exclusion. Dkt. 96, Fifth Skoglund Decl., Ex. 16, letter from Riverstone Claims Management to Highmark.

In October 2018 the parties engaged in mediation; in November 2018, the parties executed a conditional settlement agreement under Washington Rule of Civil Procedure 2A (CR 2A). Dkt. 1-3, Ex. 89; Dkt. 27, Declaration of Todd Skoglund, Ex. 50.

In April 2019, plaintiffs, Highmark, Hannover, and one of Highmark's subcontractors entered into a Settlement Agreement and Release. In exchange for a covenant not to execute, Highmark stipulated to entry of judgment and assigned plaintiffs all rights and titles to any claims it had against its contractors, the contractor's insurance carrier(s), and Highmark's insurance carrier(s). Dkt. 1-3, Ex. 91, at 534-542.

In December 2019, TIG informed Highmark that due to the settlement, along with other policy provisions, conditions, and requirements, there was no longer a duty to defend or indemnify Highmark; TIG again reserved its rights. Dkt. 96, Fifth Skoglund Decl., Ex. 17, Letter from Riverstone to Highmark, at 3.

## II. Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

When applying these standards, the Court must draw all reasonable inferences in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. The nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Id.* at 248-49.

The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323. However, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

Under the Erie Doctrine, a federal court considering a case that is under diversity jurisdiction will apply federal procedural law, and the substantive state law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir. 2003). If the Court considers an issue of state law that has not yet been addressed by the appellate courts of the state, the Court predicts how the state supreme court "would probably rule in a similar case." *King v. Order of United Commercial Travelers,* 333 U.S. 153, 161 (1948).

### III.    Breach of Contract

Under Washington law, an insurer owes its insured two primary duties: the duty to indemnify and the duty to defend. *See Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wash. 2d 398, 404 (2010). The duty to indemnify only exists at the time liability is assessed, and only if the insurance policy covers the conduct giving rise to the liability.

*Id.* The duty to defend is much broader and "arises when the policy could *conceivably* cover allegations in a complaint." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash. 2d 171, 182 (2017) *as modified* (August 16, 2017) (emphasis in original). An insurer is relieved of the duty to defend only if the claim is clearly not covered by the policy; an ambiguous complaint will be construed liberally in favor of coverage. *Truck Ins. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 760 (2002).

Plaintiffs allege that TIG breached the policies it sold to Highmark by: (1) failing to fully defend Highmark; and (2) failing to indemnify Highmark. Dkt. 1 at 53. In its motion for summary judgment, TIG responds that each of these claims fail because TIG defended Highmark in the Vintage Hills suit, and it had no duty to indemnify due to the application of the CATT exclusion. Dkt. 98 at 7.

Washington courts give a "term [within a contract] its 'plain, ordinary, and popular' meaning." *Kitsap County v. Allstate Ins. Co.*, 136 Wash. 2d 567, 576 (1998) (*citing Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877 (1990)) (quotation omitted). Further, courts construe the language of an insurance policy with the "same construction that an average person purchasing insurance would give the contract." *Mclaughlin v. Travelers Commercial Ins. Co.*, 196 Wn.2d 631, 642 (2020) (citing *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, (2007)) (quotation omitted). If the language of a contract is clear and unambiguous, the Court "may not modify the contract or create ambiguity where none exists." *Kitsap County,* 136 Wn.2d at 576 (1998) (citing American Star Ins. Co. v. Grice, 121 Wash. 2d 869, 854 (1993)).

**1. Duty to indemnify**

TIG argues that it has no duty to indemnify because over 25 homes were built and therefore plaintiffs' claim fell within the CATT exclusion. Dkt. 98 at 7-8. The CATT exclusion precludes coverage for the work of Highmark or Highmark's subcontractors on a "tract housing project or development" as defined as:

> any housing project or development that includes the construction, repair, or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

In their motion, plaintiffs raise several different arguments that all address the same principle: because 25 homes were not built within the same "policy period," the CATT exclusion did not preclude coverage in this case. Dkt. 95 at 10-15. Plaintiffs' arguments mostly focus on the contradiction between the use of the word "phases" and the fact that the policy periods were each for one year; plaintiffs claim that this alleged contradiction is inconsistent and ambiguous, and that because it is inconsistent and ambiguous it violates Washington law. *Id*.

The CATT exclusion at issue in this case has already been interpreted by other Judges of this District – in *Becker v. TIG Insurance Co*., 3:21-CV-05185-JHC, 2022 WL 17976097 (W.D. Wash. Dec. 28, 2022), *appeal dismissed*, 23-35261, 2023 WL 4572316 (9th Cir. June 5, 2023) and *Hay v. Am. Safety Indem*. Co., 270 F.Supp.3d 1252 (W.D. Wash. 2017). The Ninth Circuit upheld the district court's interpretation of the provision in *Hay v. Am. Safety Co*., 752 Fed. Appx. 460 (9th Cir. 2018).

In *Hay*, a separate group of homeowners as assignees for Highmark argued that the CATT exclusion did not preclude coverage because the exclusion only applies if all 25 or more homes were completed within a single policy year. *Hay*, 270 F.Supp.3d at 1259. The court found this argument to be unavailing because it was not in line with the

plain language of the policy — the policy does not contain any time limits and excludes coverage in "any or all phases of development." *Id*. In affirming, the Ninth Circuit held that "the language of the policy exclusion is unassailable." *Hay*, 752 Fed. Appx. at 462

More recently, this Court again rejected plaintiff's argument – that the CATT exclusion did not apply because Highmark only built 18 homes in one year – and the Court concluded TIG owed no duty to indemnify. *Becker*, 2022 WL 17976097 at *5-6.

Plaintiffs state they are raising a new argument in this case – they challenge whether the CATT exclusion even applies (Dkt. 95 at 3); yet, plaintiffs' arguments rely on the same premise: that the language of the CATT exclusion is susceptible to competing interpretations. Plaintiffs rely on chapter 48.18 RCW to argue the CATT exclusion applies to "all phases", and the policy periods were each for one year; therefore, plaintiffs contend, the exclusion is contradictory and contrary to Washington law. RCW 48.18.130(1) requires insurance policies to "contain standard provisions as are required by the applicable chapters of this code pertaining to contracts of particular kinds of insurance." This chapter also requires the insurance policy to specify "the time at which the insurance thereunder takes effect and the period during which the insurance is to continue." RCW 48.18.140(2)(d). Further, the chapter states that "no insurance contract shall contain any provision inconsistent with any standard used or required to be used."

Plaintiffs argue that the use of the term "phase" is contradictory with and inconsistent with its policy period and therefore in violation of RCW 48.18.130(2). Dkt. 95 at 12. They also contend that the effective dates of the policy prohibit TIG from

1    abrogating the policy period to meet the exclusion, and that the word "phase" in the

2    exclusion is ambiguous. *Id*. at 13-15.

3    In Washington, "ambiguity is resolved in favor of the policyholder, and

4    exclusionary clauses are construed strictly against the insurer." *Moeller v. Farmers Ins.*

5    *Co. of Washington*, 173 Wn.2d 264, 272 (2011). Language is ambiguous if it is "fairly

6    susceptible to two reasonable but different interpretations." *Seattle Tunnel Partners v.*

7    *Great Lakes Reinsurance (UK) PLC*, 200 Wn.2d 315, 321 (2022).

8    Plaintiffs' arguments are not persuasive. In this case, the policy language is not

9    ambiguous. The word "phase" is not read in isolation but rather in the context of the

10   exclusion which refers to "any or all phases of development." The exclusion does not

11   identify the time of applicability by determining the specific policy period during which a

12   building was constructed – but rather by determining whether it was a part of a single

13   "project or development." *See Seattle Tunnel Partners,* 200 Wash. 2d at 329 ("While

14   exclusions should be strictly construed against the insurer, a strict application should

15   not contradict the plain, clear language such that a strained or forced construction

16   results").

17   Therefore, the exclusion neither violates Washington law nor prevents application

18   of the exclusion to include buildings constructed over time, within the same project or

19   development spanning more than one separate policy period. Because the plain

20   meaning of the CATT exclusion precluded coverage, TIG does not have a duty to

21   indemnify Highmark. Defendant TIG's summary judgment motion should be granted and

22   plaintiffs' motion for partial summary judgment should be denied.

23   **2. Duty to defend**

24

25

1    The complaint alleges that TIG "accepted its duty to defend and then it is

2    believed to have withdrawn it prior to final resolution." Dkt. 1 at 53. TIG alleges that it

3    provided a defense to Highmark, while reserving rights, throughout the Kitsap County

4    litigation. Dkt. 98 at 7. The evidence presented by TIG shows that TIG actively

5    participated in Highmark's representation against plaintiffs in the underlying matter and

6    did not withdraw its defense of Highmark until December 20, 2019, months after the

7    state court matter was settled in April 2019. Dkt. 19. Plaintiffs appear to concede this

8    point, and state in their reply, "TIG may meet the burden on duty to defend but not on

9    duty to indemnify." Dkt. 110 at 3-4. Therefore, there does not appear to be a genuine

10   dispute over any material fact concerning whether TIG breached its duty to defend, and

11   summary judgment should be granted in favor of TIG on TIG's motion and denied on

12   plaintiffs' motion.

13   **IV.    Bad faith**

14   Plaintiffs allege that TIG's failure to defend constituted bad faith. Dkt. 1 at 60. In

15   their motion for summary judgment, plaintiffs argue that TIG committed bad faith when it

16   (1) placed its interest above Highmark's, (2) withdrew its defense without court

17   approval, (3) sent denial letters without including an analysis on the facts and law, and

18   (4) violated various WAC provisions. Dkt. 95 at 16-22. TIG refutes each of these

19   contentions in turn. Dkt 107. at 12-16.

20   An insured may maintain a cause of action for bad faith investigation against an

21   insurer regardless of whether the policy provides coverage for the loss. *Coventry*

22   *Associates v. Am. States Ins. Co.*, 136 Wn. 2d 269, 279 (1998). An insurer has a duty of

23   good faith to its policyholder and violation of that duty may give rise to a tort action for

24

25

1  bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 765 (2002).

2  Claims by insureds against their insurers for bad faith are analyzed applying the same

3  principles as any other tort: duty, breach of that duty, and damages proximately caused

4  by any breach of duty. *See Safeco Ins. Co. v. Butler*, 118 Wash. 2d 383, 388 (1992).

5      To establish bad faith conduct by an insurer, the plaintiff must show the insurer

6  had "no reasonable justification" for its evaluation of their claim. *Starczewski v. Unigard*

7  *Ins. Grp.*, 61 Wash. App. 267, 273 (1991). "The insured may present evidence that the

8  insurer's allegedly reasonable basis was not the actual basis for its action, or that other

9  factors outweighed the alleged reasonable basis." *Smith v. Safeco Ins. Co.*, 150 Wash.

10  2d 478, 486 (2003) (en banc). The policyholder must show the insurer's breach of the

11  insurance contract was unreasonable, frivolous, or unfounded. *Overton v. Consol. Ins.*

12  *Co.*, 145 Wash. 2d 417, 433 (2002).

13      **1.  Reliance on Counsel Hired by Hannover**

14      Plaintiffs allege that TIG breached the duty of good faith by relying on Gillaspy &

15  Rhodes, the law firm originally retained by Hannover, to gather information and conduct

16  its investigation in all five cases despite the fact that TIG knew Hannover's policy was a

17  burning limits policy. Dkt. 95 at 16-17. TIG responds that it should not be held

18  responsible for Highmark's decision to tender defense to both insurers because it could

19  have chosen to selectively tender only to TIG, citing Washington's "selective tender

20  rule" as defined in *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 421

21  (2008). Dkt. 107, Defendant TIG's Response to Plaintiff's Motion for Partial Summary

22  Judgment, at 13.

23

24

25

The selective tender rule "states that where an insured has not tendered a claim to an insurer, that insurer is excused from its duty to contribute to a settlement of the claim." *Mut. of Enumclaw Ins. Co.*, 164 Wash. 2d at 421. The selective tender rule "has sound underpinnings" because it "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts." *Id*. at 421-22.

An insurer defending under a reservation of rights is required to meet the following criteria: (1) thoroughly investigate the insured's accident and the plaintiff's injuries; (2) retain competent counsel for the insured; (3) fully inform the insured of the reservation-of-rights defense and all developments relevant to policy coverage and developments of the lawsuit; (4) refrain from placing its financial interest over that of the insured. *Tank v. State Farm Fire & Cas. Co*. 105 Wash. 2d 381, 388 (1986).

Plaintiffs have not provided any legal or factual support for their claim that "TIG was using Hannover's policy limits for its own interests rather than Highmark's." *See* Dkt. 95 at 17. Plaintiffs cite to Dkt. 50 as support, but this docket entry is a response to a motion to dismiss and provides no evidentiary basis for plaintiffs' argument. Although plaintiffs cite to cases that support the rule that an insurer may not place its financial interest above that of the insured, they do not provide any case law to support their contention that by consulting with counsel hired by Hannover they were placing their interests above plaintiffs, and that this action was "unreasonable, frivolous, or unfounded." *Overton*, 145 Wash. 2d at 433. For these reasons, plaintiffs have failed to show that there is a genuine dispute of material fact.

**2.  TIG's Withdrawal of Defense**

The Court has already determined that TIG did not withdraw its defense until the parties had reached settlement, at which point it no longer had a duty to defend. *See supra,* Section C., 2. Accordingly, TIG did not act in bad faith because it did not breach its duty when it withdrew the defense of Highmark in the underlying Vintage Hills case.

### 3. Denial letters

Plaintiffs claim that TIG's denial of coverage letters were facially insufficient because they did not provide any analysis of how the CATT exclusion "applies to the facts in the Vintage Hills matter or why its interpretation does not violate Washington law." Dkt. 95 at 19. TIG responds that TIG's correspondence sufficiently provided policy language and facts and explained TIG's position. Dkt. 117 at 14-15.

Plaintiffs cites two letters, dated September 18, 2018 (Dkt. 96, Fifth Skoglund Decl., Ex. 16) and December 20, 2019 (Dkt. 96, Fifth Skoglund Decl., Ex. 17). Dkt. 95, Plaintiff's Motion for Partial Summary Judgment, at 19. In the September 2018 letter, TIG advised plaintiffs that "through our investigation, we understand this claim currently involves 25 homes in the Subject Project. Accordingly, coverage is precluded under the Exclusion – Condominium, Apartment, Townhouse, or Tract Housing endorsement." Dkt. 99, Decl. of Stephania Denton, Ex. 16. The December 20, 2019 letter referred to prior letters where plaintiffs were informed that there is no duty to indemnify and informed plaintiffs that "there is no longer a defense obligation owed by ASIC to Highmark under the Policies with Highmark's settlement, resolution and execution of the Settlement Agreement per CR2A…for this matter, along with the other applicable policy provisions, conditions and requirements."

Plaintiffs cite *Vanport Homes, Inc.*, 147 Wn.2d 751, 763-64 (2002), to support the position that TIGs letters were sent in bad faith because they failed to "follow the law and provided a few sentences and a case citation or two." Dkt. 95 at 19-20. In *Vanport*, the insurers refusal to defend was held to be an act of bad faith for the following reasons: (1) the refusal was made more than a year following the insured's tender of the claim (2) the refusal was based on little or no investigation (3) the reply simply cited policy language without any analysis or correlation to the particular claim, (4) the insurer did not respond to the insured's request for more information regarding the denial, and (5) the insurer ultimately responded by filing a declaratory judgment over four years after the initial tender. *Vanport Homes, Inc.*, 147 Wn.2d at 764. The language of the denial letter in *Vanport* was not the only action that was determined to be an act of bad faith, it was a culmination of the insurer's communication with the insured.

Here, plaintiffs only challenge the language of the letters, citing a portion of the *Vanport* opinion in isolation. However, even considering the language of the denial letters, here TIG clearly explained that because the claim was for Highmark's acts or omissions in building 25 houses, the language of the CATT exclusion applied – and the December 2019 letter included specific information about the settlement and why there was no duty to indemnify or defend. Dkt. 96, Fifth Skoglund Decl., Ex.16, 17, Letters from Riverstone to Highmark. The letters are clear and provide accurate information; therefore no genuine issue of material fact exists as to whether TIG's letters were sent in bad faith. Plaintiffs' motion for partial summary judgment should be denied and TIG's motion for summary judgment should be granted on this issue.

### 4.  Violations of the Washington Administrative code

Plaintiff alleges that TIG violated WAC 284-30-350(1) and (2) and WAC 284-30-330(1) and (2) by misrepresenting and concealing the reason for the denial of Highmark's tender and conducting an investigation as a "ruse." Dkt. 95 at 20-22.

WAC 284-30-350 defines the following as a misrepresentation of policy provisions: (1) failing to fully disclose all pertinent benefits, coverages or other provisions, and (2) concealing pertinent coverage or other provisions. WAC 284-30-330 defines the following as unfair settlement practices: (1) Misrepresenting pertinent facts or insurance policy provisions, and (2) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

Plaintiff alleges that TIG violated WAC 284-30-330(4), (6), and (7) because there is no evidence to suggest that TIG ever considered settlement with the homeowners in its representation of Highmark. Dkt. 95 at 22.

WAC 284-30-330 defines the following as unfair settlement practices

(4) Refusing to pay claims without conducting a reasonable investigation.
(6) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
(7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

Plaintiffs' claims related to these WAC provisions are unsupported by evidence — plaintiffs cite Dkt. 45 and "Skoglund Sixth Declaration" however, Dkt. 45 is a notice that a motion to dismiss was re-noted, and no Skoglund sixth declaration has been filed in this case. TIG raises this issue in their response to plaintiffs' motion and plaintiffs acknowledge that their motion "had an inexplicable number of incorrect and missing citations" in their reply in support of their motion, however, they fail to provide accurate

citations for the Court to review and do not address their claims regarding these WAC provisions at all. *See* Dkt. 108; Dkt. 110.

Because plaintiffs bear the burden of proof for their bad faith claim, once TIG establishes that there is insufficient evidence to support their claim, plaintiffs must present "specific facts demonstrating the existence of genuine issues for trial." *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Because plaintiffs have failed to present any facts, supported by evidence, their motion for partial summary judgment should be denied, and TIG's motion for summary judgment should be granted.

## V.    Plaintiffs' Remaining Claims[1]

### 1.  IFCA

TIG alleges that plaintiffs, as "purported assignees of a third-party insured" lack standing to bring a suit under IFCA. Dkt. 98 at 9. Alternatively, TIG argues that its denial of coverage was reasonable and therefore plaintiffs' claims should be dismissed as a matter of law. *Id*.

The Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015, was passed and ratified in 2007 as a statutory cause of action for first-party insureds against insurers who unreasonably deny coverage or benefits. *Perez-Crisantos v. State Farm Fire and Casualty Co.*, 187 Wash. 2d 669, 672 (2017) (*citing* RCW 48.30.015(1)).

---

[1] TIG moved for summary judgment on each of plaintiffs' claims. But plaintiffs did not analyze or mention their claims for negligent misrepresentation, negligence, or estoppel in their response to TIG's motion. The court should therefore hold that plaintiffs have abandoned their claims for negligent misrepresentation, negligence, and estoppel; these claims should be dismissed. *See Seaway Properties, LLC v. Fireman's Fund Ins.* Co., 16 F. Supp. 3d 1240, 1252 (W.D. Wash. 2014) (concluding that the plaintiff abandoned its negligence claim in an insurance action when the plaintiff failed to mention that claim in response to defendant's summary judgment motion).

IFCA provides that "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained." RCW 48.30.015(1). While IFCA also refers to regulations in the Washington Administrative Code that prohibit certain actions by insurers, the Washington Supreme Court has held that violations of those regulations are not actionable unless the insurer has first unreasonably denied a claim for coverage or payment of benefits. *See* RCW 48.30.015(5); *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 683 (2017).

## A. IFCA Standing

Defendant TIG cites *Central Puget Sound Regional Transit Auth. v. Lexington Ins. Co.*, 2014 WL 5859321 (W.D. Wash. Nov. 12, 2014) and *Cox v. Cont. Cas. Co.*, 2014 WL 2011238 (W.D. Wash. May 16, 2014) to support its position that plaintiffs lack standing to bring a claim under IFCA. Dkt. 98 at 9. District Judge Marsha J. Pechman held in both cases that the text of the statute "defines 'first party claimant' in a narrow way that applies only to first-party insurance." *Central Puget Sound Regional Transit Auth.,* 2014 WL 5859321 at *3. However, as TIG acknowledges, Judges of this District are not in consensus as to this issue. District Judge John C. Coughenour addressed the split of authority regarding IFCA's applicability to third-party insurance coverage in *Navigators Specialty Ins. Co. v. Christensen Inc.* 140 F. Supp. 3d 1097 (W.D. Wash. 2015) and determined that because the text of IFCA is ambiguous, it is appropriate to consider its legislative history; In so considering, the context of the statute reveals that the statue limits its application to first-party plaintiffs, not first-party insurance.

District Judge Robert S, Lasnik recently criticized the analysis of *Cox* and stated that: "*Cox* was wrongly decided, confusing first-party insurance with a first-party claimant. Cases that followed *Cox* compounded the problem by eschewing the certification process to resolve intra-district split…and by declining to consider the legislative history of IFCA." *Evergreen Chevrolet, LLC v. Granite State Ins. Co.*, C20-1674RSL, 2023 WL 356460, *5 (W.D. Wash. Jan. 23, 2023).

The Court in this case should follow the opinions that have considered the legislative history of IFCA and determined that IFCA confers a right of action on first-party claimants under either a first party or a third-party contract.[2] *Navigators Specialty Ins. Co.,* 140 F. Supp. 3d at 1102. Therefore, the Court should hold that, as assignees of a first-party claimant, plaintiffs in this case have standing to bring an IFCA claim, regardless of the fact that the policy is a third-party contract.

### B.  IFCA Claims

As to plaintiffs' IFCA claims, plaintiffs allege in the complaint that TIG's violation of its duty to defend constituted a violation of the Washington State Insurance Fair Conduct Act. Dkt. 1 at 61. Plaintiffs further allege that TIG failed to handle the homeowners' claims in a reasonable manner, listing multiple alleged failures concerning communication, and the settlement process. Dkt. 1 at 62. In their response to TIG's motion for summary judgment, plaintiffs state only that they have a valid assignment, but do not address TIG's argument that TIG's denial of coverage was reasonable. Dkt.

---

[2] The Court would also have the option of certification – asking the Washington Supreme Court to provide an opinion on this question of state law. *See Pacheco v. United States,* 21 F.4th 1183, 1187 (9th Cir. 2022); RCW 2.60.020. But, plaintiff's legal contentions lack factual and legal foundation, and therefore it would be more efficient to assume, for purposes of analysis, that standing exists and proceed with the analysis on the merits.

at 20. The IFCA only creates a cause of action for the first party insureds who were unreasonably denied coverage – not for regulatory violations. *Perez-Crisantos v. State Farm Fire and Casualty Co.*, 187 Wash. 2d at 672. As discussed above, plaintiffs have failed to show that they were unreasonably denied coverage, and therefore defendant TIG's motion for summary judgment should be granted.

### 2. Consumer Protection Act

To state a claim under the CPA, a plaintiff must allege "five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co* 105 Wash. 2d 778, 780 (1986). The first three elements of the *Hangman Ridge* elements may be met by establishing a per se statutory violation the CPA. *Klem v. Washington Mut. Bank*, 176 Wn. 2d 771, 787 (2013); *Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 48 53.

In the complaint, plaintiffs allege that TIG violated the CPA by failing to adopt standards for prompt investigation, refusing to indemnify Highmark, refusing to respond timely to Highmark's request for defense and indemnification, failing to effectuate a prompt settlement of the claim, and by forcing Highmark to institute a suit to obtain the benefits of Highmark's status as an additional insured under additional insurer's policies. Dkt. 1 at 69. In its motion for summary judgment, TIG contends that plaintiffs fail to provide facts or other specifics to sustain their claims. Dkt. at 10. Plaintiffs fail to respond to this claim and therefore TIG's motion should be granted.

### VI. Conclusion

For the reasons stated herein, the Court recommends that plaintiffs' motion for partial summary judgment should be DENIED and TIG's motion for summary judgment should be GRANTED as to all claims. Based on this Report and Recommendation, the Court would dismiss plaintiffs' claims against TIG with prejudice; and the Court would grant declaratory judgment in TIG's favor, but only as to TIG's contention that "there is no coverage under the TIG policies for the alleged losses or damages of Plaintiffs or Plaintiffs' alleged assignor." *See* Dkt. 35, Defendant TIG's Answer to Plaintiffs' Complaint, Affirmative Defenses, and Counterclaim for Declaratory Judgment, at 35-36; Dkt. 98 at 13. Any request for attorney's fees and costs would be made by separate motion and cost bill.

The parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating this time limitation, this matter shall be set for consideration on **September 1, 2023**, as noted in the caption.

Dated this 11th day of August, 2023.

Theresa L. Fricke
United States Magistrate Judge