UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RIC LOGG, et al.,<br><br>            Plaintiffs,<br><br>       v.<br><br>TIG INSURANCE COMPANY, et al.,<br><br>            Defendants. | CASE NO. 3:21-cv-05280-DGE<br><br>ORDER ON REPORTS AND RECOMMENDATIONS (DKT. NOS. 140, 141) AND OBJECTIONS (DKT. NOS. 144, 146) |

## I    INTRODUCTION

Before the Court are Plaintiffs' objections (Dkt. Nos. 144, 146) to the Reports and Recommendations (Dkt. Nos. 140, 141) of United States Magistrate Judge Theresa L. Fricke, which recommend denying Plaintiffs' motion for partial summary judgment (Dkt. No. 95), granting Defendant TIG's motion for summary judgment (Dkt. No. 98), and denying Plaintiffs' second motion for leave to amend Plaintiffs' complaint (Dkt. No. 124).

## II    BACKGROUND

The Court refers to Judge Fricke's R&R on the parties' summary judgment motions for a more comprehensive recitation of the facts. (Dkt. No. 140 at 1–5.) In short, Plaintiffs are owners of homes in the Vintage Hills Development, which was developed in part by Highmark. (Dkt. Nos. 1 at 5–6; 98 at 2.) In 2016, Plaintiffs sued Highmark for construction defects ("the Vintage Hills Suit"). (Dkt. Nos. 95 at 5; 98 at 2.) The Vintage Hills Suit settled in 2019; as part

1  of the settlement, Highmark assigned Plaintiffs the rights to claims Highmark had against its
2  insurance carriers, including TIG.  (Dkt. Nos. 95 at 8; 98 at 5.)  Accordingly, Plaintiffs bring the
3  instant litigation against TIG, which had issued Highmark three one-year general commercial
4  liability policies that collectively covered the period from July 17, 2010 to July 17, 2013.  (Dkt.
5  Nos. 95 at 5; 98 at 2.)

6  Plaintiffs bring claims for declaratory relief (Dkt. No. 1 at 49); breach of contract (*id.* at
7  53); violations of the Washington Administrative Code (*id.* at 54); violations of the Washington
8  Consumer Protection Act (*id.* at 55); bad faith (*id.* at 60); violations of the Washington Insurance
9  Fair Conduct Act (*id.* at 60); negligent misrepresentation (*id.* at 63); negligence (*id.* at 64); and
10 estoppel (*id.*).  The thrust of Plaintiffs' complaint is that TIG's defense of Highmark in the
11 Vintage Hills Suit was deficient and that TIG wrongfully denied indemnification coverage to
12 Highmark.  (*See* Dkt. No. 1 at 49–64.)

13 Plaintiffs' partial motion for summary judgment, though not entirely clear,[1] appears to
14 move for summary judgment on Plaintiffs' claims regarding breach of contract, bad faith, and
15 Washington Administrative Code violations.  (Dkt. Nos. 95 at 8–9; 140 at 2.)  TIG moves for
16 summary judgment on "[a]ll of Plaintiffs' claims against TIG" (Dkt. No. 98 at 2), though TIG's
17 motion fails to discuss Plaintiffs' claim for declaratory relief (*see id.* at 6).

18 ### III     LEGAL AUTHORITY

19 A district court reviews *de novo* "those portions of the report or specified proposed
20 findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1)(C); *see*

21

---

[1] Rather than identify specific claims on which Plaintiffs move for summary judgment, Plaintiffs' motion presents a list of ten questions characterized as "issues to be resolved" (Dkt. No. 95 at 8–9), unhelpfully leaving the Court to decipher on which causes of action Plaintiffs seek summary judgment.

ORDER ON REPORTS AND RECOMMENDATIONS (DKT. NOS. 140, 141) AND OBJECTIONS (DKT. NOS. 144, 146) - 2

*also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

Objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2). "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Department of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021). "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).

## IV    DISCUSSION

A.    **Motions for Summary Judgment**

Judge Fricke recommends granting TIG's motion for summary judgment and denying Plaintiffs' partial motion for summary judgment. (Dkt. No. 140 at 1, 21.) As the R&R summarizes, "the Court would dismiss plaintiffs' claims against TIG with prejudice; and the Court would grant declaratory judgment in TIG's favor, but only as to TIG's contention that 'there is no coverage under the TIG policies for the alleged losses or damages of Plaintiffs or Plaintiffs' alleged assignor.'" (*Id.* at 21.)

Plaintiffs' objection focuses almost entirely on the R&R's interpretation of the policies' Condominium, Apartment, Townhouse, or Tract Housing Coverage Limitation Endorsement ("CATT Exclusion"). (Dkt. No. 146 at 4–13.) The R&R found the CATT Exclusion dispositive of Plaintiffs' breach of contract claim insofar as that claim was based on TIG's alleged failure to

indemnify Highmark. (Dkt. No. 140 at 6–10.) Plaintiffs' objection also contains brief argument maintaining that denial letters sent by TIG were in bad faith. (Dkt. No. 146 at 13–14.) The Court reviews *de novo* the R&R's analysis of Plaintiffs' (1) breach of contract claim, to the extent the claim is based on a failure to indemnify; and (2) bad faith claim. TIG is entitled to summary judgment on both claims.

1. Breach of Contract: Failure to Indemnify

TIG's motion for summary judgment argues "Plaintiffs' breach of contract claim based on a failure to indemnify Highmark" fails "because Highmark was not entitled to indemnity coverage" pursuant to the insurance policies' CATT Exclusion. (Dkt. No. 98 at 7.) As TIG explains, the CATT Exclusion precludes coverage if the insured constructs 25 or more homes in a development; because Highmark constructed 25 homes in the Vintage Hills Development, the CATT Exclusion applies. (*Id.* at 4–5.) Plaintiffs' partial motion for summary judgment does not dispute that Highmark constructed 25 homes in the Vintage Hills Development, and instead argues the CATT Exclusion should not preclude coverage because the construction of all 25 homes did not occur in specific policy periods. (Dkt. No. 95 at 11.)

The CATT Exclusion includes the following language:

**CONDOMINIUM, APARTMENT, TOWNHOUSE, OR TRACT HOUSING COVERAGE LIMITATION ENDORSEMENT**

This insurance does not apply to:

**Tract Housing**

"Bodily injury," "property damage" or "person or advertising injury", however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's subcontractor's operations, "your work" or "your product" that are incorporated into a "tract housing project or development."

This exclusion does not apply if "your work" or "your product" occurs after the "tract housing project or development" has been completed and certified for occupancy, unless "your work" or "your product" is to repair or replace "your

> work" or "your product" that occurred before completion and certification for occupancy.
>
> As used in the endorsement, the following is added to **SECTION V – DEFINITIONS**:
>
> "Tract housing" or "tract housing project development" means any housing project or development that includes the construction, repair, or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development.

(Dkt. Nos. 1-1 at 155, 249; 96-20 at 561, 646, 762.) The R&R finds the plain language of the CATT Exclusion precludes coverage because Highmark constructed 25 homes in the Vintage Hills Development. (Dkt. No. 140 at 8–10.) Accordingly, the R&R concludes TIG had no duty to indemnify Highmark. (*Id.* at 10.) The R&R rejects Plaintiffs' argument that the applicability of the CATT Exclusion depends on the timing of the homes' construction, explaining the language of the CATT Exclusion is not tied to "the specific policy period during which" homes "we[re] constructed," and instead is based on whether the construction of homes "was a part of a single 'project or development.'" (*Id.*)

Plaintiffs argue the R&R errs by (1) relying on distinguishable caselaw (Dkt. No. 146 at 2), (2) disregarding the "effective date" of the CATT Exclusion (*id.* at 5–6), and (3) reading the CATT Exclusion in a manner that renders language superfluous (*id.* at 7–9). The Court finds Plaintiffs' arguments unpersuasive.

      a.    *Reliance on Distinguishable Caselaw*

Plaintiffs argue the R&R improperly relies on *Hay v. American Safety Indemnity Co.*, 270 F. Supp. 3d 1252, 1259 (W.D. Wash. 2017), which analyzed the same CATT Exclusion now at issue. (Dkt. No. 146 at 2.) In particular, Plaintiffs argue that in *Hay*, "twenty-five homes were built in a single policy" period (*id.* at 6), whereas "[i]n this case . . . the homes at Vintage Hills were built during two policy periods" (*id.* at 3). Accordingly, Plaintiffs contend *Hay* is "inapplicable to the facts of this case." (*Id.* at 6.)

ORDER ON REPORTS AND RECOMMENDATIONS (DKT. NOS. 140, 141) AND OBJECTIONS (DKT. NOS. 144, 146) - 5

The Court finds Plaintiffs' argument unsupported.  The factual circumstances and arguments of plaintiffs' counsel in *Hay* are strikingly similar to those in the instant case.  Plaintiffs in *Hay* argued "if less than 25 homes were completed and sold during a policy period, the exclusion may not have applied," and that the insurer "ha[d] the burden of proving the exclusion applie[d] in each of the three policy periods," including a period during which "only 8 lots were purchased and only one sold."  *Hay v. American Safety Indemnity Co.*, Case No. 3:17-cv-05077-RJB, Dkt. No. 20-1 at 14–15 (W.D. Wash. 2017).  The court in *Hay* found this argument unsupported by "[t]he plain language of the policy" because "[t]he exclusion doesn't contain any time limits, and instead specifically provides that coverage is excluded [] 'in any or all phases of the project or development.'"  *Hay*, 270 F. Supp. 3d at 1259.  The Ninth Circuit affirmed, finding the CATT Exclusion applied because "Highmark constructed more than 25 homes (29) within the same project or development" and "[t]he exclusion contains no other pertinent limitations."  *Hay v. American Safety Indemnity Co.*, 752 Fed. Appx. 460, 462 (9th Cir. 2018).  The Court finds no reason to depart from the reasoning in *Hay* or the R&R.  There is no time limitation in the CATT Exclusion.

    b.  *Effective Date*

Plaintiffs next argue the R&R improperly disregards the "endorsement page that identifies the effective date of the CATT [Exclusion]."  (Dkt. No. 146 at 3) (citing Dkt. No. 51-1 at 6).  Plaintiffs contend the presence of an effective date prohibits TIG from counting homes that were constructed by Highmark "before the effective date in order to trigger the CATT endorsement."  (Dkt. No. 146 at 10.)  In Plaintiffs' view, this means the CATT Exclusion does not preclude coverage for "the second policy period" because "Highmark only built twenty-one homes during" that period (*id.* at 3), and Highmark should not be permitted to count homes constructed during the prior policy period (*id.* at 7).  Plaintiffs contend that doing so would

ORDER ON REPORTS AND RECOMMENDATIONS (DKT. NOS. 140, 141) AND OBJECTIONS (DKT. NOS. 144, 146) - 6

improperly "abrogate or nullify" the "endorsement effective" date of the second policy period. (*Id.*)  And Plaintiffs stress that "TIG did not include an expiration date on the endorsement page for a reason, but it did include an effective date" (*id.*), maintaining this demonstrates TIG's intent that "the endorsement [] only cover events and occurrences on [the 'endorsement effective' date], and forward" (*id.* at 12).

The Court rejects Plaintiffs' argument that the presence of an effective date on the endorsement pages—and the absence of an expiration date—suggests that homes constructed prior to a policy period may not be counted in determining the CATT Exclusion's applicability. The "endorsement effective" date does not purport to modify the meaning of defined terms within any given endorsement.  (Dkt. No. 51-1 at 6.)  Rather, the "endorsement effective" date does exactly what it says: it specifies the date on which the endorsement becomes effective.  (*Id.*) To find that the definition of "tract housing" only includes homes constructed by the insured after the endorsement's effective date would insert into the definition a limitation that is not there.  *See Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 600 (Wash. 2016) ("Because the language of the policy is plain, we enforce that language."); *American States Inc. Co. v. Delean's Tile and Marble, LLC*, 319 P.3d 38, 43 (Wash. Ct. App. 2013) ("Where the policy's language does not provide coverage, we may not rewrite the policy to do so.")

Plaintiffs' objection is another variation on the same argument Plaintiffs' counsel has made since at least as early as 2017—*i.e.*, that the application of the CATT Exclusion depends on the timing of a home's construction.  *Hay*, 270 F. Supp. 3d at 1259 (rejecting plaintiffs' argument that the CATT Exclusion did not apply because "the construction of the homes . . . took place over more than a single policy year," and explaining "[t]he exclusion doesn't contain any time limits"); *Becker v. TIG Ins. Co.*, 649 F. Supp. 3d 1065, 1075 (W.D. Wash. Dec. 28,

2022) (finding "[t]he plain language of the [CATT] exclusion does not suggest that it applies only if 25 or more homes are completed within a single policy year").  As the CATT Exclusion does not specify a time during which homes must be constructed in order for the exclusion to apply, the Court does not find merit in Plaintiffs' argument.

      c.  *Superfluous Language*

Plaintiffs argue the R&R's construction renders language in the CATT Exclusion superfluous in two respects.  (Dkt. No. 146 at 3.)

First, Plaintiffs argue the R&R's interpretation of "any or all phases," as used in the definition of "tract housing," is superfluous.  (*Id.* at 8.)  As Plaintiffs maintain, "[a]n average person would interpret the delineation, '[a]ny or all phases of…' as neither broadening nor narrowing the scope of coverage."  (*Id.*)  In other words, Plaintiffs suggest that removing "any or all phases of" from the CATT Exclusion's definition of "tract housing" would not alter the definition's meaning:

> "Tract housing" or "tract housing project development" means any housing project or development that includes the construction, repair, or remodel of twenty-five (25) or more residential buildings by our insured in ~~any or all phases of~~ the project or development.

Plaintiffs' argument takes issue with the language of the CATT Exclusion; it does not identify error in the R&R's construction of the exclusion.  In any event, the Court rejects the argument.  The Court does not understand the language "any or all phases" to be superfluous; rather, the use of the broad language serves to emphasize that the exclusion did not envision a time limitation of the sort Plaintiffs seek.

Moreover, finding the phrase "any or all phases" superfluous would not support Plaintiffs' position.  Accepting as true Plaintiffs' argument that striking the allegedly superfluous

language would not alter the definition of "tract housing" (Dkt. No. 146 at 8), the exclusion still would contain no time limitation, and Plaintiffs' position would still fail.

Plaintiffs also do not provide any alternate reasonable construction of "any or all phases" that would eliminate the redundancy Plaintiffs perceive.[2] To that end, the Ninth Circuit already found the CATT Exclusion is not "susceptible to competing interpretations—at least none that are reasonable." *Hay*, 752 Fed. Appx. at 462.

The second redundancy Plaintiffs identify requires comparing the "Tract Housing" section with another section of the CATT Exclusion concerning condominiums, apartments, and townhouses. (Dkt. No. 146 at 9–10.) The latter section excludes coverage of damage arising from work "incorporated into a condominium, apartment or townhouse project" if the project "exceed[s] 25 units." (Dkt. No. 96-20 at 561.) Plaintiffs argue "[t]here is no material distinction or interpretation difference between 'twenty-five (25) or more residential buildings' [as used] in the 'Tract Housing' definition and [] '25 units' as used in the 'Condominium, Apartment, and Townhouse' section' of the CATT Exclusion." (Dkt. No. 146 at 9.) Consequently, Plaintiffs maintain the CATT Exclusion did not need to be divided into two sections, and instead, the "Tract Housing" section could have been "inserted into the 'Condominium, Apartment, and Townhouse' section of the endorsement without effect." (*Id.* at 9–10.)

---

[2] Plaintiffs appear to urge the Court to adopt a construction in which "[t]he definition of 'phase'" would be interpreted in a manner they contend is "used by Highmark." (Dkt. No. 146 at 10.) While not clearly conveyed, Plaintiffs seem to believe a single "phase" for purposes of the CATT Exclusion should be understood as a single home, as Plaintiffs emphasize that "Highmark entered contracts with all its contractors on a per-home basis" and argue "Highmark's definition of constructing a single home is reasonable and often used in the construction industry." (*Id*. at 11.) But even assuming a "phase" is equivalent to the construction of a single home, Plaintiffs would not prevail: the CATT Exclusion precludes coverage when the insured constructs a total of 25 homes "in any or all phases" of the development, not in a single phase.

ORDER ON REPORTS AND RECOMMENDATIONS (DKT. NOS. 140, 141) AND OBJECTIONS (DKT. NOS. 144, 146) - 9

1    Plaintiffs do not explain how this perceived redundancy would be resolved by any
2  alternate interpretation of the CATT Exclusion, and further fail to explain how an alternate
3  interpretation would warrant finding the CATT Exclusion inapplicable to the instant case.  The
4  Court rejects Plaintiffs' argument.

    2.    Bad Faith

6    Plaintiffs do not raise a specific objection to Judge Fricke's resolution of Plaintiffs' bad
7  faith claim.  (*See id.* at 13–14.)  Instead, Plaintiffs repeat verbatim a paragraph of their argument
8  from their partial motion for summary judgment to support Plaintiffs' ultimate contention that
9  "TIG's denial letters were sent in bad faith" (*id.*; Dkt. No. 95 at 19).  *See Czapla v. Department*
10 *of Corr.*, 2011 WL 6887123, at *1 (W.D. Wash. Dec. 29, 2011) (explaining "[a] mere recitation
11 or summary of arguments previously presented is not an 'objection' . . . since a valid 'objection'
12 must put the district court on notice of potential errors in the magistrate judge's report and
13 recommendation"); *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012) (deeming
14 "ineffective" objections that "[m]erely reassert[ed]" arguments already stated).

15   The only new argument not copied from Plaintiffs' summary judgment briefing is the
16 unclear and conclusory assertion that "TIGs letter give absolutely no insight to how they
17 interrelated its own endorsement so it would not have to take a position that would be in
18 contradiction to one of the other denial letters.  It placed its own interest above Highmark in bad
19 faith." (Dkt. No. 146 at 14.)  But even that "new" argument does not identify error in the R&R.

20   Plaintiffs' summary judgment briefing on bad faith neither shows they are entitled to
21 judgment as a matter of law, nor raises a dispute of fact that would preclude summary judgment
22 in favor of TIG.  Instead, Plaintiffs' briefing states repeatedly that TIG's denial letters should
23 have included "a few sentences and a case citation or two" (Dkt. Nos. 95 at 20; 109 at 18; 110 at

13), and argues in a conclusory fashion that the denial letters "do[] not provide any analysis of how its CATT endorsement applies to the facts . . . or why [TIG's] interpretation does not violate Washington law" (Dkt. No. 95 at 19).

The Court cannot find Plaintiffs' arguments supported by the facts or law.  TIG's September 18, 2018 letter, for example, analyzes the applicability of the CATT Exclusion by explaining "Highmark completed operations at 25 homes in the Subject Project" and citing the CATT Exclusion's definition of "Tract Housing."  (Dkt. No 96-16 at 11.)  The authorities cited by Plaintiffs do not demonstrate that mere failure to provide "a case citation or two" gives rise to a bad faith claim, or that there was any obligation of TIG to show "why its interpretation" of the CATT Exclusion "does not violate Washington law."  (Dkt. No. 95 at 19–20.)

   3.  <u>Remaining Claims</u>

Plaintiffs do not object to the R&R's analysis of Plaintiffs' remaining claims against TIG.  (*See generally* Dkt. No. 146.)  As such, the Court may review the R&R with respect to these claims for clear error.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003) ("[I]t merits re-emphasis that the underlying purpose of the Federal Magistrates Act is to improve the effective administration of justice.  A rule requiring automatic *de novo* review of findings and recommendations to which no one objects would not save time or judicial resources."); *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019) ("In the absence of a specific objection, the court need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation.").

Nonetheless, as the Court has reviewed the entirety of the parties' summary judgment motions, the R&R, and Plaintiffs' objection, the Court conducted a *de novo* review of each remaining aspect of the parties' summary judgment motions.  Ultimately, the Court agrees with

the R&R's conclusion that Plaintiffs' partial motion for summary judgment should be denied, and TIG's motion should be granted.  The Court notes that TIG's motion and the R&R did not contain independent analysis of Plaintiffs' claim for declaratory relief.  However, by virtue of the Court's resolution of Plaintiffs' other claims, many if not all of Plaintiffs' requests for declaratory relief are invalid as a matter of law, and Plaintiffs did not show otherwise in their response to TIG's motion.  Moreover, Plaintiffs did not object to the R&R's recommended dismissal of all of Plaintiffs' claims against TIG, instead only objecting to the R&R's recommended disposition of Plaintiff's breach of contract and bad faith claims.

The Court therefore GRANTS TIG's motion for summary judgment (Dkt. No. 98) on all counts of Plaintiffs' complaint against TIG (Dkt. No. 1 at 49–64) and DENIES Plaintiffs' partial motion for summary judgment (Dkt. No. 95).  The Court further adopts the R&R's recommendation that summary judgment be granted in favor of TIG with respect to "TIG's contention that 'there is no coverage under the TIG policies for the alleged losses or damages of Plaintiffs' or Plaintiffs' assignor." (Dkt. No. 140 at 21.)  This finding necessarily follows from the Court's conclusion that Highmark was not entitled to coverage due to the policies' CATT Exclusion.

B.      **Motion for Leave to Amend Complaint**

Plaintiffs request leave to amend their complaint in light of facts Plaintiffs claim to have learned from TIG's productions at the end of the discovery period. (Dkt. No. 124 at 4–5, 8.) The R&R recommends denying the motion, finding Plaintiffs "were not diligent and have not shown 'good cause'" as is required under Federal Rule of Civil Procedure 16(b)(4) (Dkt. No. 141 at 4), and, in the alternative, that Plaintiffs did not demonstrate amendment was proper under Federal Rule of Civil Procedure 15 (*id.* at 4–8).

1        Plaintiffs fail to raise a specific objection to the R&R. (Dkt. No. 144.) Plaintiffs' only objection in their 14-page filing is a sentence concluding "[t]he R & R fails to acknowledge the facts and consider October, November, December, and January circumstances." (Dkt. No. 144 at 14.) Otherwise, Plaintiffs improperly relitigate their discontent with the manner in which discovery unfolded in the instant case and related cases. *See Brown v. Papa Murphy's Holdings Inc.*, 2021 WL 1574446, at *3 (W.D. Wash. April 22, 2021) ("objections to an R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge").

        The Court reviews the "circumstances" of each month noted by Plaintiffs and does not find persuasive Plaintiffs' contention. (Dkt. No. 144 at 14.) The Court declines to depart from Judge Fricke's recommendation that Plaintiffs' motion be denied.

        The only discussion of "October . . . circumstances" in Plaintiffs' objections is a statement that "discovery letters were sent to TIG" in October of 2022, "mirroring the East Park discovery letter sent to TIG a year prior on December 3, 2021." (Dkt. No. 144 at 7.) But Plaintiffs' underlying motion to amend does not discuss or cite to discovery letters. (*See generally* Dkt. No. 124.) In any event, Plaintiffs fail to show how the existence of the letters warrants allowing Plaintiffs to amend their complaint. To the extent Plaintiffs feel the October 2022 discovery letters were improper or unduly delayed (Dkt. No. 144 at 8), Plaintiffs could have sought relief well before they first moved to amend their complaint in March 2023 (Dkt. No. 117) rather than waiting until the dispositive motion deadline had passed. The Court cannot find Plaintiffs to have been diligent based on these circumstances.

        Plaintiffs' objections state the following occurred in November: (1) "the dispositive motion deadline passed in East Park," (2) "TIG identified the names of witnesses for the first

time in any of the TIG cases," (3) "a discovery conference was held in Vintage Hills and Sylvan Way" to discuss discovery letters sent in October 2022, which led Plaintiffs to agree to "reduce the number of [their] requests," and (4) Plaintiffs' "counsel's Mom was rushed back into the hospital" around the time "he emailed TIG" to confirm that it would "accept[] service of trial subpoenas for everyone [TIG] disclosed in [its] supplemental discovery." (Dkt. No. 144 at 7–8.) It appears Plaintiffs raise these events in an effort to demonstrate counsel for Plaintiffs was handling numerous demands, and as part of a broader narrative alleging discovery misconduct by TIG. But to the extent Plaintiffs feel these events were not given appropriate weight in the R&R, the Court cannot agree. The events' significance is not apparent in assessing Plaintiffs' diligence at and after the close of discovery in December, when Plaintiffs argue they received the "document dump" containing facts they seek to add to their complaint. (Dkt. No. 124 at 8.)

Finally, the Court cannot find the R&R failed to consider relevant events in December 2022 and January 2023. The R&R directly addresses Plaintiffs' argument (Dkt. No. 124 at 4) that "TIG did a document dump of over a hundred documents" on December 2, 2022. (Dkt. No. 141 at 3–4.) The R&R concludes that even "assuming [P]laintiffs were only fully aware of" new arguments "beginning at the time they received the December 2, 2022 disclosure," they "had multiple opportunities to bring up the additional facts and move to amend to add new claims" prior to or in conjunction with the dispositive motions filed in January. (*Id.*) The R&R further notes that, despite Plaintiffs' allegation that the December 2, 2022 production was a "data dump," Plaintiffs "did not request an extension" to allow them time to fully review the discovery. (*Id.* at 4.) To these ends, the R&R concludes Plaintiffs "were not diligent" and therefore did "not show[] 'good cause'" in bringing their motion. (*Id.*) The Court agrees. *See Zikovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("If the party seeking

the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted.") (internal citation omitted).

Under either a clear error or *de novo* review, the Court finds no error in the R&R's resolution of Plaintiffs' motion to amend.  Plaintiffs' motion (Dkt. No. 124) is DENIED.

## V   CONCLUSION

The Court has reviewed Plaintiffs' objections (Dkt. Nos. 144, 146), Judge Fricke's R&Rs (Dkt. Nos. 140, 141), the parties' cross-motions for summary judgment (Dkt. Nos. 95, 98), and Plaintiffs' second motion to amend (Dkt. No. 124).  The Court ADOPTS in part Judge Fricke's R&R on the parties' motions for summary judgment (Dkt. No. 140), ADOPTS in full Judge Fricke's R&R on Plaintiffs' motion to amend (Dkt. No. 141), and ORDERS as follows:

1. Plaintiffs' partial motion for summary judgment (Dkt. No. 95) is DENIED;
2. TIG's motion for summary judgment (Dkt. No. 98) is GRANTED on Counts I through IX of Plaintiffs' complaint as against TIG;
3. Counts I through IX of Plaintiffs' complaint against TIG are dismissed with prejudice;
4. Plaintiffs' second motion to amend (Dkt. No. 124) is DENIED.

Dated this 19th day of March 2024.

David G. Estudillo
United States District Judge